**RUSS AUGUST & KABAT**
Larry C. Russ, State Bar No. 82760
Dorian S. Berger, State Bar No. 264424
Daniel P. Hipskind, State Bar No. 266763
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tel:  (310) 826-7474
Fax:  (310) 826-6991
Email:  lruss@raklaw.com
Email:  dberger@raklaw.com
Email:  dhipskind@raklaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Paul Perkins, Pennie Sempell, Ann Brandwein, and Erin Eggers; individually and on behalf of all others similarly situated,<br><br>          Plaintiffs<br><br>v.<br><br>LinkedIn Corporation,<br><br>          Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1.  **VIOLATION OF COMMON LAW RIGHT OF PUBLICITY**<br>2.  **VIOLATION OF UNFAIR BUSINESS PRACTICES ACT**<br>3.  **VIOLATION OF STORED COMMUNICATIONS ACT**<br>4.  **VIOLATION OF WIRETAP ACT**<br>5.  **VIOLATION OF CALIFORNIA COMPREHENSIVE DATA ACCESS AND FRAUD ACT**<br>6.  **VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT**<br><br>JURY TRIAL DEMANDED |

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1    Plaintiffs Paul Perkins, Pennie Sempell, Ann Brandwein, and Erin Eggers

2 (collectively, "Plaintiffs"), by and through their attorneys, Russ, August & Kabat,

3 bring this action on behalf of themselves and all others similarly situated, make the

4 following allegations on information and belief, except as to allegations pertaining

5 to Plaintiffs individually, which are based on their respective personal knowledge.

6                                    **INTRODUCTION**

7    1.    Plaintiffs bring this class action complaint against LinkedIn

8 Corporation ("LinkedIn") for appropriating the names, photographs, likenesses,

9 and identities of Plaintiffs to advertise its products and services for a commercial

10 purpose without Plaintiffs' consent, for unfair and deceptive business practices, and

11 in violation of LinkedIn's User Agreement with users, accepted industry standards,

12 and federal and state law.

13   2.    The wrongful conduct by LinkedIn that is the subject of this

14 complaint arises from LinkedIn's practice of breaking into its users' third party

15 email accounts, downloading email addresses that appear in the account, and then

16 sending out multiple reminder emails ostensibly on behalf of the user advertising

17 LinkedIn to non-members.  LinkedIn provides no functional way to stop multiple

18 subsequent advertising emails from being sent.

19   3.    When users sign up for LinkedIn they are required to provide an

20 external email address as their username and to setup a new password for their

21 LinkedIn account.  LinkedIn uses this information to hack into the user's external

22 email account and extract email addresses.  If a LinkedIn user leaves an external

23 email account open, LinkedIn pretends to be that user and downloads the email

24 addresses contained anywhere in that account to LinkedIn's servers.  LinkedIn is

25 able to download these addresses without requesting the password for the external

26 email accounts or obtaining users' consent.

27   4.    As a part of its effort to acquire new users, LinkedIn sends multiple

28 emails endorsing its products, services, and brand to potential new users.  In an

1

RUSS, AUGUST & KABAT

1  effort to optimize the efficiency of this marketing strategy, LinkedIn sends these
2  "endorsement emails" to the list of email addresses obtained without its existing
3  users' express consent and, to further enhance the effectiveness of this particular
4  marketing campaign, these endorsement emails contain the name and likeness of
5  those existing users from whom LinkedIn surreptitiously obtained the list of email
6  addresses.

7      5.    These "endorsement emails" are sent to email addresses taken from
8  LinkedIn users' external email accounts including the addresses of former spouses,
9  clients, opposing counsel, etc.  LinkedIn reassures its users "[w]e will not email
10  anyone without your permission."  (LinkedIn Login Step 2, LinkedIn.com).  Yet,
11  LinkedIn, without consent, downloads and indefinitely stores email addresses
12  gathered from its members' third-party email accounts.

13      6.    Not only does LinkedIn send an initial email to the email addresses
14  obtained from a user's external email account, but LinkedIn sends two additional
15  emails to those email addresses when those users do not sign up for a LinkedIn
16  account.  Each of these reminder emails contains the LinkedIn member's name and
17  likeness so as to appear that the LinkedIn member is endorsing LinkedIn.  These
18  reminder emails are sent to the email addresses obtained from the member's
19  external email account without notice or consent from the LinkedIn member.

20      7.    LinkedIn's appropriation of email addresses to send multiple reminder
21  emails promoting its service is motivated by monetary gain.  Brian Guan a
22  Principal Software Engineer at LinkedIn (currently on sabbatical) posted on
23  LinkedIn's web site that his role is "devising hack schemes to make lots of $$$
24  with Java, Groovy and cunning at Team Money!"  Brian Guan, LinkedIn Profile,
25  available at http://www.linkedin.com/in/brianguan (last visited September 13,
26  2013).  LinkedIn's 2011 10-K identified as its key strategy, "Foster Viral Member
27  Growth."  LinkedIn states, "we will continue to pursue initiatives that promote the
28  viral growth of our member base."  2012 10-K at 3 (Mar 2, 2012).  Jeff Weiner,

CLASS ACTION COMPLAINT

LinkedIn CEO has stated that changing the way it sends invitations to new members (through the appropriation of email addresses) has led to strong member growth directly assisting the bottom line. "[LinkedIn] [g]rew its member base to 218 million, and witnessed strong member growth through the quarter *due to optimization initiatives*. As a result, new sign ups increased to greater than two per second." 2013 Q1 Earnings Highlights, May 2, 2013 (emphasis added). "This strong membership growth is due in large part to new growth optimization efforts." Jeff Weiner, 2013 Q2 Earnings Call Transcript, August 1, 2013 (emphasis added).

8.     LinkedIn's sending of multiple emails to each address that it has harvested is driven by monetary gain. LinkedIn never discloses to its users that it will send multiple emails to each email address that it has harvested. These follow-up emails are critical to LinkedIn signing up new users. "Our intention behind sending reminders is to jog the receiver's memory in case they overlooked the original message." LinkedIn Invitation Reminders, February 7, 2013, available at http://help.linkedin.com/app/answers/detail/a_id/3882 (last visited July 15, 2013); LinkedIn Community Support, How Do I Stop Invitation Reminders, June 11, 2013, available at http://community.linkedin.com/questions/16595/how-do-i-stop-sending-invitation-reminders.html (last visited July 15, 2013) ("I even deleted all the sent invitations and still my friends getting the reminders. this is the fourth time in two weeks. so frustrated. after deleting all the sent invitations, i can not withdraw."); LinkedIn InMail, available at http://www.linkedin.com/static?key=about_inmail (last visited July 15, 2013) ("Does it work? Absolutely. InMails are so effective we back them up with a response guarantee. If you don't get a response in 7 days, we'll give you another InMail to send.")

9.     At a minimum, LinkedIn places a value of ten dollars for each email sent to a recipient containing an endorsement. LinkedIn charges its own members ten dollars ($10) per email sent by its members to another member not directly

RUSS, AUGUST & KABAT

linked to that user.  *See e.g.*, Linked InMail Purchasing Page, *available at* <https://www.linkedin.com/secure/inmail_v4?displayProducts=> (last visited May 20, 2013).  LinkedIn states that these emails are worth ten dollars ($10) each because they carry an endorsement and ***the ability to send up to two reminder emails*** and are thus "better than an email or cold call".

10.    LinkedIn intentionally and knowingly created and developed this deceptive advertising scheme to improperly use the names, photographs, likenesses, and identities of Plaintiffs for the purpose of generating substantial profits for LinkedIn.  LinkedIn's scheme was initiated without obtaining the consent of or compensating Plaintiffs or Class members for their part in promoting LinkedIn's products and services.  Plaintiffs and Class members each have a right of publicity under common law, which entitles them to be compensated for the use of their names, likenesses, and/or photographs.  LinkedIn has deprived Plaintiffs of such compensation.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  This Court has personal jurisdiction over LinkedIn because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, and (b) LinkedIn is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this State through the promotion, marketing, and sale of products and services in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.   Under the Class Action Fairness Act of 2005 this Court has jurisdiction as the amount of damages sustained by the Class exceeds five million dollars.

12.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1)-(2) because LinkedIn headquarters are located in the Northern District of California.

1   Venue is also proper under California Code of Civil Procedure § 17203 as this is a

2   Court of competent jurisdiction.

### PARTIES

4       1.    Plaintiff Paul Perkins is a United States citizen and resident of New

5   York City, New York in New York County.  Mr. Perkins is the former Manager of

6   International Advertising Sales for The New York Times.  Mr. Perkins was, until

7   2013, a registered LinkedIn member. LinkedIn on one or more occasions during

8   the class period gained access to Mr. Perkins' external email accounts without his

9   authorization.  Further, LinkedIn on one or more occasions during the class period

10   sent invitations to join LinkedIn to email addresses harvested from one or more of

11   Mr. Perkins' external email accounts.  Moreover, without Mr. Perkins' consent,

12   additional spam emails were sent by LinkedIn to email addresses harvested from

13   his accounts.  These emails were sent without the prior consent of Mr. Perkins and

14   contained Mr. Perkins' name endorsing and advertising LinkedIn's service.  The

15   endorsement emails requested the recipients to join LinkedIn.  LinkedIn sent these

16   endorsement emails to email recipients within and outside of California.

17       2.    Plaintiff Pennie Sempell is a United States citizen and resident of San

18   Francisco, California in San Francisco County.  Ms. Sempell is a lawyer and

19   author.  Ms. Sempell has been, and still is, a registered LinkedIn member since

20   before May 13, 2013.  LinkedIn, on one or more occasions during the class period,

21   gained access to Ms. Sempell's external email accounts without her authorization.

22   Further, LinkedIn, on one or more occasions during the class period, sent

23   invitations to join LinkedIn to email addresses harvested from one or more of Ms.

24   Sempell's external email accounts.  Moreover, without Ms. Sempell's consent,

25   additional spam emails were sent by LinkedIn to email addresses harvested from

26   her accounts.  These emails were sent without the prior consent of Ms. Sempell

27   and contained Ms. Sempell's name endorsing and advertising LinkedIn's service.

28

RUSS, AUGUST & KABAT

The endorsement emails requested the recipients to join LinkedIn.  LinkedIn sent these endorsement emails to email recipients within and outside of California.

3.     Plaintiff Ann Brandwein is a citizen and resident of New Rochelle, New York in Westchester County.  Professor Brandwein is a professor of statistics at Baruch College in New York City.  Professor Brandwein has been, and still is, a registered LinkedIn member since before May 13, 2013.  LinkedIn on one or more occasions during the class period gained access to Professor Brandwein's external email accounts without her authorization.  Further, LinkedIn, on one or more occasions during the class period, sent invitations to join LinkedIn to email addresses harvested from one or more of Professor Brandwein's external email accounts.  These emails were sent without the express consent of Professor Brandwein and contained Professor Brandwein's name endorsing and advertising LinkedIn's service.  The endorsement emails requested the recipients to join LinkedIn.  Moreover, without Professor Brandwein's consent, additional spam emails were sent by LinkedIn to email addresses harvested from her accounts. LinkedIn sent these endorsement emails to email recipients within and outside of California.

4.     Plaintiff Erin Eggers is a citizen and resident of the City of Los Angeles in Los Angeles County, California.  Ms. Eggers is a film producer and former Vice-President of Morgan Creek Productions in Los Angeles.  Ms. Eggers has been, and still is, a registered LinkedIn member since before May 13, 2013.  LinkedIn on one or more occasions during the class period gained access to Ms. Eggers's external email accounts without her authorization.  Further, LinkedIn, on one or more occasions during the class period, sent invitations to join LinkedIn to email addresses harvested from one or more of Ms. Eggers's external email accounts.  These emails were sent without the express consent of Ms. Eggers and contained Ms. Eggers's name endorsing and advertising LinkedIn's service.  The endorsement emails requested the recipients to join LinkedIn.  Moreover, without

6

Ms. Eggers's consent, additional spam emails were sent by LinkedIn to email addresses harvested from her accounts.  LinkedIn sent these endorsement emails to email recipients within and outside of California.

5.     Defendant LinkedIn Corporation is a corporation existing under the laws of the State of Delaware, with its principal place of business at 2029 Stierlin Court, Mountain View, California 94043.  LinkedIn does business throughout the State of California and the United States.

## FACTUAL ALLEGATIONS

6.     LinkedIn is a social networking company that directs its products and services to people whom it describes as "people in professional occupations."  As of the first quarter of 2013, LinkedIn had at least 225 million members.  LinkedIn's purpose as a business entity is to generate revenue, which is achieved through three main avenues: Talent Solutions, Marketing Solutions, and the sale of Premium Subscriptions.  Talent Solutions offers a variety of products aimed at companies and recruiters to allow them to quickly search for and contact prospective employees.  Marketing Solutions consists of advertising to LinkedIn members by placing ads on the LinkedIn website.  Premium Subscriptions are sold directly to individuals and small businesses who want to conduct advanced searching on LinkedIn's website, enhance their professional identities, and contact other members.  The size and growth of the number of LinkedIn users is directly correlated to the success of each of LinkedIn's three main sources of revenue.  LinkedIn touts itself as "The World's Largest Professional Network." *See, e.g.,* The Global LinkedIn Audience, *available at* <http://marketing.linkedin.com/sites/default/files/pdfs/ Infographic_LinkedIn_Audience_Global_2012.pdf> (last visited, May 22, 2013).

7.     LinkedIn harvests the email addresses that appear in the external email accounts of its members.  These email accounts include Yahoo! Mail, Microsoft Mail, Google Gmail, and any number of other email service providers.

RUSS, AUGUST & KABAT

7

8. When a new member signed up for LinkedIn, LinkedIn asked for that new user's external email address. This request is made without any warning of what the email address will be used for. A new LinkedIn user was then asked to provide a password for his or her LinkedIn account. Figure 1, below, shows the prompt on the LinkedIn website requesting a user's external email address and a "new password."



To join LinkedIn, sign up below...it's free!

| First Name: | |
| Last Name: | |
| Email: | |
| New Password: | |

6 or more characters

Join LinkedIn

Already on LinkedIn? Sign In

**Figure 1: LinkedIn Sign-Up Prompt (last visited May 2, 2013)**

9. There is a small asterisk next to the Join LinkedIn button (shown above in Figure 1). If a user scrolls down in small grey print the site reads, "[b]y joining LinkedIn, you agree to LinkedIn's User Agreement, Privacy Policy and Cookie Policy." LinkedIn, contrary to industry practice, does not require members to view its Terms documents nor does it display its terms documents in such a way that a party would have sufficient notice. The terms of service are only available via a link on a separate screen below the "Join LinkedIn" button, and this link is only provided if a user scrolls down to the bottom of the screen. LinkedIn places a link to the terms of service on a submerged screen. Plaintiffs were not placed on notice of LinkedIn's terms of service.

10.   After a new user enters his or her first and last name, external email address, and a password for his or her LinkedIn Account (Figure 1), the user is asked to start a professional profile.



**Figure 2: LinkedIn's "Profession Profile Page" (last visited May 2, 2013)**

11.   After filling out the information requested by LinkedIn to create a professional profile, the user clicks a button entitled, "Create My Profile."

12.   Instead of being greeted by a draft profile, users are greeted with LinkedIn's "Grow your network on LinkedIn" screen, which is prepopulated with the user's external email account.  *See* Figure 3, below.

CLASS ACTION COMPLAINT

RUSS, AUGUST & KABAT

**Figure 3: LinkedIn's "Grow your network on LinkedIn" Screen (last visited May 2, 2013)**

13.     The "Grow your network on LinkedIn" screen includes the external email address provided by the new user in the sign-up screen.  If a LinkedIn user leaves an external email account open, LinkedIn pretends to be that user and downloads the email addresses contained anywhere in that account to LinkedIn servers.  LinkedIn is able to download these addresses without requesting the password for the external email accounts or obtaining consent.  If a LinkedIn user has logged out of all their email applications, LinkedIn requests the username and password of an external email account to ostensibly verify the identity of the user.  However, LinkedIn then takes the password and login information provided and, without notice or consent, LinkedIn attempts to access the user's external email account to download email addresses from the user's external email account.  If LinkedIn is able to break into the user's external email account using this information, LinkedIn downloads the email addresses of each and every person emailed by that user.

14.     LinkedIn's own Web site contains hundreds of complaints regarding this practice.

CLASS ACTION COMPLAINT

It searched my email addresses for names and email addresses of
people on LinkedIn. It is deceptive, misleading and purposely vague.
Larry Bailey, April 10, 2013.[1]

I'm not the only one being hacked by linkedin, but extremely upset at
the repercussions. one of the people on my contact list is mentally ill
and the last thing I wanted was to invite her to be my connection on
linkedin. not to mention all the other people I don't want contact with
who remain on my contact list.
Robin Epstein, April 21, 2013.[2]

They are certainly NOT in my address book. They perhaps
tangentially related to my industry. Embarrassing.
Mike Reno, March 1, 2013.[3]

15.     The hacking of the users' email accounts and downloading of all email
addresses associated with that user's account is done without clearly notifying the
user or obtaining his or her consent.  In cases where the user's external email
account is a Google Gmail account, a Google screen pops up stating, "LinkedIn is
asking for some information from your Google Account."  *See* Figure 4, below.
The Google notification screen, however, does not indicate that LinkedIn will
download and store thousands of contacts to LinkedIn servers.  Rather, this
notification screen misleadingly states that LinkedIn is asking for "some
information." LinkedIn does not provide this notification to its users; it is Google
that provides this screen.

---

[1] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-please-stop-hacking-and-spamming.html?sort=newest (last visited September 16, 2013).
[2] *Id.*
[3] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-please-stop-hacking-and-spamming.html?page=3&pageSize=10&sort=newest (last visited September 16, 2013).

11

**Figure 4: Google Notification re: LinkedIn's Request for Information (last visited May 2, 2013)**

16.      LinkedIn's accessing of email addresses far exceeds the authority and consent to which LinkedIn users provide.  LinkedIn states that it wants "some information" from one's "google contacts."  However, LinkedIn downloads not only the contact lists from users' external email accounts, but the email addresses of every person emailed by the users and every person who has received an email from LinkedIn's users.  Complaints on LinkedIn's own website attest to users' failure to provide consent to download these email addresses despite warnings LinkedIn may allege.  LinkedIn's disclosures on its website are designed to deceive its users.  LinkedIn's own Web site provides testimony from LinkedIn users attesting to the alleged warnings' futility,

CLASS ACTION COMPLAINT

How come I'm getting unauthorized invites from people NOT in my address book? The last 10 invitations I received I asked all 10 if they sent it or not... Out of the 10 - 8 said they had sent no such thing... So how do we get invitations from people who don't send them and they are not people I know and their emails are NOT in my address book?? John Weaver, July 9, 2013.[4]

I implemented the fixes against gmail and hotmail(outlook) intrusion. I AM STILL RECEIVING NOTICES OF NEW CONTACTS THAT I DID NOT REQUEST, THESE ARE NOW OF THE DISTANT COUSIN CATEGORY, I.E. NOT DIRECT CONTACTS OF MINE. Peter Bondy, May 8, 2013.[5]

MAKE IT STOP. How can I stop them...they're ruining my relationships....STOP Karen Price If anyone knows what to do with this company please notify me [email redacted]. Karen Price, June 20, 2013.[6]

17.     After obtaining a user's email addresses without his or her consent, LinkedIn displays a screen that states, "Why not invite some people?"  The screen lists only 10 individuals from the list of email addresses taken from that user's external email account.  Since LinkedIn routinely takes well over 1,000 email addresses from a user's external email account, it displays only a very small fraction of those email addresses on the "Why not invite some people?" screen. Although a user can scroll down to view additional email addresses that might be contacted, the screen greys out this scroll bar.  *See*, Figure 5 below.  The design, layout, and format of the page is aimed to deceive LinkedIn's users.  Instead of clearly stating that LinkedIn will be emailing thousands of users repeatedly, LinkedIn states that it will allow you to "stay in touch with your contacts who aren't on LinkedIn yet."

---

[4] LinkedIn Help Center, available at http://community.linkedin.com/questions/19313/how-do-i-stop-linkedin-sending-out-invitation-emai.html (last visited July 9, 2013).
[5] *Id.*
[6] *Id.*

RUSS, AUGUST & KABAT

**Figure 5: Why Not Invite Some People (last visited May 2, 2013)**

18.     LinkedIn does not inform its users that each email address appropriated from a user's external email account will be sent multiple emails inviting the recipient to join LinkedIn with the user's endorsement.  Nowhere does LinkedIn disclose that two additional "reminder" emails containing the user's endorsement will be sent.  By making it functionally impossible for a user to stop subsequent emails from being sent while claiming elsewhere on the site that LinkedIn will never send emails "without your permission," LinkedIn is deceiving its users and lacks their consent.

19.     LinkedIn is aware that its web pages are deceptive and users have not consented to sending multiple endorsement emails to each appropriated email address.  Users have complained to LinkedIn about its unethical harvesting of email addresses and repeated spamming of those addresses.  LinkedIn's own Web site contains hundreds of complaints regarding LinkedIn's practice.

14

When I added my secondary gmail account I absolutely did not give them permission to send email invitations to every address in my contacts. when I went into the settings I realized that all the addresses had been selected automatically and I would have had to anticipate that and deselect them PRIOR to adding my email address. That's hacking, plain and simple.
Robin Epstein, April 21, 2013.[7]

What's more the invitations are NOT people in my address book. They are people I don't know. I find this entire issue extremely unprofessional on LI's part. You would think with all these members with the same problem LI would respond with a fix.
Geri Spieler, May 1, 2013.[8]

There is a specific group of people whom I absolutely must avoid for ethical reasons. This feature has sent out invitations on its own initiative twice, and my first notice each time was that one of these people "accepted" my invitations. Terrible.
Wilson Zildjian, April 9, 2013.[9]

20.     The "Why not invite some users" screen misleads LinkedIn users because it states, "Stay in touch with your contacts who aren't on LinkedIn yet. Invite them to connect with you."  By using the phrase, "your contacts," LinkedIn is intentionally misleading its users regarding the volume of email addresses it is collecting.  Referring to "your contacts" harkens a thought of those people the user intended to save to an electronic address book as a "contact," not every person who has either emailed the user, been emailed by the user, or who has been carbon copied to an email to or from that user.

21.     LinkedIn misleads its users with respect to the implications of the "Why not invite some users?" screen by captioning a large button on the screen,

[7] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-please-stop-hacking-and-spamming.html?sort=newest (last visited September 16, 2013).
[8] LinkedIn Help Center, available at http://community.linkedin.com/questions/12199/stop-linked-in-from-sending-automated-invites-to-a-1.html?page=2&pageSize=10&sort=newest (last visited September 16, 2013).
[9] LinkedIn Help Center, available at http://community.linkedin.com/questions/19313/how-do-i-stop-linkedin-sending-out-invitation-emai.html?page=1&pageSize=10&sort=votes (last visited September 16, 2013).

15

RUSS, AUGUST & KABAT

"Add to Network." The LinkedIn user is not told that by clicking "Add to Network," LinkedIn will send emails (into the thousands) containing the user's endorsement to each of the email addresses harvested from that user's external email account. Although LinkedIn provides a list of the email addresses it has downloaded, LinkedIn does not disclose that these recipients will be receiving multiple emails.

22.     Plaintiffs have not consented to have multiple emails sent out on their behalf advertising LinkedIn. The page does not indicate that an email will be sent from LinkedIn with a member's endorsement of the service. The button on the page merely reads, "add to network."

23.     Statements elsewhere on the LinkedIn site make users believe that LinkedIn will not be sending "endorsement emails." LinkedIn states in its publicity materials and terms of use that one should only invite close business contacts to join and that LinkedIn will never send emails "without your permission."

24.     There is no warning that LinkedIn will be sending additional repetitious emails to each email recipient. Nothing in the sign-up process discloses to the LinkedIn member that two additional reminder emails will be sent to the email addresses harvested from that user's external email account. Each of the reminder emails contain the LinkedIn member's name and likeness so as to give the recipient the impression that the LinkedIn member is endorsing LinkedIn and asking the recipient to join LinkedIn's social network. LinkedIn's site is littered with complaints arising from LinkedIn's failure to receive consent to send reminder emails to the email addresses that it has harvested.

> Hey how do I get these reminder invitations to stop. I deleted all of them, but they're still going out to some people.

CLASS ACTION COMPLAINT

James Fouche, March 18, 2013.[10]

This makes me very upset and embarrassed! One of the contacts was a woman I haven't touched base with for 10 years, and her husband just died - very awkward.
Meg Linker-Estes, July 1, 2013.[11]

I feel the need to apologize to all the people that Linkedin has been spamming with invites in my name. This is a TERRIBLE business practice.
Scott Hobbs, April 7, 2013.[12]

Does anyone know how to send a letter of apology to everyone who got these invitations AND how to make LinkedIn stop doing it? I want to withdraw from this horrible thing, but I need to minimize the damage.
Andrea Freud Lowenstein, May 2, 2013.[13]

I am just gonna go ahead and repeat what everyone else here has already said. LinkedIn should stop the spammy practices of sending out invitations to people's address book without their explicit request to do so!
Konrad Szpirak, May 13, 2013.[14]

[I]t's too bad this company opts to be no good crappy spammers with a terrible interface and zero transparency. . . . How they don't even offer a the option to select all and then withdraw all is an example of a company that places it's own needs above the customer.
Nathan Kroop, July 15, 2013.[15]

[C]ustomers are calling me and asking me to stop these emails. I am now withdrawing the invitations which I have to do 1 at a time. This will take me weeks!!!! I'll express how disappointed i am with linked in for this major incovienence.
Sean Deady, June 2, 2013.[16]

---

[10] LinkedIn Help Center, available at http://community.linkedin.com/questions/13871/reminder-invitations-are-spamming-my-clients.html (last visited September 16, 2013).
[11] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-please-stop-hacking-and-spamming.html (last visited September 16, 2013).
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

RUSS, AUGUST & KABAT

25.     LinkedIn's deceptive practices are not limited to new users.  Existing LinkedIn users are greeted with a home page that ostensibly requests users to identify existing users of LinkedIn; however, the objective of this request is directed at recruiting new members.  The heading of LinkedIn's home page states, "See Who You Already Know on LinkedIn," and requests your external email address and contains a button that simply states, "Continue."  *See*, Figure 5, below.



**Figure 6: LinkedIn Home Page "See Who You Already Know on LinkedIn" (last visited May 2, 2013)**

26.     Once the user inputs his or her external email address, LinkedIn attempts to hack into your email account by tunneling through any open email program on a user's desktop.  Even if a user has never provided a password to LinkedIn, LinkedIn will use an open connection to an email service to download a user's data.  Like with a new user, LinkedIn also seeks to force a user to provide verification of an external email address and then uses that verification data to download the email addresses listed anywhere in that users account.

---

[16] *Id.*

RUSS, AUGUST & KABAT

27.     After LinkedIn accesses the user's external email account, LinkedIn performs the process of downloading up to thousands of email addresses from the user, described above with respect to new users.  At this point, existing users are taken to the "Why not invite some people?" screen that, just as discussed above with respect to new users, displays only up to 10 names while hiding the fact that LinkedIn has obtained up to 2,000 or more email addresses.  Although a user is provided a screen that allows a user to scroll down and view the total list of email addresses downloaded, LinkedIn does not disclose that it will be sending up to three emails to each of the email addresses surreptitiously obtained that contain the user's endorsement of LinkedIn.

28.     The endorsement email message sent by LinkedIn after obtaining the list of email addresses from a user without the user's consent clearly and unmistakably uses the name of the user from whom the email address was appropriated.  Furthermore, LinkedIn words the endorsement email in a way that suggests that the user composed the content of the email him or herself.  For example, the content of some messages sent by LinkedIn to the email addresses appropriated from users' external email accounts state, "I'd like to add you to my professional network."  The email then includes the name of the LinkedIn user in a manner that people commonly sign a personal email or other electronic message.  *See* Figure 7, below.  Despite the appearance of the endorsement emails, the users do not compose the message**, *they do not consent to LinkedIn sending multiple messages on their behalf*,** and they are not compensated for the use of their name or likeness in the advertising and promotion of LinkedIn.

**Figure 7: Image of An Endorsement Email Sent By LinkedIn (last visited May 2, 2013)**

29.     If, after one week, the recipient of an endorsement email has not joined LinkedIn, LinkedIn sends another email.  If, after two weeks, the recipient of an endorsement email still has not joined LinkedIn, LinkedIn sends a third email requesting that the recipient sign up for LinkedIn.  Each of these two subsequent emails also contains the endorsement of LinkedIn from the LinkedIn user from which the recipient's email address was harvested.

30.     LinkedIn makes numerous deceptive and misleading statements. LinkedIn expressly states that they will not email any recipients without their permission.  "We will not store your password or email anyone without your permission." (LinkedIn Login Screen Step 2).  Never does LinkedIn state that they will be sending multiple emails on a user's behalf.   On LinkedIn's official blog, LinkedIn claims "we are committed to putting our members first. This means being open about how we use and protect the data that you entrust with us as a LinkedIn member."  August 19th, 2013, LinkedIn Official Blog, available at http://blog.linkedin.com/page/4/ (last visited September 16, 2013); *Id.* on June 1, 2013 ("Ensuring more privacy and control over your personal data remains our highest priority."); *Id.* on May 10, 2013 (Ensuring you more clarity, consistency

CLASS ACTION COMPLAINT

RUSS, AUGUST & KABAT

and control over your personal data continues to be our highest priority."); *Id.* on October 10, 2010 ("We take spam very seriously."); *Id.* on March 27, 2009 ("This . . . abusive behavior violates our Terms of Service.  This includes examples such as . . . massively inviting people they don't know.  This behavior, though infrequent, strikes at the very root of a trusted professional network.   We take these violations very seriously and will not tolerate this behavior.").  These statements from LinkedIn are false, deceptive and misleading.

31.    In addition, LinkedIn states throughout its site that it will not send unsolicited emails, store one data or provide identifiable information to third parties.

> We will not store your password or email anyone without your
> permission.
> *See* Figure 3, above.
>
> You decide how much or how little you wish to communicate
> to individuals or groups.
> LinkedIn Privacy Policy, May 12, 1013 Introduction.
>
> We do not rent, sell, or otherwise provide your personally
> identifiable information to third parties without your consent,
> unless compelled by law.
> LinkedIn Privacy Policy, May 12, 2103 Introduction.

32.    If a LinkedIn user discovers that emails have been sent on his or her behalf to thousands of email addresses, there is no practical way to stop a second and third email from going out to these email addresses.  LinkedIn's website is filled with users pleading with LinkedIn to prevent further spamming of these email addresses.  For example, the following are quotes from LinkedIn users on LinkedIn's community message board:

> I have now sent 800 invitations or so and it's very emabarrassing (*sic*).
> It is a huge problem to go through every single invitation to withdraw,

RUSS, AUGUST & KABAT

and it seems that once you withdraw a recipient, the follow up email is not automically (*sic*) withdrawn, meaning that I have to withdraw the same person twice. That seems unnecessarily difficult with the wealth of technology available to you. Please consider changing this system, its (*sic*) actually hurting my professional reputation which is NOT the idea behind linkedin.
Carolina Franco, March 22, 2013.[17]

The a$$holes at LinkedIn sent out invitations to everyone on my email list. Everyone that I have evr (*sic*) had an email from.
Jack White, April 17, 2013. [18]

33.     The only way a LinkedIn user can stop the two follow-up endorsement emails (assuming the user found out about the initial emails in the first place) from going out to the email addresses harvested from that user's external email account is for the user to individually open up each invitation from within his or her LinkedIn account (which LinkedIn has intentionally made difficult to find within the user's account) and click a button that allows the user to withdraw that single invitation. This process takes approximately 20 seconds to do for each invitation. For a user who had two thousand invitations go out, it would take roughly 11 hours of constant clicking to prevent reminder emails from going out. For the user quoted above from the LinkedIn community message boards who complained that LinkedIn sent 800 invitations, it would take that user over four hours of continuous clicking to ensure recipients did not receive the follow-up, reminder emails. There is no functionality on the LinkedIn website that allows a user to withdraw all invitations at once. Furthermore, contacting LinkedIn does not lead to reminder emails being stopped. Weeks later, LinkedIn will send an email (well after the reminder emails have been sent) reading, "Thanks for your email and I would first like to apologize for the delay in responding to your

RUSS, AUGUST & KABAT

---

[17] LinkedIn Help Center, available at http://community.linkedin.com/questions/12199/stop-linked-in-from-sending-automated-invites-to-a-1.html (last visited September 16, 2013).
[18] LinkedIn Help Center, available at http://community.linkedin.com/questions/13871/reminder-invitations-are-spamming-my-clients.html (last visited September 16, 2013).

inquiry.  This is certainly not the customary wait time for a reply from LinkedIn

Customer Support. We have been experiencing higher than expected volumes, and

your patience is greatly appreciated."  The frustration and harm suffered by

LinkedIn users is described below:

> I discovered that yesterday LinkedIn sent out automated invitations to
> more than 1,300 people--most of whom I don't know. I'm being
> bombarded with replies and people complaining. I cannot manually
> withdraw over a thousand invitations. What to do?!
> Absolutely awful, I purposefully avoided this feature for years and
> then it tricks you into doing it, I can't believe I've spammed everyone
> I've ever met on here, so unnecessary and unethical!
> Matt Hines, April 11, 2013.[19]

> And sent an email to LinkedIn 3 days ago.... Got a prompt reply:
> "Thanks for contacting us. Someone from our support team will get
> back to you as soon as possible." And of course since then nothing....
> Raibourn Leila, April 21, 2013.[20]

> LinkedIn should stop the spammy practices of sending out invitations
> to people's address book without their explicit request to do so!
> Konrad Spzirak, May 13, 2013.[21]

> Frankly...at this point I'm finding LinkedIn more of a problem in
> terms of hurting my reputation rather than helping it.
> What's more the invitations are NOT people in my address book. They
> are people I don't know. I find this entire issue extremely
> unprofessional on LI's part. You would think with all these members
> with the same problem LI would respond with a fix.
> Geri Spieler, May 1, 2013.[22]

---

[19] LinkedIn Help Center, available at http://community.linkedin.com/questions/19313/how-do-i-stop-linkedin-sending-out-invitation-emai.html?page=3&pageSize=10&sort=votes (last visited September 16, 2013).
[20] Id.
[21] Id.
[22] LinkedIn Help Center, available at http://community.linkedin.com/questions/12199/stop-linked-in-from-sending-automated-invites-to-a-1.html?page=2&pageSize=10&sort=newest (last visited September 16, 2013).

RUSS, AUGUST & KABAT

They're not contacting me back. I have yet to receive a response from anybody at LinkedIn. This is getting a little ridiculous.
Margaret A. Ost, March 18, 2013.[23]

LinkedIn keeps doing that, hacking into people's private emails and posting spam invitations, without permission. Allegedly, we've given permission. I have not. Absolutely not. I've seen this happening with other people, so I avoided joining LinkedIn for a long time. When I finally joined, I made sure I did not tick anything that could be construed as permission to send invitation spam in my name. Yet now it's happening. Accessing people's email address lists without their permission, and sending spam in their name without asking, is not acceptable. It's disgusting.
Rayne Hall, February 19, 2013.[24]

34.    Having a growing number of members is central to LinkedIn's business. LinkedIn's financial reports are filled with references to the importance of attracting new members using the email addresses taken from external accounts of existing users. "To date, our member base has grown virally based on members inviting other members to join our network." LinkedIn 2012 10-K at 10 (Mar 2, 2012). Attracting new members using these deceptive practices is directly correlated to LinkedIn's financial success. Member growth is directly correlated to the success of LinkedIn's business: "actions could negatively impact our member growth and engagement and our brand, which would harm our business." *Id.* at 25. Moreover, in order to sustain the LinkedIn business, LinkedIn must continually attract new members: "In order to grow our business, we must continually attract new customers." *Id.* Further, LinkedIn identifies that its key strategy is to "foster viral growth of our member base." LinkedIn 2013 Proxy Statement at 25.

35.    LinkedIn executives recognize that endorsement emails are critical to LinkedIn growing its network and profiting. Growth is linked to using

---

[23] LinkedIn Help Center, available at http://community.linkedin.com/questions/13871/reminder-invitations-are-spamming-my-clients.html?sort=newest (last visited September 16, 2013).
[24] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-please-stop-hacking-and-spamming.html (last visited September 16, 2013).

RUSS, AUGUST & KABAT

1  recommendations from existing members "it's that connection with the individual

2  that I think leads to growth rate." Interview with Reid Hoffman, The CEO Show

3  January 1, 2010, available at: http://troyanosgroup.com/inside-the-brand/the-ceo-

4  show/interview-archives/reid-hoffman-transcript/ (last visited September 16,

5  2013).

6      36.    LinkedIn monetizes new members by selling services directly

7  attributable to its membership size. For example, LinkedIn markets itself to large

8  corporations to purchase advertising or to search through LinkedIn profiles based

9  on the number of LinkedIn members. "LinkedIn Recruiter gives corporate

10 businesses unprecedented access to LinkedIn's database of over 40 million

11 members. With one new member joining every second, *LinkedIn's membership*

12 *grows larger and more valuable by the day*, increasing the odds that recruiters will

13 find that exceptional passive candidate they're looking for." LinkedIn Allstate

14 Case Study: Finding Highly Specialized Talent In Vast Numbers, *available at*

15 <http://business.linkedin.com/content/dam/li-external-web-

16 assets/websites/business.linkedin.com/en_US/resources/pdf/case-

17 studies/allstate_case_study_20130220_us_en.pdf> (last visited May 20, 2013)

18 (emphasis added). Indeed, in selling LinkedIn products and services to large

19 corporations, LinkedIn's ability to make such sales is directly attributable to

20 LinkedIn recruiting new members. "With regard to recruitment, specifically by

21 virtue of the size of the network, we were able to do something that's really never

22 been possible before, and that's passive candidate recruiting at scale." Jeff Weiner,

23 Interview on Worldmakers, June 24, 2013 - Innovating From Within, available at

24 http://www.linkedin.com/today/post/article/20130624191834-25153523-

25 innovating-from-within-linkedin-s-jeff-weiner-on-worldmakers (last visited

26 September 16, 2013). LinkedIn's endorsement emails have value to LinkedIn.

27 Individualized personalized endorsement of LinkedIn to Plaintiffs' friends and

28 acquaintances has concrete provable value in the economy at large.

37.     LinkedIn is able to save money by using appropriated email addresses and "endorsements" of its users. In its 2012 10-K, LinkedIn attributed this strategy to its profitability. "[O]ur member base has grown virally . . . we have been able to build our brand with relatively low marketing costs." LinkedIn 2012 10-K at 12.

38.     The email addresses that LinkedIn takes from its users and uses to promote its service (using the name of the LinkedIn user) have value to a user. LinkedIn charges its own users ten dollars ($10) to send an email to another user they are not directly connected to. LinkedIn's InMail product is sold to members and directly states that because InMail contains "information about you" such as your name and profession, sending emails that utilize this information is "better than an email or cold call." Linked InMail Purchasing Page *available at* <https://www.linkedin.com/secure/inmail_v4?displayProducts=> (last visited May 20, 2013). Like the reminder emails that LinkedIn sends to the email addresses that it appropriates from its members, LinkedIn allows members to resend reminder emails if a response is not received in seven days. LinkedIn acknowledges the value of sending multiple reminder emails by offering just one free reminder InMail message if the recipient does not respond within seven days. If the LinkedIn member wants to remind the recipient before the seven-day window expires, or if the member wants to send a second reminder email, the member must pay an additional ten dollars ($10). InMail Expiration and Renewal Process, *available at* <http://help.linkedin.com/app/answers/detail/a_id/75> (last visited May 20, 2013).

39.     Each new member that LinkedIn attracts has monetary value. When LinkedIn attracts new members, it attempts to sell them premium accounts. These accounts are $39.95 per month (when purchasing a full year) and $49.95 per month when purchasing a month-to-month plan. LinkedIn is not only advertising joining its network, but also directly selling a product with a price of $480 dollars a year to the email addresses harvested from users. LinkedIn Premium Page, *available at*

1    &lt;http://www.linkedin.com/mnyfe/subscriptionv2?trk=mny-subs-spewc-logout-

2    upgrade&gt; (last visited May 20, 2013). In 2012, Premium Subscriptions accounted

3    for $190 million dollars in revenue and grew by 81% over the prior year.

4    LinkedIn 2012 10-K Introduction.

5          40.    If LinkedIn was not able to send endorsement emails using email

6    addresses appropriated without consent from its users, LinkedIn would be forced to

7    pay for email addresses to advertise and promote its service.

8          41.    LinkedIn is growing its network by having its members endorse

9    LinkedIn multiple times without their consent. This growth of LinkedIn's network

10    is leading to increased direct revenue through sales of products directly to new

11    members, and indirect revenue through sales to increasing numbers of recruiters

12    and large corporations. The value of each endorsement email sent by LinkedIn on

13    behalf of members is a concrete, measureable dollar amount. LinkedIn members

14    are directly harmed through these activities as they have stated on LinkedIn's Web

15    site.

16        It searched my email addresses for names and email addresses of
17        people on LinkedIn. It is deceptive, misleading and purposely vague.
            Larry Bailey, April 10, 2013.[25]
18

19        I am so sorry Linkedin stole my identity to spam all my google
            contacts with invitations to join "my linkedin network". Since I use
20        gmail from day 1 linkedin harrasses people in my name I was
21        acquainted to a hundred years ago which causes very unwanted,
            painfull and embarrasing situations. Linkedin won't stop bothering my
22        google contacts list even though I asked politely.
23        Ron Hol, March 27, 2013.[26]

24
        Agree. I believe I've been hacked.
25        Cameron Strrachan, March 24, 2013.[27]

26

27    [25] LinkedIn Help Center, available at http://community.linkedin.com/questions/3666/linkedin-
        please-stop-hacking-and-spamming.html?sort=newest (September 16, 2013).
28    [26] *Id.*
        [27] *Id.*

RUSS, AUGUST & KABAT

I'm also getting responses from people I don't know AND there is no record in my Sent folder that I ever sent them an invitation.
Diane P. Barber, March 15, 2013.[28]

Accessing my contacts so that I can see who I'd like to connect with is one thing. Spamming my entire contact database of everyone I've ever emailed is definitely black hat tactics at growing users. This included people I know, don't know, email addresses from people off Craigslist, even mailing lists received an "invite to connect" from me today. I did not click on "invite all." In fact, I clicked on "skip this step." Very disappointing.
Desmond Liao, March 12, 2013.[29]

LinkedIn is not just accessing my address book, it is accessing the history of everyone I have ever sent emails to. I have about 50 people in my address book (who I also did not want invitations sent to) and I have 280 pending invitations to withdraw.
Ben Kirwood, March 1, 2013.[30]

I have the same problem and none of these people are in any of my address books. They were all sent yesterday and I have not logged into linked in for several days. I am withdrawing the invitations but I have 168 that all have to be done individually. How was my account hacked?
Linda Peterson, April 20, 2013.[31]

There is *absolutely* no way to "withdraw" invitations in bulk, and simply deleting the invitations will not stop the reminders from going out to each invitation recipient.
Charles Caro, February 18, 2013.[32]

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] LinkedIn Help Center, available at http://community.linkedin.com/questions/12168/why-am-i-getting-connections-i-have-not-requested.html (last visited September 16, 2013).
[32] LinkedIn Help Center, available at http://community.linkedin.com/questions/3423/unable-to-remove-pending-invitations.html?page=2&pageSize=10&sort=votes (last visited September 16, 2013).

28

**Facts Common to Plaintiffs' Actions**

42.    Plaintiffs each registered for a LinkedIn account prior to May 13, 2013.

43.    Plaintiffs did not agree to allow LinkedIn to send multiple repeated emails to lists of email addresses contained within Plaintiffs' external email accounts.

44.    Plaintiffs further did not consent to allow LinkedIn to use their names, photographs, or likenesses in LinkedIn's multiple endorsement emails as an endorsement of LinkedIn or its products and services.

45.    Plaintiffs had not, and could not have been expected to have had any exposure to LinkedIn's unique and misleading advertising practice of sending emails supposedly endorsed by Plaintiffs. Plaintiffs reasonably had no expectation that by signing up for a LinkedIn account, their names, photographs, or likenesses would be used to endorse products, services, or brands.

46.    LinkedIn used each Plaintiff's name, photograph, and/or likeness without consent in emails endorsing LinkedIn.

47.    Each Plaintiff's name and photograph had been provided to LinkedIn for purposes unrelated to the advertisement in question as required or requested by LinkedIn during the account sign-up process.

48.    Each endorsement email described herein used the LinkedIn name and LinkedIn's trademarked images.

49.    Each endorsement email described herein combined all of the respective elements described herein, heretofore unrelated to one another, into new content appearing in the endorsement emails sent to email addresses obtained from Plaintiffs.

50.    LinkedIn was solely responsible for the creation and development of each endorsement email, the content, and the advertisement scheme by which each endorsement email was created.

RUSS, AUGUST & KABAT

51. Each endorsement email was new, original, and unique content created and developed in whole or in part by LinkedIn.

52. In each endorsement email, the respective Plaintiff appears to be endorsing LinkedIn when, if fact, he or she does not.

53. No Plaintiff knew that providing his or her external email account would result in the harvesting of the email addresses of individuals from his or her external email account.

54. No Plaintiff knew that LinkedIn's harvesting of email addresses from his or her external email account would result in the appearance of him or her endorsing LinkedIn in a commercial advertisement.

55. Each Plaintiff was deprived the monetary value of having his or her endorsement appear in the endorsement emails, and therefore was deprived of money to which he or she was entitled.

56. Each Plaintiff has been personally injured by this loss of money. The injury to Plaintiffs is not outweighed by any countervailing benefits to them or other consumers.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs seek certification of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

58. <u>Plaintiff Class</u>. The class sought to be represented is defined as follows:

> All natural persons in the United States who had an account registered on www.linkedin.com as of May 15, 2013, and had their names, photographs, likenesses, or identities associated with that account used in an endorsement email sent to third parties by LinkedIn.

> Excluded from the Class are (a) LinkedIn, its officers and directors, legal representatives, successors or assigns; (b) any entity

RUSS, AUGUST & KABAT

in which LinkedIn has or had a controlling interest; (c) the judge to whom this case is assigned and the judge's immediate family; (d) any juror selected to hear this case.

59.     The Class is comprised of millions of persons, and is therefore so numerous that joinder of individual cases would be impracticable.  The disposition of their claims through this action will benefit Class Members, the parties and the courts.  Upon information and belief, LinkedIn has over 225 million Members worldwide.

60.     Upon information and belief, the identities and contact information of the individual Members of the Class are available through LinkedIn's electronic records.

61.     Common questions of law and fact affecting the Class predominate over any individual issues.  These questions of law and fact include, but are not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names, photographs, likenesses, or identities in multiple endorsement emails sent to third parties by LinkedIn;

- Whether LinkedIn gained a commercial benefit or some other advantage by using Plaintiff and the Class's names, photographs, likenesses, or identities in endorsement reminder email advertisements;

- Whether Plaintiffs and the Class were harmed by the nonconsensual use of their names, photographs, likenesses, or identities in reminder endorsement email advertisements sent by LinkedIn to third parties, and whether LinkedIn's conduct was a substantial factor in causing that harm;

- Whether Class Members are entitled to damages as a result of LinkedIn's conduct, and, if so, what is the measure of those damages;

- Whether LinkedIn's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*);

31

RUSS, AUGUST & KABAT

- Whether LinkedIn was unjustly enriched as a result of its conduct described herein;
- Whether LinkedIn violated California's Common Law Right of Publicity;
- Whether LinkedIn violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq.*;
- Whether LinkedIn violated the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*;
- Whether LinkedIn violated California's Comprehensive Data Access and Fraud Act, Penal Code § 502;
- Whether LinkedIn violated California's Invasion of Privacy Act, Penal Code § 631;
- Whether LinkedIn violated the California Consumer Remedies Act, Cal Civ. Code. § 1770.
- What the value of an endorsement by a non-celebrity is in a social network endorsement email advertisement.

62.    LinkedIn engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Therefore, individual questions, if any, pale by comparison to the numerous common questions presented.

63.    The injuries sustained by Members of the Class flow, in each instance, from a common nucleus of operative facts. In each case, LinkedIn caused or permitted the unauthorized appropriation of the Plaintiff and the Class Members' names, photographs, likenesses, or identities without adequate or any notice, consent, or opportunity to withdraw from participation.

64.    The Web site that each member of the class used was substantially the same with similar language, terms of use, and disclosures.

RUSS, AUGUST & KABAT

65.     Given the similar nature of the Class Members' claims and the absence of material differences in the statutes and common laws upon which the Class Members' claims are based, a nationwide class will be easily managed by the Court and the parties.

66.     Because of the relatively small size of the individual Class Members' claims, no Class Member could afford to seek legal redress on an individual basis. A class action is superior to any alternative means of prosecution.

67.     The representative Plaintiffs' claims are typical of those of the Class, as all Members of the Class are similarly affected by LinkedIn's uniform and actionable conduct as alleged herein.

68.     LinkedIn has acted and failed to act on grounds generally applicable to Plaintiffs and the other Members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Members of the Class.

69.     Plaintiffs will fairly and adequately protect the interests of the Class, and have retained counsel competent and experienced in class action litigation. The class representatives have no interests which conflict with or adverse to those of the other Class members.

70.     Plaintiffs reserve the right to revise the above class definition based on facts learned in discovery.

## FIRST CAUSE OF ACTION

### (Violation of California's Common Law Right of Publicity)

71.     Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

72.     California's Common Law Right of Publicity law protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

73. During the Class period, LinkedIn knowingly used Plaintiffs' names, photographs, or likenesses to directly advertise or sell a product or service.

74. LinkedIn did not have Plaintiffs' consent to do so.

75. Plaintiffs received no compensation or other consideration for LinkedIn's use thereof.

76. Plaintiffs were harmed by LinkedIn's actions.

77. Plaintiffs were deprived of the earnings they would otherwise be entitled to.

78. Use of Plaintiffs' names, photographs, and likenesses were directly connected to LinkedIn's commercial use.

79. LinkedIn's actions were a substantial factor in causing Plaintiffs' harm.

80. The advertisements were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

81. Plaintiffs and Members of the Class therefore seek injunctive relief, and other such preliminary and other equitable or declaratory relief as may be appropriate.

82. Plaintiffs and Members of the Class seek remedy as provided for by the California Common Law Right of Publicity in the amount equal to the greater of the amount that LinkedIn avoided paying to the Plaintiffs in marketing costs, the amount that LinkedIn attributes to each email or actual damages, any profits attributable to LinkedIn's illegal action, before taking into account any actual damages, punitive damages, attorneys' fees and costs, and any other relief as may be appropriate.

## SECOND CAUSE OF ACTION

### (Violation of Cal. Bus. & Prof. Code § 17200)

83. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

RUSS, AUGUST & KABAT

84.     As described herein, LinkedIn's nonconsensual use of its Members' names, photographs, and likenesses is a violation of California's Common Law Right of Publicity, the California Computer Fraud and Abuse Act, the California Comprehensive Data Access and Fraud Act, the California Invasion of Privacy Act, and the California Consumer Remedies Act.

85.     These violations satisfy the "unlawful" prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code. § 17200, *et seq.*

86.     Specifically, LinkedIn violated the "fraudulent" prong of the UCL by intentionally and knowingly misrepresenting that Members have full control to prevent their name and appearance in LinkedIn advertisements, including endorsement emails sent by LinkedIn to third parties.  LinkedIn intentionally misrepresented a Member's ability to prevent his or her appearance and name in advertisements so LinkedIn could enjoy substantial profits by having users unwittingly endorse LinkedIn to third parties through such advertisement emails. Plaintiffs justifiably relied upon those misrepresentations when deciding to join and utilize LinkedIn.  Plaintiffs suffered damages of deprivation of money earned by the misrepresentations, the amount to be proven at trial.

87.     LinkedIn violated the "unfair" prong of the UCL by leading Members to believe that repeated emails would not be sent to third parties containing their names and likenesses without their permission, then encouraging Members to utilize LinkedIn in such a way that allowed LinkedIn to access Members' external email accounts and send endorsement emails to email addresses contained therein and providing no warning that LinkedIn would send an endorsement email to each email address harvested from Members' external email accounts.

88.     LinkedIn violated the "unfair" prong of the UCL by intentionally profiting from the nonconsensual endorsements extracted from Members without sharing those profits with those Members.

89.   LinkedIn's unfair, deceptive, and fraudulent practices originated from and/or occurred primarily in California.  Decisions concerning the creation of the endorsement email advertising scheme were made in California, LinkedIn maintains all or a substantial part of its computer systems that serve LinkedIn's website in California, and all or a substantial part of the code and content that create and/or comprise endorsement email advertisements is developed and deployed within and from California.

90.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently enjoining LinkedIn from continuing to engage in the unlawful, unfair, and fraudulent conduct described herein.  Plaintiffs seek an order requiring LinkedIn to (1) immediately cease the unlawful practices stated in this Complaint, and (2) award Plaintiff and the Class reasonable costs and attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5.

91.   Plaintiffs have a vested monetary interest in their appearance in LinkedIn's repeated advertisements, and LinkedIn has deprived them of that interest.

92.   Plaintiffs each lost money to which they were entitled in the form of compensation for the use of their images and names, and in which they had a vested interest, by virtue of LinkedIn's conduct.  They are entitled to restitution of such sums.

### THIRD CAUSE OF ACTION

### (Stored Communications Act)

93.   Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

94.   The ECPA broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce .

CLASS ACTION COMPLAINT

..." 18 U.S.C. § 2510(12). The Stored Communications Act (the "SCA") incorporates this definition.

95.     The SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization.  18 U.S.C. § 2701.

96.     Congress expressly included provisions in the SCA to address this issue so as to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public."  Senate Report No. 99-541, S. REP. 99-541, 35, 1986 U.S.C.C.A.N. 3555, 3589.

97.     LinkedIn has violated 18 U.S.C. § 2701(a)(1) because it intentionally accessed members' email communications without authorization and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by hacking into LinkedIn members' external email accounts and, once obtaining access without the consent of members, obtaining the contents of email communications in electronic storage and storing the contents of those emails on LinkedIn servers.  At all relevant times, LinkedIn had actual knowledge of, and benefited from, this practice.

98.     LinkedIn has violated 18 U.S.C. § 2701(a)(2) because it has intentionally exceeded the authorization of LinkedIn members to access members' communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by guessing the passwords of LinkedIn members' external email accounts and, once obtaining access without the consent of members, obtaining the contents of email communications in electronic storage and storing the contents of those emails on LinkedIn servers.  At all relevant times, LinkedIn had actual knowledge of, and benefited from, this practice.

99.     As a result of LinkedIn's conduct described herein and its violation of 18 U.S.C. § 2701, Plaintiffs and the Class have suffered injuries.  Plaintiffs, on their own behalf and on behalf of the Class, seek an order enjoining LinkedIn's conduct described herein and awarding Plaintiffs and the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2707.

## FOURTH CAUSE OF ACTION

### (Wiretap Act)

100.    Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

101.   The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, referred to as "ECPA, regulated wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

102.   LinkedIn violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, Plaintiffs' and Class Members' electronic communications, without knowledge consent, or authorizations.  For example, by hacking into a LinkedIn member's external email account, LinkedIn accesses that member's external email account without his or her knowledge or consent and copies information contained in that member's email account and stores it on LinkedIn's servers.

103.   LinkedIn unlawfully accessed and used, and voluntarily disclosed, the contents of the intercepted communications to enhance their profitability.

104.   The ECPA provides a civil cause of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed or intentionally used" in violation of the ECPA.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

105.   LinkedIn is liable directly and/or vicariously for this cause of action. Plaintiffs therefore seek a remedy as provided by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and all attorney's fees and other litigation costs reasonably incurred.

106.   Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

107.   Plaintiffs and the Class, pursuant to 18 U.S.C. § 2520, are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and LinkedIn's profits obtained from the above-described violations.  Unless restrained and enjoined, LinkedIn will continue to commit such acts.  Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs to remedies including injunctive relief as provided by 18 U.S.C. § 2510.

## FIFTH CAUSE OF ACTION

### (California Comprehensive Data Access And Fraud Act)

108.   Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

109.   Defendants violated the California Comprehensive Data Access and Fraud Act, Cal. Penal Code 502, referred to as "CCCL" by knowingly and without permission accessing, taking and using Plaintiffs' and the Class Members' personally identifiable information.

110.   Defendants accessed, copied, used, made use of, interfered with, and/or altered data belonging to Plaintiffs and Class Members: (1) in and from the State of California; (2) in the states in which the Plaintiffs and the Class Members

1 | are domiciled; and (3) in the states in which the servers that provided services and

2 | communication links between Plaintiffs and the Class Members and LinkedIn.com

3 | and other websites with which they interacted or were located.

4 |     111.   Cal. Penal Code § 502 provides: "For purposes of bringing a civil or a

5 | criminal action under this section, a person who causes, by any means, the access

6 | of a computer, computer system, or computer network in one jurisdiction from

7 | another jurisdiction is deemed to have personally accessed the computer, computer

8 | system, or computer network in each jurisdiction.

9 |     112.   Defendants have violated California Penal Code § 502(c)(1) by

10 | knowingly and without permission altering, accessing, and making use of

11 | Plaintiffs' and Class Members' personally identifiable data in order to execute a

12 | scheme to defraud consumers by utilizing and profiting from the sale of their

13 | personally identifiable data, thereby depriving them of the value of their personally

14 | identifiable data.

15 |     113.   Defendants have violated California Penal Code § 502(c)(6) by

16 | knowingly and without permission providing, or assisting in providing, a means of

17 | accessing Plaintiffs' and Class Members' computer systems and/or computer

18 | networks.

19 |     114.   Defendants have violated California Penal Code § 502(c)(7) by

20 | knowingly and without permission accessing, or causing to be accessed, Plaintiffs'

21 | and Class Members' computer systems, email accounts and/or computer networks.

22 |     115.   Pursuant to California Penal Code § 502(b)(10) a "Computer

23 | contaminant" is defined as "any set of computer instructions that are designed to …

24 | record, or transmit information within computer, computer system, or computer

25 | network without the intent or permission of the owner of the information."

26 |     116.   Defendants have violated California Penal Code § 502(6)(8) by

27 | knowingly and without permission introducing a computer contaminant into the

28 | transactions between Plaintiffs and the Class Members and websites; specifically,

RUSS, AUGUST & KABAT

using a "cookie" that intercepts and gathers information concerning Plaintiffs' and the Class Members' interactions with certain websites, which information is then transmitted back to LinkedIn.

117.   As a direct and proximate result of Defendant's unlawful conduct within the meaning of California Penal Code § 502, Defendant has caused loss to Plaintiffs and the Class Members in an amount to be proven at trial.  Plaintiffs and the Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

118.   Plaintiffs and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

119.   Plaintiff and Class Members have suffered irreparable harm and injuries from Defendant's violations.  The harm will continue unless Defendant is enjoined from further violations of this section.  Plaintiffs and Class Members have no adequate remedy at law.

120.   Plaintiffs and the Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations were willful and, upon information and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

121.   Plaintiffs and the Class Members have also suffered irreparable injury from these unauthorized acts of disclosure, to wit: all of their personal, private, and sensitive web communications have been harvested, viewed, accessed, stored, and used by Defendant, and have not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

### SIXTH CAUSE OF ACTION

### (California Invasion Of Privacy Act)

122.   Plaintiffs incorporate all preceding paragraphs as though set forth herein.

RUSS, AUGUST & KABAT

123. California Penal Code § 631(a) provides, in pertinent part:

Any person who ... willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to lawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars...

124. At all relevant times, Defendant's business practice of using an existing open connection to a third party email site to intercept and collect Plaintiffs' and Class Members' personally identifiable information and other data, including information concerning their interactions with certain websites was without authorization and consent, including, but not limited to, obtaining any and all communications.

125. Upon information and belief, Plaintiffs, and each Class Member, during one or more of their interactions on the internet during the Class Period, communicated with one or more entities based in California, or with one or more entities whose servers were located in California.

126. Communications from the California web-based entities to Plaintiffs and Class Members were sent from California. Communications to the California web-based entities from Plaintiffs and Class Members were sent to California. Plaintiffs and Class Members did not consent to any of Defendant's actions in intercepting, reading, and/or learning the contents of their communications with such California-based entities.

127. Plaintiff and Class Members did not consent to any of the Defendant's actions in using the contents of their communications with such

RUSS, AUGUST & KABAT

California-based entities.  Defendant is not a "public utility engaged in the business of providing communications services and facilities..."  The actions of Defendant alleged herein were not undertaken "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility."  The actions of Defendant alleged herein were not undertaken with respect to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.  Defendant directly participated in the interception, reading, and/or learning of the contents of the communications between Plaintiffs, Class Members, and California-based web entities.  Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy and deprivation of the loss of value in their personally identifiable information.

128.     Wherefore, Plaintiffs, on behalf of themselves and on behalf of a similarly situated Class of consumers, seek damages and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1.     Certification of this case as a class action on behalf of the Class defined above, appoint Plaintiffs Paul Perkins, Pennie Sempell, Ann Brandwein, and Erin Eggers, as class representatives, and appoint their counsel as Class counsel;

2.     A declaration that LinkedIn's actions, as described herein, violate the claims outlined above;

3.     An award of injunctive and other equitable relief as is necessary to protect the interests of the Plaintiffs and the Class, including, *inter alia*, an order

1   prohibiting LinkedIn from engaging in the wrongful and unlawful acts described

2   herein;

3       4.      Disgorgement or restitution by LinkedIn of all revenue earned from

4   the fraudulent and unlawful advertising practices described herein during the class

5   period;

6       5.      An award of damages, including statutory damages where applicable,

7   to Plaintiffs and the Class in an amount to be determined at trial;

8       6.      An award of all economic, monetary, actual, consequential, and

9   compensatory damages caused by LinkedIn's conduct, and if its conduct is proved

10  willful, award Plaintiffs and the Class exemplary damages;

11      7.      An award of restitution against LinkedIn for all money to which

12  Plaintiffs and the Class are entitled in equity;

13      8.      An award to Plaintiffs and their Class Counsel of their reasonable

14  litigation expenses and attorneys' fees;

15      9.      An award to Plaintiffs and the Class of pre- and post-judgment

16  interest, to the extent allowable; and

17      10.     Any and all other relief as equity and justice may require.

18

19

20

21

22

23

24

25

26

27

28

1

**JURY TRIAL DEMANDED**

2

Plaintiffs demand a trial by jury of all issues so triable.

3

4      Dated:  September 17, 2013          Respectfully submitted,

5                                          **RUSS AUGUST & KABAT**

6

7                                          By: _____
                                                Larry C. Russ
8

9                                          Larry C. Russ, Cal. Bar No. 82760
                                           lruss@raklaw.com
10                                         Dorian S. Berger, Cal. Bar No. 264424
                                           dberger@raklaw.com
11                                         Daniel P. Hipskind, Cal. Bar No. 266763
                                           dhipskind@raklaw.com
12                                         12424 Wilshire Boulevard, 12th Floor
                                           Los Angeles, California 90025
13                                         Tel:   (310) 826-7474
                                           Fax:  (310) 826-699112424 Wilshire
14
                                           *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

RUSS, AUGUST & KABAT