JEROME C. ROTH (State Bar No. 159483)
ROSEMARIE T. RING (State Bar No. 220769)
JONATHAN H. BLAVIN (State Bar No. 230269)
WILLIAM J. EDELMAN (State Bar No. 285177)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Tel:   (415) 512-4000
Fax:  (415) 512-4077
Email:  jerome.roth@mto.com

*Attorneys for Defendant*
LINKEDIN CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL; individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>       v.<br><br>LINKEDIN CORPORATION,<br><br>          Defendant. | CASE NO.  13-cv-04303-LHK<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND TO DISMISS REQUEST FOR STATUTORY DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:    Hon. Lucy H. Koh<br>Date:     November 13, 2014<br>Time:    1:30 p.m.<br>Location: Courtroom 8 – 4th Floor |

# TABLE OF CONTENTS

**Page**

I.   PROCEDURAL BACKGROUND AND SUMMARY OF ALLEGATIONS ................... 3

    A.   Add Connections ................................................................ 3

    B.   Prior Proceedings ............................................................. 4

    C.   Reminders ...................................................................... 5

II.  LEGAL STANDARD .............................................................. 6

III. ARGUMENT ....................................................................... 6

    A.   Plaintiffs' Request For Minimum Statutory Damages Under Section 3344
    Should Be Dismissed Because Plaintiffs Seek Damages For Only Economic
    Harm, Not Mental Harm ...................................................... 6

    B.   Plaintiffs' Claims Are Barred By The Federal Communications Decency
    Act, 47 U.S.C. § 230 ........................................................ 10

        1.   LinkedIn Is An "Interactive Computer Service" Provider ........................ 12

        2.   Plaintiffs' Claims Treat LinkedIn As A "Publisher Or Speaker" .............. 12

        3.   Plaintiffs Provided The Information, And LinkedIn Is Not An
        "Information Content Provider" .................................................. 14

    C.   Plaintiffs' Claims Are Barred By The First Amendment ........................ 19

        1.   Reminder Emails Concern Matters of Public Interest ....................... 19

        2.   Reminder Emails Publicize Protected Speech ........................... 23

    D.   Plaintiffs' Claims Are Barred Because They Challenge An Incidental Use .......... 24

IV.  CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdul–Jabbar v. Gen. Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996)...................................................................22

*Almeida v. Amazon.com, Inc.*,
   456 F.3d 1316 (11th Cir. 2006)..............................................................25

*Alvarado-Moralez v. Digital Equip. Corp.*,
   843 F.2d 613 (1st Cir. 1988) .................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................6

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
   2011 WL 2469822 (C.D. Cal. May 4, 2011) ...................................15, 17

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009)...........................................................10, 13

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...........................................................17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................6

*Black v. Google Inc.*,
   2010 WL 3222147 (N.D. Cal. Aug 13, 2010) .....................................11

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983) ................................................................................20

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003)....................................................10, 11, 15

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ...............................................8

*Daly v. United Healthcare Ins. Co.*,
   2010 WL 4510911 (N.D. Cal. Nov. 1, 2010)......................................6

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001)......................................................19, 21, 22

*Evans v. Hewlett-Packard Co.*,
   2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) ................................11, 14

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

# TABLE OF AUTHORITIES

**Page(s)**

*Fair Hous. Council of San Fernando Valley v. Roommates.com*,
   521 F.3d 1157 (9th Cir. 2008) .................................................................*passim*

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................ 18, 19, 21, 22

*Gavra v. Google Inc.*,
   2013 WL 3788241 (N.D. Cal. July 17, 2013) ................................ 14

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*,
   544 F. Supp. 2d 929 (D. Ariz. 2008).............................................. 18

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) .......................................... 15

*Guillen v. Bank of Am. Corp.*,
   2011 WL 4071996 (N.D. Cal. Aug. 31, 2011) .................................. 7

*Hoffman v. Capital Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001).......................................................... 20

*In re Watts*,
   298 F.3d 1077 (9th Cir. 2002)............................................................ 7

*Joude v. WordPress Found.*,
   2014 WL 3107441 (N.D. Cal. July 3, 2014) ................................... 11

*Jurin v. Google Inc.*,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) .......................................... 15

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ...................................................... 12

*Lapidus v. Hecht*,
   232 F.3d 679 (9th Cir. 2000)............................................................ 6

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ................................. 14

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988)........................................................... 23

*Mitan v. A. Neumann & Assocs., LLC*,
   2010 WL 4782771 (D.N.J. Nov. 17, 2010)...................................... 14

*Moreno v. USG Corp.*,
   2007 WL 951301 (S.D. Cal. Mar. 19, 2007)..................................... 4

**TABLE OF AUTHORITIES**

Page(s)

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ............................................................................................ 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ........................................................................................... 11

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) ........................................................................................... 22

*Novins v. Cannon*,
2010 WL 1688695 (D.N.J. Apr. 27, 2010) ...................................................................... 16

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
323 F. Supp. 2d 1037 (N.D. Cal. 2004) ........................................................................... 13

*Page v. Something Weird Video*,
960 F. Supp. 1438 (C.D. Cal. 1996) ........................................................................... 23, 24

*Perfect 10, Inc. v. CCBill, LLC*,
340 F. Supp. 2d 1077 (C.D. Cal. 2004) ........................................................................... 17

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 11

*Perfect 10, Inc. v. Google, Inc.*,
2008 WL 4217837 (C.D. Cal. July 16, 2008) .................................................................. 14

*Prickett v. InfoUSA, Inc.*,
561 F. Supp. 2d 646 (E.D. Tex. 2006) ............................................................................. 15

*Ramey v. Darkside Prods., Inc.*,
2004 WL 5550485 (D.D.C. May 17, 2004) ..................................................................... 14

*Shrader v. Biddinger*,
2012 WL 976032 (D. Colo. Feb. 17, 2012) ..................................................................... 14

*Small Justice LLC v. Xcentric Ventures LLC*,
2014 WL 1214828 (D. Mass. Mar. 24, 2014) .................................................................. 17

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
478 F.3d 413 (1st Cir. 2007) ........................................................................................... 14

*Waits v. Frito–Lay, Inc.*,
978 F.2d 1093 (9th Cir. 1992) ......................................................................................... 22

*White v. Samsung Elecs. Am., Inc.*,
971 F.2d 1395 (9th Cir. 1992) ......................................................................................... 22

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

# TABLE OF AUTHORITIES

**Page(s)**

*Whittlestone, Inc. v. Handi-Craft Co.,*
    618 F.3d 970 (9th Cir. 2010)......................................................................................6

*Yeager v. Cingular Wireless LLC,*
    673 F. Supp. 2d 1089 (E.D. Cal. 2009).....................................................................24

*Young v. Facebook, Inc.,*
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)...........................................................12

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997).....................................................................................14

**STATE CASES**

*Balmoral Hotel Tenants Ass'n v. Lee,*
    226 Cal. App. 3d 686 (1990)......................................................................................9

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006)...................................................................................10, 16, 17

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
    25 Cal. 4th 387 (2001)..............................................................................................22

*Doe II v. MySpace Inc.,*
    175 Cal. App. 4th 561 (2009)...................................................................................16

*Donato v. Moldow,*
    374 N.J. Super. 475 (App. Div. 2005)......................................................................15

*Dora v. Frontline Video, Inc.,*
    15 Cal. App. 4th 536 (1993)...............................................................................21, 22

*Gionfriddo v. Major League Baseball,*
    94 Cal. App. 4th 400 (2001).............................................................................19, 20, 22

*Guglielmi v. Spelling–Goldberg Prods.,*
    25 Cal. 3d 860 (1979)...............................................................................................23

*Hale v. Morgan,*
    22 Cal. 3d 388 (1978)................................................................................................9

*Hung Tan Phan v. Lang Van Pham,*
    182 Cal. App. 4th 323 (2010)...................................................................................13

*Johnson v. Harcourt, Brace, Jovanovich, Inc.,*
    43 Cal. App. 3d 880 (1974).......................................................................................23

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

# TABLE OF AUTHORITIES

**Page(s)**

*Larson v. Casual Male Stores, LLC,*
  2009 WL 932648 (Cal. Ct. App. Apr. 8, 2009) ..................................................... 9

*Lugosi v. Universal Pictures,*
  25 Cal. 3d 813 (1979) ............................................................................................. 7

*Miller v. Collectors Universe, Inc.,*
  159 Cal. App. 4th 988 (2008) .......................................................................... *passim*

*Montana v. San Jose Mercury News, Inc.,*
  34 Cal. App. 4th 790 (1995) ............................................................................ 19, 22

*Rezec v. Sony Pictures Ent., Inc.,*
  116 Cal. App. 4th 135 (2004) ............................................................................... 23

*Shulman v. Group W Prods., Inc.,*
  18 Cal. 4th 200 (1998) ........................................................................................... 19

*Starbucks Corp. v. Superior Court,*
  168 Cal. App. 4th 1436 (2008) ............................................................................ 8, 9

*State ex rel. Dockstader v. Hamby,*
  162 Cal. App. 4th 480 (2008) ................................................................................. 9

*Stilson v. Reader's Digest Ass'n, Inc.,*
  28 Cal. App. 3d 270 (1972) .................................................................................... 9

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ...................................................................................... *passim*

FEDERAL STATUTES

18 U.S.C. § 2510 *et seq.* ........................................................................................ 4

18 U.S.C. § 2701 *et seq.* ........................................................................................ 4

47 U.S.C. § 230 *et seq.* ................................................................................. *passim*

STATE STATUTES

Cal. Civ. Code § 3344 ..................................................................................... *passim*

Cal. Lab. Code § 432.7 .......................................................................................... 9

Cal. Lab. Code § 432.8 .......................................................................................... 8

MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                CASE NO. 13-CV-04303-LHK

# TABLE OF AUTHORITIES

1

2

**Page(s)**

3

Cal. Penal Code § 502 ...................................................................................................... 4

4

**FEDERAL RULES**

5

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 6

6

Fed. R. Civ. P. 12(f) ......................................................................................................... 4

7

**TREATISES**

8

McCarthy, *Rights of Publicity and Privacy* § 6:46 (2d ed.) ........................................... 8

9

Restatement (Second) of Torts § 652C .......................................................................... 24

10

Restatement (Second) of Torts § 652D .......................................................................... 19

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2      PLEASE TAKE NOTICE that on November 13, 2014 at 1:30 p.m. before the Honorable

3  Lucy H. Koh in Courtroom 8 on the Fourth Floor of the above-entitled Court located at 280 South

4  1st Street, San Jose, California, Defendant LinkedIn Corporation ("LinkedIn") will move to

5  dismiss Plaintiffs' request for minimum statutory damages under California Civil Code Section

6  3344(a) and to dismiss the Second Amended Class Action Complaint ("SAC") in its entirety for

7  failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure

8  12(b)(6).  LinkedIn's motion is based on this Notice of Motion and Motion and accompanying

9  Memorandum of Points and Authorities, the Request for Judicial Notice and Declaration of

10  Jonathan H. Blavin (and exhibits thereto) filed herewith, all pleadings and papers on file in this

11  matter, and such other matters as may be presented to this Court at the hearing or otherwise.

12

<u>**STATEMENT OF RELIEF SOUGHT**</u>

13      LinkedIn seeks an order, pursuant to Rule 12(b)(6), dismissing the SAC with prejudice for

14  failure to state a claim upon which relief can be granted, or in the alternative, dismissing the

15  request for minimum statutory damages under California Civil Code Section 3344(a).

16

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

17    1.    Whether the SAC's request for minimum statutory damages under California Civil

18          Code Section 3344(a) should be dismissed.

19    2.    Whether the SAC states a claim upon which relief can be granted.

20

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

21      In their Second Amended Class Action Complaint ("SAC"), Plaintiffs again assert claims

22  based on LinkedIn's "Add Connections" feature, which allows LinkedIn members to build their

23  online professional networks by importing contacts from external email accounts and sending

24  connection invitation emails inviting some or all of those contacts to connect.  If there is no

25  response to the connection invitation, up to two "reminder" emails are sent reminding the recipient

26  that the original invitation is pending.

27      The vast majority of the theories in Plaintiffs' first two complaints are now gone.  In those

28  complaints, Plaintiffs asserted that Add Connections violates various anti-hacking and computer

1  crime laws by "hacking" into external email accounts and importing contacts, and that the

2  connection invitations and reminders sent to those contacts violate California's common law right

3  of publicity and California's Unfair Competition Law ("UCL").  By Order dated June 12, 2014,

4  this Court dismissed all of Plaintiffs' "hacking" claims and claims based on connection

5  invitations, holding that, as a matter of law, members consent to importing email contacts and

6  sending invitations to those contacts based on permission screens presented in real time when

7  using the Add Connections feature.

8          In the SAC, Plaintiffs abandon their baseless claims of "hacking" and all claims premised

9  on connection invitations, and now seek to represent a putative nationwide class based solely on

10 reminders.  Accordingly, all that remains in the case are claims based on the use of their names

11 and likenesses in reminder emails—the same use that Plaintiffs consented to in connection

12 invitations as a matter of law—under California's common law right of publicity, the UCL, and

13 now California's statutory right of publicity, Cal. Civ. Code § 3344, including minimum statutory

14 damages of $750.

15         As an initial matter, Plaintiffs' new claim for the minimum statutory damages under

16 Section 3344 should be dismissed because Plaintiffs' alleged injuries are based on economic harm,

17 not mental harm.  The California Court of Appeal has held that the statutory damages provision

18 applies only to claims based on mental harm.  *See Miller v. Collectors Universe, Inc.*, 159 Cal.

19 App. 4th 988, 1005 (2008).  Where, as here, a plaintiff claims injury for economic harm, his or her

20 sole recourse is to prove actual damages.

21         Plaintiffs also fail to state any claim upon which relief can be granted, requiring dismissal

22 of the SAC in its entirety for three reasons.  *First*, all of Plaintiffs' claims are preempted by the

23 Federal Communications Decency Act, 47 U.S.C. § 230 ("CDA"), which bars state law claims

24 attempting to impose liability on interactive computer services, like LinkedIn, for publication and

25 republication of content provided by users.  Connection invitations —and reminders that republish

26 them—are activities protected under the CDA because Plaintiffs consent to and create the content

27 of those communications.  The core policy behind the CDA of "promot[ing] the continued

28 development of the Internet and other interactive computer services," 47 U.S.C. §§ 230(b)(1)-(2),

1  would be advanced by finding that the state law claims asserted here are preempted, especially in

2  light of Plaintiffs' own claims that the reminders have been "critical" to the growth and

3  development of LinkedIn.  *See, e.g.*, SAC ¶ 16.

4        *Second,* reminder emails are not actionable because they are protected activity under the

5  First Amendment.  Reminders promote the First Amendment rights of free speech and association

6  and, therefore, concern matters of public interest.  Even if Plaintiffs were to claim that reminders

7  are commercial speech, which they are not, the use of member names and likenesses in reminders,

8  which publicize connection invitations through which members exercise their rights of free speech

9  and association, are incidental uses also subject to protection under the First Amendment.

10        *Third*, reminder emails are not actionable because they fall within the incidental use

11  exception under the Restatement (Second) of Torts.  The use of member names and likenesses in

12  reminders is necessary to identify the sender of a connection invitation so that the recipient knows

13  who is asking to connect.  Accordingly, the challenged use is incidental to and customary for

14  online networking and, therefore, is not actionable as a right of publicity violation.

15  **I.  PROCEDURAL BACKGROUND AND SUMMARY OF ALLEGATIONS**

16        **A.  Add Connections**

17        LinkedIn is the world's largest professional network.  It is a free service that members use

18  to build online professional networks through which they can connect with, find, and be found by

19  current and potential business contacts.  LinkedIn provides a variety of tools for building online

20  professional networks, including a feature called Add Connections, which members use to import

21  email addresses from their external email accounts and send emails to some or all of those contacts

22  inviting them to join their LinkedIn networks.  *See* SAC Figs. 3-10.  Members can send

23  connection invitations to contacts who are already LinkedIn members and to those who are not.[1]

24  If there is no response to an invitation, up to two reminders are sent by email reminding the

25  recipient that the connection invitation is pending.  SAC ¶ 11.

26

27  _____

[1] Plaintiffs challenge Add Connections only with respect to reminders sent to non-members.  *See*
28  MTD Hr'g Tr. 18:1-12, Apr. 10, 2014; *see also, e.g.*, SAC ¶ 17.

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

1

**B.      Prior Proceedings**

2        Plaintiffs filed this case on September 17, 2013, and filed a First Amended Complaint

3   ("FAC") on October 2, 2013, challenging the Add Connections feature.  Plaintiffs asserted, on

4   behalf of a putative nationwide class, that Add Connections imported contacts from external email

5   accounts, sent connection invitations, and sent up to two reminders of those connection invitations

6   without member consent in violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*,

7   the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, California Penal Code § 502, California's common law

8   right of publicity, and the UCL.  *See* FAC, ECF No. 7 ¶¶ 110-138.  On December 6, 2013,

9   LinkedIn moved to dismiss the FAC.  *See* ECF No. 17 ("MTD").  On June 12, 2014, this Court

10  granted LinkedIn's MTD as to all but two claims, and limited those remaining claims to reminder

11  emails.  Based on real-time permission screens presented to members using Add Connections, the

12  Court held that, as a matter of law, Plaintiffs consented to importing email contacts and sending

13  connection invitations.  *See* ECF No. 47 ("MTD Order") at 23-27.  On this and related grounds,

14  the Court dismissed all of Plaintiffs' claims based on importing email contacts and sending

15  connection invitations.  *Id.* at 28-30.  Because the Court found that consent to sending reminders

16  could not be established as a matter of law, Plaintiffs' common law right of publicity claims and

17  derivative UCL claims *based on reminders* survived.  *Id.* at 30-32.

18        On August 28, 2014, Plaintiffs filed the SAC.  Plaintiffs abandoned their baseless claims

19  challenging their use of Add Connections to import email contacts and to send connection

20  invitations.[2]  Instead, relying solely on reminders, they reassert the two claims that survived the

21

22  ───────────────────

23  [2] LinkedIn renews its request that the Court strike under Rule 12(f) Plaintiffs' "hacking"
    allegations, which the Court denied in connection with the FAC, finding that these allegations

24  were relevant to Plaintiffs' California Penal Code Section 502 claim.  MTD Order at 33 n.7.
    Plaintiffs have dropped that claim in the SAC, but continue to assert, still without basis,

25  allegations of "hacking," "break[ing] into" members' email accounts, and "tunneling."  *See* SAC
    ¶¶ 7, 50 51, 69.  The Court should strike these allegations as "immaterial, impertinent, [and]

26  scandalous" under Rule 12(f).  *See* Fed. R. Civ. P. 12(f); *see also Moreno v. USG Corp.*, 2007 WL
    951301, at *1 (S.D. Cal. Mar. 19, 2007) (scandalous allegations include allegations that

27  "improperly cast[] a derogatory light on…a party to the action"); *Alvarado-Moralez v. Digital
    Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988).  Plaintiffs still do not allege any factual support

28  for these allegations that "improperly cast a derogatory light" on LinkedIn; nor could they—as the

1    Court's MTD Order and add a new claim under California Civil Code Section 3344.  Plaintiffs

2    claim that, although they consented to importing email contacts and sending connection invitations

3    as a matter of law, they did not consent to sending reminders.  According to Plaintiffs, they

4    suffered economic harm because they were "deprived" of the "monetary value" of the use of their

5    names and likenesses in reminders.  *See* SAC ¶¶ 104-05, 132-143.

6        **C.    Reminders**

7        Although Plaintiffs' entire case now hinges exclusively on reminders, the sixty-page SAC,

8    which includes fifteen images of Add Connections permission screens and connection invitations,

9    does not include a *single* image of a reminder.  *See* SAC ¶¶ 9-11, 72.  Below is an example from

10   the putative class period of a reminder email sent to a non-member, which is properly subject to

11   judicial notice, *see* Request for Judicial Notice ("RJN") at 2-3.

12

13   Date: Tue, 20 Nov 2012 09:20:46 +0000
     From: invitations@linkedin.com

14   To: Vidyatestchandratest@hotmail.com
     Subject: Reminder about your invitation from Vidya Chandra

15

16   **Linkedin**.

17   This is a reminder that on November 15, Vidya Chandra sent you an invitation to become part of
     their professional network at LinkedIn.

18
         Accept Vidya Chandra's Invitation
19

20   On November 15, Vidya Chandra wrote:

21   > To: [Vidyatestchandratest@hotmail.com]
     > From: Vidya Chandra [vidya_chandrashekaran@yahoo.com]

22   > Subject: Invitation to connect on LinkedIn

     > I'd like to add you to my professional network on LinkedIn.
23   >
     > - Vidya
24
     You are receiving **Reminder emails for pending invitations**. Unsubscribe.
25   © 2012 LinkedIn Corporation. 2029 Stierlin Ct, Mountain View, CA 94043, USA.

     Declaration of Jonathan H. Blavin ("Blavin Decl."), Ex. A.
26

27   _____

     Court explained, Plaintiffs' own allegations make plain that LinkedIn accesses external email
28   accounts only after users consent.  *See* MTD Order at 23-27, 32-34.

1    A reminder is exactly what the name indicates—it reminds the recipient of a connection

2    invitation that the invitation is pending.  That is all.

3    **II.     LEGAL STANDARD**

4    A Rule 12(b)(6) motion "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250

5    F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as

6    true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7    (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court should not accept

8    mere "labels and conclusions" in a complaint, nor a "formulaic recitation of the elements of a

9    cause of action."  *Id.*  The court may consider documents referenced in the complaint and relevant

10   matters subject to judicial notice.  *E.g.*, *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000).

11   Requests for damages that are precluded as a matter of law are subject to dismissal under Rule

12   12(b)(6).  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *Daly v.*

13   *United Healthcare Ins. Co.*, 2010 WL 4510911, at *7 (N.D. Cal. Nov. 1, 2010) (Koh, J.) ("[A]

14   Fed. R. Civ. P. 12(b)(6) motion is the proper method for dismissing a claim for damages . . . .").

15   **III.    ARGUMENT**

16   **A.     Plaintiffs' Request For Minimum Statutory Damages Under Section 3344
            Should Be Dismissed Because Plaintiffs Seek Damages For Only Economic**
17   **      Harm, Not Mental Harm**

18   Under their new Section 3344 claim, Plaintiffs claim minimum statutory damages of $750.

19   *See* SAC ¶ 143 (requesting "a remedy as provided for by the California Right of Publicity Statute

20   in the amount of $750 per LinkedIn member"); *see also* Cal. Civ. Code § 3344(a).[3]  Plaintiffs'

21   claim for minimum statutory damages should be dismissed because Section 3344's statutory

22   damages provision applies only to claims for mental harm, which Plaintiffs do not allege and, in

23   _____

24   [3] California Civil Code Section 3344(a) provides that a defendant who violates the statute

25   shall be liable for any damages sustained by the person or persons injured as a
     result thereof.  In addition, in any action brought under this section, the person
26   who violated the section shall be liable to the injured party or parties in an amount
     equal to the greater of seven hundred fifty dollars ($750) or the actual damages
27   suffered by him or her as a result of the unauthorized use, and any profits from the
     unauthorized use that are attributable to the use and are not taken into account in
28   computing the actual damages.

1   fact, have expressly disclaimed.  In *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988,

2   1005 (2008), the California Court of Appeal held that the statutory damages provision of Section

3   3344 is intended to protect plaintiffs seeking recovery for mental—not commercial—harm, and

4   thus only those plaintiffs may recover the $750 minimum statutory damages.  That ruling is

5   binding on this Court.[4]

6          In *Miller*, the plaintiff, an authenticator of memorabilia, sued his former employer

7   Collectors, alleging that following Miller's termination, Collectors had issued to customers 14,060

8   "certificates of authenticity" bearing Miller's name in violation of his statutory right of publicity

9   under Section 3344.  *See* 159 Cal. App. 4th at 991.  Miller sought $750 in statutory damages for

10   each of the 14,060 certificates.  *Id.*

11          The Court of Appeal reversed the judgment in plaintiff's favor after trial.  The court

12   explained that the right protected by Section 3344 "has two aspects: (1) the right of publicity

13   protecting the commercial value of celebrities' names and likenesses, and (2) the appropriation of

14   the name and likeness that brings injury to the feelings, that concerns one's own peace of mind,

15   and that is mental and subjective."  *Id.* at 1005.  Miller had contended that, apart from his claims

16   of mental harm, he was entitled to $750 in statutory damages for each of the certificates because

17   he had "suffered commercial loss from the dilution of the value of his future authentications."  *Id.*

18   at 1005-06.   After surveying the legislative history of Section 3344 in detail, the court rejected

19   Miller's argument, concluding that "the statutory minimum damages were meant to compensate

20   non-celebrity plaintiffs who suffer…mental anguish yet no discernible commercial loss."  *Id.* at

21   1006; *see also Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 842 n.23 (1979) (Bird, C.J.,

22   dissenting) (observing that "Legislature recently enacted Civil Code Section 3344 to provide a

23   minimum amount of damages" and that the "legislative history of Section 3344 strongly suggests

24   _____

25   [4] This Court is "bound to follow" California appellate court interpretations "absent convincing
    evidence that the California Supreme Court would reject the interpretation of" a statute by such
26   courts.  *In re Watts*, 298 F.3d 1077, 1082 (9th Cir. 2002); *see also Guillen v. Bank of Am. Corp.*,
    2011 WL 4071996, at *4 (N.D. Cal. Aug. 31, 2011) ("This court must defer to the interpretation of
27   the California Court of Appeal absent convincing evidence the California Supreme Court would
    decide the matter differently.").  There is no evidence, much less convincing evidence, that the
28   California Supreme Court would reject *Miller*.

1   that the Legislature was concerned with an individual's right to privacy, not an individual's

2   proprietary interest in his or her name and likeness").

3       The *Miller* court concluded instead that the "primary right protected by section 3344(a)'s

4   provision for statutory minimum damages is the right to be free from . . . mental anguish resulting

5   from commercial misappropriation," and that Miller was therefore entitled only to a single award

6   of $750 for his claims of mental harm.  *Id.*  "To the extent Miller suffered commercial loss due to

7   his status as an authenticator well known in the 'close-knit collectibles and autograph industry,'"

8   the court held, "his recourse *was to prove actual damages* like any other plaintiff whose name has

9   commercial value."  159 Cal. App. 4th at 1006 (emphasis added).

10      Thus, under *Miller*, a plaintiff claiming damages based on economic harm allegedly

11  resulting from violation of the right to publicity, as Plaintiffs do here, is not entitled to Section

12  3344's minimum statutory damages but must "prove actual damages."  *Id.*; *see also Cohen v.*

13  *Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (under *Miller*, plaintiffs are not

14  automatically entitled to statutory damages but "must, at a minimum, plead that they suffered

15  mental anguish as a result of the alleged misappropriation"); McCarthy, *Rights of Publicity and*

16  *Privacy* § 6:46 (2d ed.) (*Miller* held that "statutory minimum damages could not be recovered by a

17  person as a measure of damages for injury to the commercial value of his or her identity.  Rather,

18  the statutory minimum could be used only when a plaintiff seeks damages for injury to mental

19  feeling and peace of mind").

20      *Miller* is consistent with a long line of California cases holding that statutory damages may

21  be recovered only by those who "fall within the class of persons intended to be protected" by the

22  statutory damages provision.  *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1449

23  (2008).  In *Starbucks*, for example, the plaintiffs sued the coffee chain under a Labor Code

24  provision prohibiting employers from asking in a job application about marijuana convictions

25  more than two years old.  *Id.* at 1440 (citing Cal. Lab. Code § 432.8).  The plaintiffs, who did not

26  themselves have any marijuana convictions, sought to represent a class of 135,000 Starbucks

27  applicants, and requested statutory damages of $200 per applicant.  *Id.*  The Labor Code provision

28  at issue included a statutory damages component: "In any case where a person violates this section

-8-

. . . the applicant may bring an action to recover from that person actual damages or two hundred dollars ($200)."  Cal. Lab. Code § 432.7.

Notwithstanding that broad language, the California Court of Appeal "decline[d] to adopt an interpretation that would turn the statute into a veritable financial bonanza for litigants like plaintiffs."  *Id.* at 1449.  Instead, citing a long line of cases narrowly construing statutory damages provisions to avoid disconnecting the award from the harm it was designed to address—including the *Miller* decision—the court held that only applicants who themselves had marijuana convictions could sue under that provision, because only those individuals were in the "class of people the Legislature sought to protect."  *Id.* at 1449-51 (citing *Hale v. Morgan*, 22 Cal. 3d 388, 402, 405 (1978) (narrowly interpreting a statutory damages provision)); *Balmoral Hotel Tenants Ass'n v. Lee*, 226 Cal. App. 3d 686, 695, 697 (1990) (same)).[5]

*Miller* compels dismissal of Plaintiffs' statutory damages claims here.  Recognizing the impossibility of certifying a class based on claims of mental harm,[6] Plaintiffs abandoned any theory of injury based on mental harm in opposition to LinkedIn's motion to strike the class allegations in Plaintiffs' FAC, stating that the "harm giving rise to Plaintiffs' class actions *are the economic harm* each Plaintiff has suffered as a result of LinkedIn," [sic] and that "it is Plaintiffs' *economic injuries* giving rise to the class action claims at issue."  ECF No. 24, at 33 n.20

---

[5] The "plain language" of Section 3344(a) does not counsel otherwise, because as the Court of Appeal in *Starbucks* explained in rejecting the lower court's conclusion that the "plain language" of the statute required a contrary result, 168 Cal. App. 4th at 1443, to the extent the statutory damages provision can be read as providing damages for plaintiffs other than those the Legislature intended to protect, it is ambiguous and must be "narrowly interpret[ed]" to avoid that "absurd result," 168 Cal. App. 4th at 1451.  *See also State ex rel. Dockstader v. Hamby*, 162 Cal. App. 4th 480, 487-88 (2008) (although statute authorizing treble damages and civil penalties against "any natural person" was unambiguous on its face, it was ambiguous in context of purpose of statute and prior judicial interpretation of law); *Larson v. Casual Male Stores, LLC*, 2009 WL 932648, at *4-6 (Cal. Ct. App. Apr. 8, 2009) (unpublished) ("The apparent purpose of a statute will not be sacrificed to a literal construction.  When aid to construction of the words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination." (internal citations and quotation marks omitted)).

[6] *See, e.g.*, *Stilson v. Reader's Digest Ass'n, Inc.*, 28 Cal. App. 3d 270, 274 (1972) (in common law right of publicity case, denying class certification and noting that "to award even slightly more than nominal damages, the court would be required to examine the mental and subjective state of each of the millions of plaintiffs").

(emphases added).  Likewise, in the SAC, Plaintiffs limit allegations of injury solely to economic harm.  *See* SAC ¶¶ 104-05 ("Each Plaintiff was deprived the [sic] *monetary value* of having his or her endorsement appear in the endorsement emails" and "[e]ach Plaintiff has been personally injured by this loss of money"), ¶¶ 132-143 (describing harm under 3344 claim as "receiv[ing] no compensation" and being "deprived of earnings").  Just as in *Miller*, Plaintiffs cannot recover statutory damages based on their claims of economic harm.  On the contrary, exactly as in *Miller*, to the extent Plaintiffs claim that their status among their contacts gave rise to commercial losses, they must prove their actual damages.

### B.     Plaintiffs' Claims Are Barred By The Federal Communications Decency Act, 47 U.S.C. § 230

Under section 230 of the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230 expressly preempts any application of state law that interferes with this rule, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  It "provides broad immunity [to websites that publish] content provided primarily by third parties."  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 57 (2006) (section 230 provides "blanket immunity from tort liability for online republication of third party content").  Section 230 thus protects a "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).  As described further below, all of Plaintiffs' claims are based on allegations that fall squarely within those three elements of the protection afforded by the CDA and are therefore preempted.

Section 230 immunity for emails Plaintiffs send using Add Connections, including reminders, is also consistent with and bolstered by the policies underlying the CDA.  Congress enacted the immunity provisions of section 230 "to promote the continued development of the Internet and other interactive computer services and other interactive media" and "to preserve the

1    vibrant and competitive free market that presently exists for the Internet and other interactive

2    computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1)-(2).

3    Without such immunity, websites "might not be able to offer" their "services and certainly not to

4    the same degree," thus undermining the "'continued development" of "interactive computer

5    services." *Carafano v. Metrosplash.com. Inc.*, 339 F.3d 1119 (9th Cir. 2003) (quoting 47 U.S.C.

6    § 230(b)(1)). Here, Plaintiffs repeatedly allege that reminders have played a "critical" role in

7    LinkedIn's development as a professional online network. *See, e.g.,* SAC ¶ 16 ("Sending a second

8    and third reminder email *was critical* to LinkedIn growing its user base." (emphasis added)).

9    Imposing liability on LinkedIn based on reminders because they allegedly allowed LinkedIn to

10   develop an online professional network would directly undermine the Congressional policies

11   underlying the CDA.

12        CDA immunity extends to all state statutory and common law claims, including claims for

13   violation of the right of publicity, *see Carafano*, 339 F.3d at 1125 (upholding section 230

14   immunity for misappropriation claim),[7] and is a proper ground upon which to grant a motion to

15   dismiss, *see Evans v. Hewlett-Packard Co.*, 2013 WL 5594717, at *3 (N.D. Cal. Oct. 10, 2013)

16   ("[E]valuating Section 230 immunity [is] proper at the dismissal stage").[8] "[C]lose cases . . . must

17   be resolved in favor of immunity, lest we cut the heart out of Section 230 by forcing websites to

18   face death by ten thousand duck-bites . . . ." *Fair Hous. Council of San Fernando Valley v.*

19   *Roommates.com*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc).

20

21

22   ───────────────

23   [7] *See also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (affirming
     Section 230 immunity against right of publicity claims and for claims for unfair competition and

24   false advertising, noting "Congress's expressed goal of insulating the development of the Internet
     from various state-law regimes"); *Joude v. WordPress Found.*, 2014 WL 3107441, at *7 (N.D.

25   Cal. July 3, 2014) (under section 230, "computer service providers in this circuit are entitled to
     immunity from state intellectual property claims, including the right of publicity").

26   [8] *See also Black v. Google Inc.*, 2010 WL 3222147, at *3 (N.D. Cal. Aug 13, 2010) (granting

27   motion to dismiss under Section 230); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591
     F.3d 250, 255-58 (4th Cir. 2009) (courts should "resolve the question of § 230 immunity at the

28   earliest possible stage of the case" (citing *Roommates.com*, 521 F.3d at 1175)).

1

### 1.   LinkedIn Is An "Interactive Computer Service" Provider

2        An "interactive computer service" is "any information service system, or access software

3 provider that provides or enables computer access by multiple users to a computer server,

4 including specifically a service or system that provides access to the Internet and such systems

5 operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).  Under

6 Section 230(f)(4), an "access software provider" is "a provider of software (including client or

7 server software), or enabling tools that do any one or more of the following: (A) filter, screen, or

8 disallow content; (B) pick, choose, analyze, or digest content; or (C) transmit, receive, display,

9 forward, cache, search, subset, organize, reorganize, translate content."  LinkedIn is an

10 "interactive computer service" provider within the meaning of the CDA, as courts have held in

11 similar contexts for social networking websites.  *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1357

12 (D.C. Cir. 2014) ("Facebook qualifies as an interactive computer service because it is a service

13 that provides information to 'multiple users' by giving them 'computer access . . . to a computer

14 server,' 47 U.S.C. § 230(f)(2), namely the servers that host its social networking website.");

15 *Roommates.com*, 521 F.3d at 1162 n.6 ("[T]he most common interactive computer services are

16 websites."); *Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010)

17 (Facebook is an interactive computer service; granting motion to dismiss under Section 230).

18 LinkedIn "provides information to 'multiple users' by giving them 'computer access . . . to a

19 computer server,'" 47 U.S.C. § 230(f)(2)—the LinkedIn servers hosting its site—and in the

20 specific context of connection invitations and reminders, "transmit[s]," "display[s]," and

21 "organize[s]" content, among other functions, *id*. § 230(f)(4).

22

### 2.   Plaintiffs' Claims Treat LinkedIn As A "Publisher Or Speaker"

23        Plaintiffs' claims treat LinkedIn as the "publisher or speaker" of information because they

24 challenge *LinkedIn's* alleged sending of reminder emails over the Internet.  *See, e.g.,* SAC ¶ 5

25 (claims arise from "practice of sending repeated endorsement emails"), ¶ 9 (same), ¶ 22 (Plaintiffs

26 "filed this case to stop LinkedIn's practice of sending repeated endorsement emails").   All of

27 Plaintiffs' causes of action arise from the sending of these reminder emails.  *See id.* ¶¶ 122, 134

28

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

1  (common law right of publicity and Section 3344 claims arising from use of Plaintiffs' names or

2  likenesses in emails), ¶ 147 (UCL claim arising out of "send[ing] repeated reminder emails").

3      The Ninth Circuit has held, "what matters is not the name of the cause of action," but

4  "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or

5  speaker' of content provided by another.  In other words, courts must ask whether the duty that the

6  plaintiff alleges the defendant violated derives from the defendant's status or conduct as a

7  'publisher or speaker.'  If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1100-

8  01.

9      Courts consistently treat "distributors" of content as equivalent to "publishers" under the

10  CDA, and repeatedly have held that claims challenging the sending of emails to third parties fall

11  squarely within the scope of Section 230 immunity.  In *Optinrealbig.com, LLC v. Ironport*

12  *Systems, Inc.*, 323 F. Supp. 2d 1037 (N.D. Cal. 2004), for example, the plaintiff, a sender of "bulk

13  commercial electronic mail (email)," brought suit against an Internet-based anti-SPAM service,

14  claiming that the defendant overstated the complaints against the plaintiff to ISPs, causing the

15  ISPs to curtail bandwidth for the plaintiff.  The defendant's registered users would "forward what

16  they believe to be spam" to the defendant, and the defendant would then email these reports to the

17  originating ISP.  *Id*. at 1040.  The plaintiff filed various state law claims and sought a preliminary

18  injunction enjoining defendant from "transmitting or sending reports it forwards to third parties."

19  *Id*. at 1039, 1047.

20      The court denied the injunction and found that the defendant was immune from liability

21  under the CDA.  The plaintiff had argued that "deliberately sending the reports to non-subscribers,

22  that is third parties who did not choose to receive the reports, removes SpamCop from immunity"

23  under the CDA.  *Id*. at 1046.  Observing that courts "have consistently found that the CDA does

24  not distinguish between publishers and distributors," the court held that section 230 immunity

25  applied.  *Id*. at 1045.  Thus, while the defendants' "[d]istributing content to non-subscribers may

26  be perceived as aggressive activity," it "does not destroy the distributor's immunity," as the "focus

27  on distributor liability is and should be conterminous with the focus on publisher liability:

28

-13-  MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

1    content." *Id.* Numerous other courts have reached the same conclusion.[9]

2        Likewise, here, Plaintiffs' challenge to LinkedIn "distributing content" to third party non-

3    subscribers treats LinkedIn as a "publisher or speaker" of information under the CDA.

4                    **3.    Plaintiffs Provided The Information, And LinkedIn Is Not An**
                        **"Information Content Provider"**
5

6        Plaintiffs provided the information in the challenged emails under the CDA—the request

7    from each Plaintiff to a third party to join his or her professional network—and therefore LinkedIn

     cannot be considered an "information content provider."[10]

8

9        Under the CDA, "lawsuits seeking to hold a service provider liable for its exercise of a

10   publisher's traditional editorial functions—such as deciding whether to publish, withdraw,

11   postpone or alter content—are barred." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir.

12   1997) (cited with approval by *Roommates.com*, 521 F.3d at 1179–80); *Ramey v. Darkside Prods.,*

     *Inc.,* 2004 WL 5550485, at *7 (D.D.C. May 17, 2004) (defendant was not an information content
13

14   provider because it edited the ads posted on its website). Accordingly, courts have held that where

15   a defendant does not change the *substantive* nature of the content the user provides, it is not an

16   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [9] *See, e.g., Hung Tan Phan v. Lang Van Pham,* 182 Cal. App. 4th 323, 325 (2010) (act of
17   "forward[ing]" allegedly defamatory email to "to at least one" other individual with "introductory
     paragraph" immune from liability under CDA); *Mitan v. A. Neumann & Assocs., LLC,* 2010 WL
18   4782771, at *1, 5 (D.N.J. Nov. 17, 2010) (act of forwarding email immune under CDA, noting
     that "regardless of the original source of the [email], it is undisputed that [defendant] received the
19   [email] via the Internet (email) and republished the same via the Internet (email)"); *Shrader v.
     Biddinger*, 2012 WL 976032, at *9 (D. Colo. Feb. 17, 2012) (holding that "directing" users to site
20   through emailing "does not diminish the protections of the CDA's immunity"); *Gavra v. Google
     Inc.*, 2013 WL 3788241, at *3 (N.D. Cal. July 17, 2013) (rejecting plaintiff's attempt to
21   "distinguish between publishers and distributors" under the CDA).

22   [10] Plaintiffs do not allege any facts to support their conclusory allegations that LinkedIn was the
     creator and developer of the content of "endorsement emails," *see, e.g.,* SAC ¶ 99 ("LinkedIn was
23   solely responsible for the creation and development of each endorsement email, the content, and
     the advertisement scheme by which each endorsement email was created."), and actually
24   demonstrate the opposite in the SAC. Accordingly, the Court may ignore these allegations. *See,
     e.g., Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 418 (1st Cir. 2007) (plaintiff "has
25   attempted to plead around" CDA immunity but the "facts pleaded simply do not fit those theories"
     and "[n]o amount of artful pleading can avoid that result"); *Evans v. Hewlett-Packard Company*,
26   2013 WL 5594717,at *4 (N.D. Cal. Oct. 10, 2013) ("Plaintiffs attempt to plead around Section
     230, but these schemes fail."); *Perfect 10, Inc. v. Google, Inc.*, 2008 WL 4217837, at *8 (C.D. Cal.
27   July 16, 2008) (where plaintiff "claims that it has pleaded around CDA preemption by alleging
     that Google is an 'information content provider'" rejecting these "conclusory allegations" as "at
28   best, dubious"); *Levitt v. Yelp! Inc.,* 2011 WL 5079526, at *5 (N.D. Cal. Oct. 26, 2011) (same).

MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                    CASE NO. 13-CV-04303-LHK

1    "information content provider."  *See Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 WL

2    2469822, at *8 (C.D. Cal. May 4, 2011) ("Absent a changing of . . . substantive content that is

3    visible to consumers, liability cannot be found."); *Roommates.com*, 521 F.3d at 1169 ("website

4    operator who edits user-created content—such as by correcting spelling, removing obscenity or

5    trimming for length—retains his immunity" whereas "a website operator" who "transform[s] an

6    innocent message into a libelous one—is directly involved in the alleged illegality and thus not

7    immune"); *Donato v. Moldow*, 374 N.J. Super. 475, 500 (App. Div. 2005) ("commenting

8    favorably or unfavorably on some postings, without changing the substance of the message

9    authored by another, does not constitute 'development'" under CDA).

10           Reminder emails fall squarely within the realm of "traditional editorial functions" that are

11   immune from challenge under the CDA.  Traditional editorial functions immune from liability

12   include using pre-written language in response to user conduct.  In *Carafano v. Metrosplash.com.*

13   *Inc.*, 339 F.3d 1119 (9th Cir. 2003), for example, the Ninth Circuit held that a dating website that

14   provided "a menu of 'pre-prepared responses'" for users was protected by the CDA because "no

15   profile has any content until a user actively creates it" and  "[w]ithout standardized, easily encoded

16   answers, [the site] might not be able to offer these services and certainly not to the same degree."

17   *Id.* at 1125; *see also*, *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1997-99 (N.D. Cal. 2009)

18   (CDA immunity applied even though Google allegedly "disproportionately suggests the term 'free

19   ringtone' in response to an advertiser's entry of the term 'ringtone'"); *Jurin v. Google Inc.*, 695 F.

20   Supp. 2d 1117, 1123 (E.D. Cal. 2010) (Google's practice of "suggesting keywords" to competing

21   advertisers "merely helps third parties to refine their content" and was protected by the CDA);

22   *Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646, 651-52 (E.D. Tex. 2006) (defendant not

23   "information content provider" even though users "prompted to select subcategories through the

24   Defendant's database gathering system" and the "Defendant directed the third party's selections").

25           The allegations of the SAC make clear that here Plaintiffs provided the substantive

26   "content" to LinkedIn by providing their own names, likenesses, and contacts to LinkedIn, and by

27   then clicking the "Add to Network" button on the LinkedIn permission screen; LinkedIn did not

28   alter the substance of such content in connection invitations or reminders.  *See* SAC ¶¶ 64-65,

MOTION TO DISMISS SECOND AMENDED COMPLAINT
                 CASE NO. 13-CV-04303-LHK

Figures 1-8.  LinkedIn used the phrase "I'd like to add you to my professional network" in the

connection invitation in response to the user's action, SAC Figure 10, which is substantively

identical to the language Plaintiffs consented to by clicking the "Add to Network" button.  As the

Court stated in its Order on LinkedIn's motion to dismiss, the

> actual email that is ultimately sent to the contacts states 'I'd like to add you to my
> professional network' with the name of the LinkedIn user below. *See* ECF No. 7,
> Fig. 7. The Court finds that a reasonable user who saw the disclosure "Invite
> [contacts] to connect with you' has consented to this language in the email.  The
> email ***contains the message that LinkedIn discloses to users****:* an invitation from
> the user to the users' contacts to connect with the user on LinkedIn.

MTD Order at 29 (emphasis added).  Indeed, as the Court emphasized, "Plaintiffs do not

challenge the specific format or content of the invitation email."  *Id.*  Moreover, Plaintiffs at all

times could have "skip[ped] this step" and declined to send any connection invitations or

reminders at all through Add Connections.  *See id.* at 28-29 (noting ability to "'Skip this step'

altogether").[11]   Accordingly, Plaintiffs are the source of the content of the communications at

issue.

LinkedIn's *republishing* of this user content—the request to join Plaintiff's professional

networks—through the sending of up to two reminder emails does not convert LinkedIn into an

information content provider.  As the SAC makes clear, the challenged reminders contain nothing

more than the same substantive content as the initial connection invitations:  "The reminder

endorsement emails requested that the recipients join LinkedIn." SAC ¶¶ 23, 25, 29, 31, 33, 35,

37, 39; *see also* Blavin Decl. Ex. A (showing text of reminder email).  Courts repeatedly have held

that active and selective republication of user content is immune from liability, as "Congress has

comprehensively immunized republication" under the CDA.  *Barrett*, 40 Cal. 4th at 62 (party that

"actively selected and republished information" on several different occasions on website remains

immune from liability as publisher); *see also Novins v. Cannon*, 2010 WL 1688695, at *2 (D.N.J.

---

[11] This is in contrast to sites where the user submitted certain information as a *required* condition
of using the site at all.  *See, e.g., Doe II v. MySpace Inc.,* 175 Cal. App. 4th 561, 575 (2009) (that
users were "encouraged" to enter "personal information" and "information is organized by the
site" does not convert site into information content provider; emphasizing that user does not
"require[] its members to answer the profile questions as a condition of using the site").

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

Apr. 27, 2010) ("As multiple courts have accepted, there is no relevant distinction between a user who knowingly allows content to be posted to a website he or she controls and a user who takes affirmative steps to republish another person's content; CDA immunity applies to both").[12]

Indeed, courts have emphasized that under Ninth Circuit law, "[i]ncreasing the visibility of a statement *is not tantamount* to altering its message," and that "[t]his holding is bolstered by the Ninth Circuit's *en banc* opinion in *Roommates.com*," where the court "asserted that 'in cases of enhancement by implication or development by inference ... section 230 *must be interpreted to protect websites*.'" *Asia Econ. Inst.*, 2011 WL 2469822, at *8 (quoting *Roommates.com*, 521 F.3d at 1174–75) (emphases added). Thus, "[a]bsent a changing" of the "*substantive content* that is visible to consumers," none of which is or can be alleged here with respect to connection invitations or their reminders, "liability cannot be found." *Id.* (emphasis added); *see also Small Justice LLC v. Xcentric Ventures LLC*, 2014 WL 1214828, at *7 (D. Mass. Mar. 24, 2014) (where defendant allegedly instructed search engines to make copies of user reports and to display copies to "maximize the number of times each of the" reports were listed on search engines' index, court held that "merely endeavoring to increase the prominence" of content "does not make [defendant] an information content provider").

This is equally true where, as alleged here, the users who are the source of the content claim that they did not explicitly authorize future republication, *i.e.*, reminder emails. Courts may withdraw "protection only for those internet service providers who would publish on the Internet *private communications* the *provider* knew or had reason to know *were never intended to be published at all*" online. *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110-11 (C.D. Cal. 2004), *aff'd in part, rev'd in part on other grounds and remanded*, 481 F.3d 751 (9th Cir. 2007) (emphasis added) (citing *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003)). Courts have

---

[12] As the California Supreme Court has held, "[a]t some point active involvement in the creation" of an "Internet posting would expose a defendant to liability as an original source," but where the defendant "made no changes" to the user consent, the court "need not consider when that line is crossed." *Barrett*, 40 Cal. 4th at 60. Here, LinkedIn made *no* substantive changes to the content at issue in the connection invitation, and only sent two reminders of those invitations to users. Thus, the Court need not consider precisely where such "active involvement" would cross the line.

MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

therefore rejected arguments that CDA immunity turns on whether plaintiffs intended for work already published on the Internet to be published on the defendant's website in particular, holding that such a rule improperly would require the defendant "to determine whether the information content provider intended the content to be published in a particular forum." *Id.* Similarly, courts have held that a website is immune from liability even where the "author of the defamatory content himself requests that it be taken down," holding that "liability based on an author's notice, workable or not, is without statutory support and is contrary to well-settled precedent that the CDA is a complete bar to suit against a website operator for its 'exercise of a publisher's traditional editorial functions.'" *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 932 (D. Ariz. 2008).[13] The content at issue here was not "private" or "unpublished." As the Court held, Plaintiffs consented to LinkedIn distributing their connection invitations to third parties. LinkedIn's decision to republish those invitations through reminders—to the very same parties that *already* received the connection invitations—is immune from liability under the CDA.

This Court's decision in *Fraley* is not to the contrary. There, the Court held that although under Plaintiffs' allegations Facebook "members provide some of the information used in Sponsored Stories by taking an action such as clicking the 'Like' button on a third-party's website," Facebook so fundamentally transformed this information in its Sponsored Stories that Facebook itself became an "information content provider" under the CDA. *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801-02 (N.D. Cal. 2011). As the Court observed, Facebook created content by "*mistranslating* members' actions, such as clicking on a 'Like' button on a company's page, into the words 'Plaintiff likes [Brand],' and further combining that text with Plaintiff's photograph, the company's logo, and the label 'Sponsored Story.'" *Id*. at 802 (emphasis added). Facebook did not just "rearrang[e] text and images provided by members," but "by

---

[13] Even if Plaintiffs alleged that they had not intended for LinkedIn to distribute *any* connection invitations *at all*, which the Court rejected in its Order, the potential *absence* of consent or knowledge on Plaintiffs' end is irrelevant because under the CDA "the focus should be *not* on the information provider's intentions or knowledge when transmitting content but, instead, on the *service provider's or user's* reasonable perception of those intentions or knowledge." *Batzel*, 333 F.3d at 1034 (emphasis added). "Otherwise, posting of information on the Internet and other interactive computer services would be chilled, as the service provider or user could not tell whether posting was contemplated." *Id.*

MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                    CASE NO. 13-CV-04303-LHK

grouping such content in a particular way with third-party logos, Facebook *transformed the character* of Plaintiffs' words, photographs, and actions into a *commercial endorsement*" and thus was not entitled to immunity under the CDA on the pleadings. *Id.* (emphases added).

Here, in contrast, Plaintiffs do not, and cannot, allege that LinkedIn "mistranslated" or "transformed the character" of any content provided by them.  To the contrary, the connection invitation "*contains the message that LinkedIn discloses to users*" and to which they consented. MTD Order at 29 (emphasis added).  The reminder emails merely refer back to and therefore contain exactly the same substantive content as the initial connection invitations, *e.g.,* SAC ¶ 23, and Plaintiffs "do not challenge the specific format or content" of the invitations or reminders, MTD Order at 29.  Indeed, while the Court in *Fraley* held that the character of the content Facebook users created by pressing the "Like" button was "transformed" into a commercial endorsement, the Court here already has rejected the notion that there is a "distinction between invitations, which LinkedIn clearly discloses, and endorsements, which Plaintiffs contend are contained in the email," as "an invitation and endorsement are synonymous." *Id.*  Thus, unlike in *Fraley*, Plaintiffs' allegations do not demonstrate that LinkedIn is an "information content provider" under the CDA.

### C.   Plaintiffs' Claims Are Barred By The First Amendment

#### 1.   Reminder Emails Concern Matters of Public Interest

Under the First Amendment, publication of matters in the public interest is not actionable under California's common law or statutory rights of publicity.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994,1001 (9th Cir. 2001); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995).  This defense "is not limited to 'news' in the narrow sense of reports of current events.  It extends also to the use of names, likenesses or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 225 (1998) (*citing* Restatement (Second) of Torts § 652D cmt. j).  "The First Amendment requires that the right to be protected from unauthorized publicity be balanced against the public interest in the dissemination of news and information consistent with the democratic

1   processes under the constitutional guaranties of freedom of speech and of the press." *Gionfriddo*

2   *v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001) (internal citations and quotation

3   marks omitted).  "[T]his balancing process begins by identifying and weighing the factors

4   properly taken into account.  At a minimum, a court must first consider the *nature of the precise*

5   *information conveyed and the context of the communication* to determine the public interest in the

6   expression,…[which] must then be weighed against the plaintiffs' [asserted interests]."  *Id.* at 410

7   (emphasis added).  Here, the facts alleged in the SAC and subject to judicial notice establish, as a

8   matter of law, that reminder emails concern matters of public interest that outweigh Plaintiffs'

9   asserted economic interests, and therefore constitute activity protected by the First Amendment.

10        Reminders serve the function identified by their name and convey the information required

11   by that function⸺they remind the recipients of connection invitations sent by LinkedIn members

12   that those invitations are pending and identify the LinkedIn members who sent them so that the

13   recipients know who the pending invitations are from.  As a platform for creating professional

14   networks of people, LinkedIn promotes the rights of speech and association guaranteed by the

15   First Amendment.  Accordingly, reminder emails, which refer recipients to communications from

16   LinkedIn members expressing their desire to connect, and which, according to Plaintiffs, increase

17   the likelihood of creating such connections, facilitate associations among people and therefore

18   concern matters of public interest.

19        The challenged use of member names and likenesses in reminders conveys information

20   that directly relates to these matters of public interest and, therefore, constitutes noncommercial

21   speech subject to the full protection of the First Amendment.  "[T]he core notion of commercial

22   speech is that it does no more than propose a commercial transaction." *Hoffman v. Capital*

23   *Cities/ABC, Inc.*, 255 F.3d 1180, 1184-85 (9th Cir. 2001) (quoting *Bolger v. Youngs Drug*

24   *Products Corp.*, 463 U.S. 60, 66 (1983)).   Here, even if the names and likenesses of LinkedIn

25   members used in reminders are found to endorse LinkedIn's services, they equally inform the

26   recipients of connection invitations sent by those same LinkedIn members that the invitations are

27   pending, as this Court has concluded.  *See* MTD Order at 29 ("an invitation and endorsement are

28

-20-        MOTION TO DISMISS SECOND AMENDED COMPLAINT
             CASE NO. 13-CV-04303-LHK

1   synonymous"). As such, the challenged use in this case is readily distinguishable from uses that

2   do "no more than propose a commercial transaction."

3       A comparison of *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536 (1993), and

4   *Downing,* 265 F.3d 994 (9th Cir. 2001), illustrates the difference between reminder emails and

5   uses that do no more than advertise a service or product. Both cases involved surfing and surf

6   culture, which were found to be matters of public interest, but only one conveyed information that

7   "contributed significantly" to that topic so as to be protected by the First Amendment. In *Dora,*

8   the plaintiff, surfing legend Mickey Dora, sued the producer of a surfing documentary for using

9   his name and likeness in the film without his consent, claiming common law and statutory

10  violations of his right of publicity. *See* 15 Cal. App. 4th at 540. The trial court and Court of

11  Appeal found that the challenged use was protected under the First Amendment because Dora's

12  contribution to the development of surf culture and his influence on the sport was "the point of the

13  program," and he was depicted in the documentary because his identity directly contributed to the

14  story about surfing. *Id.* at 543.

15      By contrast, in *Downing*, the Ninth Circuit held that the defendant retailer's use of the

16  plaintiff surfers' names and photographs in a product catalog were not protected by the First

17  Amendment. Although the catalog had a surfing theme, and therefore concerned a matter of

18  public interest, the court found that the challenged use was "essentially [] window-dressing to

19  advance the catalog's surf-theme." 265 F.3d at 1002. "The catalog did not explain that [plaintiffs]

20  were legends of the sport and did not in any way connect [plaintiffs] with the story preceding it."

21  *Id.* Accordingly, the court held that the First Amendment defense did not apply because the

22  challenged use did "not contribute significantly to a matter of the public interest." *Id.*

23      This Court's decision in *Fraley v. Facebook, Inc.*, further highlights the distinction. In

24  *Fraley*, the plaintiffs alleged that Facebook used member identities, without consent, in pure

25  advertisements for unrelated third-party products and services based on members clicking "Like"

26  buttons corresponding to the advertised products and services. 830 F. Supp. 2d at 791. The Court

27  held that it could not be determined as a matter of law that the plaintiffs' right of publicity claims

28  were barred by the First Amendment because the plaintiffs had sufficiently alleged that their

1   identities were used by Facebook in Sponsored Stories for "commercial advertising *purposes and*

2   *not part of 'any* news, public affairs, sports broadcast or account, or any political campaign.'" *Id*.

3   at 805 (emphasis added).

4          Here, as in *Dora*, the challenged use of member names and likenesses "directly contribute"

5   to the purpose of reminder emails because they identify the sender of connection invitations

6   referenced in reminder emails.  Indeed, they are "the point" of reminder emails because, without

7   such information, people receiving reminders would not know who sent the connection invitation

8   referenced in the reminder.  And, in contrast to *Downing* and *Fraley*, although Plaintiffs claim that

9   the challenged use is for commercial advertising purposes, they do not and cannot claim that it is

10  *solely* for advertising purposes.

11         In the SAC, Plaintiffs allege that LinkedIn sent reminders "endorsing its products, services,

12  and brand to potential new users," including premium memberships, for the purpose of "monetary

13  gain."  SAC ¶¶ 9, 14, 90.  Even taking this as true, a cursory review of an actual reminder shows

14  that member names are equally used in reminder emails *to convey factual information* concerning

15  a matter of public interest—that LinkedIn members have sent connection invitations.  According

16  to Plaintiffs, LinkedIn also sends reminders "to maximize membership growth and LinkedIn's

17  profits," which "increases its indirect revenue through sales to growing numbers of recruiters and

18  large corporations."  SAC ¶ 90.  But profits alone do not render expression purely commercial.

19  "The First Amendment is not limited to those who publish without charge.  [An expressive

20  activity] does not lose its constitutional protection because it is undertaken for profit."  *Comedy III*

21  *Prods., Inc. v. Gary Saderup, Inc.,* 25 Cal. 4th 387, 396 (2001); *see also Montana*, 34 Cal. App.

22  4th at 797 n.2.

23         Finally, even commercial use is only actionable "when the plaintiff's identity is used,

24  without consent, to promote an *unrelated product*."  *Gionfriddo*, 94 Cal. App. 4th at 413-14

25  (emphasis added); *see also, e.g.*, *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691–94 (9th Cir.

26  1998) (use of pitcher's image in beer advertisement); *Abdul–Jabbar* v. *Gen. Motors Corp.*, 85

27  F.3d 407, 416 (9th Cir. 1996) (use of basketball star's name in car commercial); *Waits v. Frito–*

28  *Lay, Inc.*, 978 F.2d 1093, 1097–98 (9th Cir. 1992) (use of imitation of singer's voice in snack food

                                            -22-    MOTION TO DISMISS SECOND AMENDED COMPLAINT
                                                    CASE NO. 13-CV-04303-LHK

commercial); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396  (9th Cir. 1992) (use of game-show hostess's "identity" in ad for electronic products); *Midler v. Ford Motor Co.*, 849 F.2d 460, 461 (9th Cir. 1988) (use of imitation of singer's voice in car commercial).  In the context of this case, challenging the means of creating an online professional network, the "product" is either the sender of the connection invitation, the platform facilitating the connection, or both. Accordingly, however the  "product" is defined, the challenged use is not only related to the product, it is essential to its operation.

Plaintiffs' right of publicity claims should be dismissed because the information conveyed by reminder emails and the context in which it is conveyed establish, as a matter of law, that they concern matters of public interest that outweigh Plaintiffs' claimed economic interest in being compensated for the use of their names and likenesses in reminders.  Reminders *follow up on* connection invitations sent by Plaintiffs themselves, are sent shortly after those connection invitation to the *same people* for the *same purpose*, contain the *same information* which Plaintiffs *chose to make public* by creating LinkedIn profiles and sending connection invitations, and which are limited to *at most two emails.  See e.g., Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 892 (1974) ("A person may, by his own activities or by the force of circumstances, become a public personage and thereby relinquish a part of his right of privacy to the extent that the public has a legitimate interest in his activities." (citation omitted)).

### 2.  Reminder Emails Publicize Protected Speech

Even if reminders are commercial speech, they are protected by the First Amendment because reminders merely refer to and publicize connection invitations which are themselves protected activity under the First Amendment.  *See, e.g.*, *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443–44 (C.D. Cal. 1996); *Guglielmi v. Spelling–Goldberg Prods.*, 25 Cal. 3d 860, 872–73 (1979) (Bird, C.J., concurring); *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 140–44 (2004).  Under this line of cases, First Amendment protection is extended to the use of a person's name and likeness in publicizing the underlying protected activities because it was "adjunct" or "incidental" to those activities.  Here, because connection invitations promote the rights of free speech and association protected by the First Amendment, to the extent reminders

1  are commercial speech, reminders are nevertheless protected by the First Amendment because

2  they refer to and publicize that protected activity.

3          In *Page v. Something Weird Video*, 960 F. Supp. 1438 (C.D. Cal. 1996), for example, a

4  manufacturer and distributor of videocassettes used drawings of the plaintiff, a former actress, to

5  advertise videos of films in which she starred.  The plaintiff claimed that the advertisements

6  misappropriated her identity by using newly-created drawings of her to publicize the release of the

7  videos.  *Id.* at 1444.  The court disagreed, holding that the "advertising is protected because the

8  videos themselves are protected by the First Amendment, and the advertising is incidental to the

9  protected publication of the videos."  *Id.*  Likewise, here, reminders publicize connection

10 invitations, which are themselves protected activity, by notifying the recipients of those invitations

11 that they are pending.  Accordingly, the First Amendment protections afforded to connection

12 invitations extends to the reminders that publicize them.

13          **D.      Plaintiffs' Claims Are Barred Because They Challenge An Incidental Use**

14         The alleged use of Plaintiffs' names and likenesses in reminder emails is an incidental use

15 under the Restatement (Second) of Torts ("Restatement"), and, therefore, is not actionable under

16 California's common law or statutory right of publicity.  The Restatement describes the incidental

17 use exception a follows:

18         *Incidental use of name or likeness.* The value of the plaintiff's name is not
           appropriated by mere mention of it, or by reference to it in connection with
19         legitimate mention of his public activities; nor is the value of his likeness
           appropriated when it is published for purposes other than taking advantage of his
20         reputation, prestige, or other value associated with him, for purposes of publicity.
           No one has the right to object merely because his name or his appearance is
21         brought before the public, since neither is in any way a private matter and both are
           open to public observation.  It is only when the publicity is given for the purpose
22         of appropriating to the defendant's benefit the commercial or other values
           associated with the name or the likeness that the right of privacy is invaded.
23
24 Restatement (Second) of Torts § 652C cmt. d.  Whether a challenged use falls within the

25 incidental use exception "is determined by the role that the use of the plaintiff's name or likeness

26 plays in the main purpose and subject of the work at issue."  *Yeager v. Cingular Wireless LLC*,

27 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009).  Here, the "subject" of reminder emails is

28

1  connection invitations sent by LinkedIn members themselves, and their "purpose" is to "remind"

2  recipients that those invitations that they are pending.

3      The "role" played by reminders further supports application of the incidental use exception

4  because it represents a common industry practice.  In *Almeida v. Amazon.com, Inc.*, 456 F.3d

5  1316, 1325–26 (11th Cir. 2006), the court held that use of the plaintiff's photo, which was

6  displayed on Amazon.com's website to promote the sale of a book in which the photo appeared,

7  did not constitute a violation of Florida's statutory right of publicity because "Amazon's use of

8  book cover images is not an endorsement or promotion of any product or service, but is merely

9  incidental to, and customary for, the business of Internet book sales."  *Id.*  The court held that it

10  could "discern no set of facts by which an internet retailer such as Amazon, which functions as the

11  Internet equivalent to a traditional bookseller, would be liable for displaying content that is

12  incidental to book sales."  *Id.*

13      Likewise, here, the use of member names and likenesses in reminders simulates

14  "traditional" networking.  People who want to connect in person share their names through

15  business cards and other means.  Accordingly, as an online network, LinkedIn's use of member

16  names and likenesses in connection invitations and reminders is incidental to, and customary for,

17  the practice of networking because it allows members to invite people to connect and for those

18  they have invited to consider the invitation and decide whether to accept it.  In light of these

19  circumstances, it may be determined as a matter of law that, as in *Almeida*, the challenged use of

20  member names and likenesses in reminder emails "is not an endorsement or promotion of any

21  product or service," but is "incidental to, and customary for" the business of online networking,

22  and therefore is not actionable as a violation of Plaintiffs' common law or statutory rights of

23  publicity.

24  **IV.   CONCLUSION**

25      For these reasons, the Court should dismiss Plaintiffs' request for statutory damages under

26  California Civil Code Section 3344 and dismiss the SAC with prejudice.

27

28

-25-     MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. 13-CV-04303-LHK

1   DATED:  September 18, 2014      MUNGER, TOLLES & OLSON LLP

2                                   JEROME C. ROTH
                                   ROSEMARIE T. RING

3                                   JONATHAN H. BLAVIN
                                   WILLIAM J. EDELMAN

By:  */s/ Jerome C. Roth*
      JEROME C. ROTH
Attorneys for Defendant
LINKEDIN CORPORATION