1   RUSS AUGUST & KABAT                    LIEFF CABRASER HEIMANN &
    Larry C. Russ, State Bar No. 82760     BERNSTEIN, LLP
2   Dorian S. Berger, State Bar No. 264424  Michael W. Sobol, State Bar No. 194857
    Daniel P. Hipskind, State Bar No. 266763 Melissa Gardner, State Bar No. 289096
3   12424 Wilshire Boulevard, 12th Floor   275 Battery Street, 29th Floor
    Los Angeles, California 90025          San Francisco, CA 94111-3336
4   Tel: (310) 826-7474                    Telephone:  (415) 956-1000
    Fax: (310) 826-6991                    Facsimile:  (415) 956-1008
5   Email: lruss@raklaw.com                Email: msobol@lchb.com
    Email: dberger@raklaw.com              Email: mgardner@lchb.com
6   Email: dhipskind@raklaw.com

7   *Attorneys for Plaintiffs and the Class*

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11  PAUL PERKINS, PENNIE SEMPELL, ANN          Case No. 13-cv-04303-LHK
    BRANDWEIN, ERIN EGGERS, CLARE
12  CONNAUGHTON, JAKE KUSHNER,                 **PLAINTIFFS' OPPOSITION TO
    NATALIE RICHSTONE, NICOLE CROSBY,          DEFENDANT'S MOTION TO DISMISS
13  AND LESLIE WALL; INDIVIDUALLY              SECOND AMENDED COMPLAINT**
    AND ON BEHALF OF ALL OTHERS
14  SIMILARLY SITUATED,
                                               **HEARING**
15                        Plaintiffs           Judge:     Hon. Lucy H. Koh
                v.                             Date:      November 13, 2014
16                                             Time:      1:30 p.m.
    LINKEDIN CORPORATION,                      Location:  Courtroom 8 – 4th Floor
17
                          Defendant.
18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF CONTENTS**

3

**Page**

4  I.      INTRODUCTION ..................................................................................................... 1

5  II.     BACKGROUND ...................................................................................................... 3

        A.      Newly Uncovered Facts Alleged In The Second Amended Complaint ................... 4

6       B.      Procedural History ................................................................................................. 5

7  III.    ARGUMENT ........................................................................................................... 5

8       A.      Legal Standard ....................................................................................................... 5

        B.      The Complaint Alleges Injury For Statutory Damages Under Section 3344 .......... 6

9           1.      The Second Amended Complaint States A Valid Section 3344 Claim. ....... 6

10                  a.      A Mental Harm Requirement Contradicts Section 3344's Plain
                            Language ...................................................................................... 7

11                  b.      A Mental Harm Requirement Conflicts With Section 3344's
                            Purpose ........................................................................................ 8

12          2.      This Court And Others Have Rejected A Mental Harm Requirement .......... 9

13          3.      LinkedIn Misrepresents The Holdings In *Miller* and *Cohen*. .................. 10

14          4.      Plaintiffs Have Alleged Mental Harm ...................................................... 11

15       C.      LinkedIn Cannot Claim Immunity Under The Communications Decency Act. ..... 12

16          1.      LinkedIn's Role In Controlling And Authoring Reminder Emails
                    Disqualifies LinkedIn From CDA Immunity .............................................. 13

            2.      LinkedIn Is Not A Mere Republisher Of Third-Party Content .................. 15

17          3.      This Court Denied CDA Immunity Under Analogous Facts In *Fraley*. ...... 17

18       D.      The First Amendment Does Not Protect LinkedIn's Marketing Emails ................ 18

19          1.      Plaintiffs' Rights of Publicity Outweigh Any Public Interest in LinkedIn's
                    Marketing Campaign ................................................................................ 18

20                  a.      LinkedIn's Commercial Speech Primarily Serves LinkedIn's
                            Economic Interests, Not the Public ............................................... 19

21                  b.      LinkedIn's Cases Do Not Support Its Motion ................................ 20

22                  c.      Plaintiffs' Interest in Their Rights of Publicity is Significant ......... 21

23          2.      LinkedIn's Unrelated Product and Publication Arguments Fail as a Matter
                    of Law. ..................................................................................................... 22

24                  a.      LinkedIn misunderstands *Gionfriddo's dicta* about "related"
                            products. ..................................................................................... 22

25                  b.      LinkedIn's Reminder Emails Do Not Publicize Protected Speech. 23

26       E.      The Incidental Use Doctrine Does Not Apply To LinkedIn's Misconduct. .......... 24

27  IV.     CONCLUSION ...................................................................................................... 25

28

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abdul-Jabbar v. GMC,*
    85 F.3d 407 (9th Cir. 1996)........................................................................ 20, 22

*Aligo v. Time-Life Books, Inc.,*
    1994 U.S. Dist. LEXIS 21559 (N.D. Cal. 1994)........................................... 24

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006)..................................................................... 25

*Anthony v. Yahoo! Inc.,*
    421 F. Supp. 2d 1257 (N.D. Cal. 2006) ....................................................... 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................ 5

*Asia Econ. Inst. v Xcentric Ventures LLC,*
    No. 10-01360, 2011 WL 2469822, (C.D. Cal. May 4, 2011) ...................... 16

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003)...................................................................... 16

*Bd. of Trs. v. Fox,*
    492 U.S. 469 (1989)...................................................................................... 21

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983)........................................................................................ 19

*Cal. Pub. Emps.' Ret. Sys. v. Superior Court,*
    160 Cal.App.4th 174 (2008) ........................................................................... 7

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003)...................................................................... 13

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,*
    447 U.S. 557 (1980)...................................................................................... 20

*Charles v. City of L.A.,*
    697 F.3d 1146 (9th Cir. 2012)................................................................. 19, 23

*Checkmate Strategic Group v. Yahoo!, Inc.,*
    No. 05-4558, 2005 U.S. Dist. LEXIS 46960 (C.D. Cal. Oct. 14, 2005).... 12

*Clark v. America Online, Inc.,*
    2000 U.S. Dist. LEXIS 17368 (C.D. Cal., Nov. 30, 2000)......................... 20

*Cohen v. Facebook, Inc.,*
    2011 U.S. Dist. LEXIS 12450................................................................... 2, 10

*Cohen v. Facebook, Inc.,*
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ......................................................... 2

*Comedy III Productions, Inc. v. Gary Saderup, Inc.,*
    25 Cal. 4th 387 (Cal. 2001).................................................................... 9, 21

*Del Amo v. Baccash,*
    No. 07-663, 2008 U.S. Dist. LEXIS 110489 (C.D. Cal. Sept. 16, 2008) .......... 9, 10

*Dora v. Frontline Video,*
   15 Cal. App. 4th 536 (1993) ........................................................................................ 20

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001)............................................................................ 18, 20, 21

*Evans v. Hewlett-Packard Company,*
   2013 WL 5594717 (N.D. Cal. Oct. 10, 2013)................................................................ 12

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC ("Roommate"),*
   521 F.3d 1157-68 (9th Cir. 2008) ........................................................ 11, 13, 15, 16

*Fairfield v. Am. Photocopy Equip.,*
   138 Cal. App. 2d 82 (1955)......................................................................................... 11

*Fraley v. Facebook, Inc.,*
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ..................................................... 2, 6, 9, 17

*Gill v. Curtis Publ'g Co.,*
   38 Cal. 2d 273 (Cal. 1952) ......................................................................................... 18

*Gionfriddo v. Major League Baseball,*
   94 Cal. App. 4th 400 (2001) ................................................................................. 22, 23

*Gugleilmi v. Spelling-Goldberg Prods.,*
   25 Cal. 3d 860 (1979) ................................................................................................. 24

*Hill v. Nat. Collegiate Athletic Ass'n.,*
   7 Cal. 4th 1 (Cal. 1994) .............................................................................................. 24

*Hoffman v. Capital Cities/ABC, Inc.,*
   255 F.3d 1180 (9th Cir. 2001)............................................................................... 18, 20

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.,*
   418 F. Supp. 2d 1142 (D. Ariz. 2005).......................................................................... 13

*In re Google, Inc. Privacy Policy Litig.,*
   No. 12-01382, 2013 U.S. Dist. LEXIS 171124 (N.D. Cal. Dec. 3, 2013) .................................. 9

*Jordan v. Jewel Food Stores, Inc.,*
   743 F.3d 509 (7th Cir. 2014)....................................................................................... 19

*Jurin v. Google, Inc.,*
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) ....................................................................... 17

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (Cal. 2002)........................................................................................ 18

*KNB Enters. v. Matthews,*
   78 Cal.App.4th 362 (2000) ........................................................................................... 6

*Lugosi v. Universal Pictures,*
   25 Cal. 3d 813 (1979) ................................................................................................... 8

*Midler v. Ford Motor Co.,*
   849 F.2d 460 (9th Cir. 1988)....................................................................................... 22

*Miller v. Collectors Universe, Inc.,*
   159 Cal. App. 4th 988 (2008) ................................................................................. 2, 10

*Mohamed v. Jeppesen Dataplan, Inc.,*
   579 F.3d 943 (9th Cir. 2009)......................................................................................... 5

*Motschenbacher v. R. J. Reynolds Tobacco Co.,*
   498 F.2d 821 (9th Cir. 1974)....................................................................................... 10

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998)................................................................................ 6, 22

*Orthopedic Systems, Inc. v. Schlein,*
   202 Cal. App. 4th 529 (2011) ..................................................................................... 9

*Page v. Something Weird Video,*
   960 F. Supp. 1438 (C.D. Cal. 1996) ......................................................................... 24

*Ramey v. Darkside Prods., Inc.,*
   No. 02-730 (GK), 2004 WL 5550485 (D.D.C. May 17, 2004) ................................. 16

*Rezec v. Sony Pictures Ent., Inc.,*
   116 Cal. App. 4th 135 (2004) ................................................................................... 24

*Robinson v. Snapple Beverage Corporation,*
   2000 U.S. Dist. LEXIS 8534 (S.D.N.Y. June 15, 2000) ........................................... 23

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   606 F.3d 658 (9th Cir. 2010)...................................................................................... 5

*Stilson v. Reader's Digest Ass'n,*
   28 Cal. App. 3d 270 (1972),
   *cert denied*, 411 U.S. 952 (1973) ............................................................................... 8

*Timed Out, LLC v. Youabian, Inc.*,
   2014 Cal. App. LEXIS 830 (Sept. 12, 2014) ............................................................ 21

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
   478 F.3d 413 (1st Cir. 2007) .................................................................................... 12

*Waits v. Frito-Lay, Inc.,*
   978 F.2d 1093 (9th Cir. 1992).................................................................................. 22

*White v. Samsung Elecs. Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992).......................................................................... 20, 22

*Yeager v. AT&T Mobility, LLC,*
   2012 U.S. Dist. LEXIS 74979 (E.D. Cal., May 30, 2012)......................................... 20


**Statutes**

47 U.S.C. § 230(f)(3) .................................................................................................... 2

Cal B&P Code § 17200................................................................................................ vi

Cal. Civ. Code § 3344 ........................................................................................... passim

Cal. Civ. Code § 3344(a)........................................................................................... 5, 8


**Other Authorities**

Douglas E. Mirell, *Right-of-Publicity Statutes: Some Historical Reflections and Recent
   Developments, Communications Lawyer*, Vol. 27, No. 3, at 15 (Sept. 2010) ............................ 8

John R. Braatz, *White v. Samsung Electronics America: The Ninth Circuit Turns a New Letter in
   California Right of Publicity Law*, 15 Pace L. Rev. 161, 180 (Fall 1994).................................. 8

Keenan C. Fennimore, *Note: Reconciling California's Pre, Post, and Per Mortem Rights of
   Publicity*, 22 Ind. Int'l & Comp. L. Rev. 377, 410 (2012)......................................................... 8

iv

## STATEMENT OF ISSUES TO BE DECIDED

To expand its membership and sell costly premium memberships, LinkedIn Corporation ("LinkedIn") misappropriates its users' identities and uses them to repeatedly spam users' contacts with invitations to join LinkedIn.  The Second Amended Complaint ("SAC") alleges that LinkedIn's practices violate California's Common Law Right of Publicity; California's Right of Publicity Statute, Civil Code § 3344 ("Section 3344"); and California Business and Professions Code § 17200, *et seq.* ("UCL").  The issues raised in LinkedIn's Motion to Dismiss the SAC are:

- **Eligibility For Statutory Damages.**  Must Plaintiffs allege mental harm to support a claim for statutory damages under Section 3344?
- **Communications Decency Act ("CDA") Immunity.**  Is LinkedIn eligible for immunity under the Communications Decency Act if LinkedIn is the provider, in whole or in part, of the reminder emails soliciting non-members to join LinkedIn?
- **First Amendment Protection.**  Does LinkedIn have a protected First Amendment right to send repeated emails bearing Plaintiffs' unconsented endorsement of LinkedIn to third parties?
- **Incidental Use.**  Does LinkedIn include Plaintiffs' names in its solicitation emails for a commercial purpose, or is the use merely incidental?

## I.    INTRODUCTION

Defendant LinkedIn's second Motion to Dismiss mischaracterizes allegations in the SAC, improperly seeks to relitigate issues that have already been decided, and misstates the law. Plaintiffs respectfully submit that the Court should deny LinkedIn's Motion in its entirety.

Plaintiffs are doctors, professors, attorneys, and small business owners who seek to represent a class challenging LinkedIn's harvesting of email addresses from their third-party email accounts and misappropriating their names and likenesses to repeatedly email their contacts "reminding" them of an earlier invitation to join LinkedIn.  Instead of obtaining the consent of users to repeatedly mass-email advertisements for its services using Plaintiffs' names and likenesses, LinkedIn tells users that LinkedIn will never "email anyone without your permission." SAC ¶¶ 1, 10, 73, 80.

LinkedIn's Motion relies on arguments that have been considered and rejected, both by this Court, and in factually analogous cases.  This Court's June 12, 2014 Order denying LinkedIn's Motion for Judgment on the Pleadings and denying in part LinkedIn's Motion to Dismiss rejected LinkedIn's argument that users consented to the sending of repeated

endorsement emails bearing the name or likeness of LinkedIn users. Dkt. No. 47 ("MTD Order") at 30-31. Further, this Court found that LinkedIn's repetitive emails sent in users' names "could injure users' reputations by allowing contacts to think that the users are the types of people who spam their contacts or are unable to take the hint that their contacts do not want to join their LinkedIn network." *Id.* at 31.[1]

Unable to show that LinkedIn users were not injured, or that they consented to LinkedIn's repeated emails, LinkedIn advances a host of conflicting arguments. For example, LinkedIn argues that repeated solicitation emails are speech about matters of public interest and, as the speaker, LinkedIn is shielded by the First Amendment. Yet, in claiming immunity under the Communications Decency Act, LinkedIn argues that it is neither a speaker nor an author of the tortious emails. Indeed, LinkedIn's arguments fail for all of the following reasons:

*First,* LinkedIn's argument that statutory damages under California Civil Code § 3344 cannot be awarded absent allegations of mental harm is contrary to this Court's prior rulings, and to the plain language and legislative history of the statute. The argument relies on several lines of cherry-picked, but ultimately unhelpful, *dicta* from *Miller v. Collectors Universe, Inc.*[2] and *Cohen v. Facebook, Inc.*[3] A later opinion from the Court in *Cohen*, which LinkedIn fails to mention, clarifies that pleading economic injury is, in fact, sufficient.[4] *Cohen* shows that LinkedIn's interpretation of Section 3344 inserts a limitation not found in the statutory text, and contrary to its purposes. Further, in *Fraley v. Facebook, Inc.*,[5] this Court previously considered and

---

[1] Counsel for LinkedIn made, and the Court rejected, an identical argument at the hearing on the motion to dismiss on April 10, 2014: "[T]here's certainly nothing that Plaintiffs have pointed to that suggest that somehow the additional two reminder e-mails causes any additional harm." Dkt. No. 44 ("Hr'g Tr.") at 29:15-17.

[2] 159 Cal. App. 4th 988 (2008) (holding a single individual was entitled to recover disgorged profits and statutory damages of 750 dollars for the unconsented to use of the individuals name).

[3] 798 F. Supp. 2d 1090 (N.D. Cal. 2011) (holding where Plaintiff did not allege economic injury Plaintiff had to allege mental harm to establish a claim under Section 3344).

[4] *See Cohen*, 2011 U.S. Dist. LEXIS 12450, at *6 (Criticizing the view that Section 3344 statutory damages are inapplicable if only economic injury is alleged. "Nothing in the June 27, 2011 Order, nor in *Miller*, represents a holding that non-celebrity plaintiffs can never pursue claims for economic loss and are instead limited to emotional damages.").

[5] 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011) ("The statutory text . . . can be read to presume that a person whose name . . . is used by another for commercial purposes without their consent is 'injured as a result thereof.'").

dismissed an argument identical to the one LinkedIn makes here.

*Second,* LinkedIn incorrectly argues that it is immune under the CDA, reasoning that Plaintiffs' consent to LinkedIn's first invitation emails makes Plaintiffs the sole authors of those emails and all subsequent reminders.  This argument conflates consent with authorship. Plaintiffs' limited consent to participate in one part of LinkedIn's campaign to recruit new users does not make Plaintiffs the authors of the campaign and all its subsequent parts.  Indeed, LinkedIn provides nearly all substantive content in its reminder emails, fails to show users the text of the reminder emails prior to transmission, and controls to whom and when reminder emails are sent.  As a provider, "in whole or in part," of the content of the reminder emails LinkedIn is ineligible for CDA immunity.  47 U.S.C. § 230(f)(3).  Such immunity is intended to protect neutral third-party websites from liability for the content of third-party postings.  That is not at issue here.

*Third,* LinkedIn mistakenly claims that its repetitive reminder emails are speech protected by the First Amendment even if they are marketing materials that use Plaintiffs' names and likenesses without consent.  Yet, commercial speech receives a reduced level of constitutional protection, and misleading commercial speech receives none.  There is no constitutional right for LinkedIn to further its economic interests by targeting Plaintiffs' networks with misleading email advertisements.  Any constitutional protection LinkedIn's "reminder" emails might receive is outweighed here by Plaintiffs' interests in controlling the commercial use of their identities. LinkedIn's argument to the contrary misunderstands and misrepresents the governing law.

*Fourth,* LinkedIn derives a commercial benefit from sending endorsement emails and thus is not protected by the tort law exception for an "incidental use."  Far from being incidental, Plaintiffs' names are critical to the success of LinkedIn's marketing campaign.

Accordingly, and as discussed further below, LinkedIn's Motion should be denied.

## II.   BACKGROUND

LinkedIn is a social networking company that directs its products and services to those it describes as "people in professional occupations."  SAC ¶ 42.  The value and profitability of LinkedIn's product derives from the number of members who use it, and particularly from those

1  who might buy "premium" memberships.  *Id*. ¶¶ 12-19.  In an effort to enroll new users and sell

2  premium memberships, LinkedIn harvests email addresses and data stored in LinkedIn users'

3  third-party email accounts.  *Id.* ¶¶ 43-61, 68-70.  After copying and permanently storing the data

4  on its servers, LinkedIn asks users if they want to "[s]tay in touch with your contacts who aren't

5  on LinkedIn yet.  Invite them to connect to you."  *Id*. ¶ 63.  The box to "Accept" is already

6  checked.  A click of the "Enter" button causes LinkedIn to send to each appropriated email

7  address an email that appears to come from the LinkedIn user from whom the addresses were

8  harvested, inviting the recipient to join LinkedIn.

9        A week after LinkedIn sends these emails, LinkedIn sends each recipient another email

10  ostensibly from the LinkedIn user, advertising LinkedIn.  *Id*. ¶ 72.  Again, a week later, this

11  process is repeated with a third endorsement email inviting the recipient to sign up for LinkedIn.

12  *Id*.  Even when users discover that these emails have been sent to addresses harvested from their

13  email accounts, they have no practical way to stop more emails from being sent.  *Id*. ¶¶ 75-77.

14  LinkedIn members have been unpleasantly surprised to discover that LinkedIn had sent emails in

15  their names to former spouses, opposing counsel, clients, students of professors, and a host of

16  other inappropriate and unintended destinations.  *Id*. ¶¶ 3-4, 10, 27-28.

17        For example, Plaintiff, Jake Kushner, an Associate Professor of Pediatrics and Section

18  Head of Pediatric Diabetes at Baylor College of Medicine in Houston, Texas discovered that

19  LinkedIn had emailed hundreds of his colleagues and students.  The emails invited them to join

20  LinkedIn, and provided links to LinkedIn's website, where the recipients were asked to pay $400

21  per year for a "premium" LinkedIn membership.  *Id*. ¶ 2.  Plaintiff Clair Connaughton,

22  Consulting Attorney for the United States Agency for International Development and member of

23  the Eastern District of New York Federal Court Mediation Panel, discovered that LinkedIn had

24  sent emails ostensibly on her behalf to hundreds of people including opposing counsel in active

25  litigation and the clients of opposing counsel.  *Id*. ¶¶ 31-32.

26        **A.    Newly Uncovered Facts Alleged In The Second Amended Complaint**

27        Plaintiffs' claims arise from a practice central to LinkedIn's business model, which is

28  signing up new members by sending repeated solicitation emails to non-members using the names

4

(and sometimes likenesses) of existing LinkedIn members.  The SAC includes newly uncovered details regarding the centrality of repeated solicitation emails to LinkedIn's business model.  These include statements of Josh Elman, LinkedIn's 15th Employee and Head of Growth, who described LinkedIn's strategy behind sending out multiple reminder emails, as follows: "**[I]t took several emails to a person before they would actually sign up for LinkedIn**.  It would average about 3.2 in the early days."  SAC ¶ 6 (emphasis added).  LinkedIn discounted the harm to its existing users and focused on monetary gain to itself.  Josh Elman described LinkedIn's decision to keep spamming non-members as driven by what "works:" "**Oh my god everybody is spamming each other, so should we fix that?**  That number 3.2 was actually really really important that's how many emails you need to get before you sign up and so we kept the email importer and it still works."  *Id.* ¶ 17 (emphasis added).

### B.    Procedural History

On September 17, 2013, Plaintiffs brought this action against LinkedIn.  Dkt. No. 1.  Plaintiffs filed a First Amended Complaint ("FAC") on October 3, 2013.  Dkt. No. 7.  Following this Court's denial on July 7, 2014 of LinkedIn's Motion to Strike and denial in part of LinkedIn's Motion to Dismiss, the parties entered into non-binding mediation with retired Federal Judge Hon. Howard Matz., Dkt. No. 56.  On August 28, 2014, Plaintiffs filed the SAC, which seeks declaratory, monetary, injunctive and other equitable relief against LinkedIn, as well as damages pursuant to Section 3344.  Dkt. No. 55.[6]  On September 18, 2014, LinkedIn brought the instant Motion to Dismiss.  Dkt. No. 60 ("Def. Br.").

## III.    ARGUMENT

### A.    Legal Standard

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks "a cognizable legal theory" or "sufficient facts alleged to support a cognizable legal theory."

---

[6] Although the elements of Section 3344 are nearly identical to the previously alleged common law right of publicity claim, Plaintiffs did not allege a violation of Section 3344 prior to this Court's June 12, 2014 Order because of Section 3344's fee shifting provisions.  At the hearing on LinkedIn's first Motion to Dismiss, Plaintiffs' counsel Larry Russ addressed this topic: "[I]n a [Section] 3344 claim, there's a fee shifting clause, and we represent plaintiffs who are not rich by any means and we didn't want to subject them to the risk and they didn't want to have that risk. So we decided to proceed under common law theories."  Hr'g Tr. 17:6-11.

*Shroyer v. New Cingular Wireless Servs., Inc*., 606 F.3d 658, 664 (9th Cir. 2010).  The Court must accept as true all of the factual allegations contained in the complaint and draw "all reasonable inferences from the complaint in [plaintiffs'] favor," *Mohamed v. Jeppesen Dataplan, Inc*., 579 F.3d 943, 949 (9th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.     The Complaint Alleges Injury For Statutory Damages Under Section 3344

Contrary to LinkedIn's assertions, Plaintiffs have alleged the elements of a Section 3344 claim, including injury.  California Civil Code § 3344(a) provides in relevant part, "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner . . . for purposes of advertising . . . without such person's prior consent . . . shall be liable for any damages sustained by the person."  Section 3344 is a "complement" to the California common law right of publicity law; it provides for statutory remedies for unauthorized commercial use of individuals' names.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998). Section 3344 was designed to provide all individuals with a ready means of recompense when their likenesses or names are used for commercial purposes "without consent."  *KNB Enters. v. Matthews*, 78 Cal.App.4th 362, 367 (2000).[7]

LinkedIn's argument that plaintiffs who allege only economic injury cannot recover statutory damages under Section 3344, Def. Br. at 2, should be rejected for four reasons.  *First*, the plain language of Section 3344 demonstrates that it provides a remedy in cases where class-wide emotional injury presents difficulties of proof.  *Second*, this Court and other courts have rejected arguments identical to LinkedIn's, and permitted recovery of statutory damages based upon allegations like those here.  *Third*, LinkedIn's case law is either *dicta* or contrary to LinkedIn's own argument.  *Fourth*, even assuming that allegations of emotional injury were required to recover statutory damages, the SAC alleges significant harm to Plaintiffs' privacy rights and reputations caused by LinkedIn's intrusive, embarrassing, and repetitive reminder emails.  SAC  ¶¶ 23-40; MTD Order at 31.

### 1.     The Second Amended Complaint States A Valid Section 3344 Claim.

---

[7] *See also Fraley*, 830 F. Supp. 2d at 803 ("a plaintiff must plead all the elements of the common law action and must also prove 'a knowing use by the defendant,' and 'a direct connection between the alleged use and the commercial purpose'").

The SAC alleges facts sufficient to support Plaintiffs' claims that LinkedIn violated their statutory rights of publicity.  Specifically, Plaintiffs allege that "[d]uring the Class period, LinkedIn knowingly used Plaintiffs' names, photographs, or likenesses to directly advertise or sell a product," SAC ¶ 134; that LinkedIn's "[u]se of Plaintiffs' names, photographs, and likenesses were directly connected to LinkedIn's commercial use," *Id.* ¶ 139; and, critically, that "LinkedIn did not have Plaintiffs' consent." *Id.* ¶ 135.  Plaintiffs were harmed by LinkedIn's appropriation of their identities for solicitation purposes because they received no compensation or other consideration for LinkedIn's use of their images in LinkedIn's repeated solicitation emails to non-members.  *Id.* ¶ 136.  Section 3344 is explicit; any non-consensual use of someone's likeness for "purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services," results in liability.

This Court has already recognized that Plaintiffs' FAC pled economic injury because "individuals' names have economic value where those names are used to endorse or advertise a product," MTD Order at 40, and also held that "Plaintiffs have plausibly alleged that they suffer additional harm from the second and third endorsement emails." *Id.* at 59.

### a.   A Mental Harm Requirement Contradicts Section 3344's Plain Language

There is nothing ambiguous about the words of Section 3344, which provides that, where a plaintiff alleges injury and the additional elements of the claim, "the person who violated the section shall be liable" for statutory damages.  Cal. Civ. Code § 3344.  Reading a mental harm requirement into Section 3344 would impermissibly import a limitation where none exists.  *See Cal. Pub. Emps.' Ret. Sys. v. Superior Court*, 160 Cal.App.4th 174, 180 (2008) ("We must not ignore the plain meaning of the statute by either **adding words that are not there** or ignoring language that is.") (emphasis added).  While Section 3344 does not prevent a plaintiff from pleading and recovering under a theory of mental anguish, the Legislature expressly intended that plaintiffs would recover in circumstances where their names or likenesses had been used, without consent, to a defendant's economic advantage.  The Legislature could have, but did not, tie statutory penalties to allegations of mental harm.

### b. A Mental Harm Requirement Conflicts With Section 3344's Purpose

The California legislature intended to protect against conduct like LinkedIn's when it enacted Section 3344.  The statute was precipitated by a class action with facts similar to those here.[8]  In *Stilson v. Reader's Digest Ass'n,* 28 Cal. App. 3d 270 (1972), *cert denied*, 411 U.S. 952 (1973), computer-generated solicitation letters were mailed by Reader's Digest to sets of neighboring individuals.  Each letter stated that *Reader's Digest* had selected the recipients and their neighbors as sweepstakes contestants.  *Id*. at 272.  The neighbors were identified by name, and the recipients were named as "neighbors" in letters sent to other residents.  *Id*. at 273.   The *Stilson* class action complaint alleged that *Reader's Digest* had misappropriated residents' names to sell magazine subscriptions, in violation of their privacy rights.  In order to recover damages, however, California law at the time required each recipient to prove mental harm, a burden that ultimately prevented class certification.  *Id*. at 273-74.

In response to *Stilson*, the California legislature added Section 3344 to the state's civil code.[9]  The bill's author Assemblyman John Vasconcellos in a letter endorsing the bill, stated,

---

[8] *See* Plaintiffs submit concurrently herewith a Request for Judicial Notice (hereinafter, "RJN") attaching excerpts from the legislative history:  Assembly Committee on Judiciary analysis of AB 826 (Section 3344), RJN Ex. 1 ("Bill suggested to the author by people who had their names used in connection with a magazine advertising scheme. . . AB 826 provides: . .  Injunctive relief and **class actions authorized**."); Senate Committee on Judiciary, Background Information AB 826, RJN Ex. 2 (Question: "What problem or deficiency under existing law does the bill seek to remedy?" Answer: "**Provides practical recourse to individuals for the misappropriation of their identify for commercial uses by providing minimum damages and class action**."); March 8, 1971 Press Release from Assemblyman John Vasconcellos Announcing AB 826, RJN Ex. 3 ("AB 826 will provide that such unauthorized usage of a person's name will constitute a violation of privacy and can result in a possible awards of $1,000 in damages.  **Additionally, the bill will make class-actions possible**.").

[9] *See* John R. Braatz, *White v. Samsung Electronics America: The Ninth Circuit Turns a New Letter in California Right of Publicity Law*, 15 Pace L. Rev. 161, 180 n.134 (Fall 1994), attached as Ex. B to the Declaration of Dorian S. Berger (hereinafter "Berger Decl."), filed concurrently herewith (Describing Section 3344 as a reaction to Stilson where the "[t]he court stated that such a class action on behalf of over 20 million persons would be an "intolerable burden" on the judicial system, since each plaintiff would have to prove his or her state of mind and mental suffering.  As a result of these types of damage proof problems for non-celebrity plaintiffs, the statute includes a minimum recovery amount of $750 per plaintiff."); Douglas E. Mirell, *Right-of-Publicity Statutes: Some Historical Reflections and Recent Developments, Communications Lawyer*, Vol. 27, No. 3, at 15 (Sept. 2010) (Berger Decl. Ex. C) ("Concerned that a lawsuit to recover anything more than nominal damages (i.e., one cent to one dollar) would require proof of emotional distress or direct financial injury, Vasconcellos set out to create a statutory remedy, California Civil Code § 3344 . . . . Vasconcellos hoped that these statutory damages, along with the threat of possible class action litigation, would deter such advertising schemes in the future.");

"With the increasing sophistication of the advertising industry and its never-ending search for new ways to promote products, it becomes imperative that the law be equipped to provide some sort of protection to the individual citizen from an invasion of his privacy."[10]  The statute was designed to relieve class members from proving individual damages by providing a minimum statutory recovery of $300.[11]  The legislative record thus directly contradicts LinkedIn's argument that damages must be tied to mental anguish.

The California Supreme Court has considered this issue twice.  Both times, the Court found that a right of publicity claim brought under Section 3344 is primarily economic in nature.  In *Lugosi v. Universal Pictures*, the Court held, "[t]he so-called right of publicity means in essence that the reaction of the public to name and likeness . . . endows the name and likeness of the person involved with commercially exploitable opportunities."  25 Cal. 3d 813, 825 (1979).  Subsequently, in *Comedy III Productions, Inc. v. Gary Saderup, Inc.,* 25 Cal. 4th 387, 396 (Cal. 2001), the Court held, "the right of publicity is essentially an economic right.  What the right of publicity holder possesses is . . . a right to prevent others from misappropriating the economic value generated."  25 Cal. 4th at 403.  Section 3344's statutory damages provisions are directed at penalizing defendants who derive economic benefit from using individuals' names without consent.  These penalties are not, as LinkedIn argues, tied to claims for mental anguish.

## 2. This Court And Others Have Rejected A Mental Harm Requirement.

This Court has considered and rejected LinkedIn's argument that pleading economic injury is insufficient to sustain a claim for statutory damages under Section 3344.  *See* Def. Br. at 8 (arguing that "Plaintiffs "must, at a minimum, plead that they suffered mental anguish").  In both *Fraley* and the instant proceedings, defendants incorrectly have asserted that *Miller* and *Cohen* establish a mental harm requirement.[12]  This Court rejected an identical argument in

---

Keenan C. Fennimore, *Note: Reconciling California's Pre, Post, and Per Mortem Rights of Publicity*, 22 Ind. Int'l & Comp. L. Rev. 377, 410 (2012).

[10] November 10, 1971 letter from Assemblymen Vasconcellos to Governor Reagan regarding AB 826, RJN Ex. 4 at 1.

[11] In 1984 the statutory minimum recovery was raised to $750.  1984 Cal. Stat. ch. 1704, § 2 (now codified at Cal. Civ. Code § 3344(a) (2011)).

[12] Facebook's Reply Brief erroneously stated that "*Cohen* and *Miller v. Collectors Universe, Inc.* both held that a non-celebrity plaintiff with no established value in his or her name or likeness

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

1   *Fraley*, holding that allegations of economic injury were sufficient.  *See Fraley*, 830 F. Supp. 2d

2   at 806 ("Plaintiffs allege not that they suffered mental anguish as a result of Defendant's actions,

3   but rather that they suffered economic injury because they were not compensated for Facebook's

4   commercial use of their names.").

5       Other Courts have also rejected the argument.  In *Orthopedic Systems, Inc. v. Schlein*,

6   California's First District Court of Appeal interpreted Section 3344 and held that economic injury

7   was sufficient to claim minimum statutory damages, stating, "the phrase referencing profits is set

8   off by a comma, suggesting that it applies both to the minimum statutory damages and to actual

9   damages."  202 Cal. App. 4th 529, 545 (2011).  In *Del Amo v. Baccash*, Judge Gutierrez held that

10  to establish a claim for minimum statutory damages under Section 3344 a Plaintiff need only

11  show: "(1) use of plaintiff's identity, (2) the appropriation of plaintiff's name or likeness

12  to defendant's advantage, commercially or otherwise, and (3) a lack of consent . . . [C]ourts

13  generally presume that the fourth element of the applicable test has been established."  No. 07-

14  663, 2008 U.S. Dist. LEXIS 110489, *17 (C.D. Cal. Sept. 16, 2008); *In re Google, Inc. Privacy*

15  *Policy Litig.*, No. 12-01382, 2013 U.S. Dist. LEXIS 171124, *28 (N.D. Cal. Dec. 3, 2013)

16  (Where a plaintiff alleges an unauthorized commercial use of a person's name or likeness, "courts

17  generally presume that [injury] has been established for a Section 3344 claim.") (citations

18  omitted); *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 825 (9th Cir. 1974)

19  (suggesting that the appropriation itself creates injury sufficient to establish statutory damages

20  under Section 3344.  This Court's inquiry could end here, as LinkedIn does not challenge the

21  sufficiency of Plaintiffs' allegations regarding the first three elements of Section 3344.

22          **3.    LinkedIn Misrepresents The Holdings In *Miller* and *Cohen*.**

23      LinkedIn incorrectly relies on *Cohen v. Facebook*, and *Miller v. Collectors Universe* to

24  posit that a plaintiff must plead that he or she suffered mental anguish from the misappropriation

25  alleged to recover statutory damages.  LinkedIn's reading of both cases is incorrect and its

26  conclusion is likewise incorrect.  LinkedIn relies on a decision in *Cohen*, but fails to inform the

27

28  must plead 'mental anguish' to state a claim under Section 3344."  Defs. Reply Dkt. No. 57 at 6.

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

Court that Judge Seeborg issued a subsequent opinion in *Cohen* rejecting exactly the argument LinkedIn makes here. *See Cohen v. Facebook, Inc.*, 2011 U.S. Dist. LEXIS 124506, *6 (stating that prior decision in *Cohen* did **not** limit Section 3344 claims to allegations of emotional harm.).

LinkedIn's reliance on *Miller* is similarly unavailing. LinkedIn relies on *dicta* to argue that a plaintiff can *only* recover statutory damages if mental anguish is pled.[13] As Judge Seeborg stated in *Cohen*, this reading of *Miller* is too narrow and goes beyond the holding of the case. *Id.*[14] *Miller* did not concern whether a plaintiff was required to plead mental harm to make a claim for statutory damages. The Court in *Miller* ruled narrowly on the "one publication" rule: whether a Plaintiff could recover thousands of times for the same unconsented to use of his identity. Here, Plaintiffs do not allege that they should recover separately for each unconsented to email sent by LinkedIn. Thus, *Miller's* holding as to pleading requirements is inapposite. Further, *Miller* relied upon *Fairfield v. Am. Photocopy Equip.*, 138 Cal. App. 2d 82 (1955), a case that predates the passage of Section 3344 by twenty years.[15]

### 4.  Plaintiffs Have Alleged Mental Harm

Even if mental anguish were a prerequisite to claiming statutory damages under Section 3344, which it is not, Plaintiffs have alleged such harm. The SAC alleges that each Plaintiff was concerned with keeping private their professional and personal relationships, and LinkedIn's

---

[13] *Miller* is distinguishable on its procedural posture. *Miller* concerned an appeal from a jury verdict. In contrast, where defendants have sought dismissal of a Section 3344 claim on a 12(b)(6) motion, as here, courts have not required allegations of economic or emotional injury. *See e.g.*, *Del Amo*, 2008 U.S. Dist. LEXIS 110489, *4 ("Consequently, in accordance with the applicable case law, the Court presumes that the fourth element was satisfied for purposes of a section 3344 claim that sought minimum statutory damages.").

[14] In *Miller*, a jury found that defendant's collectibles business without consent used the name of a plaintiff authenticator, a former employee, on 14,060 certificates of authenticity. The Court of Appeal defined the basic question as whether the plaintiff "could have stated 14,060 causes of action in this case [$750 * 14,060]." *Miller* at 1004.

[15] In *Fairfield*, the plaintiff was a lawyer who purchased and returned a photocopier because it was defective but who was nevertheless included in an advertisement listing him as a satisfied customer. 138 Cal. App. 2d at 85. The principal ground for the granting of a demurrer below had been the absence of proof of injury. The California Supreme Court found that it was error to exclude testimony where the plaintiff attempted to prove more than nominal damages. *Id.* at 90. The *Miller* court assumed from *Fairfield* that Section 3344 was enacted to provide the noncelebrity with recourse for his or her mental anguish-but there is nothing in the subsequently enacted statute that supports the proposition that a non-celebrity must allege mental anguish in order to qualify for statutory damages.

1   repeated emailing injured Plaintiffs' privacy. *See* SAC ¶¶ 23-40 ("Dr. Kushner was concerned

2   about the **privacy of his contacts and did not want them to be repeatedly emailed** by

3   LinkedIn.") (emphasis added). Indeed, this Court has already found that LinkedIn's reminder

4   emails are "personally harmful" and an "annoyance," and "individuals who receive second and

5   third email invitations to join LinkedIn . . . may become annoyed at the sender, which could be

6   professionally or personally harmful." MTD Order at 31 (emphasis added). Such annoyance,

7   personal harm, and invasions of privacy are the types of injuries that LinkedIn asserts Section

8   3344's statutory remedy is directed toward. *See* Def. Br. at 7-8 (the "legislative history of Section

9   3344 strongly suggests that the Legislature was concerned with an individual's right to privacy.").

10          **C.    LinkedIn Cannot Claim Immunity Under The Communications Decency Act.**

11          LinkedIn is not entitled to CDA immunity. LinkedIn "is responsible, in whole or in part,

12  for the creation or development" of the "offending information [and therefore] is not entitled to

13  the CDA's protection." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*

14  *("Roommates.com")*, 521 F.3d 1157, 1167-68 (9th Cir. 2008). LinkedIn generates the text of the

15  reminder emails, controls to whom reminder emails are sent, and, without consent, uses the

16  names and likenesses of LinkedIn members in reminder emails. No case cited by LinkedIn

17  supports LinkedIn's argument that LinkedIn can author the text of the reminder emails, deny

18  users an opportunity to see the text, and still claim immunity under the CDA.

19          LinkedIn's self-serving view of CDA protection would expand CDA immunity far beyond

20  its intended scope. The CDA was created to protect internet service providers ("ISPs") from

21  liability for the actions of third parties. *Id.* at 1174. The CDA was not intended to allow an ISP

22  to claim immunity from its own actions. Where, as here, Plaintiffs seek to hold LinkedIn liable

23  for its conduct, *i.e.*, authoring and sending repetitive reminder emails without consent, the CDA

24  does not apply. *See Checkmate Strategic Group v. Yahoo!, Inc.*, No. 05-4558, 2005 U.S. Dist.

25  LEXIS 46960, at *21 (C.D. Cal. Oct. 14, 2005) (finding CDA protections inapplicable where

26  "plaintiff is not attempting to shift liability from the third parties"). To immunize LinkedIn's

27  actions here would turn the language and intent of the CDA on its head.

28

1

**1.    LinkedIn's Role In Controlling And Authoring Reminder Emails Disqualifies LinkedIn From CDA Immunity**

2

The CDA provides limited protection against secondary liability for service providers, but

3

does not protect primary content creators such as LinkedIn.  LinkedIn created new and original

4

content – the reminder emails in question – by generating the text of the reminder emails and

5

sending them without the consent of LinkedIn users.  SAC ¶¶ 99-101.[16]

6

Section 230(e)(3) of the CDA defines an "Internet Content Provider" as "any person or

7

entity that is responsible, in whole or in part, for the creation or development of information

8

provided through the Internet or any other interactive computer service."  The CDA does not

9

protect service providers that publish tortious content created by the providers themselves.  *See*

10

*Anthony v. Yahoo! Inc*., 421 F. Supp. 2d 1257, 1262-1263 (N.D. Cal. 2006) (holding no CDA

11

immunity where dating service's alleged creation of false profiles induced plaintiff to maintain

12

membership to the site); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142,

13

1149 (D. Ariz. 2005) (holding that CDA did not bar claims premised on service provider's

14

creation of its own comments and other defamatory content to accompany third-party postings).[17]

15

LinkedIn's reminder emails are almost entirely composed by LinkedIn, using language,

16

layout and graphics selected (without user input) by LinkedIn.  *See* Figs. 1 & 2, below; *see also*

17

Berger Decl. Ex. A, Figs. 2-3.  LinkedIn generates the content in the reminder emails.  SAC ¶

18

100.  Although LinkedIn claims that users provide their name, job title and location to LinkedIn,

19

over 80% of the language in a reminder email is generated by LinkedIn.  Figs. 1 & 2.  When

20

LinkedIn sends out a first reminder email LinkedIn generates nearly all the content without any

21

22

[16] LinkedIn's citation of cases for the proposition that Plaintiffs cannot plead around CDA immunity, illustrates the inapplicability of Section 230 to this case.  Defs. Br. at 16 n.10.  All the cases involved a plaintiff attempting to hold a defendant liable for the acts of an unrelated third party.  This is not at issue in this case.  *See Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 418 (1st Cir. 2007) (holding Lycos immune for the postings of third parties on its bulletin boards); *Evans v. Hewlett-Packard Company*, 2013 WL 5594717, at *4 (N.D. Cal. Oct\. 10, 2013) (Dismissing Chubby Checker's claims against HP's AppStore based on an unrelated third party selling a "Chubby Checker app" through the AppStore.).

23

24

25

[17] LinkedIn's argument that it is an Internet Service Provider and thus immune for all its activities is contravened by 9th Circuit law.  "A website operator can be both a service provider and a content provider . . . . as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider.  Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content."  *Roommates.com,* 521 F.3d at 1162-63.

26

27

28

13

input from a user.  The "from" line of the email identifies the sender as the member from whom the email address was harvested.  *Id.*, Box 1.  The subject line of the reminder email reading either "Reminder about your invitation from [Name Of LinkedIn User]" or "[User Name's] invitation is awaiting your response" is also generated by LinkedIn.  *Id.*, Box 2.

LinkedIn creates and sends out two styles of reminder emails.  In both versions of the reminder emails, the layout, and the text, are generated by LinkedIn without any input of the LinkedIn user.  "This is a reminder that on [date], [user name] sent you an invitation to become part of their professional network on LinkedIn."  Fig. 1, Box 3.  Further, LinkedIn denies users the ability to edit or select language from a drop down menu.  *Compare Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (finding CDA immunity where users selected language for their profiles from prepopulated dropdown menus).  The text of the invitation is also created primarily by LinkedIn including the subject line and the solicitation to join LinkedIn, "I'd like to add you to my professional network on LinkedIn."  Fig 1, Box 4-5. LinkedIn even claims copyright authorship of the messages.  Figs. 1 & 2, Box 6.



Figure 1.  LinkedIn First Reminder Email, Red Boxes Show Text And Graphics Authored By LinkedIn.[18]

---

[18] The Court is respectfully requested to take judicial notice of Figures 1-2 and corresponding

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

LinkedIn's second reminder email is also authored by LinkedIn. In addition to generating much of the same content discussed above with respect to the first reminder email, the body of the second reminder email is a creation of LinkedIn that contains the solicitation, "[Name] would you to connect with you on LinkedIn. How would you like to respond?" Fig. 2, at Box 3. This language was never selected by the LinkedIn user on whose behalf the second reminder email is ostensibly sent. In addition, the second form of LinkedIn's reminder email can contain the image of the LinkedIn user from whom the email address was harvested. *Id.*, Box 5.



Figure 2, LinkedIn Second Reminder Email, Red Boxes Show Content Created By LinkedIn.

### 2. LinkedIn Is Not A Mere Republisher Of Third-Party Content

As the Ninth Circuit Court of Appeals held, Section 230 of the CDA immunizes

---

Exhibit A. As described more fully in the Plaintiffs' Request for Judicial Notice, LinkedIn's CDA arguments raise an affirmative defense. Plaintiffs should have a fair opportunity to respond to such an argument. When considering a motion to dismiss a court is required "accept as true all well-pled allegations and construe the complaint in the light most favorable to the plaintiff." *Ashcroft*, 556 U.S.at 678. Instead, LinkedIn asks the Court to hold that when a party asserts in a motion to dismiss that it has an affirmative defense, the underlying claim should be dismissed for failing to negate that defense. The Federal Rules of Civil Procedure contain no such a requirement. When Defendant asks to point outside the four corners of the Complaint and allege a supposed defense, Plaintiffs should be entitled to present evidence rebutting such a defense (or the motion should simply be rejected).

"providers of interactive computer services against liability arising from content created by third parties." *Roommates.com*, 521 F.3d at 1163. The language of the Act itself emphasizes that this immunity is only for secondary liability: "Congress sought to immunize the removal of user-generated content, not the creation of content." *Id.* at 1163-64. In *Roommates.com*, the Ninth Circuit expressly rejected the very argument LinkedIn advances here, that modest content contribution by the subscriber/user triggers CDA immunity:

> [T]he fact that users are information content providers does not preclude Roommate from also being an information content provider by helping develop at least in part the information in the profiles. As we explained in *Batzel*, the party responsible for putting information online may be subject to liability, even if the information originated with a user.

*Id.* at 1163 (*citing Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)).

LinkedIn is doing more than simply publishing another content provider's information, it is creating new content. LinkedIn plays a significant role in creating, developing or "transforming" the relevant information. A reminder email is something that the class representatives never requested or authored. SAC ¶ 61.

LinkedIn's assertion that its contributions to the reminder emails are merely "traditional editorial functions" and thus immune from challenge under the CDA mischaracterizes the facts of the case. Def.'s Br. at 15. Plaintiffs here do no more than contribute their name and occupation to LinkedIn.[19] LinkedIn then generates the initial invitation email that is sent out. Although this Court found that LinkedIn users consented to the sending of an initial invitation email, LinkedIn is responsible at least in part for the creation of the initial invitation email. LinkedIn's website does not allow a user to compose or select any of the text in invitation emails. LinkedIn does not even provide a user with a preview of the content of the invitation emails prior to sending them. SAC ¶¶ 65, 67. In *Batzel*, the Court of Appeal stated that the exclusion of publisher liability

---

[19] Nor is this an instance where an ad has been edited only to make it more "visible, such as by adding HTML meta tags" *Asia Econ. Inst. v Xcentric Ventures LLC*, No. 10-01360, 2011 WL 2469822, (C.D. Cal. May 4, 2011); instead, LinkedIn's contribution to the reminder emails are substantive content. Nor is LinkedIn conducting the type of editing of an ad as in *Ramey v. Darkside Prods., Inc.*, No. 02-730 (GK), 2004 WL 5550485 (D.D.C. May 17, 2004), where it was undisputed that the advertisement at issue was created by a third party, and the Defendant's minor alterations of the advertisement included printing its website address on every advertisement published on its website.

16

necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message. 333 F.3d at 1031. Here, the reminder emails were not composed by Plaintiffs, and LinkedIn is not merely choosing among proffered material, it is adding material such as logos and all of the solicitation text.

*Batzel* and the other cases cited therein as well as the other cases relied upon by LinkedIn for the "editorial function" exception, only address instances where the editing consisted of keeping the basic form and message intact, and where the content from which portions are being selected were all provided initially by the original content provider / third party. *In Jurin v. Google, Inc.*, the court rejected CDA liability for Google for suggesting keywords used in its Adwords ads, because the defendant did not provide the content of the 'Sponsored Link' advertisements… Defendant's keyword suggestion tool hardly amounts to the participation necessary to disqualify it of CDA immunity." 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010). Here, LinkedIn is creating wholly new content that contains the unconsented to use of LinkedIn's users names and/or likenesses.

### 3.    This Court Denied CDA Immunity Under Analogous Facts In *Fraley*.

This Court has already considered and rejected arguments nearly identical to those made here.  In *Fraley*, under a theory of misappropriation of likeness, plaintiffs sued defendant Facebook for using their identities, images, and likenesses to generate targeted advertising. Facebook argued that because it is an "interactive computer service," Section 230 precluded the plaintiffs' claim.  Ruling against Facebook on Section 230 immunity, this court found that Facebook was liable because plaintiffs were not accusing Facebook of "publishing tortious content, but rather of creating and developing commercial content that violates their statutory right of publicity."  *Fraley*, 830 F. Supp. 2d at 801.  Analogously, here, the defendant is creating new content that contains the unconsented to use of users names and likeness.  Despite LinkedIn's statements to the contrary, LinkedIn transforms the content it receives from Plaintiffs. LinkedIn takes Plaintiffs' names and likenesses and incorporates them into email endorsements of

LinkedIn whose text and layout are determined entirely by LinkedIn.

### D.        The First Amendment Does Not Protect LinkedIn's Marketing Emails.

The SAC challenges an extensive, intrusive, and misleading marketing campaign by LinkedIn, which unlawfully benefited from the unauthorized use of Plaintiffs' identities. LinkedIn argues that it has a constitutional right to market itself using Plaintiffs' names.  But LinkedIn's reminder emails are misleading commercial speech, which are not protected by the First Amendment.  Indeed, LinkedIn is wrong on the law and wrong on the facts.

*First*, LinkedIn incorrectly claims that the public has a greater interest in the repeated delivery of "reminders" misleadingly purporting to come from Plaintiffs than Plaintiffs have in protecting their reputations.  This argument ignores settled precedent establishing that tortious commercial speech warrants no First Amendment protection.  *Second*, LinkedIn argues that, even if the emails were commercial speech – which they are – they are still protected because their contents necessarily "relate[]" to either LinkedIn, or to the Plaintiffs named in the emails.  As demonstrated below, this circular argument misunderstands the relevant case law, and has no merit either.  *Third* and finally, LinkedIn contends that the emails publicize "protected activity," but LinkedIn points only to protected activities by Plaintiffs, not by LinkedIn.

LinkedIn's argument that the First Amendment bars Plaintiffs' claims should be rejected.

#### 1.        Plaintiffs' Rights of Publicity Outweigh Any Public Interest in LinkedIn's Marketing Campaign.

LinkedIn incorrectly contends that its reminder endorsement emails are immunized against right of publicity claims because the emails publish matters in the "public interest."  In fact, these emails are "commercial speech," which is rarely, if ever, protected by the First Amendment.  *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 952 (Cal. 2002) ("The federal Constitution accords less protection to commercial speech."); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) ("False or misleading commercial speech is not protected.").

Protection for noncommercial publication of matters in the public interest is associated with "freedom of the press." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).  However, this defense "is not absolute." *Id.*  Instead, a "proper accommodation" must be

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

found between freedom of speech and the right of publicity.  *Id.*  The California Supreme Court has established a balancing test which weighs any public interest in the speech against the economic and privacy interests at stake.  "Factors deserving consideration may include the medium of publication, the extent of the use, the public interest served by the publication, and the seriousness of the interference with the person's privacy.  *Gill v. Curtis Publ'g Co.*, 38 Cal. 2d 273, 278-79 (Cal. 1952).  As discussed below, any tenuous relationship LinkedIn's widespread marketing may have to the public interest is secondary to LinkedIn's true motivation, which is advertising, and LinkedIn's marketing has seriously interfered with Plaintiffs' rights of publicity.

a.  **LinkedIn's Commercial Speech Primarily Serves LinkedIn's Economic Interests, Not the Public.**

Rather than serving the public's interests, LinkedIn's "reminders" are commercial speech, i.e., nothing more than strategically designed marketing materials intended to hassle recipients into using LinkedIn.  SAC ¶ 17 ("3.2 . . . [T]hat's how many emails you need to get before you sign up and so we kept the email importer and it still works."); ¶¶ 12, 15, 90.

While there is no bright-line test for whether speech is "commercial," certain relevant factors include: (1) is the speech an advertisement; (2) does it refer to a specific product or service; and (3) is the speech economically motivated.  *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983).[20]  An affirmative answer to all three questions – as here – provides "strong support" for the conclusion that the speech is commercial.  *Id.*  In *Bolger v. Youngs Drug Products*, the Supreme Court ruled on whether certain mass-mailed pamphlets were commercial speech.  These pamphlets almost exclusively discussed sexually transmitted diseases, which are matters of public interest.  But, based upon the totality of the pamphlet's characteristics, namely that they were mailed with an economic motive, they were conceded to be advertisements, and they referred to the defendant's product, the Court held that they were commercial speech.  463 U.S. at 66-67.  The facts of this case are similar to those the Court found dispositive in *Bolger*.

This Court has already held that LinkedIn's emails are advertising.  MTD Order at 39.

---

[20] *See also Charles v. City of L.A.*, 697 F.3d 1146, 1151 (9th Cir. 2012) ([T]he boundary between commercial and noncommercial speech has yet to be clearly delineated.").

19

1   LinkedIn's reminder emails explicitly market LinkedIn to recipients, advertising LinkedIn's logo

2   no fewer than five times.  *See infra.* P. 15-16 Figs. 1-2; *See also Jordan v. Jewel Food Stores,*

3   *Inc.*, 743 F.3d 509, 518 (7th Cir. 2014) ("An advertisement is no less 'commercial' because it

4   promotes brand awareness . . . rather than explicitly proposing a transaction").  Further,

5   LinkedIn's motivation for sending the emails is patently economic.  SAC ¶¶ 12, 15, 90.  These

6   emails are LinkedIn's marketing tools.

7        Any self-serving advertiser could argue, as LinkedIn does, that its product promotes First

8   Amendment concerns.  *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S.

9   557, 562 n.5 (1980) (noting that "many, if not most, products may be tied to public concerns,"

10  and declining to "grant broad constitutional protection to . . . advertising" on that basis).  Even if

11  LinkedIn's reminder emails did arguably promote a First Amendment concern, they still would

12  not warrant First Amendment protection because their primary purpose is commercial.  *See*

13  *Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996) (advertisement not entitled to First

14  Amendment protection even though it contained information of significant public interest).[21]

15  Nothing in the First Amendment prevents Plaintiffs here from seeking justice for the harm caused

16  by LinkedIn's opportunistic marketing scheme.

17            **b.**      **LinkedIn's Cases Do Not Support Its Motion.**

18        Striving to avoid the inevitable commercial speech classification, LinkedIn misrepresents

19  the test for commercial speech, asserting that any speech that does more than propose a

20  commercial transaction is not "commercial."  Def. Br. at 20 (citing *Hoffman*, 255 F.3d at 1184-

21  85).  Far from supporting LinkedIn's black and white statement of the rule, *Hoffman* recognized

22

---

23  [21] *See also White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (as amended) (advertisement in which "spoof" was entirely subservient to primary message to "buy" product, not protected); *Yeager v. AT&T Mobility, LLC*, 2012 U.S. Dist. LEXIS 74979 (E.D. Cal., May 30, 2012) (press release discussing both emergency preparedness, a matter of public interest, and also promoting defendant's brand, was commercial speech).  Indeed, LinkedIn's contention that reminder emails "facilitate associations among people and therefore concern matters of public interest," Def. Br. at 20, is not tenable and not the law.  Under that logic, any for-profit provider of a communications service would be immune from liability for the privacy torts committed in pursuit of new customers.  No such immunity exists in the law. *See, e.g., Clark v. America Online, Inc.*, 2000 U.S. Dist. LEXIS 17368 (C.D. Cal., Nov. 30, 2000) (denying summary judgment motion based upon public interest defense where defendant had mass mailed advertising containing unauthorized reference to celebrity).

that the "boundary between commercial and noncommercial speech has yet to be clearly delineated." *Id.* LinkedIn seeks additional support for its misstatement of the law in a comparison of *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) and *Dora v. Frontline Video*, 15 Cal. App. 4th 536 (1993). LinkedIn's comparison omits key facts of those cases – facts that highlight the shortcomings of LinkedIn's argument.

*Dora* concerned use of a surfing legend's photograph in a documentary about surfing, while *Downing* concerned surfers' photographs in a clothing brochure, the defendant's "largest advertising vehicle." *Downing*, 265 F.3d at 999. The Ninth Circuit held that, unlike portraying a surfing legend in a documentary, using photographs in a clothing brochure did not contribute significantly to the public interest, and that Abercrombie's brochure was "more commercial in nature and, therefore, not entitled to the full First Amendment protection." *Id.* at 1002 n.2 (distinguishing Hoffman).[22] LinkedIn's emails here are also "more commercial in nature." *See id.*

Further, holding LinkedIn accountable to Plaintiffs would serve the public interest and does not endanger any countervailing First Amendment rights. *C.f., Bd. of Trs. v. Fox*, 492 U.S. 469, 474 (1989) (upholding commercial speech regulation, stating that "[n]othing . . . prevents the speaker from conveying, or the audience from hearing, these noncommercial messages, and nothing in the nature of things requires them to be combined with commercial messages.").

### c. Plaintiffs' Interest in Their Rights of Publicity is Significant.

Further undermining any First Amendment protection in LinkedIn's sending of reminder emails is Plaintiffs' significant interest in protecting the publicity rights that LinkedIn has opportunistically violated. LinkedIn's practice of intentionally spamming every person who had ever sent, received, or been carbon copied on emails to the Plaintiffs, SAC ¶ 63, is a classic violation of Plaintiffs' right of publicity. *See Timed Out, LLC v. Youabian, Inc.*, 2014 Cal. App. LEXIS 830, at *5 (Sept. 12, 2014) (quoting *Comedy III Prods.*, 25 Cal. 4th at 403). LinkedIn's success in recruiting new members came at a cost to Plaintiffs' reputations. *See* SAC ¶¶ 50, 57, 67, 77. Thus, the balance between the Plaintiffs' interests, both in protecting their reputations and

---

[22] *See also Fraley*, 830 F. Supp. 2d at 791(denying motion to dismiss right of publicity claims where misappropriated likenesses were used in advertising).

recovering for LinkedIn's unauthorized commercial use of their identities, compared to the faint

or non-existent public interest in LinkedIn's scheme to recruit new users, weighs heavily in favor

of the Plaintiffs.  LinkedIn's public interest defense should be rejected.

>                   2.    **LinkedIn's Unrelated Product and Publication Arguments Fail as a
>                         Matter of Law.**
>
>                         a.    **LinkedIn misunderstands _Gionfriddo's dicta_ about "related"
>                               products.**

The Court should reject LinkedIn's circular argument that commercial speech is only

actionable if the plaintiff's identity is used to promote an "unrelated product." LinkedIn hangs

this theory on a misreading of a single paragraph in _Gionfriddo v. Major League Baseball_, 94 Cal.

App. 4th 400, 413 (2001).  Plaintiffs are aware of no other support for this specious argument

and, other than copying and pasting unsupportive citations from the _Gionfriddo_ opinion itself,

LinkedIn cites to none.

_Gionfriddo_ held that the First Amendment protected the right of Major League Baseball to

refer to baseball players in depictions of their performance in Major League Baseball games.  Far

from creating universal immunity for commercial speech about amorphously-defined "related"

products, however, _Gionfriddo_ merely observed, in _dicta_, that creators of constitutionally-

protected speech have a right to publicize it:

> A review of the cases finding that commercial speech violates the right of
> publicity strongly suggests that advertisements are actionable when the
> plaintiff's identity is used, without consent, to promote an unrelated
> product[23]. . . .  A celebrity's likeness may be used, however, **to advertise
> a related product**. Courts have consistently held that the news media may
> use celebrity photographs from current or prior publications as
> **advertisements for the periodical itself**, illustrating the quality and
> content of the periodical without the person's written consent [citations
> omitted]. . . . Thus, even if Baseball used depictions of players playing the
> game or recited statistics or historical facts about the game to advertise
> the game and promote attendance, the commercial speech cases relied on by
> plaintiffs would be inapposite.  **The owner of a product is entitled to
> show that product to entice customers to buy it.**

---

[23] Here, _Gionfriddo_ cites to, _inter alia_, _Newcombe v. Adolf Coors Co._, 157 F.3d 686 (9th Cir. 1998); _Abdul-Jabbar v. Gen. Motors Corp._, 85 F.3d 407 (9th Cir. 1996); _Waits v. Frito-Lay, Inc._, 978 F.2d 1093 (9th Cir. 1992); _White v. Samsung Elecs. Am., Inc._, 971 F.2d 1395 (9th Cir. 1992); _Midler v. Ford Motor Co._, 849 F.2d 460 (9th Cir. 1988), with parentheticals substantively identical to those in LinkedIn's Motion.

94 Cal. App. 4th at 413-14 (emphasis added).

In other words, limited First Amendment protection exists for the promotion of protected speech.  LinkedIn, however, nonsensically interprets this *dicta* to mean that advertisers are exempt from tort liability if they market themselves, or if their commercial speech relates to a consumer of their products or services.  Def. Br. at 23 (advancing that the "product" here must be either the LinkedIn platform or the plaintiffs).  Even if the full context of *Gionfriddo*'s "related products" discussion did not itself refute LinkedIn's argument, which it does, further clarification from *Gionfriddo* proves that LinkedIn's reading is wrong.  The court explained, "if Baseball used the photograph of a celebrity attending a game in a similar advertisement, plaintiffs' commercial speech cases would be more apt." *Id.* at n.10.   A celebrity attending a ball game has the same consumer relationship with Major League Baseball as Plaintiffs have with LinkedIn.  *Gionfriddo* recognizes that merely consuming a product does not preclude a tort remedy if the product's owner then makes unauthorized use of the consumer's name or likeness.  Indeed, such a remedy would be appropriate.  For example, in *Robinson v. Snapple Beverage Corporation*, a beverage company published an advertisement showing the plaintiffs singing at a private event and holding its beverages, and the Court granted summary judgment on liability to the plaintiffs under a New York statute that prohibited unauthorized use of names or likenesses in advertising.  2000 U.S. Dist. LEXIS 8534, at *15 (S.D.N.Y. June 15, 2000).  Under LinkedIn's misunderstanding of the law on "related products," the advertisement would have been protected from liability because the company was advertising *itself* and because the plaintiffs were consuming its product.

    **b.**  **LinkedIn's Reminder Emails Do Not Publicize Protected Speech.**

LinkedIn further argues that the First Amendment entitles it to use Plaintiffs to publicize its product because the product concerns "underlying protected activities."  This argument stretches the First Amendment's limited publication exception beyond its reasonable boundaries.  As the Ninth Circuit recently explained, "[t]he principle unifying the exceptions to the commercial speech doctrine for advertisements for protected works is the need to protect advertisers from tort actions that would otherwise threaten the ability of publishers to truthfully

promote particular works . . . . [I]t is only in the narrow context of this principle that we have

recognized that the noncommercial First Amendment status of an underlying expressive work

extends to advertisements for that work." *Charles*, 697 F.3d at 1155.  LinkedIn's emails are

advertisements created by LinkedIn that, in addition to generating brand recognition and

misappropriating Plaintiffs' names, re-publicize the associational activities of Plaintiffs, not any

underlying protected work or act undertaken by LinkedIn.  No case cited by LinkedIn holds that

advertisements are protected by the First Amendment because, in marketing itself, the advertiser

publicized the protected activities of somebody else.

In an effort to support its misguided argument, LinkedIn cites a number of inapposite

decisions holding that the creators of protected speech were not liable for advertisements

publicizing their own protected works.  *See* Def. Br. at 23, citing *Page v. Something Weird Video*,

960 F. Supp. 1438, 1443-44 (C.D. Cal. 1996) (video distributor entitled to use actress's likeness

to advertise video featuring actress).[24]  The instant case, however, challenges LinkedIn's abuse of

its access to Plaintiffs' identities and personal and professional networks, access which it uses to

conduct a far-ranging marketing campaign to its own financial benefit and to Plaintiffs'

detriment.  The First Amendment does not protect such actions.

Accordingly, LinkedIn's arguments based upon the First Amendment should be rejected.

**E.**     **The Incidental Use Doctrine Does Not Apply To LinkedIn's Misconduct.**

Contrary to LinkedIn's arguments, the incidental use doctrine does not apply here because

Plaintiffs' identities were instrumental in – not incidental to – increasing the economic value of

LinkedIn's marketing campaign.  The incidental use doctrine provides that use of a plaintiff's

name or likeness is actionable only if the use appropriates some "commercial or other value of

[the plaintiff's] name or likeness." *Hill v. Nat. Collegiate Athletic Ass'n.*, 7 Cal. 4th 1, 26 n.6

(Cal. 1994).  In other words, "an *incidental* use has no commercial value." *Aligo v. Time-Life

Books, Inc.*, 1994 U.S. Dist. LEXIS 21559, at *6 (N.D. Cal. 1994) (emphasis added).  LinkedIn's

---

[24] *See also Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 872-73 (1979) (Bird, C.J., concurring) (filmmaker entitled to advertise its film using identity of character in film); *Rezec v. Sony Pictures Ent., Inc.*, 116 Cal. App. 4th 135, 140-44 (2004) ("[J]ust as the films are noncommercial speech, so is an advertisement reflecting their content").

OPP. TO MOTION TO DISMISS SAC
CASE NO. 13-CV-04303-LHK

own Motion acknowledges that the incidental use doctrine does not apply "when the publicity is given for . . . appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness."  Def. Br. at 24, quoting Restatement (2d) of Torts § 652C cmt. d.

Here, LinkedIn used Plaintiffs' names for their economic value.  LinkedIn's goal in sending personalized "reminder" emails was to increase the emails' effectiveness as marketing tools.  SAC ¶¶ 71-72.  As this Court has already stated, "endorsements or invitations from friends or acquaintances are more valuable . . . . It is this measure of personalization of an endorsement that routinely has a concrete and provable value."  MTD Order at *37.  Thus, LinkedIn's argument that Plaintiffs' names are merely "incidental" to the emails' true purpose is absurd and, in any event, foreclosed by both the SAC's allegations and this Court's holding that the use of Plaintiffs' names to promote LinkedIn is "indisputably economically valuable to LinkedIn."  *Id.*

Finally, the lone case discussed by LinkedIn to support its purported incidental use defense is inapposite.  In *Almeida v. Amazon.com, Inc.*, the defendant used the plaintiffs' photograph to publicize the book in which the photo appeared, not to endorse Amazon.com, or any other product or service.  456 F.3d 1316, 1325-26 (11th Cir. 2006).  LinkedIn's reminder endorsement emails, on the other hand, are specifically designed to publicize LinkedIn, and Plaintiffs' names contributed significantly to the commercial value of that endeavor.  SAC ¶¶ 12, 15, 17, 71-72, 90.  Because the use of Plaintiffs' names is alleged to have "commercial value," here, the incidental use defense does not avail

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, this Court should deny LinkedIn's motion.  Alternatively, if the motion is granted in any respect, Plaintiffs respectfully request leave to amend.

1    Dated: October 9, 2014                Respectfully submitted,

2                                          RUSS AUGUST & KABAT

3

4                                          By:  /s/ Larry C. Russ

5                                               Larry C. Russ

6                                          RUSS AUGUST & KABAT
                                           Larry C. Russ (State Bar No. 82760)
7                                          Dorian S. Berger (State Bar No. 264424)
                                           Daniel P. Hipskind (State Bar No. 266763)
8                                          12424 Wilshire Boulevard, 12th Floor
                                           Los Angeles, California 90025
9                                          Telephone: (310) 826-7474
                                           Facsimile:  (310) 826-6991
10                                         Email: lruss@raklaw.com

11

12                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           Michael W. Sobol (State Bar No.194857)
13                                         Melissa A. Gardner (State Bar No. 289096)
                                           275 Battery Street, 29th Floor
14                                         San Francisco, CA  94111-3336
                                           Telephone:  (415) 956-1000
15                                         Facsimile:  (415) 956-1008
                                           Email: msobol@lchb.com
16                                         Email: mgardner@lchb.com

17                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           Nicholas Diamand (ND-9701)
18                                         250 Hudson Street, 8th Floor
                                           New York, NY  10013-1413
19                                         Telephone:  (212) 355-9500
                                           Facsimile:  (212) 355-9592
20                                         Email: ndiamand@lchb.com

21                                         *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

OPP. TO MOTION TO DISMISS SAC
                                           CASE NO. 13-CV-04303-LHK