1  LARRY C. RUSS (SBN 82760)
lruss@raklaw.com
2  NATHAN D. MEYER (SBN 239850)
nmeyer@raklaw.com
3  RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
4  Los Angeles, California 90025
Telephone: (310) 826-7424
5  Facsimile: (310) 826-6991

DORIAN S. BERGER (SBN 264424)
dberger@olavidunne.com
DANIEL P. HIPSKIND (SBN 266763)
dhipskind@olavidunne.com
OLAVI DUNNE LLP
1880 Century Park East, Ste. 815
Los Angeles, California 90067
Telephone: (213) 516-7900
Facsimile: (213) 516-7910

6  MICHAEL W. SOBOL (SBN 194857)
msobol@lchb.com
7  NICHOLAS R. DIAMAND (*Pro Hac Vice*)
ndiamand@lchb.com
8  MELISSA GARDNER (SBN 289096)
mgardner@lchb.com
9  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
10  San Francisco, CA 94111
Telephone: (415) 956-1000
11  Facsimile: (415) 956-1008

12  *Class Counsel*

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                          SAN JOSE DIVISION

17  PAUL PERKINS, PENNIE SEMPELL, ANN
BRANDWEIN, ERIN EGGERS, CLARE
CONNAUGHTON, JAKE KUSHNER,
18  NATALIE RICHSTONE, NICOLE CROSBY,
and LESLIE WALL; individually and on
19  behalf of all others similarly situated,

20                                    Plaintiffs
       v.
21
   LINKEDIN CORPORATION,
22
                                   Defendant.
23

Case No. 13-cv-04303-LHK

**NOTICE OF MOTION AND MOTION
FOR ATTORNEYS' FEES,
LITIGATION COSTS, AND
INCENTIVE AWARDS**

**HEARING**
Judge:      Hon. Lucy H. Koh
Date:       February 11, 2016
Time:       1:30 p.m.
Location:   Courtroom 8 – 4th Floor

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND .................................................................................. 2

     A.   The Conduct At Issue.................................................................... 2

     B.   The Prospective Changes Benefitting the Settlement Class ...................... 3

     C.   The Settlement Fund Achieved for the Settlement Class........................... 5

     D.   Class Counsel Undertook Considerable Risk in Prosecuting this
          Action ...................................................................................... 6

III. ARGUMENT ...................................................................................... 7

     A.   The Requested Fee is Reasonable and Appropriate ................................ 7

          1.   Class Counsel are Entitled to a Fee Under the Common
               Fund Doctrine ..................................................................... 7

          2.   The Court Should Calculate Class Counsel's Fee As a
               Percentage of the Settlement Fund............................................ 7

          3.   Class Counsel's Fee Request is Warranted Under the
               Percentage-of-the Fund Method................................................ 9

               a.   Class Counsel Achieved an Commendable Result ............ 9

               b.   The Fee Was 100% Contingent........................................ 11

               c.   The Skill and Quality of Work Performed Support
                    the Requested Fee. ..................................................... 12

               d.   A Comparison to Fee Awards in Other Cases
                    Demonstrates the Reasonableness of the Fee
                    Requested ................................................................ 12

          4.   A Lodestar-Multiplier "Cross-Check" Further Confirms the
               Reasonableness of the Fee .................................................... 13

               a.   The Lodestar Reflects Efficient Prosecution of This
                    Action.................................................................... 13

               b.   Class Counsel's Lodestar is Reasonable.......................... 14

               c.   A Multiplier is Warranted ........................................... 15

               d.   Class Counsel Are Not Seeking Reimbursement of
                    their Costs In Addition to Their Fee Award. ................... 15

     B.   The Requested Service Awards are Reasonable and Appropriate ............ 16

IV.  CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bayat v. Bank of the W.*,
No. 13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................................................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................... 8, 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................................ 7

*Cruz v. Sky Chefs, Inc.*,
No. 12-270, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ................................................. 13

*de Mira v. Heartland Employment Serv., LLC*,
No. 12 -4092, 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .............................................. 13

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................................................ 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 8-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................... 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......................................................................................................... 10

*In re Activision Secs. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................................... 8

*In re Apple iPhone/iPod Warranty Litig.*,
2014 U.S. Dist. LEXIS 52050 (N.D. Cal. Apr. 14, 2014) ..................................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................................ 9

*In re Google Buzz Privacy Litig.*,
No. 10-672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) .............................................. 11, 15

*In re Google Referrer Header Privacy Litig.*,
No. 10-4809, 2015 WL 1520475 (N.D. Cal. Mar. 31, 2015) .......................................... 11, 15

*In re High-Tech Employee Antitrust Litig.*,
No. 11-2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............................................ 14, 15

*In re M.D.C. Holdings Sec. Litig.*,
No. 89-90, 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ..................................................... 13

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ............................................................................... 15, 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .............................................................................................. 13

*In re Netflix Privacy Litig.*,
No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................................... 11, 15

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................... 9, 10, 12

*In re TracFone Unlimited Serv. Plan Litig.*,
No. 13-3440, 2015 WL 4051882 (N.D. Cal. July 2, 2015) ................................................. 15

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Wash. Pub. Power Supply System Sec. Litig.*,
  19 F.3d 1291, 1300 (9th Cir. 1994)..............................................................7, 11, 13

*Knight v. Red Door Salons, Inc.*,
  No. 8-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................9, 13

*Lane v. Facebook, Inc.*,
  No. 8-3845, 2010 WL 2076916 (N.D. Cal. May 24, 2010)....................................15

*Linney v. Cellular Alaska P'ship*,
  No. 96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir.
  1998) .........................................................................................................................10

*Lusby v. GameStop Inc.*,
  No. 12-3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)..................................13

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ................................................................................................15

*Rieckborn v. Velti PLC*,
  No. 13-3889, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ......................................13

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)...................................................................................8

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)........................................................................7, 10, 16

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)
  *cert. denied*, 132 S. Ct. 1876 (2012) ......................................................................16

*Velez v. Novartis Pharm. Corp.*,
  No. 4-9194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)....................................17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)........................................................................passim

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................8

*Walsh v. Kindred Healthcare*,
  No. 11-50, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013).....................................10

**Rules**

Fed. R. Civ. P. 23(h) ....................................................................................................10

Fed. R. Civ. P. 23(h)(1)..................................................................................................1

Fed. R. Civ. P. 54(d)(2)..................................................................................................1

**Treatises**

Federal Judicial Center, *Manual for Complex Litigation*,
  §27.71 (4th ed. 2004) ..............................................................................................10

Theodore Eisenberg & Geoffrey P. Miller,
  *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 20 (2009)..................8

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**Other Authorities**

Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.* at 73 (2005)...................... 8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 11, 2016 at 1:30 pm., or as soon thereafter as this matter may be heard, before the Honorable Lucy H. Koh, United States District Court for the Northern District of California, located in Courtroom 8, on the 4th Floor of the Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California, Class Counsel will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an order awarding:  (1) attorneys' fees and costs to Class Counsel in the amount of $3,250,000, which is 25% of the $13,000,000 common fund created for the Class (with no additional payment for Class Counsel's costs, which total $57,589.91); and (2) Service Awards to the nine Class Representatives of up to $1,500 each.

As discussed in the accompanying memorandum, the requested awards are fair, reasonable and justified under applicable law.  This motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Larry C. Russ; the Declaration of Nicholas Diamand; and the Declaration of Daniel P. Hipskind; papers filed in support of preliminary approval; any oral argument by counsel at the hearing before this Court; any papers filed in reply; and all papers and records in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Class Counsel respectfully move the Court for an award of attorneys' fees and costs[1] from the Settlement Fund[2] in the total amount of $3,250,000 which is 25% of the $13,000,000 Settlement Fund created by the Class, *inclusive of* costs (Class Counsel seek reimbursement of their costs – which amount to $57,589.91 – out of the total amount requested and not in addition to it).  As noted *infra*, the Settlement provides for a Contingent Payment for LinkedIn to increase the Settlement Fund amount up to $13,750,000 should the number of Authorized Claimants result in a payment amount of less than $10 per Authorized Claimant.  Such Contingent Payment, if any, whether less than or up to the cap of $750,000, will not impact the amount Class Counsel seek for the Fee Award.  Were the entire Contingent Payment made by LinkedIn, Class Counsel's Fee Award would decrease to 23.6% of the Settlement Fund.

Class Counsel also respectfully moves the Court for service awards to the nine Class Representatives in the amount of $1,500 each, for a total $13,500, out of the Settlement Fund.

In common fund cases such as this one, the Ninth Circuit's benchmark for attorneys' fees is 25% of the fund created for the benefit of the Class, *plus* recovery of costs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002).  Here, Class Counsel seek fees below that benchmark, because they request 25% of the Settlement Fund inclusive of, and not in addition to, payment of their costs.  Class Counsel respectfully submit that there is no reason to deviate from that benchmark here.  Class Counsel's fee request is well within the range commonly awarded in comparable cases and is justified here, particularly taking into account the value of the prospective practice changes undertaken by LinkedIn.  As discussed below, the prospective relief includes changes to LinkedIn's import permission screens, its invitation permission screens, its members' contacts management and its members' connection email

---

[1] In accordance with the Court's Order Granting Preliminary Approval of Proposed Settlement, Directing Notice to Class and Setting Final Approval Hearing, (the "Preliminary Approval Order"), (Dkt 106), ¶20, a copy of this brief will be uploaded today – November 30, 2015 – to the settlement website, http://www.addconnectionssettlement.com.

[2] Capitalized terms in this memorandum shall have the same meaning as specified in the Amended Class Action Settlement Agreement (the "Settlement Agreement") (Dkt 105-2).

1    management – all of which were central to the allegations in this litigation.  The Ninth Circuit has

2    held that the value of settlement should be enhanced for purposes of fee analyses where there are

3    significant "nonmonetary benefits conferred by the litigation."  *See id.*, at 1049.  Class Counsel

4    seek no such additional valuation here. Class Counsel's request is also supported by a lodestar

5    plus multiplier cross-check.  That cross-check reveals that the fee amount requested by Class

6    Counsel would result in a multiplier of 1.52, which is well within the range for such multipliers

7    established by the Ninth Circuit when costs are not included within the attorneys' fee award, as

8    here. *Id.* at 1051 & n.6.

9         Class Counsel respectfully submit that their fee request is appropriate in light of the result

10   achieved for the Class, which includes prospective practice changes designed to inform LinkedIn

11   users of and assist them in managing and recalling the Add Connections reminder emails at issue

12   in this litigation.  The Settlement also requires LinkedIn to pay $13,000,000, possibly rising to

13   $13,750,000, into a non-reversionary Settlement Fund, out of which eligible members of the

14   Settlement Class who file qualified claims will receive a cash payment.  This represents an

15   excellent result that is one of the largest per-class member funds for digital privacy claims. In

16   light of this strong result, and for the reasons discussed below, Class Counsel respectfully request

17   that the Court grant their fee request in full, and approve the Class Representative service awards.

18   **II.     BACKGROUND**

19       **A.     The Conduct At Issue**

20        The conduct at issue in this litigation is the allegation that LinkedIn improperly used a

21   service on its website called "Add Connections."  Add Connections allows LinkedIn members to

22   import contacts from their external email accounts and email connection invitations to one or

23   more of those contacts inviting him, her or them to connect on LinkedIn.  If a connection

24   invitation is not accepted within a certain period of time, usually a week, up to two "Reminder

25   Emails" are sent reminding the external non-LinkedIn member that the connection invitation is

26   pending.  During the course of this litigation, specifically upon consideration of two successive

27   motions to dismiss filed by LinkedIn, the Court found that LinkedIn members consented to

28   importing their contacts and sending the initial connection invitation but did not find that

LinkedIn members consented to LinkedIn sending the two Reminder Emails.  The parties disagreed – the Plaintiffs contending, LinkedIn disputing – whether LinkedIn members consented to the use of their names and likenesses in those Reminder Emails.  The instant Settlement followed.

### B.      The Prospective Changes Benefitting the Settlement Class

As a result of this Settlement, LinkedIn has revised its disclosures relating to its Add Connections service.  In particular, the disclosures now clarify that up to two Reminder Emails will be sent for each connection invitation so LinkedIn members can make fully-informed decisions before sending an Add Connection invitation.  The changes made by LinkedIn to its products, services and features made in accordance with the Settlement include the following revisions to its website:

- Import Permission Screens:  LinkedIn has added the following language to its Add Connections import permission screens:
    - The language on the permission screen was changed *to*: "We'll import your address book to suggest connections and help you manage your contacts" *from*: "We will not store your password or email anyone without your permission."[3]
    - LinkedIn added a "Learn More" button to the permission screen stating: "When you import your address book, we'll upload detailed information about your contacts to our LinkedIn servers.  We'll use this information to suggest relevant connections for you, to help you browse, search, and organize your contacts on LinkedIn, and for other uses explained in our Privacy Policy.  If you're asked to enter your password, we'll only hang onto it for a moment to authenticate your account.  We'll never email anyone without your permission.  For more info, visit our Help Center."[4]
    - LinkedIn created a new "Help Center" button, in the "Learn More" pop-up

---

[3] Settlement Agreement, ¶2.2.1
[4] *Id.*

window, that directs its members to a webpage entitled "Importing and
Inviting your Email Contacts."[5]  It states that "You can import a list of your
contacts from the Add Connections page on LinkedIn.  This will run a one-
time upload of your address book contacts, as well as their detailed contact
information.  We'll use this information to suggest relevant contacts for
you to connect with, to help you browse, search, and organize your
contacts on LinkedIn, and for other uses explained in our Privacy Policy.
We'll never email anyone without your permission."[6]  It also states:  "We
automatically select all contacts on the displayed list to be invited.  If you
don't want to send invitations to everyone on the list, be sure to uncheck
the Select All box and individually check the boxes next to contacts you
want to invite."[7]

- Invitation Permission Screens:  LinkedIn has added the following language to Add
  Connections invitation permission screens:  "Invite friends, colleagues, and
  acquaintances who might like to connect, and would benefit from joining
  LinkedIn.  If someone you invite doesn't respond right away, we'll send up to two
  reminders."[8]

- Contact Management:  LinkedIn has implemented functionality allowing its
  members to manage contacts, including viewing and deleting contacts and sending
  invitations.[9]  It identifies the imported contacts, the number of contacts (e.g.
  "Showing 884 of 884 contacts"), those that have been selected to be imported, and
  a "Select All" checkbox.[10]

- Connection Email Management:  On or before December 31, 2015, LinkedIn will

---

[5] Declaration of Adam Kaplan In Support of Plaintiffs' Motion for Preliminary Approval of Class
Action Settlement ("Kaplan Decl.") (Dkt 105-4), Ex. C.
[6] *Id.*
[7] *Id.*
[8] Settlement Agreement, ¶2.2.2.
[9] *Id.*, ¶2.2.3.
[10] Kaplan Decl., Ex. E.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS
CASE NO. 13-CV-04303-LHK

implement functionality allowing its members who invite contacts to connect

through Add Connections to withdraw those invitations.  The withdrawal

functionality will stop Reminder Emails from being sent.[11]

These prospective changes were developed and implemented as a result of this Settlement.  Class Counsel has investigated and confirmed (and, with respect to the Connection Email Management described above, which is due to be implemented by the end of 2015, will specifically confirm) the implementation of these procedures.

### C.     The Settlement Fund Achieved for the Settlement Class

In addition to the prospective relief for the Class, the Settlement also provides that LinkedIn will pay $13,000,000 into a non-reversionary Settlement Fund.[12]  The cash payment amount to each Authorized Claimant will be based on a *pro rata* distribution and will depend on the number of valid and timely claims.[13]  If the number of approved claims results in a payment amount of less than $10 per Authorized Claimant, LinkedIn will pay an additional amount up to $750,000 into the Settlement Fund.[14]  To receive a cash payment, members of the Settlement Class need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Internet site or by mail.[15]  Members of the Settlement Class have until December 14, 2015 to submit claim forms or submit written requests to be excluded from or opt out of the Class.[16]  Because the Settlement Fund will be distributed *pro rata*, with the amounts from any uncashed checks being either used for a second distribution or being donated *cy pres* to Access Now, Electronic Privacy Information Center, and Network for Teaching Entrepreneurship, none of the Settlement funds will revert to LinkedIn.[17]  The Settlement achieved by Class Counsel therefore also provides strong monetary relief.

---

[11] Settlement Agreement, ¶2.2.4.

[12] *Id.*, ¶2.1.1.

[13] *Id.*

[14] *Id.*, ¶2.1.2.

[15] Preliminary Approval Order, ¶12.

[16] *Id.*, ¶¶12-13.

[17] Settlement Agreement, ¶¶1.12, 2.1.1, 3.1.2(b).

1

### D.      Class Counsel Undertook Considerable Risk in Prosecuting this Action

2

This matter required Class Counsel to spend time on this litigation that might have been

3

spent on other matters.  Moreover, because Class Counsel undertook representation of this matter

4

on a pure contingency-fee basis, they carried the risk of expending substantial costs and time in

5

litigating this action without any monetary gain in the event of an adverse judgment.[18]

6

A principal risk associated with this Action stemmed from the Court's determination that

7

LinkedIn members provided consent to importing their contacts and sending the initial connection

8

invitation.  From then on, the case largely turned on LinkedIn members' consent to LinkedIn

9

sending the two Reminder Emails and LinkedIn's use of the members' name and likeness when

10

doing so.

11

Throughout the litigation, LinkedIn vigorously contested both its liability and Plaintiffs'

12

ability to certify the asserted claims for class treatment.  It argued that its terms of service and

13

privacy policies, as well as LinkedIn members' knowledge based upon receipt of invitation

14

emails and reminders from other LinkedIn members, would be sufficient for a jury to find that

15

members of the Settlement Class consented to the conduct at issue.  The Court could have

16

adopted LinkedIn's view of consent as well as its position that a class could not be certified.

17

Similarly, had the litigation proceeded, a class been certified and a jury found in favor of the

18

Plaintiffs on liability, there remained a risk that limited damages – or even none at all – could

19

have been awarded.

20

Lastly, there was always not only the risk of losing a jury trial but, also, even if Plaintiffs

21

were successful at trial, that any recovery could be delayed for years by an appeal.  The

22

Settlement therefore provides substantial injunctive and monetary relief in the near term without

23

the attendant risks of unfavorable and, in some cases, dispositive, rulings on these and other

24

issues.

25

26

---

[18] Declaration of Larry C. Russ in Support of Plaintiffs' Motion for Attorneys' Fees, Litigation

27

Costs and Incentive Awards ("Russ Decl."), ¶¶ 12-13; Declaration of Nicholas Diamand in
Support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs and Incentive Awards

28

("Diamand Decl."), ¶¶ 9-10; and Declaration of Daniel P. Hipskind in Support of Plaintiffs'
Motion for Attorneys' Fees, Litigation Costs and Incentive Awards ("Hipskind Decl."), ¶¶ 9-10.

1    **III.    ARGUMENT**

2        **A.    The Requested Fee is Reasonable and Appropriate**

3        Class Counsel seek a total award of attorneys' fees and costs of $3,250,000, or 25% of the

4    Settlement Fund of $13,000,000 (without accounting for the value of the Settlement's prospective

5    practice changes).  Further, should the Settlement Fund increase to $13,750,000, as discussed

6    *infra*, Class Counsel's request for fees and costs – remaining at $3,250,000 – would represent

7    23.6% of the Settlement Fund.

8        Class Counsel have litigated this challenging case for two years, and after surviving two

9    motions to dismiss, obtained a strong settlement providing well-tailored and important conduct

10   changes that will benefit and protect millions of members of the Settlement Class – and others –

11   going forward.  In addition, the settlement provides a $13 million cash fund (potentially

12   increasing up to $13,750,000) to Settlement Class Members who submit timely and valid claims.

13   Under these circumstances, it is appropriate for the Court to award the 25 percent "benchmark"

14   applied in the Ninth Circuit.  This request is reasonable, particularly in light of Ninth Circuit law

15   regarding attorneys' fees in class cases that are designed to ensure that class counsel have proper

16   incentives to take on difficult cases and pursue class members' best interests.  Class Counsel

17   assumed substantial risks and devoted substantial resources in pursuing a recovery for the Class,

18   and Class Counsel litigated this case efficiently.

19            **1.    Class Counsel are Entitled to a Fee Under the Common Fund Doctrine**

20       The common fund doctrine applies in the Ninth Circuit.  *Staton v. Boeing Co.*, 327 F.3d

21   938, 967 (9th Cir. 2003).  Under the doctrine, counsel have an equitable right to be compensated

22   for their successful efforts in creating a common fund.  *Id.* at 968; *Boeing Co. v. Van Gemert*,

23   444 U.S. 472, 478 (1980) (". . . a litigant or a lawyer who recovers a common fund . . . is entitled

24   to a reasonable attorney's fee from the fund as a whole"); *In re Wash. Pub. Power Supply System*

25   *Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994) (same).

26            **2.    The Court Should Calculate Class Counsel's Fee As a Percentage of
                      the Settlement Fund**

27

28       The most appropriate way to calculate a reasonable fee where contingency fee litigation

has produced a common fund, is the percentage-of-the-fund method.  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Vizcaino*, 290 F.3d at 1047; *Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (common fund fee is generally "calculated as a percentage of the recovery").  The percentage method comports with the legal marketplace in other contingency fee cases, where counsel's fee is typically based upon a percentage of any recovery.  *See* Fed. Judicial Ctr., *Awarding Attorneys' Fees & Managing Fee Litig.* at 81 (2005) (percentage method "helps ensure that the fee award will simulate the marketplace rates, since most common fund cases are the kinds of cases normally taken on a contingency fee basis, by which counsel is promised a percentage of any recovery").  Furthermore, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found the following:  (1) 80% of cases employed the percentage-of-the-recovery method; and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorneys' Fees and Expenses in Class Action Settlements*: 1993-2008, 20 (2009).[19]

The percentage-of-the-fund method aligns class counsel's interests with those of the class, and properly incentivizes capable counsel, not only to accept challenging cases, but to push for the best result that can be achieved for the class.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (percentage method "directly aligns the interests of the class and its counsel") (citation omitted).  Moreover, the percentage-of-the-fund method encourages efficiency and discourages waste.  The lodestar method, by contrast, may encourage counsel to bill time and to create opportunities to bill time.[20]  Calculating the fee here as a percentage-of-the-

---

[19] *available at* http://scholarship.law.cornell.edu/cgi/viewcontent.cgi?article=1066&context=clsops_papers

[20] The lodestar method's emphasis on time has drawn substantial criticism.  *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1180 (N.D. Cal. 2014) (Seeborg, J.) ("Whatever merits the lodestar method might have, particularly outside the context of a common fund case, it has also been subject to heavy criticism by commentators and in the courts.") (citation omitted).  Among other things, awarding fees based on the lodestar method "does not encourage efficiency."  *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (Patel, J.).  Instead, as the Ninth Circuit observed, "the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee."  *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re Activision*, 723 F. Supp. at 1378

1   fund, rather than as a function of counsel's billed time, rewards class counsel for assuming the

2   risks of this case and efficiently prosecuting it.

3           **3.**     **Class Counsel's Fee Request is Warranted Under the Percentage-of-**
                    **the Fund Method**

4

5          In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund

6   created. *Vizcaino*, 290 F.3d at 1047.  A court should depart from the benchmark only if there are

7   "special circumstances" justifying the departure. *In re Bluetooth Headset Prods. Liab. Litig.*,

8   654 F.3d 935, 942 (9th Cir. 2011) (citations omitted).  Courts in the Ninth Circuit often award

9   fees that are in excess of the 25 percent benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050

10  (affirming 28 percent award); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D.

11  Cal. 2007) (Conti, J.) ("[I]n most common fund cases, the award exceeds that [25%]

12  benchmark."); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 8-1365, 2010 WL 1687832, at *18

13  (N.D. Cal. Apr. 22, 2010) (Wilken, J.) (awarding 30 percent award); *Knight v. Red Door Salons,*

14  *Inc.*, No. 8-1520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (Conti, J.) (same).  Based on

15  this authority, and particularly given the prospective relief obtained in the Settlement, Class

16  Counsel's request for the benchmark award, with no additional request for reimbursement of their

17  costs and expenses, is reasonable.

18         Courts in the Ninth Circuit consider a number of factors in determining whether there is

19  any basis to deviate from the benchmark, including: (1) the results achieved; (2) the risks of

20  contingency representation; (3) the complexities of the case and skill and effort required of

21  counsel; (4) awards in similar cases; and (5) whether counsel devoted substantial time requiring

22  counsel to forgo other work.  *Vizcaino*, 290 F.3d at 1048-50.  Consideration of these factors here

23  confirms that there is no basis for any additional downward departure from the benchmark.

24           **a.**     **Class Counsel Achieved an Commendable Result**

25         The results obtained for the class are generally considered to be the most important factor

26  in determining the appropriate fee award in a common fund case.  *See Hensley v. Eckerhart*,

27

28  (noting that lodestar approach "encourages abuses such as unjustified work and protracting the
litigation").

1   461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center,

2   *Manual for Complex Litigation*, §27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the

3   result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

4        **Prospective Relief**:  Ninth Circuit courts consistently have held that where class counsel

5   achieves significant benefits that are not accounted for in the dollar value of the common

6   settlement fund, the court "should consider the value of [such] relief as a relevant circumstance in

7   determining what percentage of the common fund class counsel should receive as attorneys'

8   fees."  *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee

9   award where "the court found that counsel's performance generated benefits beyond the case

10  settlement fund."); *Linney v. Cellular Alaska P'ship*, No. 96-3008 DLJ, 1997 WL 450064, at *7

11  (N.D. Cal. July 18, 1997) (Jensen, J.) *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting fee award of

12  one-third common fund where settlement provided additional non-monetary relief).

13       From the outset, this litigation was driven by Plaintiffs'—and others—negative reactions

14  to Reminder Emails being sent in their name with their likeness and the goal of limiting or ending

15  this practice.  LinkedIn's prospective changes are designed to address and remedy their

16  concerns.[21]  Specifically, as noted above, LinkedIn has agreed to change its import permission

17  screens, its invitation permission screens, its members' contacts management and its members'

18  connection email management.  If the value of these benefits were considered, it would "reduce[]

19  the overall percentage of the fees that counsel" is requesting.  *See Walsh v. Kindred Healthcare*,

20  No. 11-50, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) (White, J.) (approving fee request

21  of 30% of the common fund, finding that the request was effectively reduced by the "substantial

22  injunctive relief" obtained through the settlement). Class Counsel respectfully submit that the

23  Settlement's prospective relief supports their fee request.

24       **Monetary Relief**:  The Settlement requires LinkedIn to pay $13,000,000, rising to an

25  additional $750,000 totaling $13,750,000, into a non-reversionary common Settlement Fund, out

26  of which Authorized Claimants will receive their *pro rata* share of cash payments.  This cash

27

28

---

[21] Russ Decl., ¶8.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS
CASE NO. 13-CV-04303-LHK

fund, for a class of approximately 20.8 million people[22] is substantial, and is well within – if not well above – the range in which comparable settlements have been finally approved.  *See, e.g.*, *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 949 (N.D. Cal. 2013) (Seeborg, J.), appeal dismissed (Dec. 3, 2013) (granting final approval of settlement providing for $20 million cash fund for class of up to 150 million Facebook members); *In re Google Referrer Header Privacy Litig.*, No. 10-4809, 2015 WL 1520475 (N.D. Cal. Mar. 31, 2015) (Davila, J.) (granting final approval to $8.5 million settlement in case with estimated 129 million class members); *In re Netflix Privacy Litig.*, No. 11-379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) (Davila, J.) (granting final approval to $9 million settlement in case with estimated 62 million class members); *In re Google Buzz Privacy Litig.*, No. 10-672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) (Ware, J.) (granting final approval to $8.5 million settlement in case with estimated 37 million class members).

Furthermore, the Settlement was the product of arm's length, protracted and vigorous negotiations reached after two full-day mediation sessions before experienced mediators.[23]

The requested 25% award (subsuming Class Counsel's costs and expenses) is reasonable.

### b.    The Fee Was 100% Contingent

Courts recognize that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.  *See In re Wash.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051.  Class Counsel prosecuted this case on a purely contingent basis, and agreed to advance all necessary expenses and knowing that they would only receive a fee if there were a recovery.  Class Counsel spent considerable time and resources by, among other things: (1) investigating the action; (2) conducting legal research and briefing oppositions to LinkedIn's

---

[22] Preliminary Approval Order, ¶ 2.b.

[23] Russ Decl., ¶27.

1   two motions to dismiss; (3) negotiating the Settlement over many months, including by

2   participating in two full-day mediation sessions; (4) administering the Settlement; and

3   (5) responding to Settlement Class Member inquiries.[24]  These resources were expended

4   notwithstanding the risk that Class Counsel would not be compensated.  This assumption of risk

5   justifies a fee paid as a percent of recovery.

6                         **c.      The Skill and Quality of Work Performed Support the**
                                **Requested Fee.**
7

8           The effort and skill displayed by Class Counsel and the complexity of the issues involved

9   are additional factors used in determining a proper fee.  *Vizcaino*, 290 F.3d at 1048; *Omnivision*,

10  559 F. Supp. 2d at 1046-47.  These factors also support the reasonableness of the fee requested

11  here.

12          Class Counsel assembled a team of three law firms with resources and ability necessary to

13  litigate these claims.[25]  Class Counsel performed significant factual investigation prior to bringing

14  these actions, engaged in motions practice including opposing two motions to dismiss, engaged in

15  written discovery, participated in protracted, challenging and hard-fought negotiations with

16  LinkedIn, including participating in two full-day mediations, and vigorously and successfully

17  negotiated a $13,000,000 Settlement, increasing to an additional $750,000, with prospective

18  practice changes.

19          Class Counsel respectfully submit that the skill and expertise reflected in this outcome

20  support their fee request.

21                         **d.      A Comparison to Fee Awards in Other Cases Demonstrates the**
                                **Reasonableness of the Fee Requested**
22

23          A review of fee awards in other common fund cases underscores the reasonableness of the

24  fee requested here.  Class Counsel's requested fee award is less than the fee frequently awarded in

25  class actions.  *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the

26  award exceeds that [25%] benchmark."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463

27  _____

28  [24] *Id.* at ¶¶ 24-27; Diamand Decl. at ¶¶18-22; and Hipskind Decl. at ¶¶16-17.
    [25] Russ Decl., ¶¶2-7; Diamand Decl., ¶¶2-8; and Hipskind Decl., ¶¶2-6.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
                                        OF EXPENSES, AND SERVICE AWARDS
                                        CASE NO. 13-CV-04303-LHK

(9th Cir. 2000), as amended (June 19, 2000) (affirming fee award of one third of common fund); *Lusby v. GameStop Inc.*, No. 12-3783, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (Lloyd, J.) (awarding fee of one-third of common fund); *de Mira v. Heartland Employment Serv., LLC*, No. 12 -4092, 2014 WL 1026282, at *4 (N.D. Cal. Mar. 13, 2014) (Koh, J.) (awarding fee of 28% of common fund); *Knight*, 2009 WL 248367, at *7-*8 (awarding 30% of common fund); *In re M.D.C. Holdings Sec. Litig.*, No. 89-90, 1990 WL 454747, at *7, *10 n.6 (S.D. Cal. Aug. 30, 1990) (awarding 30% fee where settlement obtained "in a very short period of time" and finding that class counsel should be rewarded, not penalized, for achieving early success on behalf of the class).

In light of the foregoing, Class Counsel respectfully submits that their fee request is reasonable and fair under the "percentage of the fund" method.

### 4. A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of the Fee

The Court may engage in a lodestar "cross-check" when awarding a fee as a percentage of a common fund. *Vizcaino*, 290 F.3d at 1050-51. The purpose of a cross-check is not to re-calculate the fee, but is one of the tools used to ensure a reasonable fee. As "merely a cross-check on the reasonableness of a percentage figure," *id*. at 1050 n.5, "[t]he lodestar crosscheck need not entail either mathematical precision or bean counting." *Rieckborn v. Velti PLC,* No. 13-3889, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (Orrick, J.) (citation and internal quotation and editing marks omitted); *see also Cruz v. Sky Chefs, Inc.,* No. 12-270, 2014 WL 7247065, at *6 (N.D. Cal. Dec. 19, 2014) (Ryu, J.) (same). Here, even a partial cross-check confirms the reasonableness of the fee.

#### a. The Lodestar Reflects Efficient Prosecution of This Action

The cumulative lodestar of the three Class Counsel firms – Russ August & Kabat; Lieff Cabraser, Heimann & Bernstein, LLP; and Olavi Dunne LLP – to date is $2,140,739 using current billing rates.[26] *See In re Wash.*, 19 F.3d at 1305 (courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of

---

[26] Russ Decl. at ¶ 15, Ex A.; Diamand Decl. at ¶11, Ex. A; Hipskind Decl. at ¶11, Ex. A.

1    compensating for the "delay in payment."); *Vizcaino*, 290 F.3d at 1051 (affirming lodestar

2    crosscheck using current billing rates).  *See In re High-Tech Employee Antitrust Litig.*, No. 11-

3    2509, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (Koh, J.) (finding LCHB's rates to be

4    reasonable).  *See also* Russ Decl., ¶ 21 (Court finding RAK's hours and rates reasonable).

5                         **b.    Class Counsel's Lodestar is Reasonable**

6            The supporting declarations of Class Counsel set out the hours of work and billing rates

7    used to calculate the lodestar here.  As described therein, Class Counsel and their colleagues,

8    including staff, have devoted a total of approximately 4,365.2 hours to this litigation and have a

9    total lodestar to date of approximately $2,140,739.  These amounts do not include the additional

10   time that Class Counsel will spend going forward in seeking approval of, and implementing, the

11   Settlement, including assisting Settlement Class Members with claims and overseeing claims

12   administration generally.  These tasks can require substantial additional hours not reflected in a

13   multiplier calculated on current lodestar.  Class Counsel's lodestar will grow as the settlement

14   process is finalized and the litigation comes to a close.  The claims period will last for several

15   months, and Class Counsel's time and resources devoted to the case will continue until and past

16   that date.  Based on prior experience, these responsibilities may require a significant further time

17   commitment from Class Counsel.

18           Class Counsel's time was spent primarily in the following tasks:  (1) investigating the

19   claims of the Plaintiffs; (2) conducting legal research regarding and opposing LinkedIn's two

20   motions to dismiss; (3) negotiating the Settlement over many months, including by participating

21   in two full-day mediation sessions; (4) administering the Settlement; and (5) responding to

22   Settlement Class Member inquiries.

23           Class Counsel's lodestar is reasonable.  Class Counsel prosecuted the claims at issue

24   efficiently and effectively, actively seeking not to duplicate effort or assignments.  Tasks were

25   reasonably divided among law firms and were delegated appropriately among partners,

26   associates, paralegals and other staff according to the relevant complexity of the project.

27           Furthermore, Class Counsel's hourly rates are reasonable.  In assessing the reasonableness

28   of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those

1  prevailing in the community for similar services by lawyers of reasonably comparable skill,

2  experience and reputation."  *Blum*, 456 U.S. at 895 n. 11.  This Court, within the last three

3  months, and others within this District (and elsewhere), have approved Class Counsel's

4  customary rates used in calculating the lodestar here.  *See High-Tech Employee*, 2015 WL

5  5158730, at *9; *see also Bayat v. Bank of the W.*, No. 13-2376, 2015 WL 1744342, at *9 (N.D.

6  Cal. Apr. 15, 2015) (Chen, J.); *In re TracFone Unlimited Serv. Plan Litig.*, No. 13-3440, 2015

7  WL 4051882, at *12 (N.D. Cal. July 2, 2015) (Chen, J.).

8  **c.      A Multiplier is Warranted**

9       The benchmark 25% fee requested by Class Counsel reflects a multiplier of 1.52 of Class

10  Counsel.  Courts have approved fee awards resulting in multipliers which are the same, greater

11  and considerably higher than that requested here.  *See Google Referrer Header*, 87 F. Supp. At

12  1136 (noting that "lodestar multiplier of 2.2 is comparable to that previously permitted by other

13  courts in similar internet privacy cases"); *Lane v. Facebook, Inc.*, No. 8-3845, 2010 WL 2076916,

14  at *2 (N.D. Cal. May 24, 2010) (Seeborg, J.) (applying lodestar multiplier of 2); *Netflix Privacy*,

15  2013 WL 1120801, at *10 (approving class counsel's suggested lodestar multiplier of 1.66;

16  *Google Buzz*, 2011 WL 7460099, at *4, and *id.*, Dkt. 65 (Fee Application) (approving fee award

17  that equated to lodestar multiplier of approximately 1.67).  A lodestar plus multiplier cross-check

18  therefore further supports the reasonableness of the requested 25% fee.

19  **d.      Class Counsel Are Not Seeking Reimbursement of their Costs In Addition to Their Fee Award.**

20

21       Class Counsel are not seeking payment of costs in addition to their recovery of 25% of the

22  Settlement Fund, and, rather, will be reimbursed their costs from that 25% fee.  Nevertheless, as

23  demonstrated below, recovery of these modest costs would be appropriate.  "Reasonable costs

24  and expenses incurred by an attorney who creates or preserves a common fund are reimbursed

25  proportionately by those class members who benefit from the settlement."  *In re Media Vision*

26  *Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (Lynch, J.) (citing *Mills v. Elec.*

27  *Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).  In prosecuting this case over two years, Class

28  Counsel have incurred total out-of-pocket expenses of $57,589.91.  This includes costs for

(1) mediation fees; (2) travel to court hearings, mediations and meeting with counsel; (3) hard costs such as legal research through LEXIS and Westlaw and Federal Express, and messengering fees; and (4) expert and consultant fees. These relatively modest out-of-pocket costs were necessary to resolve this litigation.  *See In re Media Vision,* 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed).

## B.    The Requested Service Awards are Reasonable and Appropriate

The purpose of service awards is to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation. . ." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc), *cert. denied,* 132 S. Ct. 1876 (2012). *See also Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").

The requested service awards of up to $1,500 for each Class Representative are reasonable and appropriate here.  First, the Class Representatives have expended substantial time and effort in assisting Class Counsel with the prosecution of the Class's claims, including relating the details of their embarrassment as a result of LinkedIn's alleged conduct, preserving relevant documentation and evidence for discovery, staying abreast of events in the litigation and providing their opinions on the proposed settlement, and, in some cases, attending and participating in the parties' mediations.[27]

Second, the class representatives should be rewarded for their "public service of contributing to the enforcement of mandatory laws."  *Sullivan*, 667 F.3d at 333 n.65 (citation and quotation omitted).  Without the Class Representatives' willingness to take the risks of filing class action lawsuits, no recovery would have been possible.  Solely because the Class Representatives came forward here at substantial personal risk, the Defendants will pay a total of $13,000,000 into a common fund for the benefit of the Class.

Finally, the requested service awards are appropriate when compared to the recovery achieved.  Courts assessing the reasonableness of requests for service awards may compare the

---

[27] Diamand Decl. ¶ 27.

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS
CASE NO. 13-CV-04303-LHK

1  request against the size of the settlement fund.  *See, e.g., Velez v. Novartis Pharm. Corp.*, No. 4-
2  9194, 2010 WL 4877852, at *8 (S.D.N.Y. Nov. 30, 2010) ("Plaintiffs seek, therefore, a total of
3  $3,775,000.00 in service award payments, which represents only approximately 2.4 percent of the
4  entire monetary award of $152.5 million (or approximately 2.1 percent of the entire value of the
5  settlement of $175 million).").  Plaintiffs' requested service awards here collectively represent
6  0.1% of the $13,000,000 common fund.

7  **IV.    CONCLUSION**

8          For the reasons set forth above, Plaintiffs respectfully request that the Court grant the
9  motion in its entirety.

10                                 Respectfully submitted,

11  Dated:  November 30, 2015     LIEFF, CABRASER, HEIMANN  & BERNSTEIN, LLP

12                                 By:   */s/ Nicholas Diamand*
13                                           Nicholas Diamand

14                                 Michael W. Sobol
                                   Nicholas Diamand
15                                 Melissa Gardner
                                   275 Battery Street, 29th Floor
16                                 San Francisco, CA 94111
                                   Telephone: (415) 956-1000
17                                 Facsimile: (415) 956-1008
                                   msobol@lchb.com
18                                 ndiamand@lchb.com
                                   mgardner@lchb.com

19  Dated:  November 30, 2015     RUSS AUGUST & KABAT

20                                 By:   */s/ Larry C. Russ*
21                                           Larry C. Russ

22                                 Larry C. Russ
                                   Nathan D. Meyer
23                                 12424 Wilshire Boulevard, 12th Floor
                                   Los Angeles, California 90025
24                                 Telephone: (310) 826-7424
                                   Facsimile: (310) 826-6991
25                                 lruss@raklaw.com
                                   nmeyer@raklaw.com

26

27

28

1    Dated:  November 30, 2015          OLAVI DUNNE LLP

2                                       By:   */s/ Dorian S. Berger*
3                                             Dorian S. Berger

4                                       Dorian S. Berger
                                        Daniel P. Hipskind
5                                       1880 Century Park East, Ste. 1880
                                        Los Angeles, California 90067
6                                       Telephone: (213) 516-7900
                                        Facsimile: (213) 516-7910
7                                       dberger@olavidunne.com
                                        dhipskind@olavidunne.com
8

9                                       *Class Counsel*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. FOR ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS
CASE NO. 13-CV-04303-LHK