LARRY C. RUSS (SBN 82760)
lruss@raklaw.com
NATHAN D. MEYER (SBN 239850)
nmeyer@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7424
Facsimile: (310) 826-6991

DORIAN S. BERGER (SBN 264424)
dberger@olavidunne.com
DANIEL P. HIPSKIND (SBN 266763)
dhipskind@olavidunne.com
OLAVI DUNNE LLP
445 S. Figueroa St., Ste. 3170
Los Angeles, California 90071
Telephone: (213) 516-7900
Facsimile: (213) 516-7910

MICHAEL W. SOBOL (SBN 194857)
msobol@lchb.com
NICHOLAS R. DIAMAND (*Pro Hac Vice*)
ndiamand@lchb.com
MELISSA GARDNER (SBN 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 13-CV-04303-LHK<br><br>**DECLARATION OF LARRY C. RUSS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS**<br><br>**HEARING**<br>Judge: Hon. Lucy H. Koh<br>Date: February 11, 2016<br>Time: 1:30 p.m.<br>Location: Courtroom 8 – 4th Floor |

I, Larry C. Russ, hereby declare:

1. I am the managing partner in the law firm of Russ August & Kabat, PC ("RAK") which, together with Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), and Olavi Dunne LLP, represents the plaintiffs in this action (collectively, "Class Counsel"). I am a member in good standing of the California bar. I submit this Declaration in support of the Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards. I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

**I. Qualifications and Assignments of RAK Attorneys and Staff**

2. I have nearly 32 years of experience in complex litigation. I was admitted to the state bar of California and the Ninth Circuit Court of Appeals in 1978. I was admitted to the U.S. Supreme Court in 1989. In 1990 I became the founding partner of RAK. I have handled numerous cases concerning a wide array of issues involving, among other things, complex business and/or contractual disputes, class actions, business torts, securities, antitrust and unfair competition matters, intellectual property issues, including patent and trademark disputes, in both state and federal courts. I was and am the partner with the overall responsibility for prosecution of this action.

3. The primary RAK attorneys who have worked on this matter are myself and, until April of 2015, Daniel Hipskind and Dorian Berger, with assistance from other RAK attorneys, paralegals, and staff.

4. I graduated from University of California, Hastings, School of Law (JD, 1978) and University of California, Berkley (BA, 1975). I have been recognized as a "California Super Lawyer" by Los Angeles Magazine for every year since 2008, and was recognized as a Southern California Top 100 Super Lawyer in 2013, 2014 and 2015 by that magazine. My primary duties in this litigation included representing plaintiffs at hearings and at case management conferences, supervising Messrs. Berger and Hipskind, developing case strategy and discovery strategy, reviewing and editing pleadings, conducting extensive class certification analysis, conducting extensive analysis of potential damages, directing necessary legal research, preparing for

1  mediations, negotiating the settlement, and overseeing Class Counsel's settlement approval and
2  implementation efforts. I was the partner with ultimate responsibility for this matter, and from
3  inception until LCHB appeared in this matter, I was the sole partner (at any firm) on the
4  plaintiffs' side of this case.

5  5. Dorian S. Berger has been a member of the California Bar since 2009, and is a
6  graduate of Columbia University School of Law, and Harvard College. Prior to joining RAK,
7  Mr. Berger practiced with Irell & Manella and Kendall Brill & Klieger. Mr. Berger was an
8  associate at RAK until April of 2015, when Mr. Berger left to become a partner at Olavi Dunne,
9  LLP. Mr. Berger, along with Mr. Hipskind, was responsible for all aspects of this litigation from
10 its inception until their departure. Mr. Berger's qualifications are set forth in more detail in the
11 declaration of Daniel Hipskind, filed concurrently herewith.

12 6. Daniel P. Hipskind has been a member of the California Bar since 2009, and is a
13 graduate of University of Michigan School of Law, and the Rose-Hulman Institute of Technology
14 in Terre Haute, Indiana. Prior to joining RAK, Mr. Hipskind practiced with Irell & Manella. Mr.
15 Hipskind was an associate at RAK until April of 2015, when Mr. Hipskind left to become a
16 partner at Olavi Dunne, LLP. Mr. Hipskind, along with Mr. Berger, was responsible for all
17 aspects of this litigation from its inception until their departure. Mr. Hipskind's qualifications are
18 set forth in more detail in the declaration of Daniel Hipskind, filed concurrently herewith.

19 7. RAK has a team of paralegals and legal assistants that assist in the litigation of its
20 cases, with the level of staffing depending on the size and needs of the particular case.

21 **II.    Overview of RAK's Efforts in this Litigation**

22      **A.    Contingent Nature of Action**

23 8. From the outset, this litigation was driven by individuals' negative reactions to
24 reminder emails being sent in their name with their likeness and the goal of limiting or ending this
25 practice. LinkedIn's prospective changes are designed to address and remedy their concerns.

26 9. As alleged in the complaint, the named plaintiffs, sophisticated individuals such as
27 an Associate Professor of Pediatrics at Baylor College of Medicine (Jake Kushner), an attorney
28

member of the mediation panel for the Eastern District of New York (Clare Connaughton) and a small business owner (Nicole Crosby) discovered that their students, colleagues, customers, opposing counsel and/or customers were, without their consent, being sent multiple e-mails (purportedly on named plaintiffs' behalf) advertising LinkedIn.

10.   Through the relief obtained in this action (and as a result of filing the action), Class Counsel has obtained meaningful changes in LinkedIn's behavior on a going-forward basis, and creation of a $13 million settlement fund.

11.   This matter has required RAK to spend a very significant amount of time on this litigation that could have been spent on other matters. In addition to a substantial percentage of my time, this litigation has also required considerable work by other lawyers, paralegals, and staff at RAK that could have otherwise been spent on other fee-generating work.

12.   The time that RAK has spent on this litigation has been completely contingent on the outcome. RAK has not been paid for any of its time spent on this litigation, nor has it been reimbursed for any of its expenses incurred in this litigation.

13.   Because RAK undertook representation of this matter on a contingency-fee basis, RAK shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

14.   From inception until LCHB appeared as co-counsel in August of 2014 (a period of approximately one year), RAK was the sole Plaintiffs' firm on this case.

**B.   RAK's Lodestar**

15.   RAK has maintained contemporaneous time records since the commencement of this action. Through the date of this declaration, RAK has worked a total of 2,786.9 hours, as of November 29, 2015, with a total lodestar of $1,285,601.00.

16.   Attached hereto as **Exhibit A** is a summary listing each lawyer, paralegal, and staff member for which RAK is seeking compensation for legal services in connection with this action, the hours each individual has expended by task as of November 29, 2015, and the hourly

rate at which compensation is sought for each individual. Individuals who billed less than six hours are not included in Exhibit A.

17. For all individuals, the hourly rate at the time the work was performed is used.

18. All attorneys and staff at RAK are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. The regular practice at RAK is for all attorneys and staff to keep contemporaneous time records, maintained on a daily basis, and describing tasks performed in 0.1 hour increments. Firm policy requires all staff to enter their time into an electronic timekeeping system on a daily basis. I review and audit the time on a regular basis.

19. RAK's lodestar will grow as we continue to finalize the settlement process and close the litigation. The claims period will last for several months, and RAK's commitment of time and labor to this case will continue until (and likely beyond) that date. RAK will likely assist class members with individual inquiries, will oversee aspects of the claims resolution process, and will also help resolve class member's challenges to the result of their claims submissions.

20. Based upon my experience with other class actions and complex matters, I believe that the time expended by RAK in connection with this litigation was reasonable in amount and contributed to the ultimate result achieved for the class.

21. RAK's rates and billing practices, including my rate and billing specifically, have previously been found reasonable and appropriate by the Honorable Otis Wright of the Central District of California in the context of a prevailing party fee award. *See, e.g. Express, LLC v. Forever 21, et al.,* Civil Action No. 09-CV-04514 ODW(VBKx), Docket No. 196 at 8 (C.D. Cal. November 15, 2010) ("After inspecting [RAK's] records, the Court finds the hours and rates reasonable in this case.").

**C.  Overview of Work Performed**

22. RAK first entered an appearance in this litigation on September 17, 2013 (Dkt. No. 1), when it filed the complaint in this matter. RAK researched and drafted the initial complaint

and first amended complaint (Dkt No. 7), as well as Plaintiffs' Opposition to LinkedIn's motion to dismiss the First Amended Complaint (Dkt No. 24). RAK also engaged in discovery practice relating to depositions (Dkt. No. 34).

23. Beginning in August of 2014, RAK, along with LCHB, drafted Plaintiffs' Second and Third Amended Complaints (Dkt. Nos. 55, 70), as well as Plaintiffs' Opposition to LinkedIn's motion to dismiss the Second Amended Complaint (Dkt. No. 65). At the time this Settlement was achieved, Plaintiffs' Counsel was preparing to notice the depositions of eight senior LinkedIn employees and to propound discovery in support of Plaintiffs' class certification motion.

24. *Initial and Supplemental Case Investigation and Drafting the Complaint and Amended Complaints*. RAK spent just under 780 hours on initial and supplemental case investigation. Such investigation included the following: Conducting extensive factual and legal research into the merits of the claims; conducting research on the Defendant; and drafting, revising, and filing the complaint and amended complaints, for a total of four complaints.

25. *Motions Practice*. RAK spent about 885 hours on motions practice. RAK was the sole firm involved in the opposition to LinkedIn's motion to dismiss the First Amended Complaint, and RAK took the lead role in drafting Plaintiffs' Opposition to LinkedIn's Second Motion to Dismiss. RAK also spent extensive time and resources conducting legal research relating to class certification; developing a class certification strategy, and drafting affirmative discovery and deposition notices (which were not served due to the settlement).

26. *General Case Management/Statements/Conferences*. RAK spent about 510 hours on case management. Such work included meeting and conferring with defense counsel on case management statements, drafting case management statements, attending case management hearings, coordinating with co-counsel on case management, and organizing and maintaining the case file.

27. *Settlement.* RAK spent about 610 hours negotiating and implementing the settlement. Such time included reviewing and editing the mediation briefs; discussing Plaintiffs' mediation strategy with co-counsel; attending in-person mediations before the Honorable A.

1  Howard Matz (ret.) in Los Angeles, California on August 26, 2014, and before the Honorable
2  Antonio Piazza (ret.) in San Francisco, California, on January 13, 2015; and analyzing LinkedIn's
3  settlement proposals; crafting, along with co-counsel, Plaintiffs' settlement proposals; and
4  reviewing, revising the settlement documents, and handling questions from class members
5  (RAK's phone number was the sole phone number on the e-mail notice). RAK also heavily
6  utilized non-attorney staff to manage calls from class members; this time was not separately
7  billed.

8      28. The Settlement was the product of arm's length, protracted and vigorous
9  negotiations reached after two full-day mediation sessions before experienced mediators.

10      **D.  Careful Assignment of Work**

11      29. Tasks were delegated appropriately among partners, associate attorneys,
12  paralegals, and other staff according to their complexity. The work performed by associate
13  attorneys and paralegals was work that required sufficient knowledge of legal concepts and that I
14  or another partner would have had to perform absent such assistance. The paralegals identified
15  were all qualified to perform substantive legal work based on their training and past experience
16  working for attorneys, including attorneys outside of RAK's offices. I and other Class Counsel
17  therefore made every effort to litigate this efficiently by reducing duplication of effort and
18  assigning work to the lowest billing timekeepers where feasible.

19      30. I worked closely with co-counsel to divide tasks, ensure efficient case
20  management, and prevent duplication of efforts. By assigning specific tasks among firms, we
21  were able to avoid replicating work.

22      **E.  RAK's Costs**

23      31. RAK maintains all books and records regarding costs expended on each case in the
24  ordinary course of business, which books and records are prepared from expense vouchers and
25  check records. I have reviewed the records of costs expended in this matter.

26      32. RAK has incurred $22,149.78 in expenses. Such costs include RAK's
27  proportional contributions to mediation fees and other fees, ($9,800.00); filing fees ($400.00);
28

- 7 -

DECLARATION OF LARRY C. RUSS ISO
APPLICATION FOR ATTORNEYS' FEES
CASE NO. 13-CV-04303-LHK

travel costs including airfare, hotels, parking, taxis, and meals associated with depositions, hearings, and meetings among counsel ($9,719.82); other hard costs such as research on LEXIS, Westlaw, and PACER ($1,021.18); and Federal Express, messenger, or process server charges ($1,208.78). A summary listing and chart itemizing RAK's expenses incurred in connection with this litigation is attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was signed in Los Angeles, California on November 30, 2015.

_____
Larry C. Russ

# EXHIBIT A

Exhibit A

**Attorneys (at least 6 hours billed)**

| Name | Hours | Effective Rate | Total |
|---|---|---|---|
| Larry C. Russ | 217.7 | $700.00 | $152,390.00 |
| Daniel P. Hipskind | 865.2 | $438.30 | $379,220.00 |
| Dorian S. Berger | 1511.3 | $469.16 | $709,038.50 |
| Brian D. Ledahl | 39.0 | $695.00 | $27,105.00 |
| Nathan D. Meyer | 18.4 | $499.18 | $9,185.00 |
| **Total Attorney** | 2651.6 | | $1,276,938.50 |

**Paralegals (at least 6 hours billed)**

| Name | Hours | Effective Rate | Total |
|---|---|---|---|
| Erika Arambula | 14.6 | $184.11 | $2,688.00 |
| Richard M Ricciardi | 18.1 | $75.00 | $1,357.50 |
| **Total Paralegal** | 32.7 | | $4,045.50 |

**Legal Assistants (at least 6 hours billed)**

| Name | Hours | Effective Rate | Total |
|---|---|---|---|
| Mireya Ballesteros | 8.7 | $45.00 | $391.50 |
| Katherine DePangher | 16.3 | $45.00 | $733.50 |
| Lupe Diaz | 49.3 | $45.00 | $2,218.50 |
| KeiAna Sanderlin | 14.0 | $45.00 | $630.00 |
| Tiffany Vogt | 14.3 | $45.00 | $643.50 |
| **Total Legal Assistant** | 102.6 | | $4,617.00 |

Total Hours: 2,786.9
Total Fees: $1,285,601.00

**Approximate Hours Breakdown By Major Category (including all billers)**

| | Russ | Berger | Hipskind | Others | Total |
|---|---|---|---|---|---|
| Pre-filing investigation and complaint drafting | 33.4 | 449.25 | 282.30 | 14.55 | 779.5 |
| Motions Practice | 59.7 | 512.40 | 243.30 | 69.70 | 885.1 |
| Mediation and Settlement | 101.1 | 274.65 | 192.2 | 47.85 | 615.8 |
| Case Management and Attorney Meetings | 23.50 | 175.00 | 147.40 | 171.90 | 517.8 |

# EXHIBIT B

**Exhibit B**

**RAK LinkedIn Costs**

| Item | Amount |
|---|---|
| Mediation Fees (RAK share) | $9,800.00 |
| Filing Fees | $400.00 |
| Travel Costs | $9,719.82 |
| Legal Research | $1,021.18 |
| Federal Express, Messenger and Process Server Charges | $1,208.78 |
| | |
| **Total** | $22,149.78 |