Frederic R. Fletcher (SBN 238038)
fletcher@lawca.us
**Fletcher Law Offices**
417 2nd Street, Ste 204
Eureka, CA 95501
Telephone (707) 502-2642
Facsimile (888) 979-8171

Attorneys for Class Member Mary Means

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall; individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs<br>v.<br><br>LinkedIn Corporation,<br><br>                              Defendant | Case No. 13-CV-04303-HRL<br><br>**CLASS MEMBER MARY MEAN'S OBJECTION TO CLASS SETTLEMENT, OBJECTION TO ATTORNEY FEE AWARD & NOTICE OF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING**<br><br>**HEARING**<br>Judge: Hon. Lucy H. Koh<br>Date: February 11, 2016<br>Time: 1:30 p.m. Location: Courtroom 8 – 4th Floor |

**PLEASE TAKE NOTICE** that class member Mary Means ("Objector") Objects to the proposed Class Settlement, Class Notice, and Request for Attorney's Fees in the above entitled matter.  Said Objector will appear through her counsel of record, Frederic R. Fletcher at the Final Approval Hearing on or about February 11, 2016 at 1:30pm in Courtroom 8 of the United States Courthouse, 280 South 1st Street, 4th Floor, San Jose, CA 95113.

1

**OBJECTION OF CLASS MEMBER MARY MEANS**

Class Member Mary Mean's (Claim ID PTFKG-WHLRR-CINCH) email address associated with her LinkedIn account is marymeans@motorolasolutions.com. Mary Means resides in Carlsbad, California and may be contacted through her counsel of record herein at (707) 502-2642, or Attention: Frederic Fletcher, Esq. 417 2nd Street, Suite 204, Eureka, CA 95501.   (See, the Declaration of Mary Means filed concurrently and incorporating this Objection.)

## **OBJECTION**

**I)      Class Settlements Must be Fair and the Members Adequately Represented**

The Court has an obligation to review the proposed settlement while considering how it impacts the class members.  *See, Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir.1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, (1975). (In approving the proposed settlement of a class action, a District Court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.)   *See also, Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-280 (7th Cir.2002). (District Courts should "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions"…the court's role is akin "to the high duty of care that the law requires of fiduciaries.")  *See also*, *Mirfahisi v. Fleet Mortgage Corp., 356* F.3d 781, 784 (7th Cir. 2004); *citing, Uhl v. Thoroughbred Technology & Telecommunications, Inc.,* 309 F.3d 978, 985 (7th Cir.2002); *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir. 2002); *In re Cendant Corp. Litigation,* 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir.1987).  ("Because class actions are rife with potential conflicts of interest between class counsel and class members [citation omitted] district judges presiding over such actions are expected to give careful scrutiny to the terms of

2

proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.")

**II)      Prospective Statutory Penalties should have resulted in a Larger Settlement Fund**

A violation of California's Statutory Right of Publicity *Cal. Civ. Code* § 3344 is subject to a statutory penalty of at least $750.  Here, the proposed settlement would at best compensate a few class members in an amount less than $10, or 1.3% the value of the individualized claims. If the lowest possible statutory penalty was imposed per class member the penalty alone would be 1.56 billion dollars. There is little doubt LinkedIn violated the publicity rights of the entire class, and an electronic record exists substantiating the violations. As stated in the motion for approval:

> Here, the Plaintiffs' claims stem from the same common course of conduct as the claims of the Settlement Class Members. All Plaintiffs and <u>all Class Members</u> utilized LinkedIn's Add Connections feature and had emails sent on their behalf by LinkedIn inviting their contacts to join the social networking site. The typicality requirement is thus satisfied here.

[Emphasis Added] (Motion for Settlement Approval page 12 lines 3-6)

The settling parties argue that the class claims risk being dismissed based upon consent but this issue was fully litigated on the motions to dismiss and the consent argument would not preclude the claims from being considered on the merits.

**III)      The Claims Form Exposes the Class Members to Perjury Charges**

The claims form forces the class members to make confusing statements under the penalty of perjury including the following:

> "I used Add Connections to import information from one or more external email accounts and send emails to one or more persons who were not LinkedIn members between September 17, 2011 and October 31, 2014."

This sentence was likely confusing for class members because it seems to imply the emails were sent by the class member purposefully when in fact most emails were sent automatically by LinkedIn without the class member's knowledge. A class member who found

3

the verbiage confusing would likely opt for not completing the claims form instead of risking

committing perjury for less than $10.  The claims form also forces the class members to declare

under penalty of perjury the following:

> "I believe I was injured by any such use of my name or name and profile picture."

Most non-lawyers consider the word "injury" to refer to a physical injury. The claims

form as drafted will have a chilling effect on claimants who do not wish to make a statement

under the penalty of perjury they have been injured. Additionally, it is unprecedented for a class

action claims form to force class members to make statements under penalty of criminal perjury

as to the ultimate facts in dispute. The class members are forced to undertake the risk and

obligations associated with making statements under oath without legal advice. If the class

members were informed they may risk penalties and jail time in exchange for the possibility of

receiving $10 herein they would likely not participate in this Settlement. The Settlement fails to

release class members from any liability resulting from the statements solicited under penalty of

perjury. The exposure Class Counsel has brought upon the class members far outweighs the

benefit of possibly receiving no more than $10.

> If the claims process deters class members from filing claims, the settlement may have less value to the class than the parties assert. Obtaining complete information about claims presented via an unimpeded process will assist you in determining the full value of the settlement and hence its reasonableness, fairness, and adequacy to the class. Avoid imposing unnecessary hurdles on potential claimants.

*Managing Class Action Litigation: A Pocket Guide for Judges* (Third Edition - 2010) Federal

Judicial Center, Barbara J. Rothstein & Thomas E. Willging

**IV)      The Release Includes Future Claims & is a Broad Insurance Policy for LinkedIn**

The Release states in pertinent part:

> "Released Claims" means any and all...claims...that were asserted or could have been asserted arising from or related to allegations in the Action regarding the alleged use of Add Connections to grow LinkedIn's member base, including, without limitation, (i)

4

accessing, importing, storing and/or using information from LinkedIn members' external email accounts; (ii) using LinkedIn members' names, photographs, likenesses, and/or identities in emails relating to Add Connections; or (iii) related disclosures, representations, and omissions.

The Release goes too far by releasing all related claims including future claims. The Release is an insurance policy LinkedIn can now use consumer data, including photographs and depictions into the indefinite future without restraint.

## V)   The Prospective Relief is a Scam

The Settlement states on page 13 the following:

LinkedIn has added the following language to Add Connections import permission screens. First, language on the permission screen itself was changed from "We will not store your password or email anyone without your permission" to "We'll import your address book to suggest connections and help you manage your contacts."

The new replacement sentence does nothing to disclose data will be retrieved during the "address book" import and that the data will be used by LinkedIn for hundreds of millions of dollars in profits. The only disclosure is restating the obvious.

The Settlement continues:

Second, LinkedIn added a "Learn More" button to the permission screen, stating "When you import your address book, we'll upload detailed information about your contacts to our LinkedIn servers. We'll use this information to suggest relevant connections for you, to help you browse, search, and organize your contacts on LinkedIn, and for other uses explained in our Privacy Policy.

Here, LinkedIn has at least admitted they will be collecting data during the address book import. But once again, LinkedIn fails to inform the consumer they intend to sell the data collected on the open market for profit.

LinkedIn's Privacy Policy states in pertinent parts:

Content distributed through our sharing features and third-party integrations may result in displaying some of your personal information outside of our Services.

We may also disclose your personal information to a third party as part of a sale of the assets of LinkedIn Corporation, a subsidiary, or division, or as the result of a change in

**OBJECTION OF CLASS MEMBER MARY MEANS**

control of the company or one of its affiliates, or in preparation for any of these events. Any third party to which we transfers or sells our assets will have the right to continue to use the personal and other information that you provide to us in the manner set out in this Privacy Policy. We may transfer your information and process it outside your country of residence, wherever LinkedIn, its affiliates and service providers operate.

(See, Exhibit "A" attached to the Declaration of Frederic Fletcher.)

The Help Center LinkedIn touts as new preexisted the Settlement and offers nothing new or unique to the class members.

The Settlement continues:

LinkedIn has added the following language to Add Connections invitation permission screens: "Invite friends, colleagues, and acquaintances who might like to connect, and would benefit from joining LinkedIn. If someone you invite doesn't respond right away, we'll send up to two reminders."

This is a solicitation not a disclaimer. This new language fails to inform class members LinkedIn will collect the data of the people in the class member's email contact list and LinkedIn will sell it for profit and/or expose it to a security lapse. Cybercrime is a real threat in 2015 and anytime we provide a company with our data or the data of our friends we are taking the risk of exposure. Consumers should be fully informed before taking such a risk.

The Settlement continues:

2.2.3 Contact Management. LinkedIn has implemented functionality allowing members to manage contacts, including viewing and deleting contacts and sending invitations. 2.2.4 Connection Email Management. On or before December 31, 2015, LinkedIn will implement functionality allowing members who invite contacts to connect through Add Connections to withdraw those invitations. Although the initial connection invitation cannot be recalled or removed from the recipient's inbox, the withdrawal functionality will stop reminders from being sent.

Once again, these features preexisted the settlement and do nothing to inform or educate consumers regarding how they data will be treated.  The prospective relief is worth nothing to the class members, consumers, and is intended to distract the Court from the low monetary payout.

6

**OBJECTION OF CLASS MEMBER MARY MEANS**

In Class Counsel's motion for attorney's fees they state the following:

These prospective changes were developed and implemented as a result of this Settlement. Class Counsel has investigated and confirmed (and, with respect to the Connection Email Management described above, which is due to be implemented by the end of 2015, will specifically confirm) the implementation of these procedures.

(Motion for Attorney's Fees page 5 lines 4-7)

There is no evidence Class Counsel confirmed the prospective changes were developed and implemented. There is no explanation regarding the process undertaken if any to enable Class Counsel to confirm the changes were implemented.

## VI)   The Parties Intend the Settlement Fund to be Distributed to the *Cy Pres* Recipients

LinkedIn wants no claims submitted or too many claims submitted because both scenarios would trigger the *cy pres* distribution.  If not enough claims are submitted the remaining Settlement fund will go to the *cy pres* recipients. (Section 3.1.2 of Settlement)  If too many claims are submitted distribution would become impractical and the fund will go to the *cy pres* recipients. (Section 3.1.3 of Settlement) The Settling parties can manipulate the process easily to ensure the *cy pres* recipients receive the fund and not the class. The reason is simple. If the fund goes to the *cy pres* recipients LinkedIn can deduct the loss as a charitable donation, commonly referred to as a backdoor reversion. The parties colluded to create a settlement which benefits LinkedIn and Class Counsel but not the class. The settlement is unfair.

The claims form electronic submittal website was designed to discourage claims submittals. The claims submittal website is unsecure, and the form requests several items of information, including bank account information, which could jeopardize a class member's privacy.

7

**OBJECTION OF CLASS MEMBER MARY MEANS**

**VII)    The Fee Award Sought is Too High and Unsupported by Evidence**

This case is in its infancy compared to other similar class actions at approximately 2 years old.  In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund created. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). A court should depart from the benchmark only if there are "special circumstances" justifying the departure. *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted). The special circumstances justifying a significant reduction is that Class Counsel has not had time to accomplish work worth 3 million dollars. Surviving a motion to dismiss and sitting through a few hours of mediation does not entitle Class Counsel to 3 million dollars in fees. There were no discovery disputes. Class Counsel has provided the Court no evidence discovery even occurred, beyond claiming some Requests for Production were served, and Class Counsel's alleged intent to notice 8 depositions.

> When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims. Class counsel could have done much better by the class had they been willing to accept lower fees in their negotiation with Rexall. But realism requires recognition that probably all that class counsel really care about is their fees — for $865,284 spread.

*Pearson v. NBTY, Inc.,* 772 F.3d 778, 784 (7th Cir. 2014)

Class Counsel failed to properly itemize costs and instead attempted to conceal costs into the fee award because the costs were unreasonably low demonstrating a lack of diligence. The actual items of expense should have been itemized instead of lumping together categories of costs, and copies of receipts or invoices should have been provided.  The amount of costs claimed represent less than 2% of the entire fee award sought.

**OBJECTION OF CLASS MEMBER MARY MEANS**

As stated previously, the prospective relief is a sham. The fund will most likely not be distributed to the class. Class Counsel has not earned the fee requested.  The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also *Federal Judicial Center, Manual for Complex Litigation*, §27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

The only *proof* of legal hours billed on the case are one page summaries of total hours billed from each firm.  The Court was not provided information regarding the dates the hours were billed, or any information regarding the description of legal work performed.

> We thus have "remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers — the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." [Citations Omitted] …That is an accurate description of this case; and it is why objectors play an essential role in judicial review of proposed settlements of class actions and why judges must be both vigilant and realistic in that review.

*Pearson v. NBTY, Inc., supra*, 772 F.3d at 787.

**VIII)   The Notice Failed to Notify the Class of the Class Claims and Other Material  Items**

Rule 23(c)(2)(B)(ii) provides "[t]he notice must clearly and concisely state in plain, easily understood language the class claims, issues, or defenses."  The individual notice sent to the class members failed to include a description of claims alleged. The website notice included the following:

> Plaintiffs asserted violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, et seq.; (4) the federal

9

Wiretap Act, 18 U.S.C. §§ 2510, et seq.; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq.

Class Counsel has purposefully omitted any reference to California's Statutory Right of Publicity *Cal. Civ. Code* § 3344, the second cause of action pled on the class level in the Third Amended Complaint.  This omission is intended to prevent class members from realizing their claims are worth $750 at a minimum. Since the Release reaches claims brought under *Cal. Civ. Code* § 3344 the class action notice should have included a disclosure that Plaintiff asserted violations of California's Statutory Right of Publicity.

The notice also failed to inform the class members that the Court could only accept or reject the Settlement, and not make changes. The District's Procedural Guidance for Class Action Settlements mandates such notice. ("The notice should make clear that the court can only approve or deny the settlement, not change the terms of the settlement.")

**IIX)   The Website Failed to Provide Links to the Motion for Preliminary Settlement Approval**

The Northern District's Procedural Guidance for Class Action Settlements states in pertinent part:

> The notice should include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, <u>motions for approval</u> and for attorneys' fees and any other important documents in the case…

(Accessed December 8, 2015 <http://cand.uscourts.gov/ClassActionSettlementGuidance>)

The Settlement website failed to display a link to the Motion for Preliminary Approval which prevented the class from educating themselves. (See, Exhibit "B" attached to the Declaration of Frederic Fletcher).

10

**OBJECTION OF CLASS MEMBER MARY MEANS**

DATED: December 8, 2015

By /s/ Frederic R. Fletcher
Frederic R. Fletcher (SBN 238038)
**Fletcher Law Offices**
417 2nd Street, Ste 204
Eureka, CA 95501
Telephone: (707) 502-2642
Email: fletcher@lawca.us
Attorneys for Class Member Mary Means

By /s/ Mary Means
Class Member
Claim ID PTFKG-WHLRR-CINCH

11

**OBJECTION OF CLASS MEMBER MARY MEANS**

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Fletcher Law Offices 417 2nd Street, Suite 204, Eureka, CA 95501. On December 11, 2015, I served the within document(s):

CLASS MEMBER MARY MEANS OBJECTION TO CLASS SETTLEMENT, OBJECTION TO ATTORNEY FER AWARD & NOTICEOF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING

DECLARATION OF FREDERIC R. FLETCHER

DECLARATION OF MARY MEANS

X- CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 13, 2015, at Eureka, California.

/s/ Frederic R. Fletcher
Frederic R. Fletcher

12

**OBJECTION OF CLASS MEMBER MARY MEANS**