Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

**REDACTED AS TO PERSONAL INFORMATION**

Attorney for Objector Susan House

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:13-CV-04303-LHK<br><br>**CLASS ACTION**<br><br>**OBJECTION OF SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: February 11, 2016<br>Time: 1:30 p.m.<br>Location: Courtroom 8 — 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>Action filed: September 17, 2013<br>Trial date: None Set |

Susan House objects to the proposed settlement. Ms. House is a member of the class. Her claim number is QOQPW-ABCIJ-HODRI and her claim submission identification number is LNKD1-400188384-8. A copy of her claim form is attached as Exhibit "A". Ms. House's address is XXX. Her telephone number is XXX. Her email address is XXX.

## I. THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement. *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008). In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement

because the court was not "provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133. In *Clark v. American Residential Services LLC, et al.*, 175 Cal.App.4th 785 (July 6, 2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra*, 168 Cal.App.4th at p. 130.

California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 96 Cal. Rptr. 3d 127 (2009).

Here, the Court should decline to grant final approval to this proposed class action settlement. The settling parties ensnared class members with a convoluted claims process [seven pages to read, understand and complete to *possibly* receive just ten dollars] and misleading settlement notice, ensuring the real beneficiaries of this settlement are the three *cy pres* beneficiaries, along with Class Counsel.

## II. ARGUMENT

### A. Notice is Inadequate and the Claim Form is Convoluted

A notice may not be misleading. The notice is misleading. It violates due process and Fed. R. Civ. Proc., Rule 23. *Molski v. Gleich*, (9th Cir. 2003) 318 F.3d 937, 952 [Notice is not adequate if it misleads the class]; *In re Motor Fuel Temperature Sales Practices Litig.,* 286 F.R.D. 488, 504 (D. Kan. 2012) (denying approval where *cy pres* beneficiaries were not designated); see also, *In re Thornburg Mortg., Inc. Secs. Litig.,* 885 F. Supp.2d 1097, 1111 (D.N.M. 2012) (outlining *cy pres* defects). Rule 22(c)(2)(B)(ii) provides "[t]he notice must clearly and concisely state in plain, easily understood

language the class claims, issues, or defenses." As stated above, the individual notice sent to the class members failed to include a description of claims alleged.

Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights they are releasing or the remedies available for violations of those legal rights. The Notice merely states:

> The Action challenges LinkedIn's use of a service called Add Connections to grow its member base. Add Connections allows LinkedIn members to import contacts from their external email accounts and email connection invitations to one or more of those contacts inviting them to connect on LinkedIn. If a connections invitation is not accepted within a certain period of time, up to two emails are sent reminding the recipient that the connection invitation is pending. The Court found that members consented to importing their contacts and sending the connection invitation, but did find that members consented to LinkedIn sending the two reminder emails. The Plaintiffs contend that LinkedIn members did not consent to the use of their names and likenesses in those reminder emails. LinkedIn denies these allegations and any and all wrongdoing or liability. No court or other entity has made a judgment or other determination of any liability. Plaintiffs asserted violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et Seq.*) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*; (4) the federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*

The description of the release is similarly uninformative. The Notice states that under the Settlement, Class Members:

> shall be deemed to have fully, finally, and forever released, relinquished, and discharged against LinkedIn . . . any and all actions, causes of action, claims, demands, liabilities, obligations, damages (including, without limitation, punitive, exemplary and multiple damages), penalties, sanctions, losses, debts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever, whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in equity, that were asserted or could have been asserted arising from or related to allegations in the Action regarding the alleged use of Add Connections to grow LinkedIn's member base, including, without limitation, (i) accessing, importing, storing and/or using information from LinkedIn Members' external email accounts; (ii) using LinkedIn members' names, photographs, likeness, and/or identities in emails relating to Add Connections; or (iii) related disclosures, representations, and omissions.

The Notice does state that the full terms of the release are located on the settlement website. However, the terms on the website are not any more informative. Class Members are not informed the asserted

violations of California's Right of Publicity may subject the requesting party to claims equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use. Further, that punitive damages may also be awarded to the injured party or parties and that the requesting party, if prevailing, shall also be entitled to attorney's fees and costs of litigation.

Further, Class Members are not informed that the asserted violations of California's Unfair Competition Law may subject the requesting party to claims up to two thousand and five hundred dollars ($2,500) for each violation. The notice does not inform Class Members, even in layman's terms, that the 9th Circuit has ruled

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement. The Northern District's Procedural Guidance for Class Action Settlements states in pertinent part:

> The notice should include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, <u>motions for approval</u> and for attorneys' fees and any other important documents in the case. . . .

(Accessed December 13, 2015 <http://cand.uscourts.gov/ClassActionSettlementGuidance.)

Class Counsel have not included their Motion for Final Approval. Identifying which Complaint is the Operative Complaint would inform Class Members about "claims . . . that arise from or could have arisen from or out of the facts or matters that were alleged from any and all claims . . . that occurred from March 2, 2010 through May 1, 2011, including all claims alleged in the Coordinated Actions and all claims based on facts alleged in the Coordinated Actions." Instead they can only speculate which is unacceptable.

Further, a class member must wade through voluminous and wordy seven pages in order to be eligible to possibly receive just ten dollars. In the attestation, the class members must swear under penalty of perjury that he/she has been "injured" without an explanation of what "injury" means in the sense of this class action. Does it mean emotional distress? Does it mean financially burdened of some sort? Does it mean reputational harm? It is unknown how a class member would or could know whether or not an "injury" has taken place.

**B. The Settlement Benefit is Unknown**

*1. The Amount to Each Class Member is Unkown*

The concerns are compounded by the fact the Notice states, "No one knows in advance whether or in what amount payments will be made to claimants." Email Notice, p. 1. Further, any check, for any amount, is only valid for 90 days. Further, if too many claimants file claims, it is possible no claimants will receive any money. All of it instead will be given to *cy pres* beneficiaries.

*2. The cy pres Beneficiaries are Political Organizations*

The *cy pres* beneficiaries are murky organizations that are nakedly political. These organizations are not shy about weighing in on controversial political matters. The first organization is overseen by Defendant. However, this fact is not disclosed to the class. The second organization is notable for spending less than two percent of its programming resources in the United States. This organization has a penchant for hosting conferences in exotic locations. This is not disclosed to the class. The third organization is a repeat-player. Specifically, it has been involved in countless privacy cases. In fact, it has received millions of dollars in *cy pres* grants and has nothing to show for it. The three *cy pres* beneficiaries are as follows: (1) Access Now, Inc.; (2) Electronic Privacy Information Center; and (3) Network for Teaching Entrepreneurship.

The principal beneficiary of a settlement should be the class, and *cy pres* distributions should only be a last resort. *See e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (cy pres settlement can easily become "a paper tiger"); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (holding *cy pres* to be an inadequate substitute for individual compensation); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION ("ALI Principles") §3.07 cmt b (2010) (rejecting position that "*cy pres* remedy is preferable to further distributions to class members. Further, Class Counsel provide no mechanism to insure the bulk of the settlement goes to the class. *Cy pres* recipients would be the "next best" recipients. The "next-best" rule – reflecting the doctrines origins in trust law described above – requires the *cy pres* recipient approximate the interests of class members and the underlying lawsuit. *See Dennis* 697 F.3d at 865-66; *see also In re Groupon, Inc.*, No. 11-md-2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750, at *36 (S.D. Cal. Sept. 28, 2012) (requiring "an actual connection, not just between the class and *cy pres* beneficiary, but between the claims alleged in the case

and the *cy pres* beneficiary."). The American Law Institute's position is roughly equivalent. ALI PRINCIPLES §3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class.").

When class actions are settled or tried, there are times that it's not possible to distribute all of the money recovered to some or all of the class members. They may be difficult to identify or find or it may not be economically feasible to distribute the funds to them. For example, the cost of distributing 50 cents to each of 6 million class members may preclude individual distribution, even though the defendant has been held accountable for cheating the class out of $3 million.

**C. The Fee Award or Too High and Unsupported by Evidence**

This case is in its infancy compared to other similar class actions at approximately 2 years old. In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund created. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). A court should depart from the benchmark only if there are "special circumstances" justifying the departure. *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted). The special circumstances justifying a significant reduction is that Class Counsel has not had time to accomplish work worth 3 million dollars. Surviving a motion to dismiss and sitting through a few hours of mediation does not entitle Class Counsel to 3 million dollars in fees. There were no discovery disputes. Class Counsel has provided the Court no evidence discovery even occurred, beyond claiming some Requests for Production were served, and Class Counsel's alleged intent to notice 8 depositions.

> When parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims. Class counsel could have done much better by the class had they been willing to accept lower fees in their negotiation with Rexall. But realism requires recognition that probably all that class counsel really care about is their fees – for $865,284 spread.

*Pearson v. NBTY, Inc.,* 772 F.3d 778, 784 (7th Cir. 2014).

Further, Class Counsel failed to properly itemize costs and instead attempted to conceal costs into the fee award because the costs were unreasonably low demonstrating a lack of diligence. The actual items of expense should have been itemized instead of lumping together categories of costs, and

copies of receipts or invoices should have been provided. The amount of costs claimed represent less than 2% of the entire fee award sought.

Here, the fund will most likely not be distributed to the class. Class Counsel has not earned the fee requested. The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also *Federal Judicial Center, Manual for Complex Litigation*, §27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). The only proof of legal hours billed on the case are one page summaries of total hours billed from each firm. The Court was not provided information regarding the dates the hours were billed, or any information regarding the description of legal work performed.

Further, even if Counsel's fees should be based on their lodestar, their lodestar can be adjusted downwards and upwards. Although California courts routinely use the lodestar method to analyze fee awards, they also acknowledge the lodestar method is subject to abuse. These abuses were acknowledged in *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 40, 97 Cal. Rptr. 2d 797 (2000). In *Lealao* the court analyzed the history of the lodestar method, citing THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES (1985) 108 F.R.D. 237, 246-249, ("the Report of the Third Circuit Task Force concluded the lodestar technique is a "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar" (*Id.* at p. 258), and recommended a return to the percentage of the recovery fee formula in cases involving a settlement fund).

*Lealao* did not suggest discontinued the lodestar method to determine fees but it said "courts must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id., quoting* John Coffee, Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions (1986) 86 COLUM. L.REV. 669, 691 (observing "As one commentator has stated, '[b]y severing the fee award from the settlement's size, [the lodestar] formula facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award.. . .'*).*

*Accord.* Charles Silver, Due Process and the Lodestar Method, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

California courts can and should cross check the lodestar against the benefit obtained for the Class. *Lealao* held "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal.App. at 50 (observing "As we have said, the California Supreme Court has never prohibited adjustment of the lodestar on this basis. Due to the complexity of the judicial responsibility to structure a class action fee award providing counsel the optimum mix of incentives and disincentives, and the variety of different and sometimes competing considerations that may come into play (*see* Hay, Asymmetric Rewards: Why Class Actions (May) Settle for Too Little (1997) 48 HASTINGS L.J. 479), trial judges need the flexibility Serrano III provides, as it enables them to relate fee awards to the economic realities that determine the efficacy of the private enforcement contemplated by our civil justice system.) *See also see Serrano v. Priest* (1977) 20 Cal.3d 25, 49. *Accord. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (the lodestar "may be adjusted upward or downward to account for several factors including ... the benefit obtained for the class").

The incentive awards are excessive. Incentive awards of $1,500 for each of the class representative is excessive. It is 150 times the amount that *might* be revived by a Class Member.

California courts have followed the analysis recommended in some federal court cases in rejecting incentive awards out of keeping with the recovery achieved for unnamed class members. In *Clark v. American Residential Services LLC*, et al., *supra*, the court rejected an incentive award that was 44 times the amount the average class member would receive. In *Clark*, the court considered the factors looked at in *Cook v. Niedert* (7th Cir. 1998) 142 F.3d 1004, 1016. Those factors included "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Clark*, 175 Cal. App. 4th at 804, *citing Cook, ibid*. *Cook* also pointed to other factors identified in federal cases, including "the risk to the class representative in commencing suit, both financial and

otherwise," "the notoriety and personal difficulties encountered by the class representative," "the duration of the litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Clark*, at 804, *citing Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal. 1995). The court also rejected conclusory statements regarding the effort the class representative put into the litigation. Although Class Counsel recite in boilerplate fashion the efforts made by class representatives in furtherance of the litigation, their declarations are unpersuasive and repetitive. The court should not just rubber stamp these service awards.

### III. JOINDER IN OTHER OBJECTIONS

Ms. House joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members which are not inconsistent with these objections.

### IV. CONCLUSIONS

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated: December 14, 2015                By: <u>Joseph Darrell Palmer</u>
                                            Joseph Darrell Palmer
                                            Attorney for Objector Susan House

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2015, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

I further certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system. In addition, non-redacted copies of the foregoing were mailed on today's date via U.S. Mail, postage prepaid, to the following parties:

**Class Counsel**
Larry C. Russ, Esq.
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

**LinkedIn's Counsel**
Jerome C. Roth, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105

                             _/s/ Joseph Darrell Palmer_____
                             Joseph Darrell Palmer
                             Attorney for Objector Susan House