1 | LARRY C. RUSS (SBN 82760)
lruss@raklaw.com
2 | NATHAN D. MEYER (SBN 239850)
nmeyer@raklaw.com
3 | RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
4 | Los Angeles, California 90025
Telephone: (310) 826-7424
5 | Facsimile: (310) 826-6991

DORIAN S. BERGER (SBN 264424)
dberger@olavidunne.com
DANIEL P. HIPSKIND (SBN 266763)
dhipskind@olavidunne.com
OLAVI DUNNE LLP
1880 Century Park East, Ste. 815
Los Angeles, California 90067
Telephone: (213) 516-7900
Facsimile: (213) 516-7910

6 | MICHAEL W. SOBOL (SBN 194857)
msobol@lchb.com
7 | NICHOLAS R. DIAMAND (*Pro Hac Vice*)
ndiamand@lchb.com
8 | MELISSA GARDNER (SBN 289096)
mgardner@lchb.com
9 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
10 | San Francisco, CA 94111
Telephone: (415) 956-1000
11 | Facsimile: (415) 956-1008

12 | *Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 13-CV-04303-LHK<br><br>**DECLARATION OF NICHOLAS DIAMAND IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**HEARING**<br>Judge:      Hon. Lucy H. Koh<br>Date:       February 11, 2016<br>Time:       1:30 p.m.<br>Location:   Courtroom 8 – 4th Floor |

I, Nicholas Diamand, hereby declare:

1.    I am a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"), and, together with counsel at Russ August & Kabat PC, and Olavi Dunne LLP, serve as Class Counsel in this action.  I am admitted *pro hac vice* to practice before this Court, and I am a member in good standing of the New York State Bar.  I submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.  I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

## I.    Implementation of the Notice Plan

2.    Pursuant to the Court's Order Granting Preliminary Approval of Proposed Settlement, Directing Notice to Class, and Setting Final Approval Hearing ("Preliminary Approval Order") (Dkt. No. 106), Class Counsel worked together with counsel for LinkedIn and Gilardi & Co. LLC ("Gilardi"), the Court-appointed Settlement Administrator to effect the Notice Plan submitted to and approved by the Court in the preliminary approval process.  Based upon my experience in complex litigation, I respectfully endorse this Settlement as fair, reasonable and adequate.

3.    Specifically, at approximately 3:00 p.m. Pacific Time on October 2, 2015, LinkedIn emailed Email Notice of the Proposed Settlement in substantially the form approved by the Court (Dkt. No. 106-2) to the email address on file with LinkedIn for members of the Class.

4.    Shortly after the Email Notice was disseminated at approximately 3:00 p.m., due to the volume of hits to the Settlement Website (www.addconnectionssettlement.com), some visitors to the website experienced slow load of the website.  I immediately contacted numerous team members of the Settlement Administrator who informed me they were actively working to resolve the issue as quickly as possible.  I also contacted other Class Counsel lawyers and staff as well as counsel for LinkedIn to ensure we had an interim game plan to address potential concerns and questions from Class Members.  Shortly thereafter that day, the issue was remedied and all Class Members were able to submit Claims electronically through the Settlement Website.  The following weekend (Saturday, October 3 and Sunday, October 4) and on an ongoing basis, I

1   monitored the website functionality myself and via calls and emails with the team at Gilardi.  I

2   did not observe any issues that weekend – or thereafter – and am informed that Gilardi did not

3   either.

4          5.      On October 15, pursuant to Section 5.1.1 of the Settlement, and ¶ 11 of the

5   Preliminary Approval Order, at approximately 5:00 p.m. Pacific Time, LinkedIn attempted to re-

6   send the Email Notice to the email address for which the Email Notice had resulted in a bounce-

7   back or was otherwise undeliverable.  On October 16, the Settlement Administrator informed me

8   that Class Members would not have encountered any errors in their attempts to visit the

9   Settlement Website, review Case Documents, or file a Claim following the October 15

10  dissemination of the Email Notice.

11         6.      On December 21, 2015, counsel for LinkedIn informed me that according to

12  LinkedIn's records, 115,147 Claims filed without using a Claim ID did not appear to have

13  originated from Class Members.  I understand from Gilardi that 3,125 of the email addresses

14  submitted by such claimants were invalid.

15         7.      Subsequently, and pursuant to that discussion and in accordance with Section 3.2.4

16  of the Settlement Agreement, the Settlement Administrator, with assistance from Class Counsel

17  and counsel for LinkedIn crafted a procedure for the 112,022 such claimants who had provided

18  valid contact email addresses with their Claims to cure the deficiencies in their Claims.

19         8.      Class Counsel, the Settlement Administrator and Counsel for LinkedIn concurred

20  that initiating this process at the end of December and carrying it over into the holiday period, in

21  order to include this data within Plaintiffs' submission of this motion in support of final approval

22  by January 14, 2016, risked recipients either overlooking the email itself or failing to submit the

23  relevant materials in a timely fashion.  Therefore, although the materials were prepared for

24  dissemination at the end of December 2015, the parties agreed to a January timeline for this

25  process.

26         9.      On January 6, 2016, in consultation with the Parties, the Settlement Administrator

27  emailed a Notice of Deficiency to these 112,022 potentially valid Claimants, which contained a

28  hyperlink to a webpage created by the Settlement Administrator where Claimants could re-submit

the email address associated with their LinkedIn account, or their unique Claim ID, in order to validate their claim. The deadline for Claimants to respond to the Notice of Deficiency is January 20, 2016.

10.     Class Counsel will report on the outcome of this process, as well as the final numbers of Class Members who have submitted valid Claims, on or before February 4, 2016 together with the filing of Plaintiffs' reply brief in support of Plaintiffs' fees, costs and service awards.

## II.     **Media Coverage of the Settlement**

11.     National news media published information about the Settlement following dissemination of the Email Notice on October 2, 2015.  A search on Google News (www.news.google.com) for the term "LinkedIn Settlement" recalls at least 190 individual articles posted in and around early October 2015 responsive to the term, all of which the search engine has categorized as relating to this Settlement.  Attached hereto as **Exhibit 1** is a screenshot of the Google News search results for term "LinkedIn Settlement."

12.     A majority of the articles covering the Settlement and claims process provided accurate information to the public, such as by posting excerpts from the Email Notice and/or direct links to the Settlement Website or the Claim Form.  For example, attached hereto as **Exhibit 2** is an article by Jillian D'Onfro of *Business Insider*, which provided information about the Settlement and pasted a copy of the Email Notice within the article. (Jillian D'Onfro, *LinkedIn Might Have To Pay You Money For Spamming Your Email Contacts*, BusinessInsider.com, October 2, 2015 (available at http://www.businessinsider.com/linkedin-settles-class-action-lawsuit-2015-10 (last visited January 9, 2016)).  Attached hereto as **Exhibit 3** is an article posted online by *The Guardian*, which, in the text of the article, provided a link to the Email Notice (Unnamed Author, *LinkedIn Settles Lawsuit Over 'Add Connection' Feature For $13m*, TheGuardian.com, October 7, 2015 (available at http://www.theguardian.com/technology/2015/oct/07/linkedin-lawsuit-add-connection-feature (last visited January 9, 2016)).

13.     Among the articles covering the Settlement and claims process, certain coverage provided inaccurate information.  The two most common inaccuracies were (1) that the Settlement entitled Claimants to payments of up to $1,500; and (2) that LinkedIn users who *received* unwanted invitation or reminder emails were members of the Class.  Immediately following dissemination of the Email Notice, LCHB attorney Melissa Gardner monitored the media for such inaccuracies, and, in conjunction with members of LCHB's Marketing Department, attempted to locate the contact information for the author of each inaccurate article published between October 2 and October 7, 2015, when the vast majority of coverage about the Settlement and claims process occurred.  Ms. Gardner worked with LCHB's Marketing Department to contact the most widely-distributed publications and request that corrections to the factual content of the articles be made.  Corrections were issued by the *Los Angeles Times* online (*see* **Exhibit 4**, Samantha Masunaga, *LinkedIn Agrees To Pay $13 Million In 'Spam' Settlement*, Los Angeles Times October 6, 2015 (with correction), (available at http://www.latimes.com/business/la-fi-linkedin-Settlement-20151006-story.html (last visited January 9, 2016); *Marie Claire* online (*see* **Exhibit 5**, Michael Sebastian, *Heads Up, LinkedIn Might Owe You Money - *Scrambles To Check Inbox**, MarieClaire.com, October 6, 2016 (with correction) (available at http://www.marieclaire.com/career-advice/news/a16220/linkedin-might-owe-you-money/ (last visited January 9, 2016); and the news website Buzzfeed.com (*see* **Exhibit 6**, Rachel Zarrell, *If You Use LinkedIn It May Owe You Compensation From A $13 Million Settlement*, BuzzFeed.com, October 6, 2015 (with correction).  Because many articles failed to identify the author, a number of reporters could not be reached.

III.     <u>Class Member Response to the Settlement</u>

14.     As of January 14, 2016, the Settlement Administrator, with the assistance of Class Counsel and LinkedIn, has determined that 567,816 individuals timely submitted Claim Forms, of which Claims, to date, 433,047 have been determined to be valid, timely, non-duplicate Claims submitted by Class Members.  145 individuals have requested exclusion from the Settlement.  85

1    individuals have filed objections, of which eight objections fully comply with the requirements of

2    this Court's Order for submitting a valid objection, (and 77 of which do not).

3        15.    Since September 15, 2015, when the Court granted preliminary approval of the

4    Settlement (Dkt. No. 106), 53 Class Members have contacted LCHB directly, by email or

5    telephone, with questions and requests regarding the Settlement.  To date, LCHB has directly

6    received 28 e-mails, 24 calls, and 1 letter from potential Class Members.  Ms. Gardner or I often

7    personally answered these questions and responded to these requests.  For the remainder, we

8    worked with and supervised LCHB paralegal Miriam Gordon who answered questions and

9    responded appropriately to requests.

10       16.    The most common subjects of inquiries from Class Members were (1) general

11   questions regarding the litigation and proposed Settlement, (2) requests for information regarding

12   how to file a claim, and (3) assistance in determining if someone was a Class Member.  In all

13   instances, we referred the individual to the Settlement Website.

14       17.    In response to Class Member inquiries regarding the litigation and the Settlement

15   generally, we answered specific Class Member questions, explained what the case is about, the

16   terms of the Settlement, and explained Class Members' options with respect to the Settlement.

17       18.    In response to Class Member inquiries regarding submitting a Claim Form, we

18   explained to Class Members how to file a claim online, or by mail. When Class Members

19   requested that a paper or electronic copy of the Claim Form be emailed or mailed to them, we

20   provided a copy as requested.

21       19.    In response to Class Member inquiries about whether an individual was a Class

22   Member, we explained the scope of the Class definition, and provided information on how to

23   ascertain whether they had used LinkedIn's Add Connections feature.

24       20.    Many Class Members and members of the public contacted Class Counsel and the

25   Court to express their support of the litigation and the Settlement.   Examples include

26   correspondence received by the Court from June Barrett (Dkt. No. 124, at 8-10); Diane Hiltman

27   (Dkt. No. 108, at 23-34); and Ronald Campbell (Dkt. No. 109, at 5-6).

28

DECLARATION OF NICHOLAS DIAMAND ISO
MOTION FOR FINAL APPROVAL
CASE NO. 13-CV-04303-LHK

21.     Since submitting the Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards on November 30, 2015, we have continued to assist in the implementation of the Settlement, including fielding inquiries from Class Members, conferring with and assisting the Settlement Administrator, and assisting with creation and implementation of a process for curing deficiencies in submitted Claims.  We will remain actively engaged in seeing the Settlement through to completion.

**IV.     Other Factors Supporting that this Settlement is Fair, Reasonable, and Adequate**

22.     Throughout this litigation, LinkedIn has vigorously contested both its liability and Plaintiffs' ability to certify the asserted claims for class treatment.  The parties disagreed about these points.  While Plaintiffs believe and continue to believe that they would overcome LinkedIn's defenses, at the time of the Settlement, many important issues had yet to be resolved, presenting significant risks to both sides.  For example, LinkedIn has argued that its terms of service and privacy policies, as well as LinkedIn users' knowledge based upon receipt of Add Connections emails from other users and other potential forms of notice, are sufficient for a jury to find that Class Members consented to the challenged conduct.  LinkedIn also maintained that the single publication rule might prevent Class Members from challenging reminder emails separately from initial invitation emails on the grounds that the communications constituted a "single integrated publication."

23.     Attached as **Exhibit 7** is a true and correct copy of a screen shot of the Settlement Website, Case Documents tab, and Long Form Notice finally approved in *Keller v. Nat'l Coll. Athletic Ass'n (NCAA)*, No. 9-1967, 2015 WL 5005901 (N.D. Cal. Aug. 19, 2015) (Wilken, J.), also available at http://www.ncaa-ea-likeness-settlement.com/ (last visited January 11, 2016).

24.     Attached as **Exhibit 8** is a true and correct copy of a screen shot of the Settlement Website, Case Documents tab, and Long Form Notice finally approved in *Arendas v. Citibank*, No. 11-06462 (Breyer, J.), at Dkt. No. 41, also available at http://www.arendasoverdraftfeesettlement.com/ (last visited January 11, 2016).

25.     Attached as **Exhibit 9** is a true and correct copy of a screen shot of the Settlement Website, Case Documents tab, and Long Form Notice finally approved in *Bayat v. Bank of the W.*,

1   No. 13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) (Chen, J.), also available at

2   http://www.bayattcpasettlement.com/ (last visited January 11, 2016).

3       26.     Attached as **Exhibit 10** is a true and correct copy of a stipulated dismissal of

4   appeal filed by an objector represented by Stephen Helfand regarding final approval of a class

5   action settlement in *In re Yahoo! Litig. True Comm., Inc.!*, No. 6-2737 (N.D. Cal. 2010) (Snyder,

6   J.), and the related docket.

7       27.     Attached as **Exhibit 11** is a true and correct copy of a voluntary dismissal of

8   appeal filed by an objector represented by Alan Sherwood regarding final approval of a class

9   action settlement in *Fraley v. Facebook, Inc.*, No. 11-1726 (N.D. Cal. 2011) (Seeborg, J.), and the

10  related docket.

11      28.     LinkedIn has begun the process of verifying which, if any, objectors are members

12  of the Class, and Class Counsel will report the outcome of that investigation in connection with

13  Class Counsel's filing due on or before February 4, 2016.

14      I declare under penalty of perjury that the foregoing is true and correct and that this

15  Declaration was signed in New York, New York on January 14, 2016.

16

17

*Nicholas Diamand*
_____
*Nicholas Diamand*

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NICHOLAS DIAMAND ISO
MOTION FOR FINAL APPROVAL
CASE NO. 13-CV-04303-LHK

# EXHIBIT 1



linkedin settlement

All    **News**    Videos    Maps    Shopping    More ▾    Search tools

About 893,000 results (0.48 seconds)



Adweek

**Will The Floodgates Open As Consumer Backlash To Spa...**
JD Supra (press release) - Dec 24, 2015
LinkedIn is often referred to as the "Facebook of the Professional World. ... After the recent **LinkedIn settlement**, we advise Mr. Zuckerberg to ...



**LinkedIn agrees to pay $13 million in 'spam' settlement**
Los Angeles Times - Oct 6, 2015
**LinkedIn** Corp. has agreed to pay $13 million to **settle** a class-action lawsuit alleging that the social network sent too many emails to potential ...

**LinkedIn To Pay Users Up To $1500 In Spam Settlement**
Highly Cited - Huffington Post - Oct 7, 2015
**Explore in depth** (61 more articles)



**LinkedIn to Pay $13 Million in Spam Settlement**
TIME - Oct 6, 2015
The professional networking site **LinkedIn** has agreed to a $13 million out of court **settlement** in a class action lawsuit that claims reputation ...

**LinkedIn pays big after class action lawsuit over user emails**
Highly Cited - Mashable - Oct 3, 2015
**Explore in depth** (127 more articles)



**After Lawsuit Settlement, LinkedIn's Dishonest Design Is ...**
Co.Design - Oct 5, 2015
Now, **LinkedIn** is going to be paying for it as part of a class-action ... user is believed to only get about $10 as part of the class-action **settlement**.



**LinkedIn to Pay Users Up to $1500 Each to Settle Lawsuit**
NBC Chicago - Oct 5, 2015
The networking site **LinkedIn** announced Friday it will pay some of its users up to $1,500 each to **settle** a $13 million lawsuit regarding one of ...



**LinkedIn Data-Breach Settlement Gains Approval**
MediaPost Communications - Sep 21, 2015
A federal judge has granted final approval to **LinkedIn's** $1.25 million **settlement** of a class-action lawsuit stemming from a 2012 data breach.



**LinkedIn Add Connections Email Spam Lawsuit: How To R...**
iDigitalTimes.com - Oct 2, 2015
17, 2011 to Oct. 31, 2014, you are eligible for a cash payout from the **LinkedIn settlement** fund. If too many people sign up and the payout per ...

**LinkedIn Pays $13M To Settle Email Harvesting Class Action**
Law360 (subscription) - Jun 12, 2015
Law360, New York (June 12, 2015, 2:00 PM ET) -- **LinkedIn** Corp. agreed to shell out $13 million and change certain site features to **settle** a proposed class ...



**LinkedIn** To Pay $13 Million To **Settle** Battle Over Email In…
MediaPost Communications - Jun 12, 2015
**LinkedIn** has agreed to pay $13 million to resolve a class-action …
The **settlement** also requires **LinkedIn** to revise some of its prior
practices.



**LinkedIn** to pay $13 million in **settlement** over spam emails
UConn Daily Campus - Oct 9, 2015
**LinkedIn**, a professional networking platform endorsed by the
UConn's Center for Career Development, will pay $13 million in
**settlement** for …

Stay up to date on results for *linkedin settlement*.        Create alert

1  2  3  4  5  6  7  8  9  10        Next

The selection and placement of stories on this page were determined automatically by a computer
program. The time or date displayed reflects when an article was added to or updated in Google News.

Help        Send feedback        Privacy        Terms

# EXHIBIT 2

# BUSINESS INSIDER

# LinkedIn might have to pay you money for spamming your email contacts

 JILLIAN D'ONFRO
10M

If you just got a long email about LinkedIn and a class-action legal settlement, yes, it's real, and yes, you could be eligible to get a chunk of the $13 million that the professional social network is paying to settle the lawsuit.

Here's the deal:

Back in 2013, a class-action lawsuit accused LinkedIn of accessing users' email accounts without their permission and unwittingly using their names to send email invitations to people in their address books.


*Paramount*
A still from the movie "Wolf of Wall Street"

At the time, LinkedIn called many of the accusations false.

The court agreed that LinkedIn members did actually give the social network *permission* to use their email contacts to send connection invitations.

However, the court found that although LinkedIn members consented to importing their contacts and sending LinkedIn connection requests, they did *not* consent to the two additional "reminder emails" that LinkedIn would send about those requests.

Although LinkedIn still denies any wrongdoing, it has made changes to its product and privacy policy and agreed to pay $13 million to settle the lawsuit. The settlement has not yet been approved, but LinkedIn and the plaintiffs' lawyers have agreed to it, so unless members of the class object, it'll probably be approved next year.

Assuming the settlement goes through, what does that mean for you?

As a LinkedIn user, you will now see a new disclosure when you send a connection invitation,

letting you know that LinkedIn will send two reminder emails to the recipient. By the end of 2015, LinkedIn will also start letting members who are getting reminders stop those reminders from coming by cancelling the invitation.

If you got the email, you may also eligible to get some money.

LinkedIn's $13 million will be distributed *pro rata*, meaning that the amount each person get will depends on how many people file claims. But, if the number of claims means that the pay-out amounts to less than $10 per person who filed, LinkedIn will have to add on an additional $750,000.

LinkedIn sent Business Insider the following statement:

> LinkedIn recently settled a lawsuit concerning its Add Connections product. In the lawsuit, a number of false accusations were made against LinkedIn. Based on its review of LinkedIn's product, the Court agreed that these allegations were false and found that LinkedIn's members gave permission to share their email contacts with LinkedIn and to send invitations to connect on LinkedIn. Because the Court also suggested that we could be more clear about the fact that we send reminder emails about pending invitations from LinkedIn members, we have made changes to our product and Privacy Policy. Ultimately, we decided to resolve this case so that we can put our focus where it matters most: finding additional ways to improve our members' experiences on LinkedIn. In doing so, we will continue to be guided by our core value – putting our Members First.

And here's what the email looks like:

**Claim ID:**

NOTICE OF PENDING CLASS ACTION AND NOTICE OF PROPOSED SETTLEMENT
*PERKINS V. LINKEDIN CORP.*
**You are receiving this e-mail because you may have used LinkedIn's Add Connections feature between September 17, 2011 and October 31, 2014.**
*A federal court authorized this Notice. This is not a solicitation from a lawyer.*
**Why did I get this notice?** This Notice relates to a proposed settlement ("Settlement") of a class action lawsuit ("Action") against LinkedIn Corporation ("LinkedIn") based on LinkedIn's alleged improper use of a service called "Add Connections" to grow its member base.
**What is the Action about?** The Action challenges LinkedIn's use of a service called Add Connections to grow its member base. Add Connections allows LinkedIn members to import contacts from their external email accounts and email connection invitations to one or more of those contacts inviting them to connect on LinkedIn. If a connection invitation is not accepted within a certain period of time, up to two "reminder emails" are sent reminding the recipient that the connection invitation is pending. The Court found that members consented to importing their contacts and sending the connection invitation, but did not find that members consented to LinkedIn sending the two reminder emails. The Plaintiffs contend that LinkedIn members did not consent to the use of their names and likenesses in those reminder emails. LinkedIn denies these allegations and any and all wrongdoing or liability. No court or other entity has made a judgment or other determination of any liability.
**What relief does the Settlement provide?** LinkedIn has revised disclosures, clarifying that up to two reminders are sent for each connection invitation so members can make fully-informed decisions before sending a connection invitation. In addition, by the end of 2015, LinkedIn will implement new functionality allowing members to stop reminders from being sent by canceling the connection invitation. LinkedIn has also agreed to pay $13 million into a fund that can be used, in part, to make payments to members of the Settlement Class who file approved claims. Attorneys representing the Settlement Class will petition the Court for payment of the following from the fund: (1) reasonable attorneys' fees, expenses, and costs up to a maximum of $3,250,000, and (2) service awards for the Plaintiffs up to a maximum of $1,500 each. The payment amount for members of the Settlement Class who file approved claims will be calculated on a *pro rata* basis, which means that it will depend on the total number of approved claims. If the number of approved claims results in a payment amount of less than $10,

LinkedIn will pay an additional amount up to $750,000 into the fund. If the *pro rata* amount is so small that it cannot be distributed in a way that is economically feasible, payments will be made, instead, to *Cy Pres* Recipients selected by the Parties and approved by the Court. No one knows in advance whether or in what amount payments will be made to claimants.

**You may also learn more by clicking on the following links:**

Settlement Agreement

Class Action Complaint

Orders on Motions to Dismiss

Legal Representation

Attorneys' Fees

Cy Pres Recipients

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A CLAIM FORM** | If the Court gives final approval to the Settlement, this is the only way to be eligible to receive a payment. | Deadline:December 14, 2015 |
| **EXCLUDE YOURSELF** | This is the only option that allows you to retain your rights to sue LinkedIn about its alleged improper use of Add Connections to grow its member base. | Deadline:December 14, 2015 |
| **OBJECT** | Write to the Court about why you object to (i.e., don't like) the Settlement and think it shouldn't be approved. You may mail your written objection to Judge Koh's Case System Administrator at the United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113. Alternatively, you may file your written objection in person at any location of the United States District Court for the Northern District of California.<br><br>You must also mail your | Deadline:December 14, 2015 |

| | written objection to Class Counsel and LinkedIn's Counsel. The address for Class Counsel is: Larry C. Russ, Esq., Russ August & Kabat, 12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025. The address for LinkedIn's Counsel is: Jerome C. Roth, Esq., Munger, Tolles & Olson LLP, 560 Mission Street, 27th Floor, San Francisco, CA 94105. | |
|---|---|---|
| **GO TO THE "FINAL APPROVAL HEARING"** | The Court will hold a "Final Approval Hearing" to consider the Settlement, the request for attorneys' fees and expenses of the lawyers who brought the Action ("Class Counsel"), and the request for service awards of the plaintiffs who brought the Action ("Class Representatives").<br><br>You may, but are not required to, speak at the Final Approval Hearing about your written objection. If you intend to speak at the Final Approval Hearing, you must include your intention to do so in your written objection. Follow the procedure described above for providing your written objection to the Court as well as to Class Counsel and LinkedIn's Counsel. | Deadline:December 14, 2015 |
| **DO NOTHING** | You will not receive a payment, even if the Court gives final approval to the Settlement. You will also be giving up any claims you may have against LinkedIn based on its alleged improper use of | No deadline |

|  Add Connections to grow its member base. You may be eligible to receive the non-monetary benefits of the Settlement, if the Court gives final approval to the Settlement. |  |
|---|---|

**More information?** For more information about the Settlement and how to take the actions described above, please visit www.AddConnectionsSettlement.com or write to the Settlement Administrator at *Perkins v. LinkedIn Corp.*, Settlement, c/o Gilardi & Co. LLC, P.O. Box 808012, Petaluma, CA 94975-8012, info@AddConnectionsSettlement.com. You may also contact Class Counsel by calling (310) 826-7474.
**Do Not Address Any Questions About The Settlement Or The Litigation To LinkedIn, The Clerk Of The Court, Or The Judge.**

**NOW WATCH: The insanely successful and unorthodox life of Google founder Sergey Brin**

More: LinkedIn

- 
- 
-

# EXHIBIT 3



# LinkedIn settles lawsuit over 'add connection' feature for $13m

'I'd like to add you to my professional network on LinkedIn' emails cost the company millions

Wednesday 7 October 2015 05.33 EDT

Social network LinkedIn has agreed to pay $13m to users to settle a class-action lawsuit accusing it of sending too many unsolicited emails to users.

The lawsuit took issue with LinkedIn's "add connections" feature, which lets users import their personal contacts into the social network (the source of the infamous subject line "I'd like to add you to my professional network on LinkedIn").

If a user didn't reply to those emails, LinkedIn followed them up with two further ones again inviting them to join the site.

But while the emails are annoying for the recipients, it's actually the "senders" – the users in whose name the emails were sent – who led the lawsuit. The grounds for complaint were twofold: while those users may have given permission for the initial invitation to be sent out, they didn't give explicit consent for the following two messages or for their name and image to be used in them.

The suit complains that: "Despite the appearance of the endorsement emails, the users do not compose the message, they do not consent to LinkedIn sending multiple messages on their behalf, and they are not compensated for the use of their name or likeness in the advertising or promotion of LinkedIn."

The $13m settlement is filtering down to LinkedIn users in the US as a result of the class-action, and on Monday the site notified eligible users that they could have a claim (the notifications, naturally, were sent by email). The amount users will receive has not yet been set, according to an open letter from the lawyers leading the class-action suit, but could be as low as $10 – or even lower. However, "if the number of approved claims results in a payment amount of less than $10 [per person], LinkedIn will pay an additional amount up to $750,000 into the fund", the lawyers add.

The "add connections" feature is one of the most infamous features of LinkedIn. The statement "I'd like to add you to my professional network" has become a recognised, and widely mocked, phrase. In September, New York-based designer Frank Chimero realised that the line works as a universal punchline to New Yorker-style editorial cartoons.

In a statement, LinkedIn said that the lawsuit made "a number of false allegations", but

that it had decided to settle anyway. "Based on its review of LinkedIn's product, the court agreed that these allegations were false and found that LinkedIn's members gave permission to share their email contacts with LinkedIn and to send invitations to connect on LinkedIn. Because the court also suggested that we could be more clear about the fact that we send reminder emails about pending invitations from LinkedIn members, we have made changes to our product and Privacy Policy.

"Ultimately, we decided to resolve this case so that we can put our focus where it matters most: finding additional ways to improve our members' experiences on LinkedIn. In doing so, we will continue to be guided by our core value – putting our Members First."

More news

## Topics

LinkedIn Internet Social networking
Save for later Article saved
Reuse this content

# EXHIBIT 4

BUSINESS

# LinkedIn agrees to pay $13 million in 'spam' settlement



LinkedIn Chief Executive Jeff Weiner participates in a question-and-answer interview in October. (Chip Somodevilla / Getty Images)

 By **Samantha Masunaga · Contact Reporter**

OCTOBER 6, 2015, 1:21 PM

LinkedIn Corp. has agreed to pay $13 million to settle a class-action lawsuit alleging that the social network sent too many emails to potential connections without members' consent.

The settlement applies to LinkedIn members who between Sept. 17, 2011, and Oct. 31, 2014, used the "Add Connections" feature, which allows people to import their email contacts lists and send invitations to connect on LinkedIn.

According to the lawsuit, LinkedIn repeatedly "spammed" the owners of those email addresses if they did not respond by sending up to two reminder emails. LinkedIn members who chose to use the "Add

Connections" service did not consent to sending those follow-up emails, according to the lawsuit.

**SIGN UP for the free California Inc. business newsletter >>**

The money that Mountain View, Calif.-based LinkedIn will pay as part of the settlement will go into a fund that will be used, in part, to pay affected users.

Plaintiffs named in the lawsuit could receive up to $1,500, if approved by the court. The payment for people who submit individual claims depends on the number of claims received. LinkedIn members who were affected can file a claim by Dec. 14 to be part of the settlement.

------------

**FOR THE RECORD:**
LinkedIn settlement: In the Oct. 7 Business section, an article about the settlement of a "spam" lawsuit against social networking site LinkedIn said that each user could receive as much as $1,500. It is the plaintiffs named in the lawsuit who could receive up to $1,500, if approved by the court. The payment for people who submit individual claims depends on the number of claims received.
------------

LinkedIn did not admit wrongdoing in the settlement, but said it would revise its disclosures and clarify that two reminder emails will be sent as part of the "Add Connections" service. By the end of the year, the company said it would provide an option to stop reminders from being sent by canceling the connection invitation.

"We decided to resolve this case so that we can put our focus where it matters most: finding additional ways to improve our members' experiences on LinkedIn," the company said in a statement.

**For more business news, follow @smasunaga.**

**MORE BUSINESS NEWS:**

**VW to angry owners: Want cash to buy another one?**

**American Apparel hangs on to its made-in-America model — by a thread**

**Agency targets the fine print preventing customers from joining class actions**

Copyright © 2016, Los Angeles Times

# EXHIBIT 5

# Heads Up: LinkedIn Might Owe You Money

*scrambles to check inbox*



*Design by Katja Cho*

*by* MICHAEL SEBASTIAN    Oct 6, 2015

If you used LinkedIn between September 17, 2011 and October 31, 2014 (which is all of us), the company might owe you money from a $13 million class-action settlement.

The lawsuit claims LinkedIn sent too many emails in that time period, and takes particular aim at a feature called "Add Connections" in which one click allows LinkedIn to basically email your entire inbox.

Then it sends them two reminder emails.

GIF



*Giphy*

Those reminders emails are why LinkedIn owes some of its users money—the settlement says users didn't consent to having them sent on their behalf.

LinkedIn has denied all wrongdoing, but you can still make bank. How? First, you need to have used "Add Connections" between Sept. 17, 2011 and Oct. 31, 2014. LinkedIn sent an email on Friday notifying its users of the settlement. If you received the email, unearth it from your inbox and respond. If you deleted it, or never received one but feel you should be included, you can provide your information on a website created by the lawyers in the case.

MOST POPULAR



John Stamos On Making The Mutual Decision To Get A...

The Kendall Jenner Guide To Wearing Your Gym Cloth...

The amount it pays out depends on how many people join the settlement.

The business-news website *Quartz* points out that the timing of LinkedIn's notification email about the settlement is interesting: They sent it on Friday afternoon—a time when people likely aren't paying attention. But now you know, so go get that 💰.

**CORRECTION:** *An earlier version of this story said LinkedIn might owe you $1,500. The amount LinkedIn will pay out in this case is currently unknown and depends on how many people claim to be part of the class action. The $1,500 payment is solely for the nine plaintiffs who initiated the litigation and is subject to the court's review and approval.*

**Follow Marie Claire on Instagram** for the latest celeb news, pretty pics, funny stuff, and an insider POV.

---

JOIN THE CONVERSATION!

---

MORE FROM
# CAREER



## The Surprising Tricks for Having "Presence," That Thing All Confident Women Have
Courtesy of Harvard professor and viral TED speaker Amy Cuddy's must-read new book.
*by* LANE FLORSHEIM

# EXHIBIT 6

# BuzzFeed

News    Buzz    Life    Quizzes    Videos    More ⌄    **Get Our App!**

 

       

**TOP POST**
**437,920 VIEWS**  

BUSINESS

# If You Use LinkedIn It May Owe You Compensation From A $13 Million Settlement

The social network for professional connections just settled a class-action lawsuit for $13 million.

Originally posted on Oct. 6, 2015, at 1:22 p.m.
Updated on Oct. 9, 2015, at 10:58 a.m.

 **Rachel Zarrell**
BuzzFeed News Reporter

**LinkedIn, the professional social network, will have to dole out $13 million after settling a class-action lawsuit for sending too many emails.**

Of course, the company sent an email to announce it.


LinkedIn

**The networking site now has to pay compensation to users who utilized their "Add Connections" feature.**

---

## BuzzFeed NEWS

**In The News Today**

- Germany's ruling party proposed stricter laws to regulate refugees after a series of sexual assaults in Cologne.

- People in Hong Kong are still looking for answers after five booksellers at a company specializing in books critical of China went missing.

- And do you know what happened in the news this week? Take our quiz.

Get The News App


This Is What Really Happened The Night Women Were Sexually Assaulted In Front Of Police

by Rossalyn Warren

**More News**


The Powerball Jackpot Just Hit $900 Million

The "Add Connections" service let users import connections to the site through their email, and LinkedIn would then send the connections invitations.

But if the person did not respond to the invitation, LinkedIn took advantage of the access to people's contact lists to send two follow-up emails to remind the person of the pending invite. The court found that this action was done without the users' consent.

LinkedIn denied any wrongdoing but settled the suit.


Justin Sullivan / Getty Images

# Anyone who used the feature between Sept. 17, 2011, and Oct. 31, 2014, is eligible to file a claim. Those who qualify received — what else — an email from LinkedIn with an ID to file, which can be done here.

The amount of compensation will vary depending on how many people file the claims. Claims must be filed before Dec. 14, 2015, and there will be a final approval hearing on Feb. 11, 2016.

## Here's what the email from LinkedIn said regarding compensation:

**What relief does the Settlement provide?**

LinkedIn has revised disclosures, clarifying that up to two reminders are sent for each connection invitation so members can make fully-informed decisions before sending a connection invitation. In addition, by the end of 2015, LinkedIn will implement new functionality allowing members to stop reminders from being sent by canceling the connection invitation. LinkedIn has also agreed to pay $13 million into a fund that can be used, in part, to make payments to members of the Settlement Class who file approved claims. Attorneys representing the Settlement Class will petition the Court for payment of the following from the fund: (1) reasonable attorneys' fees, expenses,


These Surreal "Catfishing" Texts May Have Prompted The UVA Rape Scandal


Mexico Resumes Process To Extradite Drug Kingpin "El Chapo" Guzmán To U.S.


Muslim Woman Ejected From Trump Rally As Crowd Boos And Shouts


Suspect In Philadelphia Officer Ambush Charged With Attempted Murder


Lemmy's Funeral To Be Live-Streamed From Los Angeles


North Korea Warns Of War After South Resumes Loudspeaker Broadcasts


This Is What It's Like To Be Christian And Live Under ISIS

and costs up to a maximum of $3,250,000, and (2) service awards for the Plaintiffs up to a maximum of $1,500 each. The payment amount for members of the Settlement Class who file approved claims will be calculated on a pro rata basis, which means that it will depend on the total number of approved claims. If the number of approved claims results in a payment amount of less than $10, LinkedIn will pay an additional amount up to $750,000 into the fund. If the pro rata amount is so small that it cannot be distributed in a way that is economically feasible, payments will be made, instead, to Cy Pres Recipients selected by the Parties and approved by the Court. <u>No one knows in advance whether or in what amount payments will be made to claimants.</u>



**Donald Trump Praises Man He Once Called A Neo-Nazi**

More News >



*LinkedIn*

**LinkedIn Is Sorry For Flooding Your Inbox**

*buzzfeed.com*

## Now Buzzing



**19 Popsicle Stick DIYs That Are Actually Awesome**



**Ladies Get Real About The Best And Worst Parts Of Having Sex**



**15 Celebrities Who Slayed At The Star Screen Awards**



**15 Women Show Off Their Most "Unflattering" Hair, Makeup, And More**



**We Know Your Favorite Disney Movie Based On Your Favorite Dog**

**CORRECTION**

As part of a settlement of a class-action lawsuit against LinkedIn, plaintiffs named in the suit are entitled to compensation of up to $1,500 each. This number does not apply to others who file individual claims, whose compensation will be determined based on how many claims are received. An earlier version of this story said all claimants were eligible for compensation of up to $1,500.   Oct. 9, 2015, at 10:58 a.m.

Rachel Zarrell is a news editor for BuzzFeed News and is based in New York.
Contact Rachel Zarrell at rachel.zarrell@buzzfeed.com.



NEXT ON BUZZFEED NEWS›

**Dolce & Gabbana Debuts High-End Hijab And Abaya Collection...**

# EXHIBIT 7

# NCAA and EA Videogame Likeness Settlements

Home | **Case Documents** | **Contact Us** | **File Claim**

**If You Were Listed on the Roster of an NCAA Division I Men's Football or Basketball Team, and You or Your Team was included in one of EA's Videogames Released Between May 4, 2003 and September 3, 2014, You Could Be Entitled to Cash Payments.**

**The Court has extended the claims deadline until July 31**. All claims filed online or postmarked by that date will be considered timely



### The EA Videogame Settlement:

There are class action lawsuits pending against Electronic Arts, Inc. ("EA") and Collegiate Licensing Company LLC ("CLC"). These lawsuits involve, among other things, claims by student-athletes that EA and CLC (representing various NCAA member schools and sometimes the NCAA) violated their legal rights by allegedly licensing, using, and/or selling athletes' names, images, and likenesses in EA's NCAA-Branded Videogames. EA and CLC deny these allegations and deny any other wrongdoing. The Court has not ruled on the merits of these claims.

A proposed settlement of $40 million has been reached between EA and the student-athletes who brought these cases. If the Court approves it, the EA Videogame Settlement will resolve these cases as to both EA and CLC.

### The NCAA Videogame Settlement:

There are class action lawsuits pending against the NCAA. These lawsuits involve, among other things, claims by student-athletes that the NCAA violated their legal rights by allegedly participating in the license, use, and/or sale of athletes' names, images, and likenesses in EA's NCAA-Branded Videogames. The NCAA denies these allegations and denies any other wrongdoing. The Court has not yet ruled in favor of either the NCAA or the student-athletes on these claims.

A proposed settlement of $20 million has been reached between the NCAA and the student-athletes who brought some of these cases. If the Court approves it, the NCAA Videogame Settlement will resolve these cases as to the NCAA.

**YOU MAY BE A MEMBER OF <u>ONE</u> OR <u>BOTH</u> CLASS ACTION SETTLEMENTS.** Although the two proposed settlements are similar in some respects, they contain different provisions, and it is possible that the Court could rule differently on each settlement. Please read this entire Notice carefully to make sure that you understand both settlements.

**Please Note the Following Important Dates:**

| Case Relevant Event | Date |
|---|---|
| Claim Filing Commences | March 3, 2015 |
| Claim Filing Deadline | July 2, 2015 |
| Opt-Out Deadline | May 4, 2015 |
| Objection Deadline | May 4, 2015 |
| Final Approval Hearing | July 16, 2015, 2:00 p.m. |

Gilardi & Co. LLC.  Copyright © 2016   Privacy Policy *

# NCAA and EA Videogame Likeness Settlements

Home | **Case Documents** | **Contact Us** | File Claim

**Notice**

**Claim Form**

**Order Granting Preliminary Approval (EA Videogame Settlement)**

**Order Granting Preliminary Approval (NCAA Videogame Settlement)**

**Joint Filing of Amended Settlement Agreements**

**Second Filing of Amended Settlement Exhibits**

**Extension Order**

**Proposed Order Granting Plaintiffs' Motions for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Awards**

**Antitrust Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards and Memorandum of Points & Authorities**

**Right of Publicity Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Expenses, and Incentive Awards (NCAA Settlement)**

**Right of Publicity Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Expenses, and Incentive Awards (EA Settlement)**

**Plaintiffs' Petition for Counsel Fees and Costs**

**Declaration of Michael D Hausfeld ISO Antitrust Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards**

**Timothy J McIlwain's Notice of Motion & Motion for Attorneys' Fees & Costs & Conditionally to Intervene Pursuant to FRCP 24; Memorandum of Points & Authorities**

**Final Approval Order (EA)**

**Final Approval Order (NCAA)**

**Joint Filing re Claims Dispute Procedures**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

> **If You Were Listed on a Roster of an NCAA Division I Men's Football or Basketball Team, and That Team Was Included in One of EA's Videogames Between May 4, 2003 and September 3, 2014, You Could Be Affected by Two Proposed Class Action Settlements.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**If you are a Class Member, your legal rights are affected whether you act or don't act.**

**Please Read This Notice and the Enclosed Claim Form Carefully**

This Notice provides information about **two** proposed class action settlements concerning the alleged use of National Collegiate Athletic Association ("NCAA") men's football and basketball players' names, images, and likenesses in certain NCAA-Branded Videogames that were manufactured and distributed by Electronic Arts Inc. ("EA").

<u>**The EA Videogame Settlement:**</u>

There are class action lawsuits pending against EA and Collegiate Licensing Company LLC ("CLC"). These lawsuits involve, among other things, claims by student-athletes that EA and CLC (representing various NCAA member schools and sometimes the NCAA) violated their legal rights by allegedly licensing, using, and/or selling athletes' names, images, and likenesses in EA's NCAA-Branded Videogames. EA and CLC deny these allegations and deny any other wrongdoing. The Court has not ruled on the merits of these claims. *See Question 2, below, for more information about these lawsuits.*

A proposed settlement of $40 million has been reached between EA and the student-athletes who brought these cases. If the Court approves it, the EA Videogame Settlement will resolve these cases as to both EA and CLC.

<u>**The NCAA Videogame Settlement:**</u>

There are class action lawsuits pending against the NCAA. These lawsuits involve, among other things, claims by student-athletes that the NCAA violated their legal rights by allegedly participating in the license, use, and/or sale of athletes' names, images, and likenesses in EA's NCAA-Branded Videogames. The NCAA denies these allegations and denies any other wrongdoing. The Court has not yet ruled in favor of either the NCAA or the student-athletes on these claims. *See Question 2, below, for more information on these lawsuits.*

> **Are these settlements related to the trial against the NCAA I've heard about?**
>
> You may have heard recently about a trial in a case by student-athletes (led by Edward O'Bannon) against the NCAA. Although the trial involved claims that the NCAA used student-athlete likenesses without permission, those claims were against the NCAA only for violations of antitrust laws. Also, unlike the claims being resolved by this settlement, the claims in the trial involved a request for injunctive relief (a court order discontinuing certain practices). The claims in the trial did not involve claims for cash payments for past conduct.
>
> The Court found that the NCAA violated antitrust law and entered an injunction. The NCAA has appealed. The Court's opinion can be found at www.NCAA-EA-Likeness-Settlement.com.

A proposed settlement of $20 million has been reached between the NCAA and the student-athletes who brought some of these cases. If the Court approves it, the NCAA Videogame Settlement will resolve these cases as to the NCAA.

**YOU MAY BE A MEMBER OF <u>ONE</u> OR <u>BOTH</u> CLASS ACTION SETTLEMENTS.** Although the two proposed settlements are similar in some respects, they contain different provisions, and it is possible that the Court could rule differently on each settlement. Please read this entire Notice carefully to make sure that you understand both settlements.

The Court in charge of these cases still has to decide whether to approve these settlements, and payments will only be made if the Court approves the settlements, and after any appeals are resolved. Please be patient, as this process can take a long time.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THE TWO SETTLEMENTS | |
|---|---|
| **SUBMIT A CLAIM FORM** | • This is the only way to get a payment under the settlements.<br>• You can submit **one** Claim Form for both settlements.<br>• *See the enclosed Claim Form for more details.*<br>• **Requesting or Receiving a Payment Under Either of These Settlements Will NOT Affect Your NCAA Eligibility.** |
| **EXCLUDE YOURSELF FROM ONE OR BOTH SETTLEMENTS** | • Excluding yourself means you **get no payment**.<br>• This is the only way you can ever be a part of any other case against EA, CLC, or the NCAA about the claims being resolved by these settlements.<br>• You must submit a **separate** request for exclusion for **each** settlement.<br>• *See Questions 16–18.* |
| **OBJECT TO ONE OR BOTH SETTLEMENTS** | • Write to the Court about why you don't like the settlements.<br>• You must submit a **separate** objection for **each** settlement.<br>• You cannot object in order to ask the Court for a higher payment for *yourself personally*, although you can object to the payment terms (or any other terms) that apply generally to the Class.<br>• *See Questions 21–22.* |

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 1 -

| | |
|---|---|
| **GO TO A HEARING** | • Ask to speak in Court about the fairness of the settlements.<br>• The Court will hold a hearing for both settlements on the same day to decide whether to approve the settlements.<br>• *See Question 23.* |
| **DO NOTHING** | • Get no payment. Give up rights. |

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ......................................................................................................................... 3
1.    Why did I get this Notice? ................................................................................................... 3
2.    What are these lawsuits about? ............................................................................................ 3
3.    What is a class action and who are the Parties? .................................................................. 3
4.    Why is there a settlement? ................................................................................................... 3

WHO IS IN THE TWO SETTLEMENTS ............................................................................................ 3
5.    How do I know if I am part of the settlements? What are the Class definitions? ............... 3
6.    What is an "NCAA-Branded Videogame"? ......................................................................... 4
7.    I'm still not sure if I am included. ....................................................................................... 4

THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY ....................................... 4
8.    What do the proposed settlements provide? ........................................................................ 4
9.    How will claim payments be calculated? ............................................................................ 4
10.   How much will my payment be? .......................................................................................... 5

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM ................................................ 7
11.   How can I get a payment? .................................................................................................... 7
12.   When will I get my payment? ............................................................................................... 7
13.   What if I disagree with the amount of my payment? ........................................................... 7
14.   What am I giving up to get a payment or stay in the settlements? ...................................... 7
15.   Will getting a payment in either of the settlements affect my NCAA eligibility? ............... 8

EXCLUDING YOURSELF ("OPTING OUT") FROM ONE OR BOTH SETTLEMENTS .................. 8
16.   How do I get out of one or both settlements? ...................................................................... 8
17.   If I don't exclude myself, can I sue the Defendants for the same thing later? .................... 8
18.   If I exclude myself, can I get a payment from the settlements? .......................................... 9

THE LAWYERS REPRESENTING YOU ............................................................................................ 9
19.   Do I have a lawyer in these cases? ...................................................................................... 9
20.   How will the lawyers be paid? Are the Class Representatives being paid? ......................... 9

OBJECTING TO ONE OR BOTH SETTLEMENTS ......................................................................... 10
21.   How do I tell the Court that I don't like the settlement(s)? ............................................... 10
22.   What's the difference between objecting and excluding yourself? .................................... 11

THE COURT'S FAIRNESS HEARING ............................................................................................. 11
23.   When and where will the Court decide whether to approve the settlements? .................... 11
24.   Do I have to come to the Fairness Hearing? ..................................................................... 11
25.   May I speak at the Fairness Hearing? ............................................................................... 11

IF YOU DO NOTHING ...................................................................................................................... 11
26.   What happens if I do nothing at all? ................................................................................. 11

GETTING MORE INFORMATION ................................................................................................... 12
27.   How do I get more information about the settlements? ..................................................... 12

## BASIC INFORMATION

### 1.   Why did I get this Notice?

You may have been on the roster of an NCAA Division I men's basketball or football team that was included in one of EA's NCAA-Branded Videogames from May 4, 2003 through September 3, 2014, and you therefore may be a Member of one or both settlements. The fact that you have received this Notice does not necessarily mean that you are a Class Member in either settlement. *See Questions 5–7 for more details on how you can determine if you are a Class Member in the settlements.*

You were sent this Notice because, as a possible Class Member, you have a right to know about the two proposed class action settlements, and about all your options, before the Court decides whether to give "final approval" to the settlements. If the Court approves the settlements, payments will be made to those who qualify, but only after any objections and appeals are resolved.

This Notice explains the various lawsuits, the settlements, your legal rights, what benefits are available under the settlements, who is eligible for them, and how to get them. **You must submit a valid Claim Form to receive a payment under these settlements.** *See Questions 11–15 for more details on Claim Forms and the deadline to submit them.*

### 2.   What are these lawsuits about?

There are class action cases pending against EA, CLC, and the NCAA. These cases deal with the alleged use of NCAA men's football and basketball players' names, images, and likenesses in EA's NCAA-Branded Videogames. These cases involve different claims and time periods. Generally speaking, though, the cases allege, among other things, that the NCAA, CLC, and EA violated the legal rights of student-athletes by using their names, images, and likenesses in EA's Videogames since May 4, 2003, both during and after the student-athletes' involvement in NCAA athletics.

EA, CLC, and the NCAA have denied the claims and have asserted various defenses to the claims.

### 3.   What is a class action and who are the Parties?

In a class action lawsuit, one or more people, called "Class Representatives," sue on behalf of people who have similar claims. All these people together are a "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class (*see Question 16*).

The **Class Representatives** (or "**Plaintiffs**") in the cases involved in these settlements are or were all NCAA student-athletes:

- The Class Representatives in the **EA Videogame Settlement** are Edward C. O'Bannon Jr., Oscar Robertson, William Russell, Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, Danny Wimprine, Ray Ellis, Tate George, Jake Fischer, Jake Smith, Darius Robinson, Moses Alipate, Chase Garnham, Samuel Michael Keller, Bryan Cummings, LaMarr Watkins, Bryon Bishop, Ryan Hart, and Shawne Alston.

- The Class Representatives in the **NCAA Videogame Settlement** are Samuel Michael Keller, Bryan Cummings, LaMarr Watkins, and Bryon Bishop.

The **Defendants**, or people being sued, in the cases are EA, CLC, and the NCAA.

Together, the Class Representatives and the Defendants are called the "Parties."

### 4.   Why is there a settlement?

EA, CLC, and NCAA have denied all liability in the lawsuits and have asserted various defenses to Plaintiffs' claims. The Court did not decide in favor of any Plaintiff or any Defendant on the legal claims being resolved here. Instead, all sides agreed to a settlement, which avoids the risk and cost of a trial, but still compensates the people affected. The Class Representatives and their attorneys think that both settlements are in the best interests of Class Members and that both settlements are fair, adequate, and reasonable.

## WHO IS IN THE TWO SETTLEMENTS

To see if you are affected by the two proposed settlements, you first have to determine if you are a Class Member in one or both settlements.

### 5.   How do I know if I am part of the settlements? What are the Class definitions?

If you fall under the Class definition below for a settlement, you are a Class Member in that settlement and may be eligible for a cash payment. *See Questions 9–15 for more details about how the amount of your payment will be calculated.* **You may be a Class Member in both settlements.**

> **EA Videogame Settlement:** Any NCAA Division I football and men's basketball player who **(1)** was listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame originally published or distributed from July 21, 2005 through September 3, 2014, **or (2)** was listed on such a roster from May 4, 2003 and whose jersey number or photograph was used in such a videogame.

**NCAA Videogame Settlement:** All NCAA Division I football and men's basketball players who were **(1)** listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame originally published or distributed from May 4, 2003 through September 3, 2014, **and (2)** whose assigned jersey number appears on a virtual player in the software, or whose photograph was otherwise included in the software.

Excluded from the Classes are EA, CLC, the NCAA, and their officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies, Class Counsel and their employees, and their immediate family members, and the judicial offers, and associated court staff assigned to the cases involved in these settlements and their immediate family members.

The definitions above are summaries, and are not the exact definitions found in the Settlement Agreements. The specific definitions are set out in more detail in the Settlement Agreements, which are posted on www.NCAA-EA-Likeness-Settlement.com. (*See* EA Videogame Settlement Agreement ¶¶ 4, 25, and 30 and NCAA Videogame Settlement Agreement ¶¶ 19)

| **6.   What is an "NCAA-Branded Videogame"?** |
| --- |

"NCAA-Branded Videogame" means every edition of *NCAA Football*, *NCAA Basketball*, and *NCAA March Madness* (on any videogame platform) originally published or distributed by EA between May 4, 2003 and September 3, 2014.

| **7.   I'm still not sure if I am included.** |
| --- |

If you are still not sure whether you are included, you can get free help by contacting the Settlement Administrator using any of the methods listed in Question 27.

**You are not required to pay anyone to assist you in filing a claim or obtaining information about the settlements**.

| **THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** |
| --- |

| **8.   What do the proposed settlements provide?** |
| --- |

Both proposed settlements provide for cash payments to eligible Class Members.

The EA Videogame Settlement has a total Settlement Fund of $40 million. The NCAA Videogame Settlement has a total Settlement Fund of $20 million.

Each Settlement has a proposed Distribution Plan. Under both Distribution Plans, each Settlement Fund will first be used to pay for (1) the costs of class notice and administration, and (2) the attorneys' fees, expenses, and incentive awards approved by the Court (*see Question 20 for more details on these awards*).

The remainder of the Settlement Fund for each settlement (called the **"Net Settlement Fund"**) will then be distributed to qualifying Class Members, as described in Question 9.

| **9.   How will claim payments be calculated?** |
| --- |

Payments to qualifying Class Members will be made based on each Class Member's share of that settlement's "Net Settlement Fund." A Class Member's share will be determined by the number of "Points" earned by the Class Member, as explained below. *See Question 11 for details on how to get a payment if you are eligible*.

Unless you exclude yourself (*see Questions 16–18*), or decide to only make a claim in one settlement (see the Claim Form), your claim will be evaluated under *each* settlement's Distribution Plan (below). Thus, **you may be eligible to receive a payment from both settlements for the same edition (year) of a Videogame**.

**Distribution Plans**

The Distribution Plans in both settlements are based on "Points." The value of these Points is not fixed at any particular dollar amount, but will vary depending on how many people submit valid claims in each of the settlements. *See Question 10 for examples of how payments might vary.*

The amount of Points you earn depends on which "Category" you fall into in the Point Tables below, which is in turn based on the years you played, and exactly how your likeness was (or wasn't) used in the Videogames. The Point Tables list how many Points you get under each settlement. To understand the tables, you need to read the definitions below.

> ***Definitions:***
>
> ▪ **Roster Appearance:** You have a "Roster Appearance" if your name was listed on the roster of a team that was included in any NCAA-Branded Videogame published or distributed from July 21, 2005 to September 3, 2014, and you don't have an Avatar Match or Photograph Use as described below. (This applies to the EA Videogame Settlement Only, and not to the NCAA Videogame Settlement.)

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 4 -

- **Avatar Match:** To have an Avatar Match, <u>both</u> of the following must be true:

  a. Your name was listed on the roster of a team that was included in any NCAA-Branded Videogame published or distributed from May 4, 2003 to September 3, 2014; and

  b. Your assigned jersey number appears on a virtual avatar from that same team in the Videogame.

- **Photograph Use:** Your photograph was used in an NCAA-Branded Videogame.

- Class Counsel and the Settlement Administrator will use a database they compiled to determine Avatar Matches as well as Photograph Uses in each Videogame. (More detail on the various ways they will determine a "match" can be found at www.NCAA-EA-Likeness-Settlement.com.)

| Point Table | | | | |
|---|---|---|---|---|
| Category | Description | Years | Number of Points | |
| | | | Under EA Settlement | Under NCAA Settlement |
| A | Roster Appearance | 2005–2014 | 1 point | 0 points |
| B | Avatar Match or Photograph Use *(if you have both, only one will count for each edition of the Videogame)* | 2003–2005 | 1.8 points | 1.8 points |
| C | Avatar Match or Photograph Use (if you have both, only one will count for each edition of the Videogame) | 2005–2014 | 6.6 points | 6.6 points |

<u>**Remember, you can get Points from both settlements**</u>. So, for example, if you have an Avatar Match for the 2006 edition of the Videogame, you would get 6.6 Points from **each** settlement.

## Other Potential Payments Under the Settlements

If you are a Class Member and submit a valid Claim Form but do not qualify for any Points under the above system, then you will receive a flat $100 payment from each settlement in which you are a Class Member.

If the Net Settlement Funds are not completely used up after making payments to all Class Members who submit claims, any remaining funds will be used to make additional payments to qualifying Class Members who did not submit claims. More detail on this can be found in the Settlement Agreements at www.NCAA-EA-Likeness-Settlement.com.

## 10.  How much will my payment be?

The exact amount each qualifying Class Member in each settlement will receive cannot be calculated until (1) the Court approves the settlements; (2) amounts are deducted from the Settlement Fund for notice and administration costs, attorneys' fees and expenses, and any Class Representative Incentive Awards; and (3) the Settlement Administrator determines the number of Class Members who have submitted valid claims and, after checks are issued, who cashed their checks. *See Question 9 for the general method of calculating claims payments*.

## Estimated Payments

Below are charts prepared by Class Counsel with estimated payment amounts for each Category. The charts are broken down by "**Claims Rate**," which means they provide an estimate of how much each Category gets if a certain percentage of Class Members in that category submit valid claims. So a 50% claims rate means that 50% of the possible claims were submitted in that Category. We do not know what the Claims Rate will be for either settlement. The calculations below are examples only.

Keep in mind that these estimate amounts are how much a Category gets *per Videogame Edition (Year)*, so if you played for multiple years, your total payment will be the payment amount below multiplied by the number of years you fall into that Category. *See the "Examples" below to see how this all might affect an individual claim*.

| Claims Rate | 100% | | | 50% | | | 25% | | | 10% | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Category | A | B | C | A | B | C | A | B | C | A | B | C |
| **Payment per Year** | $26 | $74 | $270 | $52 | $147 | $541 | $104 | $295 | $1,081 | $259 | $737 | $2,703 |

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 5 -

**Examples**

To give you a sense of how the Distribution Plans will work for an individual Class Member, below are some examples, developed by Class Counsel, of potential Class Members and their estimated payments.

| Player 1 | | | |
|---|---|---|---|
| Player 1 was the starting quarterback listed on the roster at the University of California for four seasons from 2007 through 2011. His jersey number appeared on the UC team in the 2007, 2008, 2009, and 2010 editions of EA's *NCAA Football* Videogame, so he has an Avatar Match for each of those years, and his photograph appeared in the 2011 and 2012 editions of the Videogame. Assuming a 25% Claims Rate, Player's 1 Total Estimated Payment would be **$6,486.** | | | |
| **Videogame Edition** | **Category** | **Estimated Payment Per Edition** | **Total Estimated Payment** |
| 2007 | C | $1,081 | **$6,486** |
| 2008 | C | $1,081 | |
| 2009 | C | $1,081 | |
| 2010 | C | $1,081 | |
| 2011 | C | $1,081 | |
| 2012 | C | $1,081 | |

| Player 2 | | | |
|---|---|---|---|
| Player 2 was on the roster at the University of California and his jersey number appeared on the UC team in the Videogame for four seasons from 2004 through 2007. Assuming a 25% claims rate, Player 2's Total Estimated Payment would be **$2,752**. | | | |
| **Videogame Edition** | **Category** | **Estimated Payment Per Edition** | **Total Estimated Payment** |
| 2004 | B | $295 | **$2,752** |
| 2005 | B | $295 | |
| 2006 | C | $1,081 | |
| 2007 | C | $1,081 | |

| Player 3 | | | |
|---|---|---|---|
| Player 3 was on the roster at the University of California and his jersey number appeared on the UC team in the Videogame for two seasons from 2003 through 2005. Assuming a 25% claims rate, Player 3's Total Estimated Payment would be **$590**. | | | |
| **Videogame Edition** | **Category** | **Estimated Payment Per Edition** | **Total Estimated Payment** |
| 2003 | B | $295 | **$590** |
| 2004 | B | $295 | |

| Player 4 | | | |
|---|---|---|---|
| Player 4 was on the roster at the University of California for four seasons from 2004 through 2008, but neither his jersey number nor his photograph appeared in any EA Videogame.  Assuming a 25% claims rate, Player 4's Total Estimated Payment would be **$312** | | | |
| **Videogame Edition** | **Category** | **Estimated Payment Per Edition** | **Total Estimated Payment** |
| 2004 | NONE | $0 | **$312** |
| 2005 | A | $104 | |
| 2006 | A | $104 | |
| 2007 | A | $104 | |

For additional calculation examples, please visit www.NCAA-EA-Likeness-Settlement.com.

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 6 -

---

### HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

---

### 11.  How can I get a payment?

To be eligible to receive a payment under one of the settlements, you must (1) be a Class Member of that settlement; (2) you must not have excluded yourself from that settlement; and (3) you must submit a valid and timely Claim Form, as described below.

You only need to submit one Claim Form; your claim will automatically be evaluated under both settlements. If you wish to make a claim under only one of the two settlements, you should check the appropriate box on the Claim Form. (See the enclosed Claim Form for more details.)

If you have excluded yourself from both settlements, you are not eligible to make a claim under either settlement. If you have excluded yourself from one settlement, you are not eligible to make a claim under *that* settlement, but you are still eligible to make a claim under the other settlement (the one from which you did not exclude yourself).

You should read the instructions on the Claim Form carefully, fill it out to the best of your ability, and then sign it as indicated on the Claim Form (online claim forms will require your electronic signature). You do not need to have your signature notarized by a Notary Public, but you will be affirming to the best of your knowledge, information, and belief that the information you provided on the Claim Form is true. If you need help filling out the Claim Form, you should call the Settlement Administrator.

**Filing a Claim Online**

You may fill out a Claim Form online at www.NCAA-EA-Likeness-Settlement.com. If you choose to submit your Claim Form online, you must submit the Claim Form **no later than July 2, 2015**.

**Filing a Claim by Mail**

You may also submit your Claim Form by mail. A Claim Form is included in this mailing. You may also get a copy of the Claim Form online at www.NCAA-EA-Likeness-Settlement.com, or by calling 1-888-283-5733, or by sending an e-mail to info@ncaa-ea-likeness-settlement.com and asking for one. If you choose to mail your Claim Form, you must mail the Claim Form to the Settlement Administrator at the address indicated on the Claim Form. It must be **postmarked no later than July 2, 2015.**

Do not send a copy of the Claim Form to the Court, the Judge, or the Defendants.

Please note that, with a few exceptions, only a Class Member can submit a Claim Form. The only exceptions are that Claim Forms may be submitted on behalf of an individual Class Member by his **"Legally Authorized Representative."** A Legally Authorized Representative means an administrator/administratrix, personal representative, or executor/executrix of a deceased Class Member's estate; a guardian, conservator, or next friend of an incapacitated Class Member; or any other legally appointed person or entity responsible for handling the business affairs of a Class Member. If you have a personal lawyer, your lawyer may assist you with your Claim Form, but you must personally sign the Claim Form, unless the lawyer is your Legally Authorized Representative.

You also cannot submit a Claim Form as part of a group effort, or on behalf of a class of persons.

### 12.  When will I get my payment?

The payments will be mailed to eligible Class Members who send in valid Claim Forms on time, after the Court grants "final approval" of the settlement, after any appeals are resolved, and after the Claim Forms are processed.

The Court will hold a Fairness Hearing on July 16, 2015, at 2:00 p.m. (Pacific time) to decide whether to approve the settlements. **If you want to attend the hearing, keep in mind that the date and/or time may be changed after the time of this Notice, so you should check the settlement website (www.NCAA-EA-Likeness-Settlement.com) before making travel plans.**

If the Court approves the settlements (*see Questions 23–25*), there may be appeals. It's always uncertain whether these appeals can be resolved, and resolving them can take time. Please be patient. You can check for updates and other important information by using any of the methods listed in Question 27.

### 13.  What if I disagree with the amount of my payment?

There is a process in the settlements for you to object to the determination of the amount of your claim payment, or to object if the Settlement Administrator determines that you don't qualify for a payment at all. You will get further details in the letter you receive about your settlement claim. Essentially, if you, the Settlement Administrator, and Class Counsel cannot agree on how much you should receive under the settlement, you may appeal as described in the Settlement Agreements. (*See* EA Videogame Settlement Agreement ¶ 76(g) and NCAA Videogame Settlement Agreement ¶ 62(g))

### 14.  What am I giving up to get a payment or stay in the settlements?

Remember that the two settlements are separate. Unless you exclude yourself from a particular settlement, you are staying in the Class or Classes described *in that settlement*, and that means that you can't sue or be part of any other lawsuit against the Defendants *in that settlement* about the legal claims being settled *in that settlement*. It also means that all of the Court's orders will apply to you and legally bind you.

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 7 -

Because the two settlements are separate, the "releases of liability" in the two settlements are also separate, and apply to different Defendants and to different claims. So, under the EA Videogame Settlement you will not "release" the NCAA from any liability, and under the NCAA Videogame Settlement you will not "release" EA or CLC from any liability.

The details of the two releases are set out in more detail in the Settlement Agreements, which are posted on www.NCAA-EA-Likeness-Settlement.com. *(See* EA Videogame Settlement Agreement ¶¶ 81-87 and NCAA Videogame Settlement Agreement ¶¶ 73-78*)* The Settlement Agreements describe the releases in specific legal terminology. Talk to Class Counsel (see the section on "The Lawyers Representing You," Questions 19– 20 below) or your own lawyer if you have questions about the releases or what they mean.

| 15.  Will getting a payment in either of the settlements affect my NCAA eligibility? |
|---|

**No. Your request for or receipt of any payment under this settlement will NOT affect your eligibility to compete in NCAA athletics.**

<div style="border:1px solid">

**EXCLUDING YOURSELF ("OPTING OUT") FROM ONE OR BOTH SETTLEMENTS**

</div>

If you don't want a payment from one or both settlements, and instead you want to keep the right to sue the Defendants in those settlements on your own about the legal issues in those cases, then you must take steps to get out of the settlement. This is called excluding yourself—or "opting out"—of the Class.

| 16.  How do I get out of one or both settlements? |
|---|

The two settlements are separate, so **you must opt out of each settlement separately**. To exclude yourself from a settlement, you must send a letter to the Settlement Administrator by first-class mail with a clear statement that you want to be excluded, and from which settlement(s) you wish to be excluded:

- If you want to exclude yourself **from the EA Videogame Settlement**, say:
  - "I want to be excluded from the EA Videogame Settlement."

- If you want to exclude yourself **from the NCAA Videogame Settlement**, say:
  - "I want to be excluded from the NCAA Videogame Settlement."

- If you want to exclude yourself **from both settlements**, say:
  - "I want to be excluded from the EA Videogame Settlement and the NCAA Videogame Settlement."

Be sure to include your **name**, **address**, **telephone number**, and your **signature**. If you are sending the request to be excluded as the "Legally Authorized Representative" of a Class Member (*see Question 11 above for the definition of "Legally Authorized Representative"*), you must include any information or documents that confirm your appointment or status as a Legally Authorized Representative. Requests for exclusion must be submitted individually by a Class Member or his Legally Authorized Representative, and not on behalf of a group or class of persons. If you have a personal lawyer, your lawyer may assist you with your exclusion request, but you must personally sign it unless the lawyer is also your Legally Authorized Representative.

You must mail your exclusion request, **postmarked no later than May 4, 2015,** to the following:

<div style="text-align:center">

NCAA/EA Likeness Settlement Administrator
c/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur, CA 94977-6002

</div>

You can't exclude yourself by phone, by e-mail, or on the website. If you ask to be excluded from a settlement, you will not get any money from that settlement, and you cannot object to that settlement. You will not be legally bound by anything that happens in that lawsuit. You may be able to sue (or continue to sue) the Defendants in that lawsuit.

If you have a pending lawsuit against EA, CLC, or the NCAA involving the same legal issues in these settlements, speak to your lawyer in that case immediately. If you wish to continue your individual lawsuit(s), you must exclude yourself from the relevant settlement(s).

| 17.  If I don't exclude myself, can I sue the Defendants for the same thing later? |
|---|

No. Unless you exclude yourself from a settlement, you give up any right to sue the Defendants for the claims that are resolved by that settlement. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. **Remember, the exclusion deadline is May 4, 2015.**

| 18.  If I exclude myself, can I get a payment from the settlements? |
|---|

No. If you exclude yourself from a settlement, you will not be able to get any money from *that settlement*, and you cannot object to *that settlement*. You will not be legally bound by anything that happens in that settlement.

But remember that if you exclude yourself from only one of the settlements, you are still eligible to get money from, or object to, *the other* settlement, and you will still be legally bound by that other settlement.

---

<div align="center">**THE LAWYERS REPRESENTING YOU**</div>

---

**19.  Do I have a lawyer in these cases?**

Yes. The Court has appointed the law firms listed below to represent you and other Class Members in each of the two settlements. These lawyers are called Class Counsel. **You will not be charged for services performed by Class Counsel.** If you want to be represented by your own lawyer, you may hire one at your own expense.

If you want to contact Class Counsel about these settlements, they can be reached through the Settlement Administrator by calling 1-888-283-5733 or sending an email to info@ncaa-ea-likeness-settlement.com.

**EA Videogame Settlement**

- Class Counsel for the EA Videogame Settlement are:

| HAGENS BERMAN SOBOL SHAPIRO LLP<br>Steve W. Berman (Seattle, WA)<br>Rob Carey (Phoenix, AZ)<br>Leonard Aragon (Phoenix, AZ) | HAUSFELD LLP<br>Michael D. Hausfeld (Washington, DC)<br>Michael P. Lehmann (San Francisco, CA)<br>Sathya S. Gosselin (Washington, DC) |
|---|---|
| LUM, DRASCO & POSITAN LLC<br>Dennis J. Drasco (Roseland, NJ) | |

**NCAA Videogame Settlement**

- Class Counsel for the NCAA Videogame Settlement are:

| HAGENS BERMAN SOBOL SHAPIRO LLP<br>Steve W. Berman (Seattle, WA)<br>Rob Carey (Phoenix, AZ)<br>Leonard Aragon (Phoenix, AZ) | THE PAYNTER LAW FIRM PLLC<br>Stuart Paynter (Washington, DC)<br>Celeste H.G. Boyd (Chapel Hill, NC) |
|---|---|

**20.  How will the lawyers be paid? Are the Class Representatives being paid?**

Class Counsel will ask the Court for an award of attorneys' fees and expenses in each settlement (the "Fee and Expense Award"), which will be paid from the Settlement Fund in each settlement:

**Attorneys' Fees**

*EA Videogame Settlement Requested Fee and Expense Award*

- Class Counsel will ask the Court to approve payment from the EA Videogame Settlement Fund of attorneys' fees of up to 33% of the $40 million Settlement Fund (*i.e.*, up to $13,200,000), as well as for reimbursement for costs and expenses incurred in the prosecution of the lawsuits not to exceed $2,500,000.

*NCAA Videogame Settlement Requested Fee and Expense Award*

- Class Counsel will ask the Court to approve payment from NCAA Videogame Settlement Fund of attorneys' fees of up to 29% of the $20 million Settlement Fund (*i.e.*, up to $5,800,000), as well as for reimbursement for costs and expenses incurred in the prosecution of the lawsuits not to exceed $500,000.

**Incentive Awards to Class Representatives**

- Class Counsel will ask the Court to approve the following payments (called "Incentive Awards") to the Plaintiffs below for their services as Class Representatives in each of the settlements. Any Incentive Award ordered by the Court will be in addition to what that Class Representative is eligible to receive from his claim.

*EA Videogame Settlement*

- $15,000 each for Samuel Michael Keller, Edward C. O'Bannon, and Ryan Hart.

- $5,000 each for Oscar Robertson, William Russell, Harry Flournoy, Alex Gilbert, Sam Jacobson, Thad Jaracz, David Lattin, Patrick Maynor, Tyrone Prothro, Damien Rhodes, Eric Riley, Bob Tallent, Danny Wimprine, Ray Ellis, Tate George, Jake Fischer, Jake Smith, Darius Robinson, Moses Alipate, Chase Garnham, and Shawne Alston.

- $2,500 each for Bryan Cummings, LaMarr Watkins, and Bryon Bishop.

---

*NCAA Videogame Settlement*

- ▪ $5,000 each to Samuel Michael Keller, Bryan Cummings, LaMarr Watkins, and Bryon Bishop.

The Court may award less than the amounts requested for attorneys' fees and Incentive Awards, and has the discretion to determine how much to award. The two settlements do not depend on the amounts awarded for attorneys' fees or Incentive Awards, which means that the settlements can still be approved and result in payments to Class Members even if the petitions for attorneys' fees and Incentive Awards are rejected.

Class Counsel is currently scheduled to file with the Court their request for attorneys' fees and for the Incentive Awards on April 13, 2015. Settlement deadlines can change, though, so please monitor the settlement website, or call the Settlement Administrator, to see if any deadlines have changed.

| **OBJECTING TO ONE OR BOTH SETTLEMENTS** |
|---|

| **21.  How do I tell the Court that I don't like the settlement(s)?** |
|---|

The two settlements are separate, so you must submit objections to *each settlement* that you wish to object to.

If you're a Class Member (or a Class Member's Legally Authorized Representative, *see Question 11*), and you **haven't** excluded yourself from a settlement, you can object to *that* proposed settlement if you don't like it. However, **you cannot object if you have excluded yourself from that particular settlement**. In other words, you must stay in the case as a Class Member for that settlement in order to object in that settlement.

You can object if you don't like any part of either proposed settlement, including the settlement's Distribution Plan, or the request for the attorneys' Fee and Expense Award, or the request for Incentive Awards to the Class Representatives. You can give reasons why you think the Court should not approve any or all of these items, and the Court will consider your views.

**You <u>cannot</u> object in order to ask the Court for a higher payment for** *yourself personally*, **although you <u>can</u> object to the payment terms that apply generally to the Class.** The Court can <u>only</u> approve or disapprove the settlements, but cannot change how much money you are personally eligible to receive from the settlement. This means that if the Court agrees with your objection, the case won't be settled unless the parties agree to change the terms and the Court approves those changes.

To object, you must (a) **mail** your objection to the Settlement Administrator **and** (b) **file** it with the Court. To be timely, your objection must be mailed to the Settlement Administrator so that it is **postmarked by May 4, 2015, <u>and</u>** must be **filed** with the Court by no later than **May 4, 2015** at the following addresses:

| | |
|---|---|
| **SETTLEMENT ADMINISTRATOR** | • NCAA/EA Likeness Settlement Administrator<br>c/o Gilardi & Co. LLC<br>P.O. Box 6002<br>Larkspur, CA 94977-6002 |
| **THE COURT** | • **For objections to the EA Videogame Settlement:**<br>Chief District Judge Claudia Wilken<br>Oakland Courthouse, Courtroom 2 − 4th Floor 1301 Clay Street, Oakland, CA 94612<br><br>• **For objections to the NCAA Videogame Settlement:**<br>Chief District Judge Claudia Wilken<br>Oakland Courthouse, Courtroom 2 − 4th Floor 1301 Clay Street, Oakland, CA 94612 |

Note: You may mail your objection to the Court, but it must be **received** by the Court **and filed by May 4, 2015**. See www.NCAA-EA-Likeness-Settlement.com for more information on how to object to the settlement.

**For <u>each</u> settlement to which you wish to object, you must include the following information:**

- Your full name, address, telephone number, and signature.
- The settlement to which you are objecting:
  - ▪ " EA Videogame Settlement," or
  - ▪ " NCAA Videogame Settlement"
- The specific reasons why you object to that settlement.
- The name, address, bar number, and telephone number of your counsel, if you're represented by an attorney. If you are represented by an attorney, he/she or it must comply with all applicable laws and rules for filing pleadings and documents in the Northern District of California.
- State whether you intend to appear at the Fairness Hearing, either in person or through counsel.

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 10 -

- Unless you submit a proper and timely written objection, according to the above requirements, you will not be allowed to object to or appear at the Fairness Hearing. You or your lawyer **may** appear at the Fairness Hearing if you have filed a written objection as provided above. (*See Questions 23–25*). If you have a lawyer file an objection for you, he or she must follow all Court rules and you must list the attorney's name, address, bar number, and telephone number in the written objection filed with the Court.

Please note that any objections must be submitted by an individual Class Member, his Legally Authorized Representative, or his attorney—not as a member of a group, class, or subclass.

| **22.  What's the difference between objecting and excluding yourself?** |
|---|

Objecting is simply telling the Court that you don't like something about the settlement. You can object to a settlement only if you stay in that settlement. Excluding yourself is telling the Court that you don't want to be part of the settlement. If you exclude yourself, you have no basis to object, because the case no longer affects you. If you object, and the Court approves the settlement anyway, you will still be legally bound by the result.

## THE COURT'S FAIRNESS HEARING

| **23.  When and where will the Court decide whether to approve the settlements?** |
|---|

The Court will hold a "Fairness Hearing" (also known as a "Final Approval Hearing") to decide whether to finally approve the proposed settlements. The Fairness Hearing will be on **July 16, 2015, at 2:00 p.m.** before Judge Claudia Wilken, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612. If you want to attend the Fairness Hearing, keep in mind that the date and/or time may be changed after the time of this Notice, so you should check the settlement website (www.NCAA-EA-Likeness-Settlement.com) before making travel plans.

At the Fairness Hearing, the Court will consider whether the proposed settlements and all of their terms are adequate, fair, and reasonable. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the Hearing and have complied with the other requirements for objections explained in Question 21. The Court may also decide how much to award Class Counsel for fees and expenses, and whether and how much to award the Class Representatives for representing the Class (the Incentive Awards).

At or after the Fairness Hearing, the Court will decide whether to finally approve the proposed settlements. Because the two settlements are separate, it is possible that the Court will rule differently in each settlement, or rule at different times. There may be appeals after that. **There is no set timeline for either the Court's final approval decision, or for any appeals that may be brought from that decision, so it is impossible to know exactly when the settlement(s) will become final.**

The Court may change deadlines listed in this Notice without further notice to the Class. To keep up on any changes in the deadlines, please contact the Settlement Administrator or review the website.

| **24.  Do I have to come to the Fairness Hearing?** |
|---|

No. Class Counsel will answer any questions asked by the Court.

If you send an objection, you don't have to come to Court to talk about it. So long as you mailed your written objection on time and complied with the other requirements for a proper objection, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

| **25.  May I speak at the Fairness Hearing?** |
|---|

Yes. If you submitted a proper written objection to the settlement, you or your lawyer may, at your own expense, come to the Fairness Hearing and speak. To do so, you must follow the procedures set out in Question 21. You must also file a Notice of Intention to Appear, which must be mailed to the Settlement Administrator so that it is **postmarked no later than May 4, 2015,** and it must be **filed** with the Clerk of the Court by that same date. If you intend to have a lawyer appear on your behalf, your lawyer must enter a written notice of appearance of counsel with the Clerk of the Court no later than **May 4, 2015**. See Question 21 for the addresses of the Settlement Administrator and the Court. You cannot speak at the Fairness Hearing if you excluded yourself.

## IF YOU DO NOTHING

| **26.  What happens if I do nothing at all?** |
|---|

If you do nothing, you will get no money from either of the two settlements, but you will never again be able to sue or be part of any other lawsuit against the Defendants about the legal claims involved in the settlements. To submit a Claim Form, follow the instructions described in Question 11.

QUESTIONS?  CALL 888-283-5733 TOLL-FREE, OR VISIT www.NCAA-EA-Likeness-Settlement.com.

- 11 -

<div style="text-align:center">

**GETTING MORE INFORMATION**

</div>

**27.  How do I get more information about the settlements?**

This Notice summarizes the proposed settlements. For the precise terms and conditions of the settlements, please see both Settlement Agreements, available at www.NCAA-EA-Likeness-Settlement.com.

| YOU MAY OBTAIN ADDITIONAL INFORMATION BY | |
|---|---|
| CALLING | • Call the Settlement Administrator toll-free at 1-888-283-5733 to ask questions and receive copies of documents. |
| E-MAILING | • Email the Settlement Administrator at www.NCAA-EA-Likeness-Settlement.com |
| WRITING | • Send your questions by mail to<br>NCAA/EA Likeness Settlement Administrator<br>c/o Gilardi & Co. LLC<br>P.O. Box 6002<br>Larkspur, CA 94977-6002 |
| VISITING THE SETTLEMENT WEBSITE | • www.NCAA-EA-Likeness-Settlement.com, where you will find answers to common questions about both settlements, a Claim Form, plus other information to help you. |
| REVIEWING LEGAL DOCUMENTS | • You can review the legal documents that have been filed with the Clerk of Court in these cases at:<br>United States District Court, Northern District of California<br>1301 Clay Street<br>Oakland, CA 94612 |
| ACCESSING PACER | • You can access the Court dockets in these cases through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov. |

**PLEASE DO NOT CALL THE JUDGE OR THE COURT CLERK TO ASK QUESTIONS ABOUT THE LAWSUITS, THE SETTLEMENTS, OR THIS NOTICE.**

**THE COURT WILL NOT RESPOND TO LETTERS OR TELEPHONE CALLS. IF YOU WISH TO ADDRESS THE COURT, YOU MUST FILE AN APPROPRIATE PLEADING OR MOTION WITH THE CLERK OF THE COURT IN ACCORDANCE WITH THE COURT'S USUAL PROCEDURES.**

DATED: September 3, 2014                    BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT 8

# Arendas v. Citibank Settlement Website

**Home** | Case Documents | Frequently Asked Questions | Contact Us |

## WELCOME TO THE ARENDAS V. CITIBANK

## SETTLEMENT WEBSITE

**IF CITIBANK CHARGED YOU AN OVERDRAFT FEE ON A DEBIT TRANSACTION, YOU MAY BE ELIGIBLE FOR A CASH PAYMENT OF UP TO $34 FROM A CLASS ACTION SETTLEMENT. THIS WEBSITE DESCRIBES YOUR RIGHTS AND OPTIONS.**

A settlement has been reached in a class action (*Arendas v. Citibank Inc.,* Case No. 3:11-cv-06462-CRB) about Citibank's practice of charging overdraft fees on debit card transactions to consumer accounts. Citibank maintains that it was authorized to charge overdraft fees on debit card transactions and that it has not violated any laws. The settlement affects you if you had or have one or more Citibank consumer accounts and, between November 7, 2004 and July 1, 2010, Citibank charged you an overdraft fee on a debit card transaction.

As a result of the settlement, you may be eligible for a payment. It is estimated that the payment could be up to $34, but the amount of the payment may be higher or lower depending on the total number of claims submitted by the class. **You must submit a Claim Form, either online through this website or by mail, in order to receive a payment.**

You may also submit a Claim Form by mail (you must include any required postage). To obtain a hard copy Claim Form click here. Mailed Claim Forms must be mailed to:

**Arendas v. Citibank Settlement**
**c/o Gilardi & Co. LLC**
**P.O. Box 8060**
**San Rafael, CA 94912-806**

Whether you are submitting your Claim Form online or by mail, the **deadline** for submission is **July 28, 2014** (mailed Claim Forms must be postmarked by July 28, 2014). If you fail to submit online or postmark a Claim Form by July 28, 2014, your claim will be rejected.

Your legal rights are affected whether you act or do not act.

## **IMPORTANT DATES**

Submit a Claim Deadline: **July 28, 2014**

Exclude Yourself from the Settlement Deadline: **August 27, 2014**

Objection Deadline: **August 27, 2014**

Final Approval Hearing Date: **November 7, 2014, 10:00 a.m.**

Gilardi & Co. LLC.  Copyright © 2016  Privacy Policy *

# Arendas v. Citibank Settlement Website

**Home** | **Case Documents** | **Frequently Asked Questions** | **Contact Us** |

**Long-Form Notice**
**Claim Form**
**Settlement Agreement**
**Complaint**
**Answer to Complaint**
**Preliminary Approval Order**
**Class Counsel's Fee Application**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**If Citibank Charged You An Overdraft Fee On A Debit Card Transaction, You May Be Eligible For A Cash Payment Of Up To $34 From A Class Action Settlement. This Notice Describes Your Rights And Options, Including How To Submit A Claim.**

A federal court authorized this notice. This is not a solicitation from a lawyer and you are not being sued. Please read this notice carefully.

- A settlement has been reached in a class action about Citibank's practice of charging overdraft fees on debit card transactions to consumer accounts. Citibank maintains that it was authorized to charge overdraft fees on debit card transactions and that it has not violated any laws.

- As a result of the settlement, you may be eligible for a payment. It is estimated that the payment could be up to $34, but the amount of the payment may be higher or lower depending on the total number of claims submitted by the class.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | This is the only way for you to receive a payment under the settlement. **See Question 9 below.** |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Receive no benefit from the settlement. This is the only option that allows you to retain your right to bring any other lawsuit against Citibank about the claims in this case. **See Question 13 below.** |
| **OBJECT TO THE SETTLEMENT** | Write to the Court if you do not like the settlement. **See Question 15 below.** |
| **COMMENT ON THE SETTLEMENT** | Ask to speak in Court about the fairness of the settlement. **See Question 23 below.** |
| **DO NOTHING** | Receive no payment from the settlement. You will be giving up rights to be part of any other lawsuit or to make any other claim against Citibank for the claims in this case. **See Question 17 below.** |

- These rights and options, **and the deadlines to exercise them**, are explained in this notice.

- The Court in this case still has to decide whether to approve the settlement. Payments will be provided if the Court approves the settlement and after any appeals are resolved. Please be patient.

**WHAT THIS NOTICE CONTAINS**

BASIC INFORMATION ......................................................................................................................2
   1.  Why is there a notice? ...........................................................................................................2
   2.  What is this lawsuit about? ....................................................................................................2
   3.  What is an overdraft fee? ......................................................................................................2
   4.  Why is this a class action? ....................................................................................................2
   5.  Why is there a settlement? ....................................................................................................2

WHO IS IN THE SETTLEMENT? ....................................................................................................2
   6.  Who is included in the settlement? .......................................................................................2

THE SETTLEMENT'S BENEFITS ...................................................................................................3
   7.  What does the settlement provide? .......................................................................................3
   8.  How do I receive a payment? ...............................................................................................3
   9.  How do I submit a Claim Form? ..........................................................................................3
   10. What happens after a Claim Form is submitted? .................................................................3
   11. What happens if a Claim Form is rejected? .........................................................................3
   12. What am I giving up to stay in the Settlement Class? ..........................................................3

EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS ...................................................3
   13. How do I exclude myself from the Settlement Class? .........................................................3
   14. If I don't exclude myself, can I sue Citibank for the same thing later? ..............................4

OBJECTING TO THE SETTLEMENT ............................................................................................4

15. How do I tell the Court that I don't like the settlement?...............................................................4

16. What's the difference between objecting to the settlement and excluding myself from the Settlement Class? ........5

IF YOU DO NOTHING ...........................................................................................................................5

17. What happens if I do nothing at all? .........................................................................................5

THE LAWYERS REPRESENTING YOU ..............................................................................................5

18. Do I have a lawyer in this case?................................................................................................5

19. How will Settlement Class Counsel be paid? ...........................................................................5

20. What is the award to the class representative?.........................................................................5

THE COURT'S FINAL APPROVAL HEARING ..................................................................................5

21. When and where will the Court decide whether to approve the settlement? ............................5

22. Do I have to attend the hearing? ..............................................................................................6

23. May I speak at the hearing? .....................................................................................................6

GETTING MORE INFORMATION .......................................................................................................6

24. How do I get more information?...............................................................................................6

## BASIC INFORMATION

### 1.   Why is there a notice?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the settlement.  This notice explains the lawsuit, the settlement and your legal rights.

The United States District Court for the Northern District of California is overseeing this case.  The case is known as Ronald S. Arendas v. Citibank Inc., et al., Case No. 3:11-cv-06462-CRB.  The person who sued is called the "Plaintiff." The defendant is Citibank, N.A. ("Citibank").

### 2.   What is this lawsuit about?

The lawsuit claims that Citibank was not permitted to charge overdraft fees on debit card transactions to consumer accounts.  The complaint in this lawsuit is posted on www.ArendasOverdraftFeeSettlement.com, and contains all of the allegations and claims asserted against Citibank.  Citibank maintains that it was authorized to charge overdraft fees on debit card transactions and that it has not violated any laws.

### 3.   What is an overdraft fee?

An "overdraft fee," as that term is used in the settlement, is a fee charged in connection with a debit card transaction that resulted in an overdraft on a Citibank consumer account.

### 4.   Why is this a class action?

In a class action, one or more people, called a class representative, sues on behalf of people who have similar claims.

All of the people who have claims similar to the class representative are members of the Settlement Class ("Settlement Class Members"), except for those who exclude themselves from the class.

### 5.   Why is there a settlement?

The Court has not decided in favor of either Plaintiff or Citibank.  Instead, both sides agreed to the settlement.  By agreeing to the settlement, the parties avoid the costs and uncertainty of a trial, and Settlement Class Members receive the benefits described in this notice.  The class representative and his attorneys think the settlement is best for everyone who is affected.

## WHO IS IN THE SETTLEMENT?

If you received notice of the settlement from a postcard addressed to you, then you likely are a Settlement Class Member.

### 6.   Who is included in the settlement?

You are a Settlement Class Member if you had or have one or more Citibank consumer accounts and, between November 7, 2004 and July 1, 2010, Citibank charged you an overdraft fee on a debit card transaction.  You may contact the Settlement Administrator if you have any questions as to whether you are a Settlement Class Member.

**THE SETTLEMENT'S BENEFITS**

**7.   What does the settlement provide?**

Citibank has agreed to establish a settlement fund of at least $5 million and no more than $7.9 million, from which Settlement Class Members who submit a valid Claim Form may receive a payment.  It is estimated that the payment could be up to $34, but the amount of the payment may be higher or lower depending on the total number of claims submitted by the class.

**8.   How do I receive a payment?**

If you are a Settlement Class Member, you must submit a valid Claim Form to be eligible for a payment.  See Question 9 below, for instructions on how to submit a Claim Form.

**9.   How do I submit a Claim Form?**

You can submit a Claim Form online or by mail.  To submit a Claim Form online, visit www.ArendasOverdraftFeeSettlement.com.  To submit a Claim Form by mail, complete the Claim Form attached at the end of this notice, or you can also obtain a Claim Form by visiting www.ArendasOverdraftFeeSettlement.com or calling 1-877-348-0912.  For your claim to be valid, your Claim Form must be completely filled out, signed and must comply with the instructions set forth in the Claim Form.

Claim Forms submitted online must be submitted by **no later than July 28, 2014**.  Claim Forms submitted by mail must be postmarked **no later than July 28, 2014**, and must be mailed (with any required postage) to:

Arendas v. Citibank Settlement
c/o Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912-8060

If you fail to submit online or postmark a Claim Form by **July 28, 2014**, your claim will be rejected.

**10. What happens after a Claim Form is submitted?**

The Settlement Administrator will review all Claim Forms to determine if you are a Settlement Class Member and if your Claim Form is valid.  If your Claim Form is approved, you will receive a check payment after the Court finally approves the settlement and that approval becomes Final as that term is defined in the Settlement Agreement.  If the settlement is finally approved, you will be bound by all orders and judgments of the Court and you give up any right to sue Citibank about the issues and claims in this case.

**11. What happens if a Claim Form is rejected?**

If your Claim Form is rejected, you will be notified of the reason(s) why and will be given the opportunity to challenge the decision or cure any defect, and a deadline to do so.

**12. What am I giving up to stay in the Settlement Class?**

If you do not exclude yourself from the Settlement Class, you may make a claim for a payment, but you cannot sue, continue to sue or be part of any other lawsuit against Citibank about the issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Released Claims" included in the Settlement Agreement describe the precise legal claims that you give up if you remain in the Settlement Class.  The Settlement Agreement is available at www.ArendasOverdraftFeeSettlement.com.

**EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS**

If you do not want benefits from the settlement, and you want to keep the right to sue or continue to sue Citibank on your own about the issues in this case, then you must take steps to exclude yourself from the Settlement Class.  This is sometimes referred to as "opting out" of the Settlement Class.  If you exclude yourself, you are no longer a Settlement Class Member.

**13. How do I exclude myself from the Settlement Class?**

If you do not wish to be a Settlement Class Member, you may exclude yourself by writing to the Settlement Administrator.  Your request must include the following:

- Your full name, address and telephone number;

- A statement that you want to be excluded from the settlement in <u>Ronald S. Arendas v. Citibank Inc., et al.</u>, Case No. 3:11-cv-06462-CRB; and

- Your signature.

You must mail your exclusion request, postmarked no later than August 27, 2014, to:

<div align="center">

Arendas v. Citibank Settlement
c/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur, CA 94977-6002

</div>

| 14. If I don't exclude myself, can I sue Citibank for the same thing later? |
|---|

No.  Unless you exclude yourself, you give up the right to sue Citibank for the claims that the settlement resolves.  You must exclude yourself from the Settlement Class in order to try to pursue your own lawsuit against Citibank.

<div align="center">

**OBJECTING TO THE SETTLEMENT**

</div>

You can tell the Court that you do not agree with the settlement or some part of it.

| 15. How do I tell the Court that I don't like the settlement? |
|---|

If you are in the Settlement Class and do not exclude yourself, you can object to any part of the settlement, the settlement as a whole, Settlement Class Counsel's request for attorneys' fees, costs and expenses and/or Settlement Class Counsel's request for a service award for Plaintiff.  To object, you must submit a letter that includes the following:

- The name of this case, which is <u>Ronald S. Arendas v. Citibank Inc., et al.</u>, Case No. 3:11-cv-06462-CRB;

- Your full name, address and telephone number;

- An explanation of the basis upon which you claim to be a Settlement Class Member;

- All grounds for the objection, accompanied by any legal support for the objection known to you or your counsel;

- The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement or fee application;

- A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing;

- The identity of any counsel who will appear at the Final Approval Hearing on your behalf;

- A list of any witnesses you will call to testify at the Final Approval Hearing; and

- Your signature (an attorney's signature is not sufficient).

You must submit your objection to the Court and it must be postmarked no later than August 27, 2014:

<div align="center">

Clerk of the Court
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102

</div>

You must also send your objection by mail, hand or overnight delivery service to the following addresses and it must be postmarked no later than August 27, 2014:

| | | |
|---|---|---|
| Julia B. Strickland | Michael W. Sobol | Richard D. McCune |
| Stroock & Stroock & Lavan LLP | Lieff Cabraser Heimann & | McCuneWright, LLP |
| 2029 Century Park East | Bernstein, LLP | 2068 Orange Tree Lane, Suite 216 |
| Los Angeles, CA 90067 | 275 Battery Street, 29th Floor | Redlands, CA 92374 |
| | San Francisco, CA 94111 | |

If you fail to submit a timely or complete objection, you have waived all objections to the settlement, will not be permitted to object to the settlement at the Final Approval Hearing or otherwise.  Only Settlement Class Members may object to the settlement.

**16. What's the difference between objecting to the settlement and excluding myself from the Settlement Class?**

You object to the settlement when you wish to remain a Settlement Class Member and be subject to the settlement, but disagree with some aspect of the settlement. An objection allows your views to be heard in Court.

In contrast, excluding yourself from the Settlement Class means that you are no longer a Settlement Class Member and do not want to be subject to the terms and conditions of the settlement. Once excluded, you lose any right to receive any settlement payment and to object to any aspect of the settlement because the case no longer affects you.

## IF YOU DO NOTHING

**17. What happens if I do nothing at all?**

If you do nothing, you will not receive any payment from the settlement. You will be giving up rights to be part of any other lawsuit or make any other claim against Citibank for the claims alleged in this case. The "Released Claims" included in the Settlement Agreement describe the precise claims that you give up if you remain in the settlement. A copy of the Settlement Agreement is available at www.ArendasOverdraftFeeSettlement.com.

## THE LAWYERS REPRESENTING YOU

**18. Do I have a lawyer in this case?**

The Court has appointed lawyers to represent you and others in the Settlement Class as "Settlement Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. Settlement Class Counsel are:

| | |
|---|---|
| Michael W. Sobol | Richard D. McCune |
| Lieff Cabraser Heimann & Bernstein, LLP | McCuneWright, LLP |
| 275 Battery Street, 29th Floor | 2068 Orange Tree Lane, Suite 216 |
| San Francisco, CA 94111 | Redlands, CA 92374 |

**19. How will Settlement Class Counsel be paid?**

After the deadline to submit claims, Settlement Class Counsel intends to file an application with the Court for an award of attorneys' fees plus reimbursement of their out-of-pocket litigation costs. In no event will Settlement Class Counsel seek more than $1.975 million for attorneys' fees or more than $100,000 for reimbursement of their out-of-pocket litigation expenses. The Court will determine the amount of attorneys' fees and costs to award, if any, and may consider several factors, including the number of claims submitted by Settlement Class Members. The attorneys' fees, costs and expenses awarded by the Court will be paid out of the settlement fund. Settlement Class Counsel's application for attorneys' fees, costs and expenses will be posted at www.ArendasOverdraftFeeSettlement.com when it is filed.

**20. What is the award to the class representative?**

The Court appointed Plaintiff Ronald S. Arendas as class representative. Mr. Arendas will request an award of up to $5,000 for his service as class representative. This award is referred to as a service award. The service award approved by the Court will be paid out of the settlement fund. The Court will determine the amount of the service award, if any.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the settlement and the request for attorneys' fees, costs and expenses for Settlement Class Counsel and service award for Plaintiff (the "Final Approval Hearing"). You may attend and you may ask to speak, but you don't have to.

**21. When and where will the Court decide whether to approve the settlement?**

The Court will hold the Final Approval Hearing at 10:00 a.m. on November 7, 2014, at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Ave, San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check for updates at www.ArendasOverdraftFeeSettlement.com. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. The Court will also consider any request by Settlement Class Counsel for attorneys' fees, costs and expenses and a service award for Plaintiff. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 22. Do I have to attend the hearing?

No.  You are not required to attend the Final Approval Hearing.  Settlement Class Counsel will answer any questions the Court may have.  If you or your personal attorney want to attend the Final Approval Hearing, you are more than welcome to do so at your expense.  If you submit a written objection, you do not have to come to Court to talk about it.  As long as you submit your written objection on time, to the proper address and it complies with the requirements set forth above, the Court will consider it.

## 23. May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must send a letter saying that you intend to appear and wish to be heard.  Your Notice of Intention to Appear must include the following:

- Your full name, address and telephone number;

- A statement that this is your "Notice of Intention to Appear" at the Final Approval Hearing for the settlement in Ronald S. Arendas v. Citibank Inc., et al., Case No. 3:11-cv-06462-CRB;

- The reasons you want to be heard;

- The name of any attorneys, if any, who will be appearing on your behalf;

- Copies of any papers, exhibits, or other evidence or information that is to be presented to the Court at the Final Approval Hearing; and

- Your signature.

You must submit your Notice of Intention to Appear to all of the addresses listed in Question 15 and it must be postmarked no later than August 27, 2014.

## GETTING MORE INFORMATION

## 24. How do I get more information?

This notice summarizes the proposed settlement.  More details can be found in the Settlement Agreement.  You can obtain a copy of the Settlement Agreement at www.ArendasOverdraftFeeSettlement.com.  You may also write with questions to Arendas v. Citibank Settlement, c/o Gilardi & Co. LLC, P.O. Box 8060, San Rafael, CA 94912-8060, or call the toll-free number, 1-877-348-0912.  Do not contact the Court, Citibank or Citibank's Counsel for information.

# EXHIBIT 9

# Bayat v. Bank of the West TCPA Settlement

**Home** | **Case Documents** | **Frequently Asked Questions** | **Contact Us** |

### WELCOME TO THE BAYAT V. BANK OF THE WEST SETTLEMENT WEBSITE

Bayat v. Bank of the West,
United States District Court for the Northern District of California,
Case No. 13-cv-2376 (EMC)

**The Court and counsel regularly make modifications to the settlement website. Please check this settlement website on a regular basis for updates and additional information.**

### Information to Class Members

If automated calls were directed to your cell phone by Bank of the West, or an entity calling on its behalf, from November 2, 2008 through July 22, 2014, you may be entitled to benefits under a class action settlement.

- A settlement will provide $3,354,745.98 (the "Settlement Fund") to fully settle and release claims of persons to whom calls were placed on their cell phones by Bank of the West, or any entity calling on behalf of Bank of the West, using an automatic telephone dialing system or prerecorded or artificial voice during the time period set forth above.
- In addition to the Settlement Fund, settlement class members may submit a request to stop calls (referred to in the settlement agreement as a "Revocation Request") which will prevent Bank of the West from placing telephone calls to their cell phones through the use of an automatic telephone dialing system or prerecorded or artificial voice. Settlement class members who submit a request to stop calls will stop these calls. Settlement class members who fail to submit a request to stop calls will not stop such calls, and will be deemed to have given their legal consent to such calls in the future (except with respect to calls for purposes of telemarketing; the deemed consent does not extend to those calls).
- Plaintiffs allege that certain of these calls violated the federal Telephone Consumer Protection Act (the "TCPA"). Bank of the West denies plaintiffs' allegations and denies any wrongdoing whatsoever. The Court has not ruled on the merits of plaintiffs' claims or Bank of the West's defenses. By entering into the settlement, Bank of the West has not conceded the truth or validity of any of the claims against it.
- The Settlement Fund shall be used to pay all amounts related to the settlement, including awards to settlement class members who submit a valid and timely claim, attorneys' fees and costs for plaintiffs' counsel, any incentive awards for plaintiffs and the costs of administering the settlement. Class Counsel estimates that settlement class members who timely submit a valid claim will receive between $25 and $50. If there are any amounts remaining in the Settlement Fund after the administration is concluded, that money will be redistributed to settlement class members or distributed to a charity, the Opportunity Fund.
- The Court in charge of this case still has to decide whether to approve the settlement. Revocation requests will become effective and payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

**Please note the following important dates:**

| Case Relevant Event | Date |
|---|---|
| Claim Filing/Request to Stop Calls Deadline | March 10, 2015 |
| Opt-Out Deadline | March 10, 2015 |
| Objection Deadline | March 10, 2015 |
| Final Approval Hearing | April 2, 2015 at 1:30 p.m. |

# Bayat v. Bank of the West TCPA Settlement

**Home** | **Case Documents** | **Frequently Asked Questions** | **Contact Us** |

## Case Documents

**Final Approval Order**
**Preliminary Approval Order**
**Settlement Agreement**
**Long Form Notice**
**Claim Form & Request to Stop Calls**
**Motion for Attorneys' Fees**
**Declaration of Daniel Hutchinson**
**Exhibit A to Hutchinson Declaration**
**Exhibit B to Hutchinson Declaration**
**Exhibit C to Hutchinson Declaration**
**Declaration of Matthew Wilson**
**Exhibit A to Wilson Declaration**

*Bayat v. Bank of the West*,
**United States District Court for the Northern District of California,**
**Case No. 13-cv-2376 (EMC)**

**If automated calls were directed to your cell phone by Bank of the West, or an entity calling on its behalf, from November 2, 2008 through July 22, 2014, you may be entitled to benefits under a class action settlement.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- **A settlement will provide $3,354,745.98 (the "Settlement Fund") to fully settle and release claims of persons to whom calls were placed on their cell phones by Bank of the West, or any entity calling on behalf of Bank of the West, using an automatic telephone dialing system or prerecorded or artificial voice during the time period set forth above.**

- **In addition to the Settlement Fund, settlement class members may submit a request to stop calls (referred to in the settlement agreement as a "Revocation Request") which will prevent Bank of the West from placing telephone calls to their cell phones through the use of an automatic telephone dialing system or prerecorded or artificial voice. Settlement class members who submit a request to stop calls will stop these calls. Settlement class members who fail to submit a request to stop calls will not stop such calls, and will be deemed to have given their legal consent to such calls in the future (except with respect to calls for purposes of telemarketing; the deemed consent does not extend to those calls).**

- **Plaintiffs allege that certain of these calls violated the federal Telephone Consumer Protection Act (the "TCPA"). Bank of the West denies plaintiffs' allegations and denies any wrongdoing whatsoever. The Court has not ruled on the merits of plaintiffs' claims or Bank of the West's defenses. By entering into the settlement, Bank of the West has not conceded the truth or validity of any of the claims against it.**

- **The Settlement Fund shall be used to pay all amounts related to the settlement, including awards to settlement class members who submit a valid and timely claim, attorneys' fees and costs for plaintiffs' counsel, any incentive awards for plaintiffs and the costs of administering the settlement. Class Counsel estimates that settlement class members who timely submit a valid claim will receive between $25 and $50. If there are any amounts remaining in the Settlement Fund after the administration is concluded, that money will be redistributed to settlement class members or distributed to a charity, the Opportunity Fund.**

- **Your legal rights are affected whether you act or don't act. Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A REQUEST TO STOP CALLS FORM | If you submit a valid request to stop calls by March 10, 2015, you will not receive further automated calls from Bank of the West or entities calling on its behalf to your cell phone. You also will give up your rights to sue Bank of the West, other entities calling on its behalf and/or any other released parties on a released claim. If you fail to submit a valid and timely request to stop calls, you will not stop Bank of the West or entities acting on its behalf from making automated calls to your cell phone. You may submit both a request to stop calls and a claim form. |
| SUBMIT A CLAIM FORM | If you submit a valid claim form by March 10, 2015, you will receive a payment and will give up your rights to sue Bank of the West, other entities calling on its behalf and/or any other released parties on a released claim. You may submit both a claim form and a request to stop calls. |
| EXCLUDE YOURSELF FROM THE CASE | This is the only option that allows you to sue Bank of the West, other entities calling on its behalf and/or other released parties on your own regarding the legal claims in this case, but you will not receive a payment from the settlement and may not submit a request to stop calls. The deadline for excluding yourself is March 10, 2015. |
| OBJECT TO THE SETTLEMENT | Write to the Court about why you do not like the settlement. The deadline for objecting is March 10, 2015. To obtain a benefit from this settlement, you must still submit either a request to stop calls, claim form or both. If you submit only an objection, you will not receive any benefit from the settlement. |
| DO NOTHING | If you do nothing, you will not stop Bank of the West or entities acting on its behalf from making automated calls to your cell phone; you will not receive any monetary award and you will give up your rights to sue Bank of the West, other entities calling on its behalf and/or any other released parties on a released claim. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Requests to Stop Calls will become effective and payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

**BASIC INFORMATION**

| **1. Why is this a class action?** |
|---|

In a class action, one or more people called Class Representatives (here, plaintiffs Younus Bayat and Mohammed Ereikat ("Plaintiffs")) sue on behalf of people who allegedly have similar claims. This group is called a class and the persons included are called class

members.  One court resolves the issues for all of the class members, except for those who exclude themselves from the class.  Here, the Court has certified a class action for settlement purposes only.  The Honorable Edward M. Chen is in charge of this action.

**2.  Why is there a settlement?**

Plaintiffs claim that Bank of the West violated the TCPA by placing calls, either itself or through entities calling on its behalf, to cellular telephones between November 2, 2008 and July 22, 2014, through the use of an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent.  Bank of the West denies these allegations and denies any claim of wrongdoing.  The Court did not decide in favor of Plaintiffs or Bank of the West.  Instead, both sides agreed to this settlement.  That way, they avoid the risk and cost of a trial, and the settlement class members will receive compensation.  Plaintiffs and their attorneys ("Class Counsel") think the settlement is best for all persons in the settlement class.

### WHO IS IN THE SETTLEMENT CLASS?

**3.  How do I know if I am a part of the settlement class?**

The Court has certified a class action for settlement purposes only.  The class (the "Settlement Class") is defined as:

All persons within the United States to whom, on or after November 2, 2008 through July 22, 2014, a non-emergency telephone call was attempted by Bank of the West, or any other entity on its behalf, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.  Excluded from the Settlement Class are Bank of the West and any affiliate or subsidiary of Bank of the West, along with any employees thereof, and any entities in which any of such companies have a controlling interest, the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, as well as all persons who validly opt out of the Settlement Class.

### THE LAWYERS REPRESENTING YOU

**4.  Do I have lawyers in this case?**

The Court has appointed the law firms of Lieff Cabraser Heimann & Bernstein, LLP and Meyer Wilson Co., LPA as Class Counsel to represent you and the other persons in the Settlement Class.  You will not be personally charged by these lawyers.

**5.  How will Class Counsel be paid?**

Class Counsel will ask the Court to approve payment of $838,686.50 of the Settlement Fund to them for attorneys' fees and expenses.  Class Counsel also will ask the Court to approve payment of $2,000 each to Plaintiffs for their services as Class Representatives.  The Court may award less than these amounts.  In addition, the Settlement Fund will be used to pay for administration and notice of this settlement, which is estimated to cost approximately $413,607.  Bank of the West has agreed not to oppose these requests.

### THE SETTLEMENT BENEFITS

**6.  What does the settlement provide?**

Settlement Class Members may ask not to receive further automated telephone calls to their cell phones from Bank of the West or entities calling on its behalf by submitting a valid request to stop calls.  Settlement Class Members also may receive a cash payment by submitting a valid claim form.

**7.  How much will my payment be?**

Your share of the Settlement Fund will depend on the number of valid claim forms that Settlement Class Members submit.  Class Counsel estimate that the amount of the cash award (while dependent upon the number of claims) may be within the range of $25 to $50.

**8.  What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the settlement, you will be part of the Settlement Class, and you will be bound by the release of claims in the settlement.  This means that, if the settlement is approved, you cannot sue, continue to sue or be part of any other lawsuit against Bank of the West, entities calling on its behalf or any other released parties asserting a released claim.  It also means that all of the Court's orders will apply to you and legally bind you.  Unless you opt out of the settlement, you will agree to release Bank of the West, any other entities calling on its behalf and any other released parties from any and all claims that arise from the automated calls to your cellular telephone at issue in this action.

### HOW TO ASK NOT TO RECEIVE FURTHER AUTOMATED CALLS ON YOUR CELL PHONE

**9.  How can I ask not to receive further automated calls on my cell phone?**

In order to ask that Bank of the West or entities calling on its behalf stop making automated calls to your cell phone, you must send in a request to stop calls.  You may get a request to stop calls on the Settlement Website, www.BayatTCPASettlement.com, or by calling the Toll-Free Settlement Hotline, 877-430-3694.  **Read the instructions carefully, fill out the form completely and accurately, sign it and submit it.**  To be valid, the request to stop calls must be completed fully and accurately and submitted timely.  The failure to provide an account number will not invalidate a request to stop calls; however, you are asked to provide an account number, if available, to ensure accuracy.  A request to stop calls may be submitted by mail to the claims administrator at:

2

Bayat v. Bank of the West, c/o Gilardi & Co. LLC, P.O. Box 8060 San Rafael, CA 94912-8060 or via the Settlement Website. If you are submitting a request to stop calls via the Settlement Website, it must be submitted no later than March 10, 2015. If you are mailing your request to stop calls to the claims administrator, it must be postmarked by that date.

If you do not opt-out (as explained below) and fail to submit a valid and timely request to stop calls, you will be deemed to have provided prior express consent to receive future automated telephone calls to your cell phone from Bank of the West or entities calling on its behalf. However, a failure to submit a valid and timely request to stop calls will not be deemed to have provided consent to receive telemarketing calls; these calls are governed by a different legal standard.

If you do not submit a request to stop calls now, you will retain any rights that exist in the law to revoke consent to calls in the future. That request would be separate from the settlement.

## HOW TO APPLY FOR A PAYMENT

**10.  How can I get a payment?**

To qualify for a payment, you must send in a claim form or submit the required information through the Toll-Free Settlement Hotline. You may get a claim form on the Settlement Website, www.BayatTCPASettlement.com, or by calling the Toll-Free Settlement Hotline, 1-877-430-3694. **Read the instructions carefully, fill out the form completely and accurately, sign it and submit it**. To be valid, the claim form must be completed fully and accurately and submitted timely. A claim form may be submitted by mail to the claims administrator at: Bayat v. Bank of the West, c/o Gilardi & Co. LLC, P.O. Box 8060 San Rafael, CA 94912-8060, via the Settlement Website or you may submit the required information through the Toll-Free Settlement Hotline. If you are submitting your claim via the Settlement Website or Toll-Free Settlement Hotline, it must be submitted no later than March 10, 2015. If you are mailing your claim form to the claims administrator, it must be postmarked by that date.

## WHEN WILL I RECEIVE MY SETTLEMENT BENEFIT?

**11.  When would I receive what I ask for?**

The Court will hold a hearing on April 2, 2015 to decide whether to approve the settlement. If the Court approves the settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a request to stop calls and/or claim form will be informed of the progress of the settlement through information posted on the Settlement Website at www.BayatTCPASettlement.com. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**12.  How do I get out of the settlement?**

If you want to keep the right to sue or continue to sue Bank of the West or other entities that may have been involved in the calls that are the subject of the action, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting out of, the Settlement Class.

To exclude yourself from the settlement, you must send a letter by mail that: (a) is signed by you; (b) includes your full name, address, telephone number and your account number(s) at Bank of the West (except that persons in the Settlement Class who do not currently have and have not previously had some banking, lending or other relationship with Bank of the West, shall not be required to include an account number); and (c) includes the following statement: "I/we request to be excluded from the class settlement in Bayat v. Bank of the West, N.D. Cal., Case No. 13-cv-2376 (EMC)." No request for exclusion will be valid unless all of the information described above is included. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person in the Settlement Class from the Settlement Class. **To be valid, you must mail your exclusion request postmarked no later than March 10, 2015 to the claims administrator at Bayat v. Bank of the West, c/o Gilardi & Co. LLC, P.O. Box 6002, Larkspur, CA 94977-6002.**

**13.  If I do not exclude myself, can I sue Bank of the West for the same thing later?**

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) Bank of the West or any released parties for the claims that this settlement resolves.

**14.  If I exclude myself, can I get a benefit from this settlement?**

No. If you ask to be excluded, you will not be able to submit a request to stop calls, you will not be able to submit a claim for a settlement payment and you cannot object to the settlement.

## OBJECTING TO THE SETTLEMENT

**15.  How do I tell the Court that I do not agree with the settlement?**

If you are in the Settlement Class, you can object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views.

To object, you must make your objection in writing, stating that you object to the settlement in Bayat v. Bank of the West. In order to be considered by the Court, the written objection must set forth: (a) the name and case number of this action; (b) your full name, address and telephone number; (c) an explanation of the basis upon which you claim to be a Settlement Class Member; (d) all grounds for the objection, accompanied by any legal support for the objection known to you or your counsel; (e) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (f) the identity of all counsel representing you who will appear at the final approval hearing; (g) a list of all persons who will be called to testify at the final approval hearing in support of the objection; (h) a statement confirming whether you intend to personally appear and/or testify at the final approval hearing; and (i) your signature (an attorney's signature is not sufficient).

**In order to be valid, objections must be filed with the Court no later than March 10, 2015. Even if you timely and properly object, to obtain a benefit from this settlement, you must submit a request to stop calls, claim form or both. If you object but fail to submit either a request to stop calls or a claim form, you will not stop Bank of the West or entities acting on its behalf from making automated calls to your cell phone and you will not receive any monetary award.**

### 16.  What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself means that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

### IF YOU DO NOTHING

### 17.  What happens if I do nothing at all?

If you do nothing, you will not stop Bank of the West or entities acting on its behalf from making automated calls to your cell phone; you will not receive any monetary award; and you will give up your rights to sue Bank of the West, other entities calling on its behalf and/or any other released parties on a released claim.

### THE COURT'S FINAL APPROVAL HEARING

### 18.  When and where will the Court decide whether to approve the settlement?

The Court will hold a final approval hearing at 1:30 p.m. on April 2, 2015 at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, in Courtroom 5 – 17th Floor. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are valid objections that comply with the requirements in Question 15 above, the Court also will consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and Plaintiffs.

### 19.  Do I have to come to the hearing?

No. Class Counsel will appear on behalf of the Settlement Class. But, you are welcome to come, or have your own lawyer appear, at your own expense.

### 20.  May I speak at the hearing?

You may ask the Court for permission to speak at the final approval hearing, but only in connection with an objection that you have timely submitted to the Court according to the procedure set forth in Question 15 above. To speak at the final approval hearing, you must also file a document with the Court stating your intention to appear. For this document to be considered, it must include your name, address, telephone number and your signature. The document must be filed with the Court no later than March 10, 2015. You cannot speak at the hearing if you exclude yourself from the settlement.

### GETTING MORE INFORMATION

### 21.  Is this the entire settlement?

No. This notice is only a summary of the proposed settlement. More details are in a settlement agreement. You can get a copy of the settlement agreement by visiting the Settlement Website, www.BayatTCPASettlement.com, or you can write to the address below or call the Toll-Free Settlement Hotline, 1-877-430-3694.

### 22.  How do I get more information?

You can call the Toll-Free Settlement Hotline, 1-877-430-3694; write to the claims administrator at Bayat v. Bank of the West, c/o Gilardi & Co. LLC, P.O. Box 8060 San Rafael, CA 94912-8060; or review the settlement agreement.

**DO NOT CALL OR WRITE TO THE COURT, THE CLERK OF THE COURT, BANK OF THE WEST OR BANK OF THE WEST'S COUNSEL ABOUT THE SETTLEMENT. ALSO, TELEPHONE REPRESENTATIVES WHO ANSWER CALLS MADE TO THE TOLL FREE NUMBER ARE NOT AUTHORIZED TO CHANGE THE TERMS OF THE SETTLEMENT OR THIS NOTICE.**

DATE: July 22, 2014.

# EXHIBIT 10

**FILED**

SEP 23 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

O.E. EXPRESS,

              Objector - Appellant,

    v.

YAHOO!,INC.; et al.,

              Defendants - Appellees.,

  and

CRAFTS BY VERONICA; et al.,

              Plaintiffs - Appellees.

No. 10-55206

D.C. No. 2:06-cv-02737-CAS-FMO
Central District of California,
Los Angeles

ORDER



RECEIVED
CLERK, U.S. DISTRICT COURT

SEP 23 2010
2010

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

PWS/Mediation

TRUE COMMUNICATION INC., DBA
Metrodate.com; et al.,

        Plaintiffs - Appellees,

ERIC TURKEWITZ; et al.,

        Objectors - Appellants,

  v.

YAHOO! INC.; et al.,

        Defendants - Appellees,

  and

ALEXANDER BAGNE; et al.,

        Objectors.

No. 10-55225

D.C. No. 2:06-cv-02737-CAS-
FMO
Central District of California,
Los Angeles

| | |
|---|---|
| LIGHTTHENATIONS.COM; et al., | No. 10-55255 |
| Objectors - Appellants, | D.C. No. 2:06-cv-02737-CAS-FMO |
| and | Central District of California, Los Angeles |
| ALEXANDER BAGNE; et al., | |
| Objectors, | |
| v. | |
| YAHOO!,INC.; et al., | |
| Defendants - Appellees, | |
| and | |
| CRAFTS BY VERONICA; et al., | |
| Plaintiffs - Appellees. | |

Pursuant to the stipulation of the parties, these appeals are voluntarily dismissed. Fed. R. App. P. 42(b). The parties shall bear their own costs on appeal.

This order served on the district court shall act as and for the mandate of this court.

FOR THE COURT:

By: Peter W. Sherwood
Circuit Mediator

**General Docket**
**United States Court of Appeals for the Ninth Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 10-55206 | **Docketed:** 02/11/2010 |
| **Nature of Suit:** 4190 Other Contract Actions | **Termed:** 09/23/2010 |
| In re: O.E. Express v. Yahoo! Inc., et al | |
| **Appeal From:** U.S. District Court for Central California, Los Angeles | |
| **Fee Status:** Paid | |

**Case Type Information:**
 **1)** civil
 **2)** private
 **3)** null

**Originating Court Information:**
 **District:** 0973-2 : 2:06-cv-02737-CAS-FMO
 **Court Reporter:** Blanca Carvajal, Manager
 **Trial Judge:** Christina A. Snyder, District Judge
 **Date Filed:** 05/04/2006

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|---|
| 01/15/2010 | 01/20/2010 | 02/09/2010 | 02/09/2010 |

**Prior Cases:**
 None

**Current Cases:**

| | Lead | Member | Start | End |
|---|---|---|---|---|
| Consolidated | | | | |
| | 10-55206 | 10-55225 | 05/12/2010 | |
| | 10-55206 | 10-55255 | 05/12/2010 | |
| Related | | | | |
| | 10-55225 | 10-55255 | 02/22/2010 | |

| | |
|---|---|
| CRAFTS BY VERONICA<br>     Plaintiff - Appellee, | Michael J. Boni, Esquire, Attorney<br>Direct: 610-822-0201<br>[COR LD NTC Retained]<br>BONI & ZACK LLC<br>15 St. Asaphs Rd.<br>Bala Cnywyd, PA 19004<br><br>Michael D. Donovan<br>Direct: 215-732-6067<br>[COR LD NTC Retained] |

DONOVAN, SEARLES, LLC
Suite 1100
1845 Walnut Street
Philadelphia, PA 19103

Joshua David Snyder
Direct: 610-822-0200
[COR LD NTC Retained]
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cnywyd, PA 19004

MIKA'S WEDDING
        Plaintiff - Appellee,

Michael J. Boni, Esquire, Attorney
Direct: 610-822-0201
[COR LD NTC Retained]
(see above)

Michael D. Donovan
Direct: 215-732-6067
[COR LD NTC Retained]
(see above)

Joshua David Snyder
Direct: 610-822-0200
[COR LD NTC Retained]
(see above)

TRUE COMMUNICATION INC., DBA Metrodate.com
        Plaintiff - Appellee,

Michael J. Boni, Esquire, Attorney
Direct: 610-822-0201
[COR LD NTC Retained]
(see above)

Michael D. Donovan
Direct: 215-732-6067
[COR LD NTC Retained]
(see above)

Joshua David Snyder
Direct: 610-822-0200
[COR LD NTC Retained]
(see above)

O.E. EXPRESS, INC.
        Objector - Appellant,

John W. Davis
Direct: 619-400-4870

[COR LD NTC Retained]
Law Office of John W. Davis
501 W. Broadway
Suite 800
San Diego, CA 92101

Steven Franklyn Helfand, Attorney
[COR LD NTC Retained]
Helfand Law Offices
582 Market Street
Suite 1400
San Francisco, CA 94104

v.

YAHOO!,INC.
       Defendant - Appellee,

David Koss Caplan
Direct: 310-248-3830
[COR LD NTC Retained]
Keats, McFarland & Wilson, LLP
Penthouse Suite
9720 Wilshire Blvd.
Beverly Hills, CA 90212

Larry W. McFarland
Direct: 310-248-3830
[COR LD NTC Retained]
Keats, McFarland & Wilson, LLP
Penthouse Suite
9720 Wilshire Blvd.
Beverly Hills, CA 90212

Dennis Wilson
Direct: 310-777-3740
[COR LD NTC Retained]
Kilpatrick Townsend & Stockton, LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, CA 90212

OVERTURE SERVICES, INC.
       Defendant - Appellee,

Larry W. McFarland
Direct: 310-248-3830
[COR LD NTC Retained]
(see above)

Dennis Wilson
Direct: 310-777-3740
[COR LD NTC Retained]
(see above)

O.E. EXPRESS,

        Objector - Appellant,

 v.

YAHOO!,INC.; OVERTURE SERVICES, INC.,

        Defendants - Appellees.

 and

CRAFTS BY VERONICA; MIKA'S WEDDING; TRUE COMMUNICATION INC., DBA Metrodate.com,

        Plaintiffs - Appellees,

| Date | Entry | Description |
|---|---|---|
| 02/11/2010 | ☐ 1<br>10 pg, 100.59 KB | DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL. SEND MQ: No. The schedule is set as follows: Appellant O.E. Express opening brief due 07/19/2010. Appellee Crafts by Veronica, Appellee Mika's Wedding, Appellee Overture Services, Inc., Appellee True Communication Inc. and Appellee Yahoo!,Inc. answering brief due 08/18/2010. Appellant's optional reply brief is due 14 days after service of the answering brief. [7228368] (FB) [Entered: 02/11/2010 10:11 AM] |
| 02/11/2010 | ☐ 2<br>2 pg, 60.79 KB | Filed Appellant O.E. Express CADS. Served on 02/09/2010. [7228372] (FB) [Entered: 02/11/2010 10:13 AM] |
| 02/11/2010 | ☐ 3<br>3 pg, 42.36 KB | Filed representation notice by Attorney John Davis. Served on 02/09/2010. [7228381] (FB) [Entered: 02/11/2010 10:15 AM] |
| 02/11/2010 | ☐ 4 | Fee status changed ( [Case Number 10-55206: pd] ). [7228393] (FB) [Entered: 02/11/2010 10:19 AM] |
| 02/11/2010 | ☐ 5<br>5 pg, 52.25 KB | Filed (ECF) Appellant O.E. Express Mediation Questionnaire. Date of service: 02/11/2010. [7229701] (JWD) [Entered: 02/11/2010 04:51 PM] |
| 03/16/2010 | ☐ 6<br>4 pg, 94.18 KB | Filed (ECF) Appellant O.E. Express, Inc. Correspondence: Notice of Transcript Designation and Statement of Issues. Date of service: 03/16/2010 [7267490] (JWD) [Entered: 03/16/2010 12:05 PM] |
| 03/17/2010 | ☐ 7<br>2 pg, 79.37 KB | Received Appellant O.E. Express, Inc. notice regarding courtesy copy of transcript designation. [7269269] (EL) [Entered: 03/17/2010 01:32 PM] |
| 03/26/2010 | ☐ 8<br>1 pg, 338.08 KB | Filed (ECF) notice of appearance of David K Caplan for Appellee Yahoo!,Inc.. Date of service: 03/26/2010. [7280216] (DKC) [Entered: 03/26/2010 02:11 PM] |
| 03/26/2010 | ☐ 9 | Added attorney David Koss Caplan for Yahoo!,Inc., in case 10-55206. [7280257] (EL) [Entered: 03/26/2010 02:22 PM] |
| 04/27/2010 | ☐ 10<br>8 pg, 59.65 KB | Filed order MEDIATION (VLS): The Mediation Program of the Ninth Circuit Court of Appeals facilitates settlement while appeals are pending. See Fed. R. App. P. 33 and Ninth Cir. R. 33-1. The court has scheduled a telephone settlement assessment conference, with counsel only, on May 12, 2010, at 10:00 a.m. PACIFIC (San Francisco) Time to discuss whether this case is appropriate for participation in the Mediation Program. (SEE ORDER FOR FULL TEXT) [7316739] [10-55206, 10-55225, 10-55255] (WL) [Entered: 04/27/2010 03:05 PM] |
| 05/12/2010 | ☐ 11<br>3 pg, 33.62 KB | Filed order MEDIATION (CLR): Pursuant to the agreement of counsel and for good cause shown, these appeals are consolidated. The briefing schedules previously set by the court are vacated. The following briefing schedule shall control these consolidated appeals: appellants shall file opening brief(s) on or before July 21, 2010; appellees shall file answering brief(s) on or before August 20, 2010; appellants may file their optional reply brief(s) on or before September 20, 2010. To the extent practicable, parties are encouraged to join in a single brief in lieu of filing separate briefs. See Ninth Cir. R. 28-4 and advisory committee note thereto. A further telephonic assessment conference will be held between appellants' counsel and the Circuit Mediator on May 17, 2010, at 11:00 a.m. Pacific Time. [7334926] [10-55206, 10-55225] (AF) [Entered: 05/12/2010 02:44 PM] |

| 06/08/2010 | ☐ 12<br>5 pg, 46.15 KB | Filed order MEDIATION (CLR): These appeals are selected for inclusion in the Mediation Program. The briefing schedule previously set by the court remains in effect. An in-person mediation/settlement conference will be held on August 6, 2010, at 10:00 a.m. Pacific Time, at the U.S. Court of Appeals, 95 Seventh Street, Suite 109, San Francisco, California [telephone (415) 355-7900]. Mediation statements of no more than 12 pages (excluding exhibits, which may not exceed an additional 18 pages) shall be submitted by telefax to the Circuit Mediator [fax no. (415) 355-8566] on or before July 29, 2010. Whenever possible, the parties are encouraged to submit joint mediation statements if possible. Mediation statements shall contain brief statements of the following... Mediation statements shall not be filed with the court. [7363868] [10-55206, 10-55225, 10-55255] (WL) [Entered: 06/08/2010 10:47 AM] |
| --- | --- | --- |
| 07/07/2010 | ☐ 13<br>2 pg, 40.15 KB | Filed (ECF) Appellant O.E. Express, Inc. in 10-55206 notice of joint brief (Opening). Date of service: 07/07/2010. [7396508] [10-55206, 10-55225, 10-55255] (JWD) [Entered: 07/07/2010 03:53 PM] |
| 07/07/2010 | ☐ 14 | Filed notice of joint brief by Appellant O.E. Express, Inc. Eric Turkewitz, et al., LightTheNations.com, et al and alexander Bagne. Briefing schedule is now as follows: Joint opening brief for appellants due 08/09/2010. Joint answering brief for appellees due 09/08/2010. Joint reply brief for appellants due 14 days after service of the answering brief. Five additional pages are authorized. [7396602] [10-55206, 10-55225, 10-55255] (EL) [Entered: 07/07/2010 04:16 PM] |
| 07/22/2010 | ☐ 15<br>2 pg, 32.88 KB | Filed order MEDIATION (PWS): A telephonic conference will be held on August 3, 2010, at 1:00 p.m. Pacific (San Francisco) Time. In order to participate, the participants shall call 866-208-1296, and give authorization code 90295065 to the attendant. [7414837] [10-55206, 10-55225, 10-55255] (AF) [Entered: 07/22/2010 03:47 PM] |
| 08/09/2010 | ☐ 16<br>69 pg, 173.41 KB | Submitted (ECF) Opening brief for review. Submitted by Appellant O.E. Express, Inc. in 10-55206, Appellants Miles Technologies, Inc. and Eric Turkewitz in 10-55225, Appellants ChaseandSam.com, Digital Playroom, Inc., Randal S. Ford, LightTheNations.com and James Owen in 10-55255. Date of service: 08/09/2010. [7432677] [10-55206, 10-55225, 10-55255] (THF) [Entered: 08/09/2010 01:23 PM] |
| 08/10/2010 | ☐ 17<br>3 pg, 90.58 KB | Filed clerk order: The opening brief [16] submitted by O.E. Express, Inc. , Miles Technologies, Inc. and Eric Turkewitz, ChaseandSam.com, Digital Playroom, Inc. , Randal S. Ford, LightTheNations.com, James Owen is filed. Within 7 days of the filing of this order, filer is ordered to file 7 copies of the brief in paper format, with a blue cover, accompanied by certification, attached to the end of each copy of the brief, that the brief is identical to the version submitted electronically. [7434675] [10-55206, 10-55225, 10-55255] (GLS) [Entered: 08/10/2010 02:30 PM] |
| 08/10/2010 | ☐ 18 | Filed Appellant O.E. Express, Inc., Appellants Miles Technologies, Inc. and Eric Turkewitz in 10-55225, Appellants ChaseandSam.com, Digital Playroom, Inc. and Randal S. Ford excerpts of record in 3 volumes. Served on 08/09/2010. [7435243] [10-55206, 10-55225, 10-55255] (WP) [Entered: 08/11/2010 08:01 AM] |
| 08/12/2010 | ☐ 19 | Received 7 paper copies of Opening brief [16] filed by O.E. Express, Inc., Miles Technologies, Inc., Eric Turkewitz, ChaseandSam.com, Digital Playroom, Inc., Randal S. Ford, LightTheNations.com and James Owen. [7438005] [10-55206, 10-55225, 10-55255] (SD) [Entered: 08/12/2010 01:57 PM] |
| 08/27/2010 | ☐ 20<br>16 pg, 55.44 KB | Filed (ECF) Appellee Yahoo!,Inc. in 10-55206 Motion for miscellaneous relief [Motion for Clarification of July 7, 2010 Text of Docket Number 14 ], Motion to extend time to file Answering brief until 10/06/2010. Date of service: 08/27/2010. [7455742] [10-55206, 10-55225, 10-55255] (DKC) [Entered: 08/27/2010 04:28 PM] |

| 08/31/2010 | ☐ 21<br>2 pg, 26.9 KB | Filed clerk order (Deputy Clerk:CAG): Appellee Yahoo! Inc.'s motion for an extension of time in which to file the answering brief is granted. The answering brief as to the above named party only is due October 6, 2010. The optional reply brief(s) are due 14 days after service of the last-served answering brief. If the remaining appellees require additional time to file their brief, they must file a motion pursuant to Ninth Circuit Rule 31-2.2(b). Counsel is reminded that a motion for an extension of time to file a brief should include a statement that all designated transcripts have been prepared. 9th Cir. R. 31-2.2(b). This order was issued prior to the expiration of time within which a response may be filed. Fed. R. App. P. 27(b). The appellees are not required to file a joint brief. [7457569] [10-55206, 10-55225, 10-55255] (AF) [Entered: 08/31/2010 09:15 AM] |
| 09/01/2010 | ☐ 22<br>11 pg, 33.59 KB | Filed (ECF) Appellees Crafts by Veronica, Mika's Wedding and True Communication Inc. in 10-55206, Appellees Crafts by Veronica and True Communication Inc. in 10-55225, 10-55255 Motion to extend time to file Answering brief until 10/06/2010 at 05:00 pm. Date of service: 09/01/2010. [7460497] [10-55206, 10-55225, 10-55255] (JDS) [Entered: 09/01/2010 03:26 PM] |
| 09/02/2010 | ☐ 23<br>1 pg, 24.62 KB | Filed clerk order (Deputy Clerk:CAG): Appellees Crafts by Veronica, Mika's Wedding, and True Communication, Inc.'s motion for an extension of time in which to file the answering brief is granted. The answering brief as to the above named party only is due October 6, 2010. The optional reply brief(s) are due 14 days after service of the last-served answering brief. This order was issued prior to the expiration of time within which a response may be filed. Fed. R. App. P. 27(b). [7461210] [10-55206, 10-55225, 10-55255] (AF) [Entered: 09/02/2010 10:36 AM] |
| 09/17/2010 | ☐ 24<br>2 pg, 9.16 KB | Filed (ECF) Appellants Miles Technologies, Inc. and Eric Turkewitz in 10-55225 Motion to withdraw as counsel, Motion to substitute counsel. Date of service: 09/17/2010. [7478141] [10-55225, 10-55206, 10-55255] (THF) [Entered: 09/17/2010 12:15 PM] |
| 09/17/2010 | ☐ 25 | Terminated Theodore H. Frank for Eric Turkewitz and Miles Technologies, Inc. in 10-55225 [7478356] [10-55206, 10-55225, 10-55255] (EL) [Entered: 09/17/2010 01:43 PM] |
| 09/21/2010 | ☐ 26<br>1 pg, 84.55 KB | Filed (ECF) notice of appearance of Daniel D. Haggerty for Appellant Miles Technologies, Inc. in 10-55225. Date of service: 09/21/2010. [7481873] [10-55206, 10-55225, 10-55255] (DDH) [Entered: 09/21/2010 01:48 PM] |
| 09/21/2010 | ☐ 27 | Added attorney Daniel D. Haggerty for Miles Technologies, Inc., in case 10-55225. [7481896] [10-55206, 10-55225, 10-55255] (EL) [Entered: 09/21/2010 01:55 PM] |
| 09/22/2010 | ☐ 28<br>7 pg, 168.79 KB | Filed (ECF) Appellant O.E. Express, Inc. in 10-55206, Not Party O.E. Express, Inc. in 10-55255 Stipulated Motion to dismiss case voluntarily pursuant to FRAP 42(b). Date of service: 09/22/2010. [7484166] [10-55206, 10-55225, 10-55255] (JWD) [Entered: 09/22/2010 10:41 PM] |
| 09/23/2010 | ☐ 29<br>3 pg, 26.61 KB | Order filed (Deputy Clerk: PWS): Pursuant to the stipulation of the parties, these appeals are voluntarily dismissed. Fed. R. App. P. 42(b). The parties shall bear their own costs on appeal. This order served on the district court shall act as and for the mandate of this court. [7484859] [10-55206, 10-55225, 10-55255] (AF) [Entered: 09/23/2010 01:17 PM] |

# EXHIBIT 11

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANGEL FRALEY; et al.,

     Plaintiffs - Appellees,

C.M.D; et al.,

     Intervenor-Plaintiffs-Appellees

  v.

JENNIFER DEACHIN,

     Objector - Appellant,

  v.

FACEBOOK, INC.,

     Defendant - Appellee.

No. 13-17214

U.S. District Court for the Northern
District of California
Case No. 3:11-cv-01726-RS

---

## OBJECTOR-APPELLANT DEACHIN'S MOTION TO DISMISS APPEAL

---

N. Albert Bacharach, Jr.
N. Albert Bacharach, Jr., P.A.
Florida Bar Number: 209783
4128 NW 13th Street
Gainesville, Florida 32609-1807
(352) 378-9859 FAX: (352) 338-1858
NAB@nabjr.com
Attorney for Objector-Appellant
Jennifer Deachin

Pursuant to Fed. R. App. P. 42(b), Objector-Appellant Jennifer Deachin, by

undersigned counsel moves this Court to dismiss her appeal with prejudice.

Except as otherwise agreed by the parties, each side will bear its own costs.

Appellant has discussed this matter with counsel for Appellees, who do not oppose the motion.

Respectfully submitted,

/s/ N. Albert Bacharach, Jr.
N. Albert Bacharach, Jr.
N. Albert Bacharach, Jr., P.A.
Florida Bar Number: 209783
4128 NW 13rh Street
Gainesville, Florida 32609-1807
(352) 378-9859 FAX: (352) 338-1858
NAB@nabjr.com
Attorney for Appellant Deachin

# CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of November 2013, I electronically filed the Foregoing Motion to Dismiss Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF program. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ N. Albert Bacharach, Jr.
N. Albert Bacharach, Jr.

**Case 5:13-cv-04303-LHK   Document 126-1   Filed 01/14/16   Page 81 of 86**

## General Docket
### United States Court of Appeals for the Ninth Circuit

| | |
|---|---|
| **Court of Appeals Docket #:** 13-17214 | **Docketed:** 10/30/2013 |
| **Nature of Suit:** 3890 Other Statutory Actions | **Termed:** 12/02/2013 |
| Angel Fraley, et al v. Facebook, Inc. | |
| **Appeal From:** U.S. District Court for Northern California, San Francisco | |
| **Fee Status:** Paid | |

**Case Type Information:**
  **1)** civil
  **2)** private
  **3)** null

**Originating Court Information:**
  **District:** 0971-3 : 3:11-cv-01726-RS
  **Court Reporter:** Belle Ball
  **Court Reporter:** Debra J. Campbell
  **Court Reporter:** Summer A. Fisher, Court Reporter
  **Court Reporter:** Irene Rodriguez, Official Court Reporter
  **Court Reporter:** Lee-Anne Marie Shortridge, Official Court Reporter
  **Trial Judge:** Richard Seeborg, District Judge
  **Date Filed:** 04/08/2011

| Date Order/Judgment: | Date Order/Judgment EOD: | Date NOA Filed: | Date Rec'd COA: |
|---|---|---|---|
| 09/19/2013 | 09/19/2013 | 10/29/2013 | 10/29/2013 |

**Prior Cases:**
  None

**Current Cases:**

| | Lead | Member | Start | End |
|---|---|---|---|---|
| Companion | 13-16819 | 14-15595 | 03/27/2014 | |
| | 13-16918 | 13-16919 | 09/24/2013 | |
| | 13-16918 | 13-16929 | 09/25/2013 | |
| | 13-16918 | 13-16936 | 09/26/2013 | |
| | 13-16918 | 13-17028 | 10/09/2013 | |
| | 13-16918 | 13-17214 | 10/30/2013 | |
| | 13-16919 | 13-16929 | 09/25/2013 | |
| | 13-16919 | 13-16936 | 09/26/2013 | |
| | 13-16919 | 13-17028 | 10/09/2013 | |
| | 13-16919 | 13-17214 | 10/30/2013 | |
| | 13-16929 | 13-16936 | 09/26/2013 | |
| | 13-16929 | 13-17028 | 10/09/2013 | |
| | 13-16929 | 13-17214 | 10/30/2013 | |
| | 13-16936 | 13-17028 | 10/09/2013 | |
| | 13-16936 | 13-17214 | 10/30/2013 | |
| | 13-17028 | 13-17214 | 10/30/2013 | |
| Consolidated | 13-16819 | 13-16918 | 12/12/2013 | |
| | 13-16819 | 13-16919 | 12/12/2013 | |
| | 13-16819 | 13-16929 | 12/12/2013 | |
| | 13-16819 | 13-16936 | 12/12/2013 | |
| | 13-16819 | 13-17028 | 12/12/2013 | |
| Related | 13-16819 | 14-15603 | 03/28/2014 | |

---

ANGEL FRALEY
    Plaintiff - Appellee,

                    Jonathan Ellsworth Davis, Esquire
                    Direct: 415-495-7800
                    [COR LD NTC Retained]
                    Arns Law Firm
                    Firm: 415-495-7800
                    515 Folsom St.
                    3rd Floor
                    San Francisco, CA 94105

|  | Jonathan M. Jaffe, Attorney<br>Direct: 510-982-1472<br>[COR LD NTC Retained]<br>Jonathan Jaffe Law<br>3055 Hillegass Avenue<br>Berkeley, CA 94705<br>us |
|---|---|
| PAUL WANG<br>           Plaintiff - Appellee, | Jonathan Ellsworth Davis, Esquire<br>Direct: 415-495-7800<br>[COR LD NTC Retained]<br>(see above) |
|  | Jonathan M. Jaffe, Attorney<br>Direct: 510-982-1472<br>[COR LD NTC Retained]<br>(see above) |
| JAMES H. DUVAL, a minor, by and through James Duval, as Guardian ad Litem<br>           Plaintiff - Appellee, | Jonathan Ellsworth Davis, Esquire<br>Direct: 415-495-7800<br>[COR LD NTC Retained]<br>(see above) |
|  | Jonathan M. Jaffe, Attorney<br>Direct: 510-982-1472<br>[COR LD NTC Retained]<br>(see above) |
| WILLIAM TAIT, a minor, by and through Russell Tait, as Guardian ad Litem<br>           Plaintiff - Appellee, | Jonathan Ellsworth Davis, Esquire<br>Direct: 415-495-7800<br>[COR LD NTC Retained]<br>(see above) |
|  | Jonathan M. Jaffe, Attorney<br>Direct: 510-982-1472<br>[COR LD NTC Retained]<br>(see above) |
| SUSAN MAINZER<br>           Plaintiff - Appellee, | Jonathan Ellsworth Davis, Esquire<br>Direct: 415-495-7800<br>[COR LD NTC Retained]<br>(see above) |
|  | Jonathan M. Jaffe, Attorney<br>Direct: 510-982-1472<br>[COR LD NTC Retained]<br>(see above) |
| LUCY FUNES<br>           Plaintiff - Appellee, | William Richard Restis, Esquire, Attorney<br>Direct: 619-238-1333<br>[COR LD NTC Retained]<br>FINKELSTEIN & KRINSK<br>Suite 1250<br>501 West Broadway<br>San Diego, CA 92101 |
| INSTRAGRAM, LLC<br>           Plaintiff - Appellee, |  |
| C.M.D.<br>           Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>Korein Tillery LLC<br>Suite 3600<br>505 N 7th Street |

|  |  |
|---|---|
|  | SAINT LOUIS, MO 63101 |
| T.A.B.<br>      Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>(see above) |
| H.E.W.<br>      Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>(see above) |
| B.A.W.<br>      Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>(see above) |
| A.D.Y.<br>      Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>(see above) |
| R.P.Y.<br>      Intervenor-Plaintiff - Appellee, | Aaron Michael Zigler, Attorney<br>Direct: 314-241-4844<br>[COR LD NTC Retained]<br>(see above) |
| JENNIFER DEACHIN<br>      Objector - Appellant, | Alan J. Sherwood<br>[COR LD NTC Retained]<br>Law Office of Alan J. Sherwood<br>Firm: 510-409-6199<br>1300 Clay St.<br>Suite 600<br>Oakland, CA 94612<br><br>N. Albert Bacharach, Jr., Attorney<br>Direct: 352-378-9859<br>[COR NTC Retained]<br>N. Albert Bacharach, Jr. P.A.<br>4128 NW 13th Street<br>Gainsville, FL 32609-1807 |
|   v. |  |
| FACEBOOK, INC.<br>      Defendant - Appellee, | Ashlie Beringer<br>Direct: 650-849-5219<br>[COR LD NTC Retained]<br>GIBSON DUNN & CRUTCHER, LLP<br>1881 Page Mill Rd.<br>Palo Alto, CA 94304<br><br>Matthew D. Brown, Esquire, Litigation Counsel<br>Direct: 415-693-2188<br>[COR LD NTC Retained]<br>Cooley LLP<br>5th Floor<br>101 California Street<br>5th Floor<br>San Francisco, CA 94111-5800<br><br>Jeffrey M. Gutkin<br>Direct: 415-693-2026<br>[COR LD NTC Retained]<br>Cooley LLP<br>101 California Street<br>5th Floor |

San Francisco, CA 94111-5800

Daniel Benjamin Levin
Direct: 213/683-9100
[COR LD NTC Retained]
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071

Kristin Linsley Myles, Esquire, Attorney
Direct: 415/512-4022
[COR LD NTC Retained]
Munger Tolles & Olson, LLP
560 Mission Street
27th Floor
San Francisco, CA 94105

Michael Graham Rhodes, Esquire
Direct: 415-693-2181
[COR LD NTC Retained]
Cooley LLP
101 California Street
5th Floor
San Francisco, CA 94111-5800

ANGEL FRALEY; PAUL WANG; JAMES H. DUVAL, a minor, by and through James Duval, as Guardian ad Litem; WILLIAM TAIT, a minor, by and through Russell Tait, as Guardian ad Litem; SUSAN MAINZER; LUCY FUNES; INSTRAGRAM, LLC,

               Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.; R.P.Y.,

               Intervenor-Plaintiffs - Appellees,

JENNIFER DEACHIN,

               Objector - Appellant,

  v.

FACEBOOK, INC.,

               Defendant - Appellee.

| 10/30/2013 | ☐ 1 | DOCKETED CAUSE AND ENTERED APPEARANCES OF COUNSEL. SEND MQ: Yes. The schedule is set as follows: Mediation Questionnaire due on 11/06/2013. Transcript ordered by 11/29/2013. Transcript due 12/30/2013. Appellant Jennifer Deachin opening brief due 02/06/2014. Appellees A.D.Y., B.A.W., C.M.D., James H. Duval, Facebook, Inc., Angel Fraley, Lucy Funes, H.E.W., Instragram, LLC, Susan Mainzer, R.P.Y., T.A.B., William Tait and Paul Wang answering brief due 03/10/2014. Appellant's optional reply brief is due 14 days after service of the answering brief. [8843403] (RT) [Entered: 10/30/2013 11:51 AM] |
|---|---|---|
| | 16 pg, 599.68 KB | |
| 11/04/2013 | ☐ 2 | Filed clerk order (Deputy Clerk: SM): A review of the record suggests that this court may lack jurisdiction over the appeal because the notice of appeal was not filed within 30 days after the district court's judgment entered on September 19, 2013. See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). Within 21 days after the date of this order, appellant shall move for voluntary dismissal of the appeal or show cause why it should not be dismissed for lack of jurisdiction. If appellant elects to show cause, a response may be filed within 10 days after service of the memorandum. If appellant does not comply with this order, the Clerk shall dismiss this appeal pursuant to Ninth Circuit Rule 42-1. Briefing is suspended pending further order of the court. [8848322] (AF) [Entered: 11/04/2013 10:56 AM] |
| | 2 pg, 41.64 KB | |
| 11/27/2013 | ☐ 3 | Filed (ECF) notice of appearance of N. Albert Bacharach, Jr. for Appellant Jennifer Deachin. Date of service: 11/27/2013. [8881355] (NB) [Entered: 11/27/2013 01:06 PM] |
| | 2 pg, 35.77 KB | |
| 11/27/2013 | ☐ 4 | Added attorney N. Albert Bacharach Jr. for Jennifer Deachin, in case 13-17214. [8881486] (EL) [Entered: 11/27/2013 01:45 PM] |
| 11/27/2013 | ☐ 5 R | Filed (ECF) Appellant Jennifer Deachin Unopposed Motion to dismiss the case. Date of service: 11/27/2013. [8881669] (NB) [Entered: 11/27/2013 02:26 PM] |
| | 2 pg, 37.5 KB | |
| 12/02/2013 | ☐ 6 | Filed order (Deputy Clerk: DEV) Granting Motion (ECF Filing) motion to dismiss the case filed by Appellant Jennifer Deachin, This order served on the district court shall constitute the mandate of this court. [8883828] (DEV) [Entered: 12/02/2013 11:39 AM] |
| | 2 pg, 84.6 KB | |