| | |
|---|---|
| LARRY C. RUSS (SBN 82760)<br>lruss@raklaw.com<br>NATHAN D. MEYER (SBN 239850)<br>nmeyer@raklaw.com<br>RUSS AUGUST & KABAT<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025<br>Telephone: (310) 826-7424<br>Facsimile: (310) 826-6991 | DORIAN S. BERGER (SBN 264424)<br>dberger@olavidunne.com<br>DANIEL P. HIPSKIND (SBN 266763)<br>dhipskind@olavidunne.com<br>OLAVI DUNNE LLP<br>445 S. Figueroa St., Ste. 3170<br>Los Angeles, California 90071<br>Telephone: (213) 516-7900<br>Facsimile: (213) 516-7910 |

MICHAEL W. SOBOL (SBN 194857)
msobol@lchb.com
NICHOLAS R. DIAMAND (*Pro Hac Vice*)
ndiamand@lchb.com
MELISSA GARDNER (SBN 289096)
mgardner@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Class Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br>v.<br>LINKEDIN CORPORATION,<br>Defendant. | Case No. 13-CV-04303-LHK<br><br>**DECLARATION OF NATHAN D. MEYER REGARDING COMPLIANCE WITH NOTICE REQUIREMENTS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:    Hon. Lucy H. Koh<br>Date:     February 11, 2016<br>Time:    1:30 p.m.<br>Location: Courtroom 8 – 4th Floor |

I, Nathan D. Meyer, hereby declare:

1. I am a partner in the law firm of Russ August & Kabat, PC ("RAK") which, together with Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), and Olavi Dunne LLP, represents the plaintiffs in this action (collectively, "Class Counsel"). I am a member in good standing of the California bar. I submit this Declaration in support of the Plaintiffs' Motion for

Final Approval of Class Action Settlement. I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

### QUALIFICATIONS AND ASSIGNMENTS OF RAK ATTORNEYS AND STAFF

2. I have 10 years of experience in complex litigation. I was admitted to the state bar of California in 2005. I have handled numerous cases concerning a wide array of issues involving, among other things, complex business and/or contractual disputes, class actions, business torts, unfair competition matters, intellectual property issues, including patent and trademark disputes, in both state and federal courts. Respectfully, based upon my experience in complex litigation, I endorse this Settlement as fair, reasonable, and adequate.

3. During the claims processing period (on and after October 2, 2015) I was in charge of day-to-day management of RAK's side of the case, including communications with Class Members and anyone else contacting RAK about the case.

4. Pursuant to the Court's Order Granting Preliminary Approval of the Proposed Settlement, Directing Notice to Class and Setting Final Approval Hearing ("Preliminary Approval Order) (Dkt. No. 106), direct notice in the form of email notice went to all Class Members. The initial e-mail sent to Class Members on October 2, 2015 ("Email Notice") contained four methods of communication. Class Members could communicate by mail, e-mail, or through a website operated by Gilardi & Co. There was also a single phone number, (310) 826-7474, which was Russ August & Kabat's main line. The addconnectionssettlement.com website likewise listed this number beginning on or about October 2, 2015. We later (on and after October 21, 2015) established a dedicated voice mailbox for Class Member inquiries and all appropriate calls were channeled to that number and forwarded to Gilardi & Co, LLC.

5. All mail that RAK received from Class Members was forwarded by e-mail to LCHB, which responded to communications directly.

6. This declaration thus relates primarily to phone communications.

7. As set forth in the concurrently filed declaration of Daniel Burke, Gilardi & Co, LLC ("Gilardi") managed the website and e-mails sent by class members.

1  8. After Email Notice was sent to Class Members on October 2, 2015, large numbers of individuals (albeit a tiny percentage of the 20 million Class Members who received Email Notice) began calling the Russ August & Kabat number to ask questions about the case. We estimate that between October 2, 2015 and the end of 2015, Russ August & Kabat answered on the order of 10,000 calls from Class Members, and several thousand voicemails were received after hours. The bulk of these came in the first ten days following dissemination of Email Notice on October 2, 2015.

9. I supervised a team of five legal assistants who were tasked with responding to Class Members' questions. Two additional legal assistants who are fluent in Spanish were also made available.

10. Class Members' questions evolved over the course of the fourth quarter of 2015, and I generally prepared staff to respond to questions.

11. On the first day (October 2), most of the questions from Class Members related to the addconnectionssettlement.com website, which was experiencing technical difficulties for a short time. I provided staff members with updates based on my communications with Gilardi, and updates were provided to callers as the afternoon progressed.

12. After the first day, the bulk of the subjects of phone calls from callers in relation to the case (only some of whom appeared to be Class Members) were (1) requests for a summary of the case, (2) individuals who thought the email meant they were being sued, (3) people who needed to be walked through the claims filing process over the phone, (4) people who had not correctly entered the claim number into the claims website, (5) people concerned about the security of their LinkedIn accounts, (6) people who had complaints about having been harassed or threatened through LinkedIn (or often services completely unrelated to the matters at issue in the settlement), (7) people who were not sure if they were Class Members, (8) people that were confused by the wording of the Email Notice, (9) people complaining about the amount of money they expected to receive as part of the Settlement being too small, and (10) people asking questions about *In re LinkedIn User Privacy Litigation*, a case against LinkedIn otherwise unrelated to this one.

13. In response to all calls, callers were generally referred to the addconnectionssettlement.com website, particularly the section entitled "Frequently Asked Questions." Additional information was required, as described below.

14. In response to callers' inquiries regarding requests for a summary of the case, oral summaries of the case from the Frequently Asked Questions section of the settlement website were provided. The overwhelming majority of these callers appeared to be individuals who were unwilling, unable, or simply uncomfortable processing large volumes of text, and preferred to speak with a human being. Simply reading off the summaries from the website appeared to satisfactorily assist most of these callers.

15. In response to callers' inquiries regarding whether the Email Notice meant they were being sued, they were told that the email did not mean they were being sued.

16. In response to callers' inquiries regarding help with the claim process, callers were orally walked through the claim submission process on the Settlement website.

17. In response to people whose claim number did not work, they were asked to try again. If that did not work, they were advised to email Gilardi at info@addconnectionssettlement.com with their problem.

18. In response to callers' questions about the security of their LinkedIn accounts and threats of hacking, callers were informed that this case did not relate to that issue.

19. In response to callers' questions about being threatened or harassed by third parties through LinkedIn (or through social networks more generally) they were advised that our case did not relate to that issue, and were advised to consult their own counsel (or the police, if they felt appropriate).

20. In response to callers' questions about whether they were Class Members (this related to individuals who had received Email Notice, but were not sure if they were technically members) they were directed to the instructions on the Settlement website.

21. In response to people who were confused by the wording of the Email Notice, callers were directed to the Frequently Asked Questions section of the Settlement Website, or

1  portions of the Email Notice were read or re-read to them.  Large numbers of callers appeared to
2  have simply wanted to hear the document read out loud.

3      22.    In response to callers preemptively complaining about the possible amount of the
4  per Class Member claim, they were referred to information on the Settlement Website.

5      23.    In response to callers with questions about the *In re LinkedIn User Privacy*
6  *Litigation* (an unrelated litigation), callers were directed to
7  www.linkedinclassactionsettlement.com, the website associated with the settlement of that matter.

8      24.    A few weeks after Email Notice went out, RAK began receiving calls inquiring
9  about the status of settlement.  In response to those calls, RAK explained the current status of the
10 settlement at the time of the response, with specific reference to upcoming filing deadlines.

11     25.    For difficult questions or when a lawyer was requested, I fielded calls
12 (approximately 5-10 calls a week).  Generally-speaking, I responded to three categories of
13 questions.

14     26.    Some callers were concerned about whether they could allege harm under penalty
15 of perjury.  I referred callers to the language stating that they needed to "believe" they were
16 harmed, and to the Settlement Website generally.

17     27.    I fielded calls from individuals claiming to be Class Members, who demanded to
18 speak to an attorney and generally objected to the concept of class actions and the idea of class
19 counsel receiving a fee.  In fielding these calls, I referred the callers to case documents.

20     28.    I had at least one call from a caller who wished to exclude herself from the class.
21 A police report had been filed against her (for violating a restraining order) after an "Add
22 Connections" email was sent to another individual.  I advised her to consult her own counsel, and,
23 as I understand it, she appears to have filed a request to be excluded from the Settlement.

24     29.    As the claims filing deadline approached, RAK staff members informed all callers
25 of the upcoming claim deadline (December 14, 2015).

26     30.    During hours when our offices were closed, incoming calls were sent to voicemail
27 for which there was an appropriate message addressing this Settlement.  All voicemails were

28

either transcribed or directly downloaded and sent on to Gilardi for response. Gilardi has confirmed that all voicemails were responded to.

31. After October 21, 2015, RAK set up a direct dedicated voicemail line that I modified as key dates approached or passed. Voicemails were electronically sent to Gilardi, who processed them, as noted in the Declaration of Daniel Burke. RAK also continued and continues to receive calls from callers relating to the Settlement.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was signed in Los Angeles, California on January 14, 2016.

_____
NATHAN D. MEYER