# EXHIBIT 28

16 October, 2015

RECEIVED

OCT 19 2015

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
S.N JOSE

Judge Koh,

   As much as I love the idea of getting "a slice of the pie" and receiving some money for little to no effort, I can not support such a ridiculous lawsuit. This is frivolous and it is founded in greed.

   I do not believe that it was ever the intention of anyone at Linked In to confuse or mislead their users. I believe it was simply an oversight that has since been corrected. Regardless, splitting legal hairs in an attempt to squeeze easy money out of a company, simply because of their size & deep pockets, is disgraceful and should not be encouraged by the courts.

   In addition, sending 3 invitation emails is a common practice among social networking sites and has been for over a decade. Anyone who has an email address (and all Linked-In users do) has experienced this first-hand, when invited to these sites by their friends. In fact this is how most Linked-In users (myself included) first heard of Linked-In, making them well aware of their invitation practices. It is silly to think that Linked-In users were not aware that inviting friends to a social media platform would likely result in multiple emails being sent, just because it was not spelled out word for word in the instructions. I myself was fully aware of this practice and, as a result, rarely choose to invite friends to social media platforms. The simple fact of the matter is that it is a common knowledge practice that is not exclusive to Linked-In.

   I would like to reiterate my disgust over this lawsuit & ask that you exercise your good judgement in ensuring it does not move forward.

               Sincerely,

               Kiira Harris

Objection Notice Against
Claim: PJOCL-ZCBLY-SEYQB
Perkins vs. Linkedin Corp



Case 5:13-cv-04303-LHK   Document 112   Filed 10/19/15   Page 15 of 26

16 OCT 2015 PM 1 L

Judge Koh's Case System Administrator
United States Courthouse
280 S. 1st Street, Room 2112
San Jose, CA. 95113

Kira Harris

# EXHIBIT 29

Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

**REDACTED AS TO PERSONAL INFORMATION**

Attorney for Objector Susan House

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, PENNIE SEMPELL, ANN BRANDWEIN, ERIN EGGERS, CLARE CONNAUGHTON, JAKE KUSHNER, NATALIE RICHSTONE, NICOLE CROSBY, and LESLIE WALL; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:13-CV-04303-LHK<br><br>**CLASS ACTION**<br><br>**OBJECTION OF SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: February 11, 2016<br>Time: 1:30 p.m.<br>Location: Courtroom 8 — 4th Floor<br>Judge: Hon. Lucy H. Koh<br><br>Action filed: September 17, 2013<br>Trial date: None Set |

Susan House objects to the proposed settlement. Ms. House is a member of the class. Her claim number is QOQPW-ABCIJ-HODRI and her claim submission identification number is LNKD1-400188384-8. A copy of her claim form is attached as Exhibit "A". Ms. House's address is XXX. Her telephone number is XXX. Her email address is XXX.

## I.     THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement.   *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008).  In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement

because the court was not "provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133. In *Clark v. American Residential Services LLC, et al.*, 175 Cal.App.4th 785 (July 6, 2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra*, 168 Cal.App.4th at p. 130.

California courts have also held that the court has a duty, independent of any objection, to assure that the amount and mode of payment of attorneys' fees in a class action settlement are fair and proper, and may not act as a rubber stamp for the parties' agreement. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 96 Cal. Rptr. 3d 127 (2009).

Here, the Court should decline to grant final approval to this proposed class action settlement. The settling parties ensnared class members with a convoluted claims process [seven pages to read, understand and complete to ***possibly*** receive just ten dollars] and misleading settlement notice, ensuring the real beneficiaries of this settlement are the three *cy pres* beneficiaries, along with Class Counsel.

## II.    ARGUMENT

### A.  Notice is Inadequate and the Claim Form is Convoluted

A notice may not be misleading. The notice is misleading. It violates due process and Fed. R. Civ. Proc., Rule 23. *Molski v. Gleich*, (9th Cir. 2003) 318 F.3d 937, 952 [Notice is not adequate if it misleads the class]; *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012) (denying approval where *cy pres* beneficiaries were not designated); see also, *In re Thornburg Mortg., Inc. Secs. Litig.*, 885 F. Supp.2d 1097, 1111 (D.N.M. 2012) (outlining *cy pres* defects). Rule 22(c)(2)(B)(ii) provides "[t]he notice must clearly and concisely state in plain, easily understood

language the class claims, issues, or defenses." As stated above, the individual notice sent to the class

members failed to include a description of claims alleged.

Class Counsel's Notice, does not inform Class Members of either the nature of the legal rights

they are releasing or the remedies available for violations of those legal rights.  The Notice merely

states:

> The Action challenges LinkedIn's use of a service called Add Connections to grow its member base. Add Connections allows LinkedIn members to import contacts from their external email accounts and email connection invitations to one or more of those contacts inviting them to connect on LinkedIn. If a connections invitation is not accepted within a certain period of time, up to two emails are sent reminding the recipient that the connection invitation is pending. The Court found that members consented to importing their contacts and sending the connection invitation, but did find that members consented to LinkedIn sending the two reminder emails. The Plaintiffs contend that LinkedIn members did not consent to the use of their names and likenesses in those reminder emails. LinkedIn denies these allegations and any and all wrongdoing or liability. No court or other entity has made a judgment or other determination of any liability. Plaintiffs asserted violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et Seq.*) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*; (4) the federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*

The description of the release is similarly uninformative.  The Notice states that under the

Settlement, Class Members:

> shall be deemed to have fully, finally, and forever released, relinquished, and discharged against LinkedIn . . . any and all actions, causes of action, claims, demands, liabilities, obligations, damages (including, without limitation, punitive, exemplary and multiple damages), penalties, sanctions, losses, debts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever, whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in equity, that were asserted or could have been asserted arising from or related to allegations in the Action regarding the alleged use of Add Connections to grow LinkedIn's member base,  including, without limitation, (i) accessing, importing, storing and/or using information from LinkedIn Members' external email accounts; (ii) using LinkedIn members' names, photographs, likeness, and/or identities in emails relating to Add Connections; or (iii) related disclosures, representations, and omissions.

The Notice does state that the full terms of the release are located on the settlement website.  However,

the terms on the website are not any more informative.  Class Members are not informed the asserted

violations of California's Right of Publicity may subject the requesting party to claims equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use. Further, that punitive damages may also be awarded to the injured party or parties and that the requesting party, if prevailing, shall also be entitled to attorney's fees and costs of litigation.

Further, Class Members are not informed that the asserted violations of California's Unfair Competition Law may subject the requesting party to claims up to two thousand and five hundred dollars ($2,500) for each violation. The notice does not inform Class Members, even in layman's terms, that the 9th Circuit has ruled

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement.  The Northern District's Procedural Guidance for Class Action Settlements states in pertinent part:

> The notice should include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, <u>motions for approval</u> and for attorneys' fees and any other important documents in the case. . . .

(Accessed December 13, 2015 <http://cand.uscourts.gov/ClassActionSettlementGuidance.>)

Class Counsel have not included their Motion for Final Approval.  Identifying which Complaint is the Operative Complaint would inform Class Members about "claims . . . that arise from or could have arisen from or out of the facts or matters that were alleged from any and all claims . . . that occurred from March 2, 2010 through May 1, 2011, including all claims alleged in the Coordinated Actions and all claims based on facts alleged in the Coordinated Actions."  Instead they can only speculate which is unacceptable.

Further, a class member must wade through voluminous and wordy seven pages in order to be eligible to possibly receive just ten dollars. In the attestation, the class members must swear under penalty of perjury that he/she has been "injured" without an explanation of what "injury" means in the sense of this class action. Does it mean emotional distress? Does it mean financially burdened of some sort? Does it mean reputational harm? It is unknown how a class member would or could know whether or not an "injury" has taken place.

**B.  The Settlement Benefit is Unknown**

*1.  The Amount to Each Class Member is Unkown*

The concerns are compounded by the fact the Notice states, "No one knows in advance whether or in what amount payments will be made to claimants." Email Notice, p. 1.  Further, any check, for any amount, is only valid for 90 days. Further, if too many claimants file claims, it is possible no claimants will receive any money. All of it instead will be given to *cy pres* beneficiaries.

*2.  The cy pres Beneficiaries are Political Organizations*

The *cy pres* beneficiaries are murky organizations that are nakedly political. These organizations are not shy about weighing in on controversial political matters. The first organization is overseen by Defendant. However, this fact is not disclosed to the class. The second organization is notable for spending less than two percent of its programming resources in the United States. This organization has a penchant for hosting conferences in exotic locations. This is not disclosed to the class. The third organization is a repeat-player. Specifically, it has been involved in countless privacy cases. In fact, it has received millions of dollars in *cy pres* grants and has nothing to show for it. The three *cy pres* beneficiaries are as follows: (1) Access Now, Inc.; (2) Electronic Privacy Information Center; and (3) Network for Teaching Entrepreneurship.

The principal beneficiary of a settlement should be the class, and *cy pres* distributions should only be a last resort.  *See e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (cy pres settlement can easily become "a paper tiger"); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (holding *cy pres* to be an inadequate substitute for individual compensation); AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION ("ALI Principles") §3.07 cmt b (2010) (rejecting position that "*cy pres* remedy is preferable to further distributions to class members. Further, Class Counsel provide no mechanism to insure the bulk of the settlement goes to the class. *Cy pres* recipients would be the "next best" recipients.  The "next-best" rule – reflecting the doctrines origins in trust law described above – requires the *cy pres* recipient approximate the interests of class members and the underlying lawsuit. *See Dennis* 697 F.3d at 865-66; *see also In re Groupon, Inc.*, No. 11-md-2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750, at *36 (S.D. Cal. Sept. 28, 2012) (requiring "an actual connection, not just between the class and *cy pres* beneficiary, but between the claims alleged in the case

1  and the *cy pres* beneficiary."). The American Law Institute's position is roughly equivalent.  ALI

2  PRINCIPLES §3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose

3  interests reasonably approximate those being pursued by the class.").

4      When class actions are settled or tried, there are times that it's not possible to distribute all of the

5  money recovered to some or all of the class members. They may be difficult to identify or find or it may

6  not be economically feasible to distribute the funds to them. For example, the cost of distributing 50

7  cents to each of 6 million class members may preclude individual distribution, even though the

8  defendant has been held accountable for cheating the class out of $3 million.

9      **C.  The Fee Award or Too High and Unsupported by Evidence**

10      This case is in its infancy compared to other similar class actions at approximately 2 years old. In

11  the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund created.

12  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). A court should depart from the

13  benchmark only if there are "special circumstances" justifying the departure. *In re Bluetooth Headset*

14  *Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted). The special circumstances

15  justifying a significant reduction is that Class Counsel has not had time to accomplish work worth 3

16  million dollars. Surviving a motion to dismiss and sitting through a few hours of mediation does not

17  entitle Class Counsel to 3 million dollars in fees. There were no discovery disputes. Class Counsel has

18  provided the Court no evidence discovery even occurred, beyond claiming some Requests for

19  Production were served, and Class Counsel's alleged intent to notice 8 depositions.

20      When parties to a class action expect that the reasonableness of the attorneys' fees allowed
21      to class counsel will be judged against the potential rather than actual or at least reasonably
        foreseeable benefits to the class, class counsel lack any incentive to push back against the
22      defendant's creating a burdensome claims process in order to minimize the number of
        claims. Class counsel could have done much better by the class had they been willing to
23      accept lower fees in their negotiation with Rexall. But realism requires recognition that
        probably all that class counsel really care about is their fees – for $865,284 spread.
24

25      *Pearson v. NBTY, Inc.,* 772 F.3d 778, 784 (7th Cir. 2014).

26      Further, Class Counsel failed to properly itemize costs and instead attempted to conceal costs

27  into the fee award because the costs were unreasonably low demonstrating a lack of diligence. The

28  actual items of expense should have been itemized instead of lumping together categories of costs, and

1  copies of receipts or invoices should have been provided. The amount of costs claimed represent less

2  than 2% of the entire fee award sought.

3        Here, the fund will most likely not be distributed to the class. Class Counsel has not earned the

4  fee requested. The results obtained for the class are generally considered to be the most important factor

5  in determining the appropriate fee award in a common fund case. *In re Omnivision Techs., Inc.,* 559 F.

6  Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also *Federal Judicial Center, Manual for Complex*

7  *Litigation*, §27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for

8  class members") (citing Fed. R. Civ. P. 23(h) committee note). The only proof of legal hours billed on

9  the case are one page summaries of total hours billed from each firm. The Court was not provided

10  information regarding the dates the hours were billed, or any information regarding the description of

11  legal work performed.

12        Further, even if Counsel's fees should be based on their lodestar, their lodestar can be adjusted

13  downwards and upwards.  Although California courts routinely use the lodestar method to analyze fee

14  awards, they also acknowledge the lodestar method is subject to abuse.  These abuses were

15  acknowledged in *Lealao v. Beneficial California, Inc*., 82 Cal. App. 4th 19, 40, 97 Cal. Rptr. 2d 797

16  (2000).  In *Lealao* the court analyzed the history of the lodestar method, citing THIRD CIRCUIT TASK

17  FORCE, COURT AWARDED ATTORNEY FEES (1985) 108 F.R.D. 237, 246-249, ("the Report of the Third

18  Circuit Task Force concluded the lodestar technique is a "cumbersome, enervating, and often surrealistic

19  process of preparing and evaluating fee petitions that now plagues the Bench and Bar" (*Id.* at p. 258),

20  and recommended a return to the percentage of the recovery fee formula in cases involving a settlement

21  fund).

22        *Lealao* did not suggest discontinued the lodestar method to determine fees but it said "courts

23  must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and

24  the class's interests."  *Id., quoting* John Coffee, Understanding the Plaintiff's Attorney: The Implications

25  of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions (1986) 86

26  COLUM. L.REV. 669, 691 (observing "As one commentator has stated, '[b]y severing the fee award from

27  the settlement's size, [the lodestar] formula facilitates the ability of defendants and the plaintiff's

28  attorneys to arrange collusive settlements that exchange a low recovery for a high fee award.. . .'*).*

*Accord.* Charles Silver, Due Process and the Lodestar Method, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

California courts can and should cross check the lodestar against the benefit obtained for the Class. *Lealao* held "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal.App. at 50 (observing "As we have said, the California Supreme Court has never prohibited adjustment of the lodestar on this basis. Due to the complexity of the judicial responsibility to structure a class action fee award providing counsel the optimum mix of incentives and disincentives, and the variety of different and sometimes competing considerations that may come into play (*see* Hay, Asymmetric Rewards: Why Class Actions (May) Settle for Too Little (1997) 48 HASTINGS L.J. 479), trial judges need the flexibility Serrano III provides, as it enables them to relate fee awards to the economic realities that determine the efficacy of the private enforcement contemplated by our civil justice system.) *See also see Serrano v. Priest* (1977) 20 Cal.3d 25, 49. *Accord. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (the lodestar "may be adjusted upward or downward to account for several factors including ... the benefit obtained for the class").

The incentive awards are excessive.  Incentive awards of $1,500 for each of the class representative is excessive.  It is 150 times the amount that *might* be revived by a Class Member.

California courts have followed the analysis recommended in some federal court cases in rejecting incentive awards out of keeping with the recovery achieved for unnamed class members.  In *Clark v. American Residential Services LLC*, et al., *supra*, the court rejected an incentive award that was 44 times the amount the average class member would receive.  In *Clark*, the court considered the factors looked at in *Cook v. Niedert* (7th Cir. 1998) 142 F.3d 1004, 1016.  Those factors included "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Clark*, 175 Cal. App. 4th at 804, *citing Cook, ibid.*  *Cook* also pointed to other factors identified in federal cases, including "the risk to the class representative in commencing suit, both financial and

otherwise," "the notoriety and personal difficulties encountered by the class representative," "the duration of the litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Clark*, at 804, *citing Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D.Cal. 1995).  The court also rejected conclusory statements regarding the effort the class representative put into the litigation.  Although Class Counsel recite in boilerplate fashion the efforts made by class representatives in furtherance of the litigation, their declarations are unpersuasive and repetitive.  The court should not just rubber stamp these service awards.

## III.    JOINDER IN OTHER OBJECTIONS

Ms. House joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members which are not inconsistent with these objections.

## IV.    CONCLUSIONS

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated:  December 14, 2015                    By: <u>Joseph Darrell Palmer</u>
                                                                  Joseph Darrell Palmer
                                                   Attorney for Objector Susan House

Objection of Susan House to Proposed Settlement and Notice of Intent to Appear

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2015, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

I further certify that all participants in the case who are registered CM/ECF users that service will be accomplished by the USDC CM/ECF system.  In addition, non-redacted copies of the foregoing were mailed on today's date via U.S. Mail, postage prepaid, to the following parties:

**Class Counsel**
Larry C. Russ, Esq.
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

**LinkedIn's Counsel**
Jerome C. Roth, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105


  /s/ Joseph Darrell Palmer
Joseph Darrell Palmer
Attorney for Objector Susan House

Objection of Susan House to Proposed Settlement and Notice of Intent to Appear

# EXHIBIT A

**Maria Carapia**

| | |
|---|---|
| **From:** | My Gmail |
| **Sent:** | Monday, December 14, 2015 9:37 AM |
| **To:** | Darrell Palmer; Darrell; Maria Carapia |
| **Subject:** | Fwd: Confirmation of receipt of your online Perkins v. LinkedIn Claim |

---------- Forwarded message ----------
From: <donotreply@addconnectionssettlement.com>
Date: Mon, Dec 14, 2015 at 9:36 AM
Subject: Confirmation of receipt of your online Perkins v. LinkedIn Claim
To:

SUBJECT: Confirmation of receipt of your online Perkins v. LinkedIn Claim

Thank you for filing your claim online on 12/14/2015 9:36:36 AM.

Your **Submission ID** is: **LNKD1-400188384-8**

Please retain this information in your records and use the Submission ID in any communications with Gilardi & Co., LLC regarding this case.

You must keep us informed if your address changes. You may use the case specific website at: www.addconnectionssettlement.com to contact us or to obtain further updates 24 hours a day.

Gilardi & Co. LLC

www.gilardi.com

1

# EXHIBIT 30



Ms. Ashlee Houston

S00025103100

Class Counsel
Larry C. Russ, Esq.
Russ August + Kabat
12424 Wilshire Blvd, 12th FL
Los Angeles, CA 90025

CHARLOTTE NC 282
09 OCT 2015 PM 4 L



Ashley Houston

Judge Koh's Case System Administrator

United States Courthouse

280 South 1st Street, Room 2112

San Jose, CA 95113

RE: *PERKINS V. LINKEDIN CORP*

To whom it may concern,

As a member of the class in this class action lawsuit, I object to its merit.

I am a member of LinkedIn; it gives me a clear choice to send my email contacts invitations to join LinkedIn. I can accept or decline. I receive the occasional LiInkedIn request in my email; it's usually from someone I know (or someone who tries to 'Link' with everyone the way people do on Facebook; either way, a human initiated the contact). As far as the two reminder emails, that's tame. Usually when any company has an email address, they won't stop until the person manually unsubscribes. To send two reminders and then drop it is polite, in today's world. (Speaking from experience; I spent two hours clearing spam from my email today. None of it was from LinkedIn).

This lawsuit only serves as an example of the "sue-happy" nation we have become; where any type of perceived discomfort is grounds for monetary recompense. A more proper response to this perceived annoyance would have been to discuss it with LinkedIn personnel; file a suggestion for enhancement, and start a conversation. Not file a lawsuit. I contend that it should be dismissed with prejudice, not allowing it to be filed again unless substantially new evidence appears.

*Personal side note: this is not to say that taking the money wouldn't have been nice. That was definitely an internal struggle…*

Respectfully,

Ashley Houston

Cc:

*Class Counsel*

*LinkedIn's Counsel*

# EXHIBIT 31

This is a JOKE !

Forward that to Perkins' attorney(s) and to LinkedIn for settling such a frivolous matter!!!!!

-----Original Message-----
From: Legal Notice <legalnotice@linkedin.com>
Sent: Fri, Oct 2, 2015 6:22 pm
Subject: LEGAL NOTICE OF SETTLEMENT OF CLASS ACTION

RECEIVED

NOV 09 2015

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE, CALIFORNIA

Mr. Mark Howard

Claim ID: ODSLH-DKLVL-TSKIV

NOTICE OF PENDING CLASS ACTION AND NOTICE OF
PROPOSED SETTLEMENT
*PERKINS V. LINKEDIN CORP.*

**You are receiving this e-mail because you may have used
LinkedIn's Add Connections feature between September 17,
2011 and October 31, 2014.**

*A federal court authorized this Notice. This is not a solicitation from a
lawyer.*

**Why did I get this notice?** This Notice relates to a proposed
settlement ("Settlement") of a class action lawsuit ("Action") against
LinkedIn Corporation ("LinkedIn") based on LinkedIn's alleged
improper use of a service called "Add Connections" to grow its
member base.

**What is the Action about?** The Action challenges LinkedIn's use
of a service called Add Connections to grow its member base. Add
Connections allows LinkedIn members to import contacts from their
external email accounts and email connection invitations to one or
more of those contacts inviting them to connect on LinkedIn. If a
connection invitation is not accepted within a certain period of time,
up to two "reminder emails" are sent reminding the recipient that the
connection invitation is pending. The Court found that members
consented to importing their contacts and sending the connection
invitation, but did not find that members consented to LinkedIn
sending the two reminder emails. The Plaintiffs contend that
LinkedIn members did not consent to the use of their names and
likenesses in those reminder emails. LinkedIn denies these
allegations and any and all wrongdoing or liability. No court or other
entity has made a judgment or other determination of any liability.

**What relief does the Settlement provide?** LinkedIn has revised
disclosures, clarifying that up to two reminders are sent for each
connection invitation so members can make fully-informed
decisions before sending a connection invitation. In addition, by the
end of 2015, LinkedIn will implement new functionality allowing
members to stop reminders from being sent by canceling the
connection invitation. LinkedIn has also agreed to pay $13 million
into a fund that can be used, in part, to make payments to members
of the Settlement Class who file approved claims. Attorneys
representing the Settlement Class will petition the Court for
payment of the following from the fund: (1) reasonable attorneys'
fees, expenses, and costs up to a maximum of $3,250,000, and (2)
service awards for the Plaintiffs up to a maximum of $1,500 each.
The payment amount for members of the Settlement Class who file
approved claims will be calculated on a *pro rata* basis, which means
that it will depend on the total number of approved claims. If the
number of approved claims results in a payment amount of less
than $10, LinkedIn will pay an additional amount up to $750,000
into the fund. If the *pro rata* amount is so small that it cannot be
distributed in a way that is economically feasible, payments will be
made, instead, to *Cy Pres* Recipients selected by the Parties and
approved by the Court. No one knows in advance whether or in
what amount payments will be made to claimants.

**You may also learn more by clicking on the following links:**
Settlement Agreement
Class Action Complaint
Orders on Motions to Dismiss
Legal Representation
Attorneys' Fees

WHAT
A
WASTE.

NOT
SURE
THIS IS
WHAT OUR
COURT
SYSTEM
WAS
INTENDED
FOR!

→ REALLY ???...



Case 5:13-cv-04303-LHK   Document 124   Filed 12/14/15   Page 8 of 37

05 NOV 2015 PM 6 L
CHARLOTTE NC 282

RECEIVED

NOV 09 2015

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

JUDGE KOH
280 SOUTH 1ST
ROOM 2112
SAN JOSE, CA
95113

Mr. Mark Howard

# EXHIBIT 32

**Date:** 28 October 2015

**To:** Judge Koh, Class Council, and LinkedIn's Council,

**Regarding:** Claim ID: FYGWM-USXPM-ZXNKD
NOTICE OF PENDING CLASS ACTION AND NOTICE OF PROPOSED SETTLEMENT
*PERKINS V. LINKEDIN CORP.*

To all concerned,

I object to the settlement referenced above.

In the past I've received several checks in the mail from cases such as this. The checks were for a few pennies, while a few lawyers each made out with millions. I object to the courts being used as cash cows for unscrupulous lawyers.

In this particular case, the alleged offense is that up to 2 reminder emails were sent without proper consent. When I get email from LinkedIn or any other company, it normally takes only a second or two for me to determine whether or not the email is worth reading, and usually another second to delete it.

What this looks like to me is that a few lawyers see dollar**s** signs in an extremely insignificant technicality. The alleged offense cost each "victim" a total of maybe 7 or 8 seconds out of their lives to scan and delete 2 unwanted emails.

And isn't it ironic that LinkedIn was forced to notify me of this frivolous lawsuit by sending an unwanted email? I never even noticed the original emails that are alleged to have been such an offense, but this email forced by the lawsuit has taken far more of my time than I'll ever get reimbursed for.

However, I will consider this time well spent if this lawsuit is declared to be the frivolous case that it is.

I fully support the concept of using the courts to hold businesses accountable for their actions, but I don't see how this particular action by LinkedIn merits any time whatsoever in the legal system.

Sincerely,

Michael Hughes



Mike and Dawn Hughes

Rec'd
11/3/15

Larry C. Russ, Esq.
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

SO025103100

GREENSBORO NC 274
PIEDMONT TRIAD AREA
28 OCT 2015 PM 4 L



# EXHIBIT 33

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LinkedIn Corporation,<br><br>Defendant. | Case No. 13-CV-04303-LHK<br><br>Judge Lucy H. Koh |

## OBJECTION OF DYLAN L JACOBS TO THE CLASS SETTLEMENT

(2)    the objector's name, address, telephone number, and email address

Dylan L Jacobs



(3)    the basis upon which the objector claims to be a Settlement Class Member

I have a LinkedIn account and received an email notice. My claim ID is RWTCZ-
KZKJH-OHNSL. Between September 17, 2011 and October 31, 2014, I used Add
Connections to import contacts from external emails and send emails to persons who
were not LinkedIn members.

(4)     the grounds for the objection, including any supporting law or evidence, if any

        See below.

(5)     the name and contact information of attorneys representing, advising, or assisting the
        objector in connection with the objection or who may profit from the pursuit of the
        objection

        N/A

(6)     a statement indicating whether the objector intends to appear at the Final Approval
        Hearing personally or through counsel

        I do not intend to appear at the Hearing at this time.

## I.     Objections to the Terms of the Settlement

### A.     The Settlement Amount Is too Low

The amount of the settlement is too low given the high statutory penalties imposed by

California's Statutory Right of Publicity, CAL. CIV. CODE § 3344. The purpose of statutory

penalties is to incentivize individuals to file what would otherwise be nuisance-value claims.

That purpose is not furthered by allowing class resolution of these claims for pennies on the

dollar. While it is improper for each class member to receive the $750 they would be due in an

individual suit, settling each claim for 1.3% of the individual value is far too low.

### B.     Cy Pres

My first objection to *cy pres* is that it is generally a bad practice. A number of

commentators have noted "the specter of judges and outside entities dealing in the distribution

and solicitation of settlement money may create the appearance of impropriety." *Nachshin v.*

*AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); see also *SEC v. Bear, Stearns & Co.*, 626 F.

Supp.2d 402, 415 (S.D.N.Y. 2009).

2

Second, it is troubling that no recipient is identified in the settlement agreement. The ALI Principles stress in § 3.07(c) that "the court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class." Thus, at the time this Court is to approve the settlement, no one has any idea whether the *cy pres* funds will even indirectly benefit the class.

A better alternative would be to distribute further rounds of payments to class members who cash their initial checks. This was done by Judge King in the Bank of America Overdraft Class Action settlement.

## II.    Attorney's Fees

Although 25% is the usual benchmark in the Ninth Circuit, it is unreasonable here. The case only took two years to reach settlement, and remarkably little other than mediations and settlement negotiations seem to have occurred during that period. There were no significant discovery disputes, for example. Class Counsel did have to amend the complaint two times, of course, but their failure to get it right the first time does not entitle them to $3 million in fees. The bottom line is that Class Counsel did not do $3 million worth of work on this case, especially considering how unlikely it is that the class will actually be compensated anywhere near the amount of the settlement fund.

## Conclusion

For the reasons above, I respectfully request that the Court reject this settlement.

3

This objection has been sent to the following addresses:

United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

Larry C. Russ, Esq.
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

Jerome C. Roth, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105


Sincerely,

Dylan L Jacobs

4



Dylan Jacobs

United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

U.S. POSTAGE PAID
MALVERN, AR
72104
DEC 14, 15
AMOUNT
$3.94
R2305E125193-12

95113

CERTIFIED MAIL

7014 3490 0001 3613 7870

# EXHIBIT 34



Mrs Cassandra Jones

DENVER CO 802

09 OCT 2015 PM 4 L



Amy C. Russ Esq
Russ, Augusi, a Kaiser
12424 Wilshire Blvd 12th FL.
Los Angeles CA 90025

RE: Perkins V. LinkedIn Corp.

To whom it may concern:

I object to this lawsuit and do not wish to receive any funds should the settlement be approved. I think this lawsuit is frivolous and a waste of money. It is ridiculous to say that the "plaintiffs" were somehow hurt or damaged by a few emails being sent from a networking site. These gold-diggers should be ashamed of themselves. I am personally saddened by how sue-happy our society has become.

Sincerely,

Cassandra Jones

Claim ID USOSE-UZXYQ-OSQXE

# EXHIBIT 35

Oct. 10, 2015

**RECEIVED**

OCT 19 2015

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Judge Koh's Case System Administrator
United States Courthouse
280 South 1st Street, Room 2112
San Jose, Calif. 95113

*Re: Claim ID: UTTET-QBBPA-KVWAP Notice of Pending Class Action and Notice of Proposed Settlement,*
*Perkins v. LinkedIn Corp.*

I received, via email, a notice of a proposed settlement of a lawsuit that challenges LinkedIn's use of the
"Add Connections" service to grow its membership base. The notice gives me the choice of submitting a
claim form, excluding myself or objecting to the proposed settlement.

I'm writing to object to the proposed settlement for two reasons: 1) the harm to users of the LinkedIn
service, if any, appears to be negligible and 2) the remedy appears to be excessive.

I believe consumers should have access to the courts, and class action lawsuits are an effective tool for
seeking recovery. But I would assume the court would recognize that LinkedIn is a voluntary, inessential
social media network – and consumers can simply discontinue the service if they find it annoying.

Best regards,

Roland Klose

cc:  Larry C. Russ, Esq., Russ August & Kabat, 12424 Wilshire Blvd., 12th Floor, Los Angeles, CO 90025
Jerome C. Roth, Esq., Munger, Tolles & Olson LLP, 560 Mission Street, 27th Floor, San Francisco, CA
94105



Case 5:13-cv-04303-LHK   Document 112   Filed 10/19/15   Page 4 of 26

14 OCT 2015 PM 6 L

Judge Koh's Case System Administrator
United States Courthouse
280 South 1st Street, Room 2112
San Jose, Calif. 95113

95113300837

Mr. Roland Kluge

# EXHIBIT 36

I object to the Linkedin with inquired use of all Connections Settlement and declare it should be approved.

RECEIVED

NOV 27 2015

