# EXHIBIT 46

William F. McNamara

Case System Administrator for Judge Koh
United States Courthouse
280 South 1st Street
Room 2112
San Jose, CA 95113

RECEIVED

OCT 08 2015

CLERK, U.S. DISTRICT COURT
SUSAN Y. SOONG
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Class Counsel:
Larry C. Russ, Esq.,
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025.

LinkedIn's Counsel:
Jerome C. Roth, Esq.
Munger, Tolles & Olson LLP
560 Mission Street
27th Floor, San Francisco, CA 94105

October 3, 2015

Ref: Plaintiff claim TKZEQ-YSXUR-XYETW

The service called Add Connections to grow its member base allows LinkedIn members to
import contacts from their external email accounts and email connection invitations to one or
more of those contacts inviting them to connect on LinkedIn. The Court found that members
consented to importing their contacts and sending the connection invitation, but did not find that
members consented to LinkedIn sending two reminder emails.

The Plaintiffs contend that LinkedIn members did not consent to the use of their names and
likenesses in those reminder emails. LinkedIn denies these allegations and any and all
wrongdoing or liability.

The purpose of this letter is to object to the proposed settlement and recommend that it not be
approved because it is frivolous.

Best regards,

William F McNamara

William F. McNamara
Linked In member - proposed class action suit member



U.S. POSTAGE
$.49
44118
Date of sale
09/27/15
06 2500
08335930
SSK

FOLD HERE

William F. McNamara

Case System Administrator for Judge Koh
United States Courthouse
280 South 1st Street
Room 2112
San Jose, CA 95113

95113300837

# EXHIBIT 47

Frederic R. Fletcher (SBN 238038)
fletcher@lawca.us)
**Fletcher Law Offices**
417 2nd Street, Ste 204
Eureka, CA 95501
Telephone (707) 502-2642
Facsimile (888) 979-8171

Attorneys for Class Member Mary Means

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall; individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs<br><br>v.<br><br>LinkedIn Corporation,<br><br>                    Defendant | Case No. 13-CV-04303-HRL<br><br>**CLASS MEMBER MARY MEAN'S OBJECTION TO CLASS SETTLEMENT, OBJECTION TO ATTORNEY FEE AWARD & NOTICE OF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING**<br><br>**HEARING**<br>Judge: Hon. Lucy H. Koh<br>Date: February 11, 2016<br>Time: 1:30 p.m. Location:<br>Courtroom 8 – 4th Floor |

**PLEASE TAKE NOTICE** that class member Mary Means ("Objector") Objects to the proposed Class Settlement, Class Notice, and Request for Attorney's Fees in the above entitled matter.  Said Objector will appear through her counsel of record, Frederic R. Fletcher at the Final Approval Hearing on or about February 11, 2016 at 1:30pm in Courtroom 8 of the United States Courthouse, 280 South 1st Street, 4th Floor, San Jose, CA 95113.

1

**OBJECTION OF CLASS MEMBER MARY MEANS**

Class Member Mary Mean's (Claim ID PTFKG-WHLRR-CINCH) email address associated with her LinkedIn account is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mary Means resides in ▇▇▇▇▇▇▇▇ and may be contacted through her counsel of record herein at (707) 502-2642, or Attention: Frederic Fletcher, Esq. 417 2nd Street, Suite 204, Eureka, CA 95501.   (See, the Declaration of Mary Means filed concurrently and incorporating this Objection.)

## <u>OBJECTION</u>

**I)        Class Settlements Must be Fair and the Members Adequately Represented**

The Court has an obligation to review the proposed settlement while considering how it impacts the class members.  *See, Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir.1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, (1975). (In approving the proposed settlement of a class action, a District Court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.)   *See also, Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-280 (7th Cir.2002). (District Courts should "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions"…the court's role is akin "to the high duty of care that the law requires of fiduciaries.")  *See also, Mirfahisi v. Fleet Mortgage Corp., 356* F.3d 781, 784 (7th Cir. 2004); *citing, Uhl v. Thoroughbred Technology & Telecommunications, Inc.,* 309 F.3d 978, 985 (7th Cir.2002); *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir. 2002); *In re Cendant Corp. Litigation,* 264 F.3d 201, 231 (3d Cir.2001); *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir.1987).  ("Because class actions are rife with potential conflicts of interest between class counsel and class members [citation omitted] district judges presiding over such actions are expected to give careful scrutiny to the terms of

proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.")

**II)   Prospective Statutory Penalties should have resulted in a Larger Settlement Fund**

A violation of California's Statutory Right of Publicity *Cal. Civ. Code* § 3344 is subject to a statutory penalty of at least $750.  Here, the proposed settlement would at best compensate a few class members in an amount less than $10, or 1.3% the value of the individualized claims. If the lowest possible statutory penalty was imposed per class member the penalty alone would be 1.56 billion dollars. There is little doubt LinkedIn violated the publicity rights of the entire class, and an electronic record exists substantiating the violations. As stated in the motion for approval:

> Here, the Plaintiffs' claims stem from the same common course of conduct as the claims of the Settlement Class Members. All Plaintiffs and all Class Members utilized LinkedIn's Add Connections feature and had emails sent on their behalf by LinkedIn inviting their contacts to join the social networking site. The typicality requirement is thus satisfied here.

[Emphasis Added] (Motion for Settlement Approval page 12 lines 3-6)

The settling parties argue that the class claims risk being dismissed based upon consent but this issue was fully litigated on the motions to dismiss and the consent argument would not preclude the claims from being considered on the merits.

**III)   The Claims Form Exposes the Class Members to Perjury Charges**

The claims form forces the class members to make confusing statements under the penalty of perjury including the following:

> "I used Add Connections to import information from one or more external email accounts and send emails to one or more persons who were not LinkedIn members between September 17, 2011 and October 31, 2014."

This sentence was likely confusing for class members because it seems to imply the emails were sent by the class member purposefully when in fact most emails were sent automatically by LinkedIn without the class member's knowledge. A class member who found

3

the verbiage confusing would likely opt for not completing the claims form instead of risking

committing perjury for less than $10.  The claims form also forces the class members to declare

under penalty of perjury the following:

> "I believe I was injured by any such use of my name or name and profile picture."

Most non-lawyers consider the word "injury" to refer to a physical injury. The claims

form as drafted will have a chilling effect on claimants who do not wish to make a statement

under the penalty of perjury they have been injured. Additionally, it is unprecedented for a class

action claims form to force class members to make statements under penalty of criminal perjury

as to the ultimate facts in dispute. The class members are forced to undertake the risk and

obligations associated with making statements under oath without legal advice. If the class

members were informed they may risk penalties and jail time in exchange for the possibility of

receiving $10 herein they would likely not participate in this Settlement. The Settlement fails to

release class members from any liability resulting from the statements solicited under penalty of

perjury. The exposure Class Counsel has brought upon the class members far outweighs the

benefit of possibly receiving no more than $10.

> If the claims process deters class members from filing claims, the settlement may have
> less value to the class than the parties assert. Obtaining complete information about
> claims presented via an unimpeded process will assist you in determining the full value of
> the settlement and hence its reasonableness, fairness, and adequacy to the class. Avoid
> imposing unnecessary hurdles on potential claimants.

*Managing Class Action Litigation: A Pocket Guide for Judges* (Third Edition - 2010) Federal

Judicial Center, Barbara J. Rothstein & Thomas E. Willging

**IV)      The Release Includes Future Claims & is a Broad Insurance Policy for LinkedIn**

The Release states in pertinent part:

> "Released Claims" means any and all...claims...that were asserted or could have been
> asserted arising from or related to allegations in the Action regarding the alleged use of
> Add Connections to grow LinkedIn's member base, including, without limitation, (i)

4

accessing, importing, storing and/or using information from LinkedIn members' external email accounts; (ii) using LinkedIn members' names, photographs, likenesses, and/or identities in emails relating to Add Connections; or (iii) related disclosures, representations, and omissions.

The Release goes too far by releasing all related claims including future claims. The Release is an insurance policy LinkedIn can now use consumer data, including photographs and depictions into the indefinite future without restraint.

**V)      The Prospective Relief is a Scam**

The Settlement states on page 13 the following:

LinkedIn has added the following language to Add Connections import permission screens. First, language on the permission screen itself was changed from "We will not store your password or email anyone without your permission" to "We'll import your address book to suggest connections and help you manage your contacts."

The new replacement sentence does nothing to disclose data will be retrieved during the "address book" import and that the data will be used by LinkedIn for hundreds of millions of dollars in profits. The only disclosure is restating the obvious.

The Settlement continues:

Second, LinkedIn added a "Learn More" button to the permission screen, stating "When you import your address book, we'll upload detailed information about your contacts to our LinkedIn servers. We'll use this information to suggest relevant connections for you, to help you browse, search, and organize your contacts on LinkedIn, and for other uses explained in our Privacy Policy.

Here, LinkedIn has at least admitted they will be collecting data during the address book import. But once again, LinkedIn fails to inform the consumer they intend to sell the data collected on the open market for profit.

LinkedIn's Privacy Policy states in pertinent parts:

Content distributed through our sharing features and third-party integrations may result in displaying some of your personal information outside of our Services.

We may also disclose your personal information to a third party as part of a sale of the assets of LinkedIn Corporation, a subsidiary, or division, or as the result of a change in

5

**OBJECTION OF CLASS MEMBER MARY MEANS**

control of the company or one of its affiliates, or in preparation for any of these events. Any third party to which we transfers or sells our assets will have the right to continue to use the personal and other information that you provide to us in the manner set out in this Privacy Policy. We may transfer your information and process it outside your country of residence, wherever LinkedIn, its affiliates and service providers operate.

(See, Exhibit "A" attached to the Declaration of Frederic Fletcher.)

The Help Center LinkedIn touts as new preexisted the Settlement and offers nothing new or unique to the class members.

The Settlement continues:

LinkedIn has added the following language to Add Connections invitation permission screens: "Invite friends, colleagues, and acquaintances who might like to connect, and would benefit from joining LinkedIn. If someone you invite doesn't respond right away, we'll send up to two reminders."

This is a solicitation not a disclaimer. This new language fails to inform class members LinkedIn will collect the data of the people in the class member's email contact list and LinkedIn will sell it for profit and/or expose it to a security lapse. Cybercrime is a real threat in 2015 and anytime we provide a company with our data or the data of our friends we are taking the risk of exposure. Consumers should be fully informed before taking such a risk.

The Settlement continues:

2.2.3 Contact Management. LinkedIn has implemented functionality allowing members to manage contacts, including viewing and deleting contacts and sending invitations. 2.2.4 Connection Email Management. On or before December 31, 2015, LinkedIn will implement functionality allowing members who invite contacts to connect through Add Connections to withdraw those invitations. Although the initial connection invitation cannot be recalled or removed from the recipient's inbox, the withdrawal functionality will stop reminders from being sent.

Once again, these features preexisted the settlement and do nothing to inform or educate consumers regarding how they data will be treated.  The prospective relief is worth nothing to the class members, consumers, and is intended to distract the Court from the low monetary payout.

**OBJECTION OF CLASS MEMBER MARY MEANS**

In Class Counsel's motion for attorney's fees they state the following:

These prospective changes were developed and implemented as a result of this Settlement. Class Counsel has investigated and confirmed (and, with respect to the Connection Email Management described above, which is due to be implemented by the end of 2015, will specifically confirm) the implementation of these procedures.

(Motion for Attorney's Fees page 5 lines 4-7)

There is no evidence Class Counsel confirmed the prospective changes were developed and implemented. There is no explanation regarding the process undertaken if any to enable Class Counsel to confirm the changes were implemented.

## VI)   The Parties Intend the Settlement Fund to be Distributed to the *Cy Pres* Recipients

LinkedIn wants no claims submitted or too many claims submitted because both scenarios would trigger the *cy pres* distribution.  If not enough claims are submitted the remaining Settlement fund will go to the *cy pres* recipients. (Section 3.1.2 of Settlement)  If too many claims are submitted distribution would become impractical and the fund will go to the *cy pres* recipients. (Section 3.1.3 of Settlement) The Settling parties can manipulate the process easily to ensure the *cy pres* recipients receive the fund and not the class. The reason is simple. If the fund goes to the *cy pres* recipients LinkedIn can deduct the loss as a charitable donation, commonly referred to as a backdoor reversion. The parties colluded to create a settlement which benefits LinkedIn and Class Counsel but not the class. The settlement is unfair.

The claims form electronic submittal website was designed to discourage claims submittals. The claims submittal website is unsecure, and the form requests several items of information, including bank account information, which could jeopardize a class member's privacy.

7

**OBJECTION OF CLASS MEMBER MARY MEANS**

**VII)     The Fee Award Sought is Too High and Unsupported by Evidence**

This case is in its infancy compared to other similar class actions at approximately 2 years old.  In the Ninth Circuit, the "benchmark" fee in a common fund case is 25 percent of the fund created. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). A court should depart from the benchmark only if there are "special circumstances" justifying the departure. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citations omitted). The special circumstances justifying a significant reduction is that Class Counsel has not had time to accomplish work worth 3 million dollars. Surviving a motion to dismiss and sitting through a few hours of mediation does not entitle Class Counsel to 3 million dollars in fees. There were no discovery disputes. Class Counsel has provided the Court no evidence discovery even occurred, beyond claiming some Requests for Production were served, and Class Counsel's alleged intent to notice 8 depositions.

> When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims. Class counsel could have done much better by the class had they been willing to accept lower fees in their negotiation with Rexall. But realism requires recognition that probably all that class counsel really care about is their fees — for $865,284 spread.

*Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014)

Class Counsel failed to properly itemize costs and instead attempted to conceal costs into the fee award because the costs were unreasonably low demonstrating a lack of diligence. The actual items of expense should have been itemized instead of lumping together categories of costs, and copies of receipts or invoices should have been provided.  The amount of costs claimed represent less than 2% of the entire fee award sought.

**OBJECTION OF CLASS MEMBER MARY MEANS**

As stated previously, the prospective relief is a sham. The fund will most likely not be distributed to the class. Class Counsel has not earned the fee requested.  The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also *Federal Judicial Center, Manual for Complex Litigation*, §27.71, p. 336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note).

The only *proof* of legal hours billed on the case are one page summaries of total hours billed from each firm.  The Court was not provided information regarding the dates the hours were billed, or any information regarding the description of legal work performed.

> We thus have "remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judges approve a settlement involving a meager recovery for the class but generous compensation for the lawyers — the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests." [Citations Omitted] …That is an accurate description of this case; and it is why objectors play an essential role in judicial review of proposed settlements of class actions and why judges must be both vigilant and realistic in that review.

*Pearson v. NBTY, Inc., supra*, 772 F.3d at 787.

**VIII)   The Notice Failed to Notify the Class of the Class Claims and Other Material  Items**

Rule 23(c)(2)(B)(ii) provides "[t]he notice must clearly and concisely state in plain, easily understood language the class claims, issues, or defenses."  The individual notice sent to the class members failed to include a description of claims alleged. The website notice included the following:

> Plaintiffs asserted violations of (1) California's common law right of publicity; (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.) (the "UCL"); (3) the Stored Communications Act, 18 U.S.C. §§ 2701, et seq.; (4) the federal

9

**OBJECTION OF CLASS MEMBER MARY MEANS**

Wiretap Act, 18 U.S.C. §§ 2510, et seq.; (5) California Penal Code § 502; and (6) the California Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq.

Class Counsel has purposefully omitted any reference to California's Statutory Right of Publicity *Cal. Civ. Code* § 3344, the second cause of action pled on the class level in the Third Amended Complaint.  This omission is intended to prevent class members from realizing their claims are worth $750 at a minimum. Since the Release reaches claims brought under *Cal. Civ. Code* § 3344 the class action notice should have included a disclosure that Plaintiff asserted violations of California's Statutory Right of Publicity.

The notice also failed to inform the class members that the Court could only accept or reject the Settlement, and not make changes. The District's Procedural Guidance for Class Action Settlements mandates such notice. ("The notice should make clear that the court can only approve or deny the settlement, not change the terms of the settlement.")

**IIX)   The Website Failed to Provide Links to the Motion for Preliminary Settlement Approval**

The Northern District's Procedural Guidance for Class Action Settlements states in pertinent part:

> The notice should include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, <u>motions for approval</u> and for attorneys' fees and any other important documents in the case…

(Accessed December 8, 2015 <http://cand.uscourts.gov/ClassActionSettlementGuidance>)

The Settlement website failed to display a link to the Motion for Preliminary Approval which prevented the class from educating themselves. (See, Exhibit "B" attached to the Declaration of Frederic Fletcher).

**OBJECTION OF CLASS MEMBER MARY MEANS**

DATED: December 8, 2015                 By /s/ Frederic R. Fletcher
                                           Frederic R. Fletcher (SBN 238038)
                                           **Fletcher Law Offices**
                                           417 2nd Street, Ste 204
                                           Eureka, CA 95501
                                           Telephone: (707) 502-2642
                                           Email: fletcher@lawca.us
                                           Attorneys for Class Member Mary Means


                                        By /s/ Mary Means
                                           Class Member
                                           Claim ID PTFKG-WHLRR-CINCH

11

**OBJECTION OF CLASS MEMBER MARY MEANS**

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Fletcher Law Offices 417 2nd Street, Suite 204, Eureka, CA 95501. On December 11, 2015, I served the within document(s):

CLASS MEMBER MARY MEANS OBJECTION TO CLASS SETTLEMENT, OBJECTION TO ATTORNEY FER AWARD & NOTICEOF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING

DECLARATION OF FREDERIC R. FLETCHER

DECLARATION OF MARY MEANS

X- CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 13, 2015, at Eureka, California.

/s/ Frederic R. Fletcher<br>Frederic R. Fletcher

**OBJECTION OF CLASS MEMBER MARY MEANS**

1  Frederic R. Fletcher (SBN 238038)
   fletcher@lawca.us)
2  **Fletcher Law Offices**
   417 2nd Street, Ste 204
3  Eureka, CA 95501
   Telephone (707) 502-2642
4  Facsimile (888) 979-8171

5

6  Attorneys for Class Member Mary Means

7

8               UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  Paul Perkins, Pennie Sempell, Ann          Case No. 13-CV-04303-HRL
    Brandwein, Erin Eggers, Clare
13  Connaughton, Jake Kushner, Natalie
    Richstone, Nicole Crosby, and Leslie       Declaration
14  Wall; individually and on behalf of all
    others similarly situated,
15
16                          Plaintiffs
17  v.
18  LinkedIn Corporation,
19                          Defendant
20
    _____
21

22            **DECLARATION OF CLASS MEMBER MARY MEANS**

23       I, Mary Means, have personal knowledge of the matters discussed below except as

24  to those matters declared on information and belief, and as to those matters, I am informed and

25  believe them to be true:

26       1.      I am a Class Member to this action and received notice by email on October 15,

27

28

                                    1

                **DECLARATION OF CLASS MEMBER MARY MEANS**

2015. My claim ID is PTFKG-WHLRR-CINCH.  Attached as Exhibit "1" hereto is a true and correct copy of the email notice sent to me.

2.       I used Add Connections to import information from one or more external email accounts and send emails to one or more persons who were not LinkedIn members between September 17, 2011 and October 31, 2014. I did not agree to the use of my name or profile picture in reminder emails. I believe the unauthorized use was a violation of my right to publicity, an unfair business practice, a violation of privacy, and that I was harmed by any such use of my name or name and profile picture.  I incorporate the Objection filed concurrently into this declaration as reasons I do not support the proposed settlement.  .

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December____8____, 2015, by _____.
                                                           Mary Means

2

**DECLARATION OF CLASS MEMBER MARY MEANS**

Frederic R. Fletcher (SBN 238038)
fletcher@lawca.us)
**Fletcher Law Offices**
417 2nd Street, Ste 204
Eureka, CA 95501
Telephone (707) 502-2642
Facsimile (888) 979-8171

Attorneys for Class Member Mary Means

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall; individually and on behalf of all others similarly situated, | Case No. 13-CV-04303-HRL |
| | |
| Plaintiffs | <u>Declaration</u> |
| v. | |
| LinkedIn Corporation, | |
| Defendant | |

<u>DECLARATION OF FREDERIC R.  FLETCHER</u>

I, Frederic R. Fletcher am counsel for class member Mary Means, and I have personal knowledge of the matters discussed below except as to those matters declared on information and belief, and as to those matters, I am informed and believe them to be true:

1

**DECLARATION OF FREDERIC R. FLETCHER**

1. Attached to this Declaration as Exhibit "A" is a true and correct copy of LinkedIn's Privacy Policy which I accessed at <https://www.linkedin.com/legal/privacy-policy> and printed on December 9, 2015.

2. Attached to this Declaration as Exhibit B" is a true and correct copy of the Settlement Website "Case Documents" page which I accessed at: <http://www.addconnectionssettlement.com/case-documents.aspx> and printed on December 9, 2015.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 9, 2015, by _____.

Frederic Fletcher

**DECLARATION OF FREDERIC R. FLETCHER**

EXHIBIT "A"

☰ ▼    Search for people, jobs, companies, and more...    🔍    Advanced    💬    🚩⁵    👤⁺⁵    👤

Home    Profile    Connections    Jobs    Interests    Business Services    Try Premium for free

SlideShare, a content sharing platform, and LinkedIn Pulse, a news reading application, are part of the LinkedIn family.

# Your Privacy Matters

LinkedIn Privacy Policy    🕐    ↗

At LinkedIn, our fundamental philosophy is "members first." That value powers all of the decisions we make, including how we gather and respect your personal information.

We've crafted the policy below to be as clear and straightforward as possible. Our aim is for you—our members—to always feel informed and empowered with respect to your privacy on LinkedIn. Visit our Safety Center for tips on using LinkedIn smartly and securely.

🏛 View our California DNT notice ›

▶

| Introduction | Information Collected | Uses & Sharing of Personal Info | Your Choices & Obligations | Important Information |

---

## Introduction

Last revised on October 23, 2014

We are a social network and online platform for professionals.

LinkedIn's mission is to connect the world's professionals to allow them to be more productive and successful. Our registered users ("Members") share their professional identities, engage with their network, exchange knowledge and professional insights, post and view relevant content, and find business and career opportunities. Content on some of our services is also visible to unregistered viewers ("Visitors"). We believe that our services allow our Members to effectively compete and achieve their full career potential. The cornerstone of our business is to focus on our Members first.

We protect your personal information using industry-standard safeguards.

We may share your information with your consent or as required by law, and we will always let you know when we make significant changes to this Privacy Policy.

Maintaining your trust is our top priority, so we adhere to the following principles to protect your privacy:

- We protect your personal information and will only provide it to third parties: (1) with your consent; (2) where it is necessary to carry out your instructions; (3) as reasonably necessary in order to provide our features and functionality to you; (4) when we reasonably believe it is required by law, subpoena or other legal process; or (5) as necessary to enforce our User Agreement or protect the rights, property, or safety of LinkedIn, our Members and Visitors, and the public.

- We have implemented appropriate security safeguards designed to protect your information in accordance with industry standards.

This Privacy Policy applies to LinkedIn.com and the LinkedIn mobile application, SlideShare.net and SlideShare mobile app ("SlideShare"), Pulse.me and Pulse mobile app ("Pulse"), LinkedIn platform technology (such as "Share on LinkedIn" plugins for publishers), the advertising platform created by Bizo Inc. (and its successor products) and all other LinkedIn websites, apps, developer platforms and other products and services (collectively the "Services"). We may modify this Privacy Policy from time to time, and if we make material changes to it, we will provide notice through our Service, or by other means so that you may review the changes before you continue to use our Services. **If you object to any changes, you may close your account. Continuing to use our Services after we publish or communicate a notice about any changes to this Privacy Policy means that you are consenting to the changes.**

Back to Top ▲

Privacy Policy | LinkedIn

# 1. What information we collect

Our Privacy Policy applies to any Member or Visitor. We collect information when you use our Services to offer you a personalized and relevant experience, including growing your network and enabling business opportunities.

**1.1. Data Controllers**
If you reside in the United States, then the personal information provided to or collected by our Services is controlled by LinkedIn Corporation, 2029 Stierlin Court, Mountain View, California 94043. If you reside outside the United States, then this personal information is controlled by LinkedIn Ireland, Wilton Plaza, Wilton Place, Dublin 2, Ireland. **If you have any concern about providing information to us or having such information displayed on our Services or otherwise used in any manner permitted in this Privacy Policy and the User Agreement, you should not become a Member, visit our websites, apps or otherwise use our Services.** If you have already registered, you can close your accounts (e.g., LinkedIn, SlideShare and Pulse).

We collect your personal information in the following ways:

When you create an account with us, we collect information (including your name, email address, and password).

**1.2. Registration**
To create an account on LinkedIn, you must provide us with at least your name, email address and/or mobile number, and a password and agree to our User Agreement and this Privacy Policy, which governs how we treat your information. You may provide additional information during the registration flow (for example, your postal code, job title, and company) to help you build your profile and to provide you more customized services (for example: language-specific profile pages, updates, content, more relevant ads and career opportunities). You understand that, by creating an account, we and others will be able to identify you by your LinkedIn profile. We may also ask for your credit card details if you purchase certain additional services.

We also provide the option to register for a SlideShare account, for which you must provide at least your name, email address and/or mobile number, and a password. We no longer provide the option to register for a separate Pulse account, but you may continue to use your existing Pulse account if you already have one.

We collect information when you fill out a profile. A complete LinkedIn profile that includes professional details — like your job title, education, and skills — helps you get found by other people for opportunities.

**1.3. Profile Information**
After you create an account (other than the distinct SlideShare and Pulse accounts), you may choose to provide additional information on your LinkedIn profile, such as descriptions of your skills, professional experience, and educational background. You can list honors, awards, professional affiliations, Group memberships, networking objectives, companies or individuals that you follow, and other information including content. Subject to the settings you choose, your connections may provide recommendations and endorsements of you. Providing additional information enables you to derive more benefit from our Services by helping you express your professional identity; find other professionals, opportunities, and information; and help recruiters and business opportunities find you. It also enables us to serve you ads and other relevant content on and off of our Services.

On SlideShare, you can choose what personal information you provide in addition to the information required for registration as noted above. Most of your SlideShare profile, as well as all content that you post on SlideShare, is publicly displayed (with the exceptions provided in the SlideShare account settings), so please do not provide personal information you would not want to be public. We may use and share information you provide in a SlideShare profile and/or Pulse account in the same manner as the information provided in a LinkedIn.com profile, in accordance with this Privacy Policy and our User Agreement.

We collect information when you sync non-LinkedIn content — like your email address book, mobile device contacts, or calendar — with your account. You can remove your address book and any other synced information whenever you like.

**1.4. Address Book and Other Services That Sync with LinkedIn**
You may use our address book or "contacts" importer (or other similar features) to upload your address book into our Services. We store this information (including phone numbers) and use it to help you manage and leverage your contacts in connection with our Services. We also use this information to enhance your experience with our Services by helping you to grow your network by: identifying your contacts that are already Members of our Services; providing a template to send invitations on your behalf to your contacts that are not Members; and suggesting people you may know (even if not in your contacts) but are not yet connected with you on our Services (as we may infer from your shared connections or shared managers, employers, educational institutions and other such factors). We may also use this information to show you and other Members that you share the same uploaded contacts who may or may not be Members.

Please note that when you send an invitation to connect to another individual on our Service (a "connection") or to join our Service to connect with you, that person may have access to your email address or, for SMS invitations, mobile number because it may be displayed in the invitation. After sending these invitations, we may also remind your invitees of your invitation on your behalf. Your LinkedIn connections will also have access to your email address.

We make other tools available to sync information with our Services, and may also develop additional features that allow Members to use their account in conjunction with other third-party

services. For example, our mobile applications allow you to sync your device's calendar, email and/or contacts apps with our Services to show you the LinkedIn profiles of meeting attendees, email correspondents and/or your contacts.

Another example are software tools that allow you to see our and other public information about the people you email or meet with and leverage our Services to help you gain insights from and grow your network. If you grant these products (mobile applications or our other Services that sync external email and calendar services, such as "LinkedIn Connected") permission to access your email and calendar accounts, they will access and may store some of your email header and calendar history information. Our products that sync with external email services may also temporarily cache message content for performance reasons, in a way that is unreadable by us and our service providers.

**Any information that you upload or sync with our Services is covered by the User Agreement and this Privacy Policy. You can remove your information at your convenience** using the features we make available or in accordance with Section 3. You can remove your address book and any other synced information at any time.

| | |
|---|---|
| We collect information when you contact us for customer support. | **1.5. Customer Service**<br>When you contact our customer support services (e.g. on our Help Center and SlideShare's Help Center), we may have to access your InMails, Groups and other contributions to our Services and collect the information we need to categorize your question, respond to it, and, if applicable, investigate any breach of our User Agreement or this Privacy Policy. We also use this information to track potential problems and trends and customize our support responses to better serve you. We do not use this information for advertising. |
| We collect information when you visit our Services (including, LinkedIn, SlideShare and Pulse), use our mobile applications, and interact with advertising on and off our Services. | **1.6. Using the LinkedIn Sites and Applications**<br>We collect information when you use (whether as a Member or a Visitor) our websites, applications, our platform technology (such as "Share on LinkedIn" plugins for publishers) or other Services. For example, we collect information when you view or click on ads on and off our Services, perform a search, import your address book, join and participate in groups, participate in polls, install one of our mobile applications, view content on Pulse or SlideShare, share articles on our Services and apply to jobs through our Services. If you are logged in on LinkedIn.com, SlideShare.net, the Pulse app or another Service or one of our cookies on your device identifies you, your usage information and the log data described in Section 1.10 of this policy, such as your IP address, will be associated by us with your account. Even if you're not logged into a Service, we log information about devices used to access our Services, including IP address. |
| We collect information when you use your account to sign in to other sites or services, and when you view web pages that include our plugins and cookies. | **1.7. Using Third-Party Services and Visiting Third-Party Sites**<br>You allow us to receive information when you use your account to log in to a third-party website or application. Also, when you visit a third-party site that embeds our social plugins (such as "Share on LinkedIn" for publishers) we receive information that those pages have loaded in your web browser. If you are logged in as a Member when you visit sites with our plugins, we use this information to recommend tailored content to you. We will use this information to personalize the functionality we provide on third-party sites, including providing you insights from your professional network and allowing you to share information with your network. Our retention of this data is addressed in Section 3.2. We may provide reports containing aggregated impression information to companies hosting our plugins and similar technologies to help them measure traffic to their websites, but no personal data. Please note that SlideShare.net, Pulse.me and the Pulse app are part of the LinkedIn Services, not third-party sites or applications.<br><br>You also allow us to receive information about your visits and interaction with the sites and services of our partners that include our cookies and similar technologies, unless you opt out. If you are not a Member, we rely on the online terms between you and our partners. |
| We use cookies and similar technologies to collect information. | **1.8. Cookies**<br>As described in our Cookie Policy, we use cookies and similar technologies, including mobile application identifiers, to help us recognize you across different Services, learn about your interests both on and off our Services, improve your experience, increase security, measure use and effectiveness of our Services, and serve advertising. You can control cookies through your browser settings and other tools. **By visiting our Services, you consent to the placement of cookies and beacons in your browser and HTML-based emails in accordance with this Privacy Policy, which incorporates by reference our Cookie Policy.** |
| We use advertising technologies and web beacons to collect information. We give you a number of ways to opt out of targeted ads, including through the Ad Choices icon shown with any | **1.9. Advertising Technologies and Web Beacons**<br>We target (and measure the performance of) ads to Members, Visitors and others both on and off of our Services through a variety of ad networks and ad exchanges, using the following, whether separately or combined:<br><br>• Advertising technologies on and off our Services, like web beacons, pixels, ad tags, |

Privacy Policy | LinkedIn

ads we serve on third-party sites. If you do not want us to track your behavior on third-party sites, you can opt out. If you do not opt out, you consent to our use of beacons and other advertising technologies.

cookies, and mobile identifiers as permitted by mobile platforms;

- Member-provided profile and contact information and categories (for example, "product managers in Texas");
- Information inferred from a Member's profile (for example, using job titles to infer age, industry, seniority, and compensation bracket; or names to infer gender);
- Your use of our Services (for example, your search history, the content you read on SlideShare or Pulse, who you follow or is following you on SlideShare, Groups participation, which pages you visit, your clicking on a LinkedIn ad, etc.) and log files generated as described in Section 1.10;
- Information from 3rd parties (e.g. advertising partners, publishers and data aggregators) which we use in addition to the information from our cookies (and similar technologies), your profile and use of our Services.

We do not share your personal information with any third-party advertisers or ad networks for advertising without your separate permission. Note that, as described in Section 2.6, your profile is visible to other Members and through public search depending on your settings. Also, advertising partners may associate personal information collected by the advertiser directly from you with our cookies and similar technologies. In such instances, we contractually require such advertisers to obtain your explicit opt-in consent before doing so.

We may show you sponsored content in your network update stream (NUS), which will be designated as sponsored content and will behave like other NUS updates. If you take social action (for example, if you "like" or "comment" on the sponsored content), your action may be seen by your network and other Members who are shown the sponsored content after you have acted on it. Please note that all social actions on SlideShare (e.g. liking certain content, following or being followed by others) are public, unless expressly specified otherwise with respect to premium accounts.

We adhere to self-regulatory principles for interest based advertising. If you wish to not receive targeted ads from most third party companies, you may opt-out as described here. Please note this does not opt you out of being served advertising. You will continue to receive generic ads or targeted ads by companies not listed with these opt-out tools. You can also opt out specifically from our use of cookies and similar technologies to track your behavior on third party sites. For non-Members, this opt out setting is here.

We collect information from the devices and networks that you use to access our Services.

**1.10. Log Files, IP Addresses, and Information About Your Computer and Mobile Device**
When you visit or leave our Services (whether as a Member or Visitor) by clicking a hyperlink or when you view a third-party site that includes our plugin or cookies (or similar technology), we automatically receive the URL of the site from which you came or the one to which you are directed. Also, advertisers receive the URL of the page that you are on when you click an ad on or through our Services. We also receive the internet protocol ("IP") address of your computer or the proxy server that you use to access the web, your computer operating system details, your type of web browser, your mobile device (including your mobile device identifier provided by your mobile device operating system), your mobile operating system (if you are accessing LinkedIn using a mobile device), and the name of your ISP or your mobile carrier. We may also receive location data passed to us from third-party services or GPS-enabled devices that you have set up, which we use to show you local information (for example, Pulse articles about your area or jobs postings in your location) on our mobile applications and for fraud prevention and security purposes. Most mobile devices allow you to prevent real time location data being sent to us, and of course we will honor your settings.

In the case of our Android apps, you will be provided notice of the types of data (e.g. location) that will be sent to us. If you choose to use our app after this notice, we process this data to enable registration or preview product features for you (e.g. jobs near you). If you choose not to become a Member, we will delete this information.

We are constantly innovating to improve our Services, which means we may create new ways to collect information on the Services.

**1.11. Other**
Our Services are a dynamic, innovative environment, which means we are always seeking to improve the Services we offer you. We often introduce new features, some of which may result in the collection of new information (for example, when the Endorsements feature launched, we began collecting information about skills for which Members were endorsed and the individuals who endorsed them). Furthermore, new partnerships or corporate acquisitions may result in new features, and we may potentially collect new types of information. If we start collecting substantially new types of personal information and materially change how we handle your data, we will modify this Privacy Policy and notify you in accordance with Section 4.3.

Back to Top ▲

# 2. How we use your personal information

| | |
|---|---|
| You agree that information you provide on your profile can be seen by others and used by us as described in this Privacy Policy and our User Agreement. | **2.1. Consent to LinkedIn Processing Information About You**<br>The personal information that you provide to us may reveal or allow others to identify aspects of your life that are not expressly stated on your profile (for example, your picture or your name may reveal your gender). By providing personal information to us when you create or update your account and profile, **you are expressly and voluntarily accepting the terms and conditions of our User Agreement and freely accepting and agreeing to our processing of your personal information in ways set out by this Privacy Policy.** Supplying to us any information deemed "sensitive" by applicable law is entirely voluntary on your part. **You can withdraw or modify your consent to our collection and processing of the information you provide at any time, in accordance with the terms of this Privacy Policy and the User Agreement, by changing your account settings or your profile on LinkedIn or SlideShare, or by closing your LinkedIn, SlideShare and Pulse accounts.** |
| We communicate with you using LinkedIn messaging, email, and other ways available to us. We may send you messages relating to the availability of the Services, security, or other service-related issues. We also may send promotional InMail messages to your LinkedIn inbox. You can change your email settings at any time. | **2.2. LinkedIn Communications**<br>We communicate with you through email, notices posted on the LinkedIn websites or apps, messages to your LinkedIn inbox, and other means available through the Services, including mobile text messages and push notifications. Examples of these communications include: (1) welcome and engagement communications - informing you about how to best use our Services, new features, updates about other Members you are connected to and their actions, etc.; (2) service communications - these will cover service availability, security, and other issues about the functioning of our Services; (3) promotional communications - these include both email and InMail messages (InMail messages are only delivered to your LinkedIn InBox), and may contain promotional information directly or on behalf of our partners, including job opportunities and information from companies that are hiring. These messages will be sent to you based on your profile information and messaging preferences. We track the open rate of your InMails to provide your InMail acceptance score. You may change your email and contact preferences at any time by signing into your account and changing your LinkedIn or SlideShare email settings. You can also opt out of promotional messages by sending a request to LinkedIn Help Center.<br><br>Please be aware that you cannot opt out of receiving service messages from us. |
| With certain communications you send on our Services, the recipient can see your name, email address, and some network information. | **2.3. User Communications**<br>Many communications that you initiate through our Services (for example, an invitation sent to a non-Member) will list your name and primary email address in the header of the message. Messages you initiate may also provide the recipient with aggregate information about your network (for example, how many people are in your network). Other communications that you initiate through the Services, like a request for an introduction, will list your name as the initiator but will not include your personal email address contact information. Once you have connected with an individual, regardless of who sent the invitation, your contact information will be shared with that individual.<br><br>We use automatic scanning technology to help protect you and other Members. Such technology checks links and other content in your InMails, network updates and Group contributions to help us identify and block malicious links and malware, reduce spam and optimize the delivery of our Services. |
| We use the information and content you provide to us to conduct research and development and to customize your experience and try to make it relevant and useful to you. | **2.4. Service Development; Customized Experience**<br>We use information and content that you and other Members provide to us to conduct research and development for the improvement of our Services in order to provide you and other Members and Visitors with a better, more intuitive experience and drive membership growth and engagement on our Services and to help connect professionals to economic opportunity.<br><br>We also customize your experience and the experiences of others on our Services. For example, when you sign in to your account, we may display the names and photos of new Members who have recently joined your network or recent updates from your connections and companies you follow. We try to show you content, such as news and presentations, that is relevant to you, your industry, or your profession. We also use Members information and content for invitations and communications promoting our Services that are tailored to the recipient. |
| We share your information across our different Services, among companies in the LinkedIn family. | **2.5. Sharing Information with Affiliates**<br>We may share your personal information with our affiliates (meaning entities controlled by, controlling or under common control with LinkedIn) outside of the LinkedIn entity that is your data controller (for example, LinkedIn Corporation may share your information with LinkedIn Ireland, or other LinkedIn operating entities) as reasonably necessary to provide the Services. You are consenting to this sharing.<br><br>We combine information internally across different Services. For example, SlideShare may recommend better content to you based on your LinkedIn content preferences and the articles you read on Pulse, and LinkedIn could present you a better tailored network update stream based on your SlideShare activity, whether or not you tied your SlideShare, Pulse and/or LinkedIn accounts (e.g. by signing in SlideShare or Pulse with your LinkedIn account), as we may be able to identify you across different Services using cookies or similar technologies. |

Any information you put on your profile and any content you post on LinkedIn may be seen by others.

We don't provide any of your non-public information (like your email address) to third parties without your consent, unless required by law, or as described in Sections 2.6 and 2.14 of this Policy.

Other people may find your LinkedIn profile information through search engines (you can choose which parts of your public profile are accessible to public search engines in your settings), or use services like Twitter in conjunction with your LinkedIn account.

## 2.6. Sharing Information with Third Parties

We offer a "public profile" feature that allows you as a Member to publish portions of your professional profile to the public Internet. This public profile will be indexed and displayed through public search engines when someone searches for your name. You may choose the parts of your profile that search engines index or completely opt out of this feature in your LinkedIn account settings, or limit the publicly visible information in your SlideShare profile. However, third-party search engines may not automatically update their caches, which may contain old public profile information. Unless you delete them, your profiles on LinkedIn.com and our corresponding app or on SlideShare.net are always viewable on the respective Services.

The visibility of your professional profile to other Members depends on your degree of connection with the viewing Member, the subscriptions they may have, their usage of the Services, access channels and search types (e.g., by name or by keyword). For example, first degree connections can see your full profile and contact information. Others have more limited access, as detailed in our Help Center. Please note that recruiters and other such professional subscribers can see your full profile even if you did not approve their InMail.

We do not rent or sell personal information that you have not posted on our Services, except as described in this Privacy Policy. We will not disclose personal information that is not published to your profile or generated through engagement with our other services, such as Groups and Company Pages, except to carry out your instructions (for example, to process payment information) or unless we have your separate consent, unless we have a good faith belief that disclosure is permitted by law or is reasonably necessary to: (1) comply with a legal requirement or process, including, but not limited to, civil and criminal subpoenas, court orders or other compulsory disclosures; (2) enforce this Privacy Policy or our User Agreement; (3) respond to claims of a violation of the rights of third parties; (4) respond to Member service inquiries; or (5) protect the rights, property, or safety of LinkedIn, our Services, our Members, Visitors, or the public. See Section 2.14 for additional details about our compliance with legal requests for information.

We support middleware providers that offer archiving solutions to firms subject to legal and regulatory archiving requirements, which, with your permission, facilitate the archiving of your communications and other activity by a third party for compliance purposes. Content distributed through our sharing features and third-party integrations may result in displaying some of your personal information outside of our Services. For example, when you post content to a Group that is open for public discussion, your content, including your name as the contributor, may be displayed in search engine results.

Also, if you have opted to bind any of your Service accounts to your Twitter, Facebook or other similar account, you can easily share content from our Services to these third party services, in accordance with your account settings (which you may change at any time) and respective policies of these third parties. Further, we allow third parties to look-up profile information (subject to your privacy settings) using your email address or first and last name information through its profile API (see Section 2.7. below).

Third parties (for example, your email provider) may give you the option to upload certain information in your contacts stored with us onto their own service. If you choose to share your contacts in this way, you will be granting your third party provider the right to store, access, disclose and use these contacts in the ways described in such third party's terms and privacy policy.

We work with developers to build Platform Applications using our developer tools. Whether you use Platform Applications is up to you.

If you have given a Platform Application access to your LinkedIn account, you can revoke that permission anytime. Also, you can opt out of providing information to developers through your connections.

## 2.7. Third Parties Using LinkedIn Platform Services

We collaborate with and allow third parties to use our developer platform to offer services and functionality in conjunction with our Services. These third-party developers have either negotiated an agreement to use our platform technology or have agreed to our self-service API and Plugin terms in order to build applications ("Platform Applications"). Both the negotiated agreements and our API and Plugin terms contain restrictions on how third parties may access, store, and use the personal information you provide to us.

If you choose to use a Platform Application, you will be asked to confirm acceptance of the privacy policy and user agreement of the third-party developer. To revoke permission granted to a Platform Application, please visit your settings. Note, however, that even if you revoke the permission granted to a Platform Application, your connections may still be using the Platform Application, so the Platform Application may still have access to certain information about you, just as your connections do. You may opt out of providing information to third-party developers through your connections by accessing the "Turn on/off data sharing with third-party applications" control in the "Groups, Companies, and Applications" tab under settings.

We conduct our own surveys and polls and also help third parties do this type of research. Your participation in surveys or polls is up to you. You may

## 2.8. Polls and Surveys

Polls and Surveys may be conducted by us, Members, or third parties. Some third parties may target advertisements to you on the results page based on your answers in the poll. We or third parties may follow up with you via InMail regarding your participation unless you have opted out of receiving InMail messages. We may use third parties to deliver incentives to you to participate

also opt out of getting invitations to participate in surveys.

in surveys or polls. If the delivery of incentives requires your contact information, you may be asked to provide personal information to the third party fulfilling the incentive offer, which will be used only for the purpose of delivering incentives and verifying your contact information. It is up to you whether you provide this information, or whether you desire to take advantage of an incentive. Your consent to use any personal information for the purposes set forth in the poll or survey will be explicitly requested by the party conducting it. We are a member of the Council of American Survey Research Organizations ("CASRO") and abides by CASRO guidelines for market research. You may opt out of participating in surveys by changing your settings to stop receiving these inquiries and requests.

Our Services help you search for other professionals, companies, groups, professional content, and jobs.

**2.9. Search**
You can search for Members, employment opportunities, information about companies, and community content from Groups on our Services. For example, you can find Members with particular expertise or experience, or Members that you may know from your industry or profession. You can also find employment opportunities and information about companies. You can also find content from Groups, SlideShare and Pulse. We use personal information from our Services, including Member profiles, Groups content, and Company Pages, to inform and refine our search service.

You are responsible for any information you post on our Services, and this content will be accessible to others.

**2.10. Groups**
If you participate in Groups, share content on your network update stream, or import a blog or other content, you should be aware that any information you choose to disclose using these services can be read, collected, and used by other Members in these forums, developers, and other third parties, including advertisers. We are not responsible for the information you choose to submit in these forums. Your Groups contributions are typically searchable on our Services and some content in Groups may be public and searchable on the Internet if the group owner has not closed the group for public discussions. You can identify closed groups by the padlock icon next to the group name. You can remove your Groups posts at any time. However, others may have copied and used the information that you shared.

**2.11. Testimonials and Advertisements Placed through LinkedIn Ads**
If you provide any testimonials about our goods or services or place advertisements through the LinkedIn Ads, we may post those testimonials and examples of advertisements you place in connection with our promotion of these services to third parties. Testimonials and advertisements may include your name and other personal information that you have provided. For more information about LinkedIn Ads, please see the LinkedIn Ads Terms of Use.

We offer a premium service to recruiters and others, which can be used to search for, organize, and communicate with potential candidates or offer business opportunities. In some cases we allow the export of public profile information. You can control how your information is exported by changing which parts of your public profile are accessible to search engines.

**2.12. Talent Recruiting, Marketing and Sales Solutions**
We offer customized people-search functionality along with organizational and communications tools (including activity alerts) as part of our talent recruiting, marketing and sales solutions. These services allow subscribers - generally, enterprises and professional organizations - to export limited information from Members' public profiles, such as name, headline, current company, current title, and location (for example, San Francisco Bay Area), in order to effectively manage candidate sourcing. You may limit or prevent such subscribers from exporting your profile information by configuring your public profile visibility settings to restrict access to these fields. We do not provide email or other contact information to these subscribers. However, if you post that information as part of your profile it will be available to them and others. A recruiter or other such subscriber may also manage and store information it has independently obtained about you outside of our Services, such as a resume, in connection with our platform. Any personal information obtained independently of our Services will not be added by us to your profile and is not under our control but is subject to the policies of our recruiting, marketing or sales solution subscriber. We store such information on behalf of such subscriber who can remove it at any time. We do not further process such information.

Companies and other entities can create pages on our Services. If you follow one of these pages, non-identifiable information about you will be provided to the page's administrators.

**2.13. Pages for Companies, Schools, Influencers, and Other Entities**
Certain pages on the Services are public (e.g,. company and college pages), and any communications or information shared through them will be accessible by the entity that created them. If you follow a person or organization, you will be listed among its followers, which can be viewed by others including the page owner. We use aggregate information about followers and viewers to provide data about such pages' performance (for example, visits and updates).

We may disclose your personal information if compelled by law, subpoena, or other legal process, or if necessary to enforce our User Agreement.

**2.14. Compliance with Legal Process and Other Disclosures**
It is possible that we may need to disclose personal information, profile information, or information about your activities as a Member or Visitor when required by law, subpoena, or other legal process, whether in the United States, Ireland, or other jurisdictions, or if we have a good faith belief that disclosure is reasonably necessary to (1) investigate, prevent, or take action regarding suspected or actual illegal activities or to assist government enforcement agencies; (2)

enforce the User Agreement, investigate and defend ourselves against any third-party claims or allegations, or protect the security or integrity of our Service; or (3) exercise or protect the rights, property, or safety of LinkedIn, our Members, personnel, or others. We attempt to notify Members about legal demands for their personal information when appropriate in our judgment, unless prohibited by law or court order or when the request is an emergency. In light of our principles, we may dispute such demands when we believe, in our discretion, that the requests are overbroad, vague or lack proper authority, but do not commit to challenge every demand. To find out more about how we engage with government requests for data see our Law Enforcement Data Request Guidelines.

| | |
|---|---|
| If there is a change in control or sale of all or part of LinkedIn, we may share your information with a third party, who will have the right to use that information in line with this Privacy Policy. | **2.15. Disclosures to Others as the Result of a Change in Control or Sale of LinkedIn Corporation**<br>We may also disclose your personal information to a third party as part of a sale of the assets of LinkedIn Corporation, a subsidiary, or division, or as the result of a change in control of the company or one of its affiliates, or in preparation for any of these events. Any third party to which we transfers or sells our assets will have the right to continue to use the personal and other information that you provide to us in the manner set out in this Privacy Policy. |
| We may employ third parties to help us with the Services | **2.16. Service Providers**<br>We may employ third party companies and individuals to facilitate our Services (e.g. maintenance, analysis, audit, marketing and development). These third parties have limited access to your information only to perform these tasks on our behalf and are obligated to LinkedIn not to disclose or use it for other purposes. |
| We may process your information outside the country where you live. | **2.17 Data Processing Outside Your Country**<br>We may transfer your information and process it outside your country of residence, wherever LinkedIn, its affiliates and service providers operate. |

Back to Top ▲

# 3. Your Choices & Obligations

| | |
|---|---|
| You can change your LinkedIn information at any time by editing your profile, deleting content that you have posted, or by closing your account. You can also ask us for additional information we may have about your account. | **3.1. Rights to Access, Correct, or Delete Your Information, and Closing Your Account**<br>You have a right to (1) access, modify, correct, or delete your personal information controlled by LinkedIn regarding your profile, (2) change or remove your content, and (3) close your account. You can request your personal information that is not viewable on your profile or readily accessible to you (for example, your IP access logs) through LinkedIn's Help Center. If you close your account(s), your information will generally be removed from the Service within 24 hours. We generally delete closed account information and will de-personalize any logs or other backup information through the deletion process within 30 days of account closure, except as noted below.<br><br>With respect to SlideShare accounts and activity, if you would like us to delete your record and/or remove a particular comment you have made on SlideShare.net, or to provide a copy of any personal information to which you may be entitled, please contact us at privacy@slideshare.com. We will remove your information from SlideShare.net within 24 hours and delete and/or de-personalize it from our systems within 30 days of closure, except as noted below.<br><br>**Please note:** Information you have shared with others (for example, through InMail, network updates, content sharing, or Groups) or that others have copied may also remain visible after you have closed your account or deleted the information from your own profile. Groups content associated with closed accounts will show an unknown user as the source. In addition, you may not be able to access, correct, or eliminate any information about you that other Members copied or exported out of our Services, because this information may not be in our control. Your public profile may be displayed in search engine results until the search engine refreshes its cache. |
| We keep your information for as long as your account is active or as needed. For example, we may keep certain information even after you close your account if it is necessary to comply with our legal obligations, meet regulatory requirements, resolve disputes, prevent fraud and abuse, or enforce this agreement. | **3.2. Data Retention**<br>We retain the personal information you provide while your account is in existence or as needed to provide you services. We may retain your personal information even after you have closed your account if retention is reasonably necessary to comply with our legal obligations, meet regulatory requirements, resolve disputes between Members, prevent fraud and abuse, or enforce this Privacy Policy and our User Agreement. We may retain personal information, for a limited period of time, if requested by law enforcement. Our Customer Service may retain information for as long as is necessary to provide support-related reporting and trend analysis only, but we generally delete or de-personalize closed account data consistent with Section 3.1., except in the case of our plugin impression data (i.e., the information that you visited on sites carrying our social plugin, but which you did not click on), which we de-personalize within 7 days (although we |

do maintain 30 days worth of webserver logs for security, debugging, and site stability purposes only) by creating aggregate data sets that cannot be traced back to individuals.

Back to Top ▲

# 4. Important Information

You have to meet LinkedIn's minimum age requirements to create an account.

Visit our Safety Center for tips on using LinkedIn smartly and securely.

### 4.1. Minimum Age
As described in Section 2.1 of the User Agreement, persons must be of Minimum Age to use LinkedIn. Please visit our Safety Center for additional information about safely using our Services.

---

We partner with TRUSTe because we take your privacy seriously and are committed to putting you and all of our Members first. TRUSTe certifies our compliance with the TRUSTe program and verifies our compliance with the US-EU and US-Swiss Safe Harbor programs. If you can't resolve a complaint through LinkedIn Customer Support, you may also contact TRUSTe.



### 4.2. TRUSTe and Safe Harbor
LinkedIn.com and SlideShare.net have been awarded TRUSTe's Privacy Seal signifying that this Privacy Policy and its practices have been reviewed by TRUSTe for compliance with TRUSTe's program requirements.

If you have questions or concerns regarding this Policy, you should first contact LinkedIn. If contacting us does not resolve your complaint, you may raise your complaint with TRUSTe by Internet, by fax at 415-520-3420, or mail to TRUSTe Safe Harbor Compliance Dept. (click for mailing address). The complaint should include the name of company, the alleged privacy violation, your contact information, and whether you would like the particulars of your complaint shared with the company. The TRUSTe dispute resolution process shall be conducted in English. The TRUSTe program only covers information collected through www.linkedin.com, and does not cover information that may be collected through downloaded software or Plugins.

We comply with the U.S.-E.U. and U.S.-Swiss Safe Harbor Frameworks as set forth by the U.S. Department of Commerce regarding the collection, use, and retention of personal data from European Union member countries and Switzerland. We have certified that it adheres to the Safe Harbor Privacy Principles of notice, choice, onward transfer, security, data integrity, access, and enforcement. To learn more about the Safe Harbor program, and to view LinkedIn's certification, please visit http://www.export.gov/safeharbor/.

Note: The U.S.-E.U. Safe Harbor Framework is no longer recognized as a legal mechanism to transfer personal data from the EU to the US. LinkedIn Ireland uses other legal mechanisms, including standard contractual clauses. Learn more.

---

We will notify you when we change this Privacy Policy.

### 4.3. Changes to this Privacy Policy
We may change this Privacy Policy from time to time. If we make significant changes in the way we treat your personal information, or to the Privacy Policy, we will provide notice to you on the Services or by some other means, such as email. Please review the changes carefully. If you agree to the changes, simply continue to use our Services. If you object to any of the changes to our terms and you no longer wish to use our Services, you may close your account(s). Unless stated otherwise, our current Privacy Policy applies to all information that we have about you and your account. Using our Services after a notice of changes has been communicated to you or published on our Services shall constitute consent to the changed terms or practices.

---

We don't share any of your personal information with third parties for direct marketing.

### 4.4. California's Shine the Light Law
California Civil Code Section 1798.83, known as the "Shine The Light" law, permits our customers who are California residents to request and obtain from us a list of what personal information (if any) we disclosed to third parties for direct marketing purposes in the preceding calendar year and the names and addresses of those third parties. Requests may be made only once a year and are free of charge. Under Section 1798.83, we currently do not share any personal information with third parties for their direct marketing purposes.

---

We take privacy and security seriously and have enabled HTTPS access to our site (turn on HTTPS), in addition to existing SSL access over mobile devices. Also, please know that the Internet is not a secure environment, so be careful and select strong passwords.

### 4.5. Security
We have implemented security safeguards designed to protect the personal information that you provide in accordance with industry standards. Access to your data on our Services is password-protected, and data such as credit card information is protected by SSL encryption when it is exchanged between your web browser and the Services. We also offer secure https access to the LinkedIn.com website. To protect any data you store on our servers, we also regularly monitor our system for possible vulnerabilities and attacks, and we use a tier-one secured-access data center. However, since the Internet is not a 100% secure environment, we cannot ensure or warrant the security of any information that you transmit to us. There is no guarantee that information may not be accessed, disclosed, altered, or destroyed by breach of any of our physical, technical, or managerial safeguards. It is your responsibility to protect the security of

Privacy Policy | LinkedIn

your login information. Please note that emails, instant messaging, and similar means of
communication with other Members are not encrypted, and we strongly advise you not to
communicate any confidential information through these means. Please help keep your account
safe by using a strong password.

Back to Top ▲

### How To Contact Us

If you have questions or comments
about this Privacy Policy, please
contact us online or by physical mail
at:

**For Members in the United States:**

LinkedIn Corporation
Attn: Privacy Policy Issues
2029 Stierlin Court
Mountain View, CA 94043
USA

**For Members outside the United
States:**

LinkedIn Ireland
Attn: Privacy Policy Issues
Wilton Plaza
Wilton Place, Dublin 2
Ireland

Back to Top ▲

Help Center | About | Careers | Advertising | Talent Solutions | Sales Solutions | Small Business | Mobile | Language | **Upgrade Your Account**

LinkedIn Corporation © 2015 | User Agreement | Privacy Policy | Ad Choices | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

EXHIBIT "B"

Perkins v. LinkedIn

# Case Documents

Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards

Declaration of Nicholas Diamand

Declaration of Larry C. Russ

Declaration of Daniel P. Hipskind

Website Notice

Settlement Agreement

Class Action Complaint

Order Granting In Part & Denying In Part Defendant's Motion To Dismiss With Leave To Amend

Second Order Granting In Part & Denying In Part Defendant's Motion To Dismiss

Legal Representation

Attorneys' Fees

Cy Pres Recipients

Order Granting Preliminary Approval

Claim Form

Copyright © 2015  Privacy Policy

AMENDED PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Fletcher Law Offices 417 2nd Street, Suite 204, Eureka, CA 95501. On December 13, 2015, I served the within document(s):

CLASS MEMBER MARY MEANS OBJECTION TO CLASS SETTLEMENT, OBJECTION TO ATTORNEY FER AWARD & NOTICEOF INTENT TO APPEAR AT THE FINAL APPROVAL HEARING

DECLARATION OF FREDERIC R. FLETCHER

DECLARATION OF MARY MEANS

X- CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 14, 2015, at Eureka, California.

/s/ Frederic R. Fletcher
Frederic R. Fletcher

**AMENDED PROOF OF SERVICE OBJECTION OF CLASS MEMBER MARY MEANS**