UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PERKINS, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>LINKEDIN CORPORATION,<br><br>        Defendant. | Case No. 13-CV-04303-LHK<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS**<br><br>Re: Dkt. Nos. 116, 126 |

This matter is before the Court on Class Counsel's motion for final approval of the proposed class action settlement ("Settlement") between individual and representative Plaintiffs Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall, and the Class they represent (collectively, "Plaintiffs"), and Defendant LinkedIn Corporation ("LinkedIn" or "Defendant"). ECF No. 126 ("Mot. for Final Approval"). Class Counsel has also filed a motion for approval of attorney's fees, costs, and Class Representative awards. ECF No. 116 ("Mot. for Atty's Fees"). LinkedIn does not oppose either motion. The Court held a Final Approval Hearing on February 11, 2016.

    Having considered these motions, the parties' Settlement Agreement, the record in this

United States District Court<br>Northern District of California

1  case, and the arguments at the Final Approval Hearing, IT IS HEREBY ORDERED as follows:

2  Unless otherwise defined herein, all terms contained herein shall have the same meaning as

3  set forth in the Settlement Agreement.

4  The Court has jurisdiction over the subject matter of the Settlement Agreement with

5  respect to and over all parties to the Settlement Agreement, including all Class Members and

6  Defendant.

7  **I.**   **The Settlement Is Fair, Adequate, and Reasonable**

8  In evaluating a proposed class action settlement under Federal Rule of Civil Procedure

9  23(e), the standard is whether the settlement "is fundamentally fair, adequate and reasonable."

10  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Torrisi v.*

11  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  A district court may consider some or

12  all of the following factors when making this determination: "the strength of plaintiffs' case; the

13  risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class

14  action status throughout the trial; the amount offered in settlement; the extent of discovery

15  completed, and the stage of the proceedings; the experience and views of counsel; the presence of

16  a governmental participant; and the reaction of the class members to the proposed settlement."

17  *Officers for Justice*, 688 F.2d at 625.  The Court finds that the Settlement is fair, adequate, and

18  reasonable in light of these factors.

19  First, the Settlement reflects the strength of Plaintiffs' case as well as the Defendant's

20  position.  This Court has been "exposed to the litigants, and their strategies, positions and proof,"

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice*, 688

22  F.2d at 626), and finds that the judicial policy favoring the compromise and settlement of class

23  action suits is applicable here, *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

24  1992).  The Court is also satisfied that the Settlement was reached after arm's length negotiations

25  by capable counsel, aided by two experienced mediators, and was not a product of fraud,

26  overreaching, or collusion among the parties.  *Class Plaintiffs*, 955 F.2d at 1290.

27

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

2

United States District Court
Northern District of California

1    Second, the risks, expense, complexity, and likely duration of further litigation also

2    support final approval.  Had litigation proceeded without settlement, Plaintiffs would have had to

3    move for class certification, which LinkedIn intended to contest on multiple bases.  Additionally,

4    based on LinkedIn's representations at the Final Approval Hearing, it is likely that Plaintiffs

5    would have had to defend against a motion for summary judgment.  Further litigation would have

6    also required Plaintiffs to undertake significantly more discovery.  Moreover, any litigation

7    outcome would be subject to potential appeals, which would have (at best) substantially delayed

8    any potential recovery.  Lastly, claims under California's statutory right of publicity, Cal. Civ.

9    Code § 3344, raise the additional risk that, should Plaintiffs not prevail, Defendants would be

10   entitled to an award of attorney's fees.  *See* Cal. Civ. Code § 3344(a); *see also Perfect 10, Inc. v.*

11   *Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *14-*15 (C.D. Cal. Mar. 24,

12   2015) (discussing § 3344's fee-shifting provision).  Taken together, these circumstances suggest

13   that further litigation would have delayed any potential recovery for the Class and have been

14   costly and risky.  By contrast, the Settlement provides the Class with timely and certain recovery.

15   Third, as a result of this Settlement, LinkedIn has revised the disclosures relating to the

16   Add Connections service challenged in the instant suit.  In particular, the disclosures now clarify

17   that up to two Reminder Emails will be sent for each Add Connections invitation.  These

18   disclosures enable LinkedIn members to make fully-informed decisions before sending an Add

19   Connections invitation.  On its website, LinkedIn has added language to its Import Permission

20   Screens, including new "Learn More" and "Help Center" buttons, which alert LinkedIn users that

21   importing contact information in the Add Connections process entails a "one-time upload of [the

22   user's] address book contacts as well as their detailed contact information."  It also notifies users

23   that, in the course of importing a user's email contacts, "[LinkedIn] automatically selects all

24   contacts on the displayed list to be invited" and offers users the option to "uncheck the Select All

25   box" rather than manually de-selecting the contacts, as previously required.  LinkedIn has

26   amended its Invitation Permission Screens, adding that "[i]f someone you invite doesn't respond

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

1   right away, we'll send up to two reminders."  Finally, LinkedIn has implemented functionality

2   allowing users to manage their contacts, including viewing and deleting contacts and sending

3   invitations, as well as added functionality allowing members who invite contacts to connect

4   through Add Connections to withdraw those invitations.  This withdrawal functionality stops

5   Reminder Emails from being sent.  This non-monetary relief benefits millions of Class Members,

6   including those who did not submit a Claim Form.  The Court finds that this non-monetary relief

7   weighs in favor of final approval.

8        Moreover, the Settlement provides for meaningful consideration—a total of $13 million

9   where the class size is approximately 20.8 million.  The size of this fund provides more recovery

10  to the Class than other settlements that have been approved in privacy cases in this district, even

11  when factoring in the carve-outs for attorney's fees and service awards.  *See In re Google Referrer*

12  *Header Privacy Litig. ("In re Google")*, 87 F. Supp. 3d 1122, 1128, 1132 (N.D. Cal. 2015)

13  (granting final approval to $8.5 million settlement where the class size was estimated 129 million

14  members); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 940, 943-44 (N.D. Cal. 2013) (granting

15  final approval of $20 million cash fund where the class size was estimated 150 million members);

16  *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6-*7 (N.D. Cal. Mar.

17  18, 2013) (granting final approval to $9 million settlement where class size was estimated 62

18  million members).  Additionally, there is no possibility of reversion to LinkedIn.

19       Fourth, the extent of discovery completed and the stage of proceedings support approval.

20  The parties litigated two motions to dismiss, and Plaintiffs filed four complaints.  Plaintiffs

21  propounded requests for production and interrogatories to LinkedIn, which timely served

22  responses.  Plaintiffs assert that, before the Settlement, Plaintiffs were preparing to notice

23  depositions of eight senior LinkedIn employees.  ECF No. 116-1, Decl. of Nicholas Diamand

24  ("Diamand Decl."), ¶ 17.  Discovery was thus underway, and both parties had developed a

25  perspective on the strengths and weaknesses of their respective cases.

26

27                                          4

Fifth, the views of Plaintiffs' counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval. *Linney v. Cellular Alaska P'Ship*, No. 96-3008-DJL, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998). Class Counsel endorses the Settlement as fair, adequate, and reasonable. ECF No. 126-1, Decl. of Nicholas Diamand in Support of Plaintiffs' Motion for Final Approval ("Diamand Final Approval Decl.") ¶2; ECF No. 126-2, Decl. of Nathan D. Meyer ("Meyer Decl."), ¶ 2.

Finally, the reaction of the Class Members supports the Court's final approval of the Settlement. Out of 20.8 million Class Members, only nine individuals submitted valid objections. ECF No. 126-4, Decl. of Daniel Burke ("Burke Decl."), ¶ 27. An additional 77 individuals submitted objections that failed to comply with the procedural requirements set forth in this Court's order granting preliminary approval. *See id.* ¶ 28. Thus, in total, 86 individuals objected to the Settlement, or 0.0004% of the Class. Moreover, only 145 Class Members have opted out of the Settlement (0.0007% of the Class). Burke Decl. ¶ 30. Such low rates of objections and opt-outs are "indicia of the approval of the class." *Hughes v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2001 WL 34089697, at *1, *8 (W.D. Wash. Mar. 26, 2001) (finding indicia of approval when 9 class members out of 37,155, or just over .02%, who received notice submitted objections, and "less than 1%" opted out); *see also Sugarman v. Ducati N. Am., Inc.*, No. 5:10-CV-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class members—more than 0.1 percent—is a "positive response"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement (.05%), and 500 class members opted out (.56%)).

The Court has considered each objection and the arguments made by three objectors at the Final Approval Hearing. Attorney Alan Sherwood appeared at the Final Approval Hearing for Objectors Daniel Brown and Jenny Hill. Attorney Frederic Fletcher appeared at the Final Approval Hearing for Objector Mary Means. *See* ECF No. 133. The Court appreciates the

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  concerns expressed by the objectors.  However, the Court concludes that none of the objections

2  warrant rejection of the Settlement.  *See Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MM

3  DTBX, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The fact that there is opposition

4  does not necessitate disapproval of the settlement.  Instead, the court must independently evaluate

5  whether the objections being raised suggest serious reasons why the proposal might be unfair."

6  (brackets and internal quotation marks omitted)).  The Court first addresses general objections to

7  the Settlement and to the Settlement fund.  The Court then addresses objections to the Notice Plan,

8  the distribution plan, attorney's fees, and incentive awards respectively.

9          As a preliminary matter, the Court notes that at least five of the objectors are not members

10  of the Class—Boyan Boyanov, Nora Cordero, Johnnie Graham, Keith Miller, and Olen York—

11  and LinkedIn could not verify the class membership of an additional 29 objectors due to

12  insufficient information.[1]  ECF No. 131, Supplemental Decl. of Nicholas Diamand ("Diamand

13  Supp. Decl."), ¶ 13.  The Court need not consider the objections of non-Class members.  *See*

14  *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18,

15  2015) (declining to consider objections of individuals who do not appear to be class members).

16  Additionally, 77 of the objections are procedurally improper.[2]  On this basis alone, the Court may

17

18  _____

[1] The objectors for whom Class Counsel determined insufficient information was available to
determine class membership are:  June Barrett, Antuan Booker, William Calterwood, Ian Cornell,
Leanna Denham, Mary Don, Susan Entin, Melodie Ford, Elizabeth Garcia, Ashley Houston,
Anthony Krauch, Gloria Larravide, Tom Lucas, Gerald Monge, Donald Muldoon, Caleb Nelson,
Christopher Peters, Daniel Pratt, Karrie Reuter, Talita Robinson, Christine Ryan, Doug Smith,
Jeanine Thompson, Domenic Vitanza, K. Weeks, Steven White, Daniel Whitinger, Philip Wronga,
Farage Yusupov.  *See* Diamand Supp. Decl. ¶ 14; *see also* ECF No. 126-7, Decl. of Kenneth Jue
on Behalf of Settlement Administrator Gilardi & Co. LLC, Attaching Objections, ("Jue Decl."),
Exs. 2, 7, 11, 14, 16-18, 21-22, 30, 38, 41, 44, 49, 50-51, 53, 56, 59, 61, 63, 64, 72, 76-77, 79-80,
83, 85.
[2] For example, the Court's order granting preliminary approval required objectors to file their
objection with the Court, as well as provide the objector's name and contact information, an
explanation of the basis upon which the objector claims to be a member of the Class, and the
grounds for the objection.  *See* ECF No. 106, at 5-6; Settlement § 6.3.  Of the 77 procedurally
improper objections, 27 were not filed with the Court.  Burke Decl. ¶ 27-28, Ex. 3.  The remaining
50 objections lacked some of the information required by the Court's order granting preliminary
approval.  *Id.* Ex. 3.  According to the Settlement Administrator, the only procedurally valid
objections are from Daniel Brown and Jenny Hill, Susan House, Dylan Jacobs, Kin Wah Kung,
Timothy Lezon, Mary Means, Carol Tomcyzk, and Olen York.  *See id.* ¶ 27.  One of those

6

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

refuse to consider these objections. *See id.*; *see also Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling objections that were submitted because these objections "fail[ed] to comply with the procedural requirements for objecting to the Settlement"). Nevertheless, the Court also rejects these objections on the merits.

The majority of objectors—44 of the 86[3]—object on the grounds that this case should never have been brought. These objections do not comment on any aspect of the Settlement but, rather, oppose the claims alleged as being frivolous. Because such objections appear to support no recovery for the Class, these objectors' interests are adverse to the Class, and the objections are overruled. *See Ko v. Natura Pet Prods., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012) ("[A]n objection based on a concern for the Defendants and an apparent non-substantive assessment of the frivolity of the action are not germane to the issue of whether the settlement is fair."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *13 (N.D. Cal. Apr. 1, 2011) (overruling objections submitted that "do not go to the fairness of the settlement").

By contrast, 32 objectors wrote in support of the instant lawsuit. Youssef Rifai wrote, "I am requesting the case system administrator to consider my letter and approve the settlement." Jue Decl. Ex. 60. Lindsay Finnie wrote that she objects to the Settlement but "agree[s] with the terms of the lawsuit and expect[s] reimbursement." *Id.* Ex. 19. Nineteen additional individuals wrote to object to the conduct of LinkedIn at issue in this case.[4] For example, June Barrett wrote

---

objectors, Olen York, is not a Class Member. Diamand Supp. Decl. ¶ 13.

[3] These 44 objections were filed by Jamie Anderson-Stewart, Claude Baudoin, Erich Berg, Boyan Boyanov, William Calderwood, Ian Cornell, BC Crothers, Stephen Foerster, Melodie Ford, Gary Gill, Julie Gordon, Kevin Grell, Kira Harris, Ashley Houston, Mark Howard, Michael Hughes, Cassandra Jones, Roland Klose, Chinmay Kommuru, Anthony Krauch, August Lasseter, Timothy Lezon, Tom Lucas, Timothy McDonald, William McNamara, Keith Miller, Donald Muldoon, Caleb Nelson, Robert Petersen, Lyle Polyak, Philip Reinemann, Karrie Reuter, John Rollinson, Doug Smith, Gabriel Smith, Ken Stuczynski, Jeanine Thompson, Nozima Tojimatova, Carol Tomczyk, K. Weeks, Frederick Wells, Steven White, Daniel Whitinger, and Philip Wrona. Jue Decl. Exs. 1, 3-4, 8, 11, 14-15, 17, 20-21, 23, 25, 27-28, 30-32, 34-35, 37-38, 42, 46, 48, 50-51, 54-55, 58-59, 62, 64-65, 69, 72-74, 77-80, 93.

[4] These 19 objections were filed by June Barrett, Shataia Blocker, Anuan Booker, Anne Butman, Rustin Coburn, Nora Cordero, Susan Entin, Elizabeth Garcia, Julius Gonzalez, Johnnie Graham,

7

United States District Court
Northern District of California

1    "I did not agree to the two follow-up emails.  That persistence was annoying."  *Id.* Ex. 2; *see also,*

2    *e.g.*, Ex. 24 ("I Julius Gonzalez object to LinkedIn['s] improper use of Add Connections."); Ex. 40

3    (Objection of Diane Kushmer ) ("I did not give LinkedIn permission to send Reminder

4    endorsement emails to people in my personal email contact list through their 'Add Connections'.

5    I see this as an invasion to my privacy and to the privacy of the people in my contacts.").  These

6    individuals do not object to any specific terms of the Settlement, but object to the Settlement

7    generally.  Their disapproval of LinkedIn's conduct suggests that these individuals believe that the

8    Settlement is too low.

9    Lastly, eleven of the 32 objectors in support of the instant lawsuit expressly argue that the

10   Settlement is too low or otherwise insufficient.  These objectors are Gregory Berning, Daniel

11   Brown and Jenny Hill, Mary Don, Dylan Jacobs, Kim Wah Kung, Mary Means, Darline Spencer,

12   Gessica Still, Olen York, and Farage Yuzupov.  *See id.* Exs. 5, 9, 17, 33, 39, 47, 66-67, 84-85.  For

13   example, Daniel Brown and Jenny Hill assert that the Settlement is too low given that the

14   Settlement releases LinkedIn from potentially hundreds of millions of dollars in liability.  *Id.* Ex.

15   9.  At the Final Approval Hearing, the attorney for Daniel Brown and Jenny Hill argued that the

16   Settlement does not fully account for the level of harm caused by LinkedIn's conduct.  Objector

17   Farage Yuzupov wrote that it is "unjust" for the Class Members to receive only $10 each.  *Id.* Ex.

18   85.

19   In objecting to the size of the Settlement, none of these Class Members adequately take

20   into account the risks and delays involved in proceeding to class certification, summary judgment,

21   and/or trial.  They ignore that the Settlement provides the class with a timely, certain, and

22   meaningful cash recovery, while further litigation and any subsequent appeal are uncertain, would

23   entail significant additional costs, and in any event would substantially delay any recovery

24   achieved.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an

25

26   Diane Kushmer, Gerald Monge, Christopher Peters, Donata Ray, Carol Stocks, Scott Teague,
     Efrain Valdez, Melanie Wobig, and Quintena Woodward.  Jue Decl. Exs. 2, 6-7, 10, 12-13, 18, 22,
27   24, 26, 40, 49, 53, 57, 68, 71, 75, 81-82.

8

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1  abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

2  1998) (quoting *Officers for Justice*, 688 F.2d at 624) (affirming settlement approval). "Estimates

3  of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at

4  trial, the expense of litigating the case, and the expected delay in recovery (often measured in

5  years)." *Browne*, 2010 WL 9499072, at *12. Thus, "[t]he fact that a proposed settlement may

6  only amount to a fraction of the potential recovery does not, in and of itself, mean that the

7  proposed settlement is grossly inadequate and should be disapproved." *Linney*, 151 F.3d at 1242

8  (internal quotation marks omitted).

9         Additionally, these objectors do not account for the fact that the Settlement fund does not

10  constitute all of the relief to the Class. As discussed above, LinkedIn has also implemented new

11  disclosures and added functionality regarding the Add Connections service. Objector Mary Means

12  argues that this non-monetary relief is a "scam" and that LinkedIn should be disclosing (1) that

13  LinkedIn "intend[s] to sell the data collected on the open market for profit," and (2) any data

14  LinkedIn collects is at risk for cybercrime or a security breach. Jue Decl. Ex. 47. The Court

15  disagrees. The instant lawsuit did not raise concerns about the sale of data or possible data

16  breaches. Instead, the lawsuit challenged LinkedIn's practice of harvesting contact information

17  from LinkedIn members' external email accounts and sending two reminder emails to those

18  harvested contacts for each Add Connections invitation. *See* ECF No. 70 (Third Amended Class

19  Action Complaint); *cf.*, *e.g.*, Jue Decl. Ex. 10 (Objection of Anne Butman) ("I am not happy with

20  LinkedIn's decision to send the two follow [u]p emails to contacts listed in my mail account."); *id.*

21  Ex. 13 (Objection of Nora Cordero) ("Linkedin has not been given my consent to remind my

22  contacts twice to connect with me. I think it is annoying and pesters people who I respect

23  professionally."). The disclosures secured by the Settlement precisely target this challenged

24  conduct, and substantially benefit the Class by enabling LinkedIn members to make fully-

25  informed decisions before sending an Add Connections invitation. The added functionality also

26  provides LinkedIn members the ability to cancel the reminder emails for many Add Connections

27

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1   invitations at once.  Moreover, contrary to Mary Means's assertion, Class Counsel has confirmed

2   that all of the non-monetary relief has been implemented.  *See* ECF No. 105-4, Decl. of Adam I.

3   Kaplan ¶¶ 3-5, Exs. A-E; ECF No. 126-3, Decl. of Dorian S. Berger.

4       A number of objectors[5] contend that the result here is inadequate because California's

5   statutory right of publicity, Cal. Civ. Code § 3344, provides for $750 in statutory damages, much

6   more than the total amount that will be distributed to each Class Member through this Settlement.

7   Objector Mary Means, for example, argues that the statutory penalty alone would have resulted in

8   a recovery of $1.56 billion for the 20.8 million members of the Class.  Jue Decl. Ex. 47.  While

9   such a recovery may theoretically have been possible, the Settlement represents a fair and

10  adequate compromise in light of significant risks faced by the class and the delay in any potential

11  recovery from proceeding with litigation.  As explained by Class Counsel at the Final Approval

12  Hearing, Plaintiffs may have had difficulty in certifying a class and in demonstrating "mental

13  harm," a requirement for claims under § 3344.  *See also* ECF No. 69 (Court's Order Granting in

14  Part and Denying in Part Defendant's Motion to Dismiss), at 21-27 (noting that a plaintiff must

15  plead mental harm in order to claim minimum statutory damages under § 3344).  Additionally, if

16  Plaintiffs failed to prevail on the § 3344 claim, Plaintiffs risked being ordered to pay LinkedIn's

17  attorney's fees.  *See* Cal. Civ. Code § 3344(a); *see also Perfect 10, Inc.*, 2015 WL 1746484, at

18  *14-15 (discussing § 3344's fee-shifting provision).  Even if Plaintiffs were to prevail after further

19  litigation, recovery would be delayed by the time needed to finish discovery, resolve motions for

20  class certification and summary judgment, conduct a trial, and possibly defend against any

21  appeals.

22      That certain Class Members evaluate the risks differently, or would prefer to go to trial

23  despite those risks, does not prevent the Court from granting final approval to the Settlement.  *See*

24  *Browne*, 2010 WL 9499072, at *15 ("The fact that there is opposition does not necessitate

25

26  _____

27  [5] Daniel Brown and Jenny Hill, Susan House, Dylan Jacobs, and Mary Means.  Jue Decl. Exs. 9, 29, 33, 47.

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

disapproval of the settlement.  Instead, the court must independently evaluate whether the objections being raised suggest serious reasons why the proposal might be unfair." (citation omitted)).  Accordingly, these objections are overruled.

Next, five individuals object to the Settlement approval, but do not provide the grounds for their objections: Leanna Denham, Shirley Kollenberg, Talita Robinson, Christine Ryan, and Domark Vitanza.  *Id.* Exs. 16, 36, 61, 63, 76.  For example, one objection reads "My name is Leanna Denham, I do not believe that any settlement should be approved for LinkedIn Corp."  Jue Decl. Ex. 16.  It is not clear whether these objectors believe that a settlement is inappropriate because the instant lawsuit should not have been brought; believe that this specific Settlement is insufficient; or object on another basis.  Although the Court notes the concerns of these objectors, their general opposition to settlement does not convince the Court that the instant Settlement is inadequate.  By contrast, the Court finds that the Settlement provides substantial benefit to the Class.

Finally, Mary Means claims that the "Release goes too far by releasing all related claims including future claims."  *Id.* Ex. 47.  In fact, the Release applies to claims that "were asserted or could have been asserted arising from or related to allegations in the Action regarding the alleged use of Add Connections to grow LinkedIn's member base."  Claims based upon LinkedIn's theoretical future conduct were not, and could not, have been asserted in this action and, thus, are outside the scope of the Release.  Further, in releasing claims "arising from or related to" the allegations in the Action, the Release is within the bounds set by precedent in this District. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 6114379, at \*4, \*9 (N.D. Cal. Nov. 20, 2013) (approving class settlement release of claims "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised on the allegations of the Action"); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1    action, but only where the released claim is based on the identical factual predicate as that

2    underlying the claims in the settled class action." (internal quotation marks omitted)).

3            Accordingly, the Court overrules objections to the Settlement and the Settlement relief.

4    The Court next addresses the Notice Program and objections thereto.

5    **II.     <u>The Notice Program Was Appropriate</u>**

6            Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide

7    settlement Class Members with "the best notice that is practicable under the circumstances,

8    including individual notice to all members who can be identified through reasonable effort.  The

9    notice must clearly and concisely state in plain, easily understood language: (i) the nature of the

10   action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a

11   class member may enter an appearance through an attorney if the member so desires; (v) that the

12   court will exclude from the class any member who requests exclusion; (vi) the time and manner

13   for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule

14   23(c)(3)."

15           The Court finds that the Notice Plan has been fully implemented in compliance with this

16   Court's Order, ECF No. 106, and complies with Fed. R. Civ. P. 23(c)(2)(B).  Notice was sent to

17   Class Members by direct email.  The Email Notice, which was reviewed and approved by this

18   Court, provided a clear description of who is a member of the Class and Class Members' rights

19   and options under the Settlement.  The Notice explained the conduct at issue in the litigation, how

20   to receive money from the Settlement, how to opt-out of the Settlement, how to object to the

21   Settlement, how to obtain copies of relevant papers filed in the case, and how to contact Class

22   Counsel and the Settlement Administrator.  *See* ECF No. 106-2 (Email Notice attached to the

23   Court's order granting preliminary approval).

24           The Court approved this Notice Plan.  ECF No. 106.  The Court ordered LinkedIn to send

25   the Email Notice to each person in the Class using the email address that LinkedIn has on file for

26   the LinkedIn account.  *Id.* at 4.  Additionally, the Court ordered LinkedIn to attempt to re-send the

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Email Notice if emails resulted in a bounce-back or were otherwise undeliverable.  *Id.*  LinkedIn

2   distributed the Email Notice as directed.  *See* ECF No. 126-5, Decl. of Kurt Andersen, ¶ 5.

3   Through these efforts, approximately 95% of the Class successfully received the Email Notice.  *Id.*

4   ¶ 6.  The Court also ordered the Settlement Administrator, Gilardi & Co., LLC, to publish the

5   Website Notice through the Settlement Website, and to develop, host, and maintain such

6   Settlement Website.  ECF No. 106, at 4.  The Settlement Administrator did so.  Burke Decl. ¶ 2.

7   The Court found the Notice and Notice Plan "are consistent with the requirements of Rule 23 and

8   due process, and constitute the best notice practicable under the circumstances."  ECF No. 106, at

9   4.  Moreover, additional Notice was provided to the Class through extensive media coverage of

10  the Settlement and Notice, which further supports a finding that Class Members received adequate

11  notice of the Settlement.  *See* Diamand Final Approval Decl. ¶¶ 11-13, Exs. 1-6.

12      Class Members could submit a Claim Form either electronically, through the Settlement

13  Website, or by mail.  To show membership in the Class, the Claim Form permitted Class Members

14  to provide the unique Claim ID included in each Email Notice, or simply the email address

15  associated with their LinkedIn account.  Claimants were offered two options to receive payment:

16  direct deposit into the claimant's bank account, or payment by check.

17      Class Members also had a variety of methods by which to view relevant documents,

18  contact the Settlement Administrator or Class Counsel, opt out of the Settlement, or object to the

19  Settlement.  These methods included mail, telephone, the Settlement Website, and email.  For

20  example, the Settlement Administrator responded to 12,194 emails and 909 voicemails.  Burke

21  Decl. ¶¶ 7, 13.  Additionally, the Settlement Administrator received 143 requests for mailed copies

22  of the Notice over the telephone, by email and by mail.  *Id.* ¶ 12.  The Settlement Administrator

23  sent a copy of the Notice whenever one was requested.  *Id.*  Class Counsel responded to

24  approximately 10,000 calls from Class Members.  Meyer Decl. ¶ 8.

25      Six individuals have objected to the Notice:  Daniel Brown and Jenny Hill, Susan House,

26  Mary Means, Jorge Pardo, and Hannah Tanner.  Jue Decl. Exs. 9, 29, 47, 52, 70.  Specifically,

27

28  Case No. 13-CV-04303-LHK
    ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
    ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1    Daniel Brown, Jenny Hill, Susan House, and Jorge Pardo assert that the Notice should have

2    provided information on the size of the Class and the payment per Class Member.  At the Final

3    Approval Hearing, Daniel Brown and Jenny Hill argued, through their attorney, that the Notice

4    should have provided an estimate or range of potential recovery.  The Court disagrees that these

5    objections render the Notice defective.  First, "a precise award estimate for each Class Member

6    cannot be computed until the [Settlement] Administrator confirms and processes all [Claim

7    Forms] . . . [and] considers the Court's determination of the requests for attorney's fees,

8    unreimbursed out-of-pocket costs, Named Plaintiff service awards, and Settlement administration

9    costs."  *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL

10    5159441, at \*6-7 (N.D. Cal. Sept. 2, 2015).  Second, the Notice sufficiently apprised Class

11    Members of the Settlement's plan of allocation as well as the gross Settlement amount, the

12    proposed deductions for attorney's fees and Class Representative awards, and the contact

13    information for Class Counsel.  The Court previously found a similar notice sufficient.  *See id.*

14    (concluding, under similar circumstances, that Notice did not need to include individual allocation

15    amounts because such amounts could not be calculated at the time of the Notice).  Third, the

16    Notice indicated that LinkedIn would have to pay an additional $750,000 if pro rata payments

17    were less than $10 per Class Member.  *See* ECF No. 106-2.  The Notice also indicated that there

18    may be no pro rata payments at all.  *See id.*  Thus, the Notice provided Class Members some

19    indication of the possible payment amount.

20       Daniel Brown, Jenny Hill, Susan House and Mary Means also object to the failure of the

21    Notice to disclose the California Civil Code § 3344 claim and the associated possible $750

22    statutory penalty.[6]  Jue Decl. Exs. 9, 29, 47.  The Email Notice does not list any of the causes of

23    action asserted in the instant lawsuit, while the Website Notice identifies only the causes of action

24

25

26

27

---

[6] Susan House also argues that the Notice should have informed Class Members that statutory penalties are available under California's Unfair Competition law ("UCL").  Jue Decl. Ex. 29, at 4. In fact, the UCL provides for such penalties only in circumstances not applicable here, such as in an action by certain government entities.  *See* Cal. Bus. & Prof. Code §§  17206, 17206.1.

14

28    Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

asserted in the original complaint (which did not assert a claim under § 3344).  Although the Court

recognizes that it would have been preferable for the Website Notice to have listed every cause of

action asserted throughout the Action, the Court finds that the failure to do so was not erroneous.

First, in contrast to the objectors' belief, Rule 23 "does not require detailed analysis of the

statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require

an estimate of the potential value of those claims."  *In re Online DVD-Rental Antitrust Litig.*, 779

F.3d 934, 946 (9th Cir. 2015).  Instead, notice must "generally describe[] the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard."  *Churchill Vill.*, 361 F.3d at 575.  In fact, courts in this district regularly

approve notices that do not identify the specific causes of action.  *See, e.g.*, *Keller v. Nat'l

Collegiate Athletic Ass'n*, Nos. 4:09-cv-1967CW, 4:09-cv-3329CW, 2015 WL 5005901 (N.D. Cal.

Aug. 19, 2015).[7]  In the instant case, the Email and Website Notices described the conduct at issue

in the litigation, stated the amount of the Settlement fund, and explained how to receive money

from the Settlement, how to opt-out, how to object, how to obtain copies of relevant papers filed

in the case, and how to contact Class Counsel and the Settlement Administrator.  Additionally, the

Settlement Website provided Class Members links to the important documents in the case and

explained how to access the entire case file through the PACER Service Center.[8]

---

[7] Notice form available at NCAA and EA Videogame Likeness Settlements, http://www.ncaa-ea-likeness-settlement.com/case-documents.aspx (last accessed February 16, 2016).
[8] Susan House contends that the Settlement Website should have posted Class Counsel's motion for final approval during the Notice period.  Jue Decl. Ex. 29, at 4.  Mary Means asserts that the Settlement Website should have posted the motion for preliminary approval.  *Id.* Ex. 47, at 10. Susan House and Mary Means rely on the Procedural Guidance for Class Action Settlements ("Procedural Guidance") produced by the Northern District of California, which states that "notice should include . . . the address for a website, maintained by the claims administrator or class counsel, that has links to the . . . motions for approval."  Available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last accessed February 16, 2016). The Court concludes that the failure to post these two documents during the Notice period is not legally erroneous.  First, the Procedural Guidance does not constitute a legally binding interpretation of Rule 23.  Second, Class Counsel complied with the Court's order granting preliminary approval, which required the motion for final approval to be posted to the Settlement Website "on the date of filing" with the Court.  ECF No. 106, at 7.  The motion for final approval was not filed with the Court until after the Notice period, on January 14, 2016.  The Court did not order the parties to post the motion for preliminary approval on the Settlement Website.  Third,

15

United States District Court
Northern District of California

1    Second, the Email Notice alerts Class Members that, even if Class Members do nothing,

2    they "will also be giving up any claims [they] may have against LinkedIn based on its alleged

3    improper use of Add Connections to grow its member base."  The Website Notice provides the

4    exact terms of the Release, which releases claims "that were asserted *or could have been asserted*

5    arising from or related to allegations in the Action regarding the alleged use of Add Connections."

6    ECF No. 106-3 (emphasis added).  Accordingly, Class Members were apprised that causes of

7    action not listed in the Notice—or asserted in Plaintiffs' four complaints—may be released in the

8    Settlement.

9    Finally, Susan House, Mary Means, and Hannah Tanner contend that the Claim Form, in

10   conjunction with the Notice, deterred Class Members from filing claims. Jue Decl. Exs. 29, 47,

11   70.  Specifically, these objectors assert that the Claim Form should not have required each

12   claimant to declare under penalty of perjury that "I believe I was injured."  *See* ECF No. 106-1

13   (Claim Form).  The Court finds these objections are not well taken.  Claim forms may require the

14   claimant to attest to some fact under penalty of perjury.  *See California v. IntelliGender, LLC*, 771

15   F.3d 1169, 1175 (9th Cir. 2014) (noting district court granted final approval to settlement, where

16   notice required attestation under penalty of perjury); *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777

17   MHP, 2009 WL 3720872, at *2 (N.D. Cal. Nov. 3, 2009) (granting final approval to settlement,

18   when notice required attestation under penalty of perjury).  Additionally, the Court does not find

19   the "penalty of perjury" language to be too frequent or likely to deter the Class from completing

20   the Claim Form.  The original claim form submitted by the parties in support of the motion for

21   preliminary approval included the phrase "penalty of perjury" five times.  *See* ECF No. 96-1.

22   However, at the Court's insistence, the final Claim Form required a claimant to make only one

23

24   _____

25   during the Notice period, the Settlement Website included the Court's order granting preliminary
     approval.  Any interested party could thus determine the basis for preliminary approval during the
     Notice period.  Lastly, the Settlement Website told Class Members how to access the entire case

26   file, and how to contact Class Counsel.  Accordingly, the Court overrules the objections of Susan
     House and Mary Means to the Settlement Website.  *See Keller*, 2015 WL 5005901 (granting final

27   approval, although settlement website did not include motion for preliminary approval).

28
     Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

declaration under penalty of perjury.  *See* ECF No. 106-1 (Claim Form).  Lastly, if Class Members

were unsure as to the meaning of the term "injured," Class Members had a variety of mechanisms

for obtaining advice from Class Counsel.  In fact, Class Counsel provided clarification of the

meaning of the term "injured" to Class Members who reached out to Class Counsel with

questions.  Meyer Decl. ¶ 21.

Mary Means also contends that the Claim Form deterred individuals from filing a claim

because the Claim Form required the claimant to provide sensitive banking information.  Jue Decl.

Ex. 47, at 7.  However, the Claim Form clearly stated that claimants could request payment by

check, which did not require banking information.  *See* ECF No. 106-1 (Claim Form).

Additionally, all website submissions were encrypted, and the Settlement Administrator has

received an independent certification and accreditation with regard to information technology

infrastructure and security requirements.  Burke Decl. ¶ 16.

In sum, the Court finds that the Notice Plan was fully implemented and complies with both

due process and Rule 23.

### III.    <u>The Plan of Distribution is Fair, Reasonable and Adequate.</u>

The Plan of Distribution is fair, reasonable and adequate.  It will provide each Class

Member with a pro rata payment from the monetary relief available for such payments.  Each

Authorized Claimant will receive approximately $20.  Such pro rata distributions are "cost-

effective, simple, and fundamentally fair."  *High-Tech*, 2015 WL 5159441, at *8 (quoting *In re*

*Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997); *see also In re*

*Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 404 (D.N.J. 2006) (finding pro rata

distribution "eminently reasonable and fair to the class members").

The Court also notes that there will be no reversion of unclaimed funds to LinkedIn.

Instead, any funds from checks not cashed within ninety days of issuance and funds from failed

bank deposit transfers shall revert to the Settlement Fund.  Settlement, § 3.1.2(b).  If, in

consultation with the Settlement Administrator, the parties determine that such reverted funds can

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

be distributed again pro rata to the Authorized Claimants in an "economically feasible" manner, the funds shall be distributed accordingly. *Id.* If not, the Settlement Administrator will distribute the reverted funds pro rata to the three *cy pres* recipients: Access Now, Electronic Privacy Information Center ("EPIC"), and the Network for Teaching Entrepreneurship ("NFTE"). *Id.*

Five individuals object to the *cy pres* distribution:  Susan House, Dylan Jacobs, Mary Means, Daniel Pratt, and Hannah Tanner. Jue Decl. Exs. 29, 33, 47, 56, 70.  Dylan Jacobs and Daniel Pratt appear to object to the practice of *cy pres* distribution. *Id.* Exs. 33 (Objection of Dylan Jacobs) (stating that a "better alternative [to *cy pres*] would be to distribute further rounds of payments to class members who cash their initial checks"); 56 (Objection of Daniel Pratt) ("I believe that there is no amount too small to be economically feasible, even if it results in a check for pennies to each potential recipient of the settlement class.").  However, "federal courts frequently use the *cy pres* doctrine in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (internal quotation marks omitted).  Additionally, it is common practice for the parties to a settlement to select the *cy pres* recipients, subject to court approval. Dylan Jacobs states that "it is troubling that no recipient is identified in the settlement agreement." Jue Decl. Ex. 33.  In fact, however, the three *cy pres* recipients are identified in the Settlement, § 1.12, and on the Settlement Website.

Further, the Settlement provides for a second round of payment to Class Members from any uncashed checks or other reverted funds, unless pro rata distribution is not economically feasible.  Settlement § 3.1.2(b).  Daniel Pratt disapproves of the failure of the Settlement to more precisely define when it is "economically feasible" to distribute funds to the Class.  However, the parties agreed to work together, with the neutral and experienced Settlement Administrator, to determine what is economically feasible.  Additionally, as LinkedIn acknowledged at the Final Approval Hearing, the parties are guided by case law on *cy pres* distribution. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) (affirming *cy pres* distribution when it would be

18

1    "burdensome" and "inefficient" to pay the funds to the class because "each class member's

2    recovery under a direct distribution would be de minimis").

3            Mary Means objects on the basis that all of the Settlement will go to the *cy pres* recipients,

4    and no money to the Class.  This objection is denied as moot, as each Class Member who

5    submitted a valid Claim Form will receive approximately $20.  Additionally, the Settlement

6    provides for a second round of payment to Class Members from any unclaimed funds resulting

7    from uncashed checks or failed bank transfers, unless further pro rata distribution is not

8    economically feasible.  Settlement § 3.1.2(b).

9            Susan House, Daniel Pratt, and Hannah Tanner object to the specific *cy pres* recipients

10   selected.  Jue Decl. Exs. 29, 56, 70.  Under Ninth Circuit law, *cy pres* distribution must be "guided

11   by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members."

12   *Nachshin*, 663 F.3d at 1039.  There must be "a driving nexus between the plaintiff class and the *cy*

13   *pres* beneficiaries."  *Id.* at 1038-39.  In *Nachshin*, the Ninth Circuit noted three "guiding

14   standards" from earlier case law.  A *cy pres* distribution should "(1) address the objectives of the

15   underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any

16   member will be benefitted."  *Id.* at 1039.  However, courts "do not require as part of [*cy pres*]

17   doctrine that settling parties select a *cy pres* recipient that the court or class members would find

18   ideal."  *Lane*, 696 F.3d at 821.

19           First, all three of the selected *cy pres* recipients are organizations with programs or

20   activities across the United States, which accounts for the broad geographic distribution of the

21   class.  Susan House and Hannah Tanner believe that Access Now spends "less than two percent of

22   its programming resources in the United States."  Jue Decl. Exs. 29, 70.  Hannah Tanner points to

23   a chart from Access Now's most recent tax filing, which she claims indicates that only 2% of

24   Access Now's programming budget goes to activities in North America.  *Id.* Ex. 70, at 4-5.

25   However, a review of Access Now's 2014 tax return indicates that the chart identified by Hannah

26   Tanner addresses spending in North America, *excluding* in the United States.  *See* Diamand Supp.

27

28
     Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1  Decl. ¶ 16, Ex. 3.  The 2014 tax return indicates that Access Now actually spends somewhere over

2  65-70% of its funding on programming and expenses within the United States.  *See id.*

3        Second, the Court concludes that the three *cy pres* recipients are sufficiently related to the

4  instant lawsuit.  At the Final Approval Hearing, Class Counsel indicated that the recipients were

5  selected to address different aspects of the lawsuit: the promotion of digital rights, the protection

6  of privacy, and the furtherance of networking opportunities for professionals.  The first two goals,

7  Class Counsel explained, target the objectives underlying the claims asserted in the lawsuit, while

8  the third goal targets the Class Members.

9        The first *cy pres* recipient, Access Now, works on securing and promoting digital rights.

10  While Susan House and Hannah Tanner claim that Access Now is anti-American and overtly

11  political, political advocacy does not disqualify a *cy pres* recipient.[9]  *See In re Netflix Privacy*

12  *Litig.*, 2013 WL 1120801, at *7 (approving leading "consumer and privacy advocacy groups and

13  academic institutions" as *cy pres* recipients); *In re Visa Check/MasterMoney Antitrust Litig.*, No.

14  96-CV-5238 (JG), 2011 WL 5029841, at *6, 9 (E.D.N.Y. Oct. 24, 2011) (approving *cy pres* award

15  to organizations engaged in advocacy before Congress, federal agencies, and federal courts).  In

16  fact, Access Now's promotion of digital rights is what creates a "nexus" between Access Now and

17  the claims in this lawsuit.  Access Now is also connected to the plaintiff Class, which includes

18  users of the Internet who are concerned about digital rights.

19        Similarly, EPIC is dedicated to electronic privacy rights and thus has a nexus to Plaintiffs'

20  claims.  Susan House and Hannah Tanner call EPIC a "repeat-player" that has received millions of

21  _____

22  [9] Hannah Tanner argues that donating funds to organizations engaged in political advocacy is
    effectively a compelled political donation in violation of the First Amendment. Jue Decl. Ex. 70,

23  at 13-16.  Tanner points to no authority—case law or otherwise—addressing free speech in the
    context of a *cy pres* distribution.  *Cf. In re Google*, 87 F. Supp. 3d at 1137 ("[O]bjectors to a class

24  action settlement bear the burden of proving any assertions they raise challenging the
    reasonableness of a class action settlement." (citing *United States v. Oregon*, 913 F.2d 576, 581

25  (9th Cir. 1990))).  The Court, in its own research, has found none.  Tanner also fails to explain
    why a *cy pres* distribution upon a court order serves as speech by Tanner.  Given the lack of

26  relevant authority and the fact that courts consistently approve *cy pres* awards to organizations
    engaging in advocacy related to the class's claims, the Court declines to find the plan distribution

27  unreasonable based on this objection.

20

28  Case No. 13-CV-04303-LHK
    ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
    ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1  dollars in *cy pres* grants from "countless privacy cases" and has "nothing to show for it."  Jue

2  Decl. Exs. 29, 70.  However, neither Susan House nor Hannah Tanner provide any authority that

3  an organization cannot receive multiple *cy pres* awards.  Rather, the Court finds that EPIC's

4  receipt of other *cy pres* awards in privacy cases demonstrates that EPIC is well-suited to be a *cy*

5  *pres* recipient in the instant privacy case.  *See In re Google Buzz Privacy Litig.*, 2011 WL

6  7460099, at *1 ("EPIC has demonstrated that it is a well-established and respected organization

7  within the field of internet privacy.").

8  Lastly, Susan House and Hannah Tanner object to NFTE because Reid Hoffman, the co-

9  founder of LinkedIn, is on NFTE's "Board of Overseers."  Jue Decl. Exs. 29, 70.  Class Counsel

10  responds that Class Counsel has investigated and "found no evidence that either Mr. Hoffman or

11  LinkedIn have any pecuniary interest in funds provided to NFTE."  Mot. for Final Approval, at 19.

12  Further, Class Counsel represented at the Final Approval Hearing that Class Counsel, not

13  LinkedIn, suggested NFTE as a *cy pres* recipient.  Class Counsel also represented that, at the time

14  of selection, Class Counsel was unaware of NFTE's link to Reid Hoffman.  While this may cast

15  doubt on the effectiveness of Class Counsel's due diligence, it also undermines any assertions of

16  self-dealing by LinkedIn.  Accordingly, Hoffman's connection to NFTE does not make the

17  Settlement distribution plan unreasonable.  *See Lane*, 696 F.3d at 825-26 (overruling objection

18  based upon Notice's failure to disclose that the defendant's employee was on the board of the

19  organization distributing *cy pres* funds).

20  Additionally, NFTE aims "to provide programs that inspire young people from low-

21  income communities to stay in school, to recognize business opportunities and to plan for

22  successful futures."  Network for Teaching Entrepreneurship, mission & history,

23  https://www.nfte.com/what/mission (last accessed February 16, 2016).  At the Final Approval

24  Hearing, Class Counsel explained that this organization targets the plaintiff Class, who use

25  LinkedIn for professional networking and to foster professional ambitions, and who are concerned

26  about their career-related reputations.  *See also* Mot. for Final Approval, at 18 (noting the "career-

27

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

related reputational issues at stake in this case"). Class Counsel thus represented that NFTE is likely to benefit members of the Class and to promote the interests of the Class. Although NFTE does not specifically focus on privacy or digital rights, the Court finds that distribution to NFTE has a sufficient nexus to the plaintiff Class, for the following reasons.

In approving a *cy pres* distribution plan, the Court must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Nachshin*, 663 F.3d at 1039. In *Nachshin*, the Ninth Circuit noted three "guiding standards" from earlier case law: a *cy pres* distribution should "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." *Id.* at 1039. *Nachshin*, however, did not explain whether an individual organization must meet each of these standards in order to be a proper *cy pres* recipient, or whether a strong nexus to one standard, in the absence of a strong connection to the other standards, suffices to serve the "interests of the silent class members." In *Nachshin*, the Ninth Circuit reversed a *cy pres* award that "fails to target the plaintiff class" and "ha[s] no apparent relation to the objectives of the underlying statutes, and it is not clear how [the *cy pres* recipient] would benefit the plaintiff class." *Id.* at 1040-41. Later, in *Dennis v. Kellogg Co.*, the Ninth Circuit again reversed a *cy pres* award when the *cy pres* recipients did not relate to the underlying class claims and "may not serve a single person within the plaintiff class." 697 F.3d 858, 867 (9th Cir. 2012). The Ninth Circuit noted that a *cy pres* distribution is unacceptable when the award has "little or nothing to do with the purposes of the underlying lawsuit *or* the class of plaintiffs involved." *Id.* at 866 (emphasis added) (quoting *Nachshin*, 663 F.3d at 1039). By contrast, the Ninth Circuit upheld a *cy pres* award when the *cy pres* recipients "promote[d] the causes of online privacy and security," which would "benefit absent class members and further the purposes of the privacy statutes that form the basis for the class-plaintiffs' lawsuit," and "there [was] no issue in this case . . . [that] the *cy pres* entities' missions are unrelated to the class's interests or [] their geographic scope is too limited." *Lane*, 696 F.3d at 821.

United States District Court
Northern District of California

1    *Nachshin*, *Dennis*, and *Lane* encourage the selection of *cy pres* recipients that both

2    promote "the objectives of the underlying statute(s)" and serve "the interests of the silent class

3    members."  Although the Court agrees that a nexus with both is preferable, the Court does not read

4    these cases to compel each *cy pres* recipient to have a nexus with both the underlying statutes and

5    the plaintiff class.  Rather, the Court must be "guided by" these considerations and evaluate

6    whether the *cy pres* distribution is "the next best distribution" to giving the funds directly to the

7    class members.  *Dennis*, 697 F.3d at 865.  Here, the Court acknowledges that the connection

8    between NFTE and the underlying claims in the lawsuit is attenuated.  However, after hearing

9    Class Counsel at the Final Approval Hearing, the Court finds Class Counsel's explanation behind

10   the selection of NFTE to be credible, well-intentioned, and persuasive.  Class Counsel has

11   convinced the Court that there is a nexus between NFTE and the plaintiff Class, and that it is

12   likely some plaintiff Class Members will benefit from designating NFTE as a *cy pres* recipient.

13   Thus, although *cy pres* distribution to NFTE does not "serve the goals of the [underlying claims],"

14   it does "protect the interests of the silent class members."  In light of this "driving nexus between

15   the plaintiff class and the *cy pres* beneficiaries," *Nachshin*, 663 F.3d at 1038-39, the Court finds

16   distribution to NFTE is not unreasonable.

17       The Court's conclusion is supported by two additional considerations.  First, as discussed

18   above, Access Now and EPIC are closely tied to the underlying claims in the lawsuit.  Thus, the

19   three *cy pres* recipients, together, target both the objectives of the underlying claims and the

20   plaintiff Class.  Second, the amount of money that goes to NFTE is likely to be modest.

21   Settlement funds will only be distributed to the *cy pres* recipients if claimants do not cash their

22   checks or the bank deposits fail, and a second round of pro rata distribution to Class Members is

23   not feasible.  The Class Members are highly motivated individuals who went through the trouble

24   of filling out a Claim Form under penalty of perjury.  Thousands of Class Members even filled out

25   an additional form, after receiving notice from the Settlement Administrator that their Claim

26   Forms were deficient.  Additionally, Class Members who chose to receive payment by direct

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

23

1   deposit submitted Claim Forms with their current bank account information only two months ago.

2   It is thus unlikely that many deposits will be rejected.  Further, $20 is not a de minimis payment.

3   The Court does not believe that claimants who went through the effort of submitting a valid Claim

4   Form are unlikely to cash a $20 check.  Finally, any *cy pres* distribution will be shared pro rata

5   among the three selected recipients.  Accordingly, the Court finds that the *cy pres* distribution to

6   NFTE is likely to be small.  *See Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL,

7   2012 WL 398816, at *4 (N.D. Cal. Feb. 7, 2012) (noting that distribution to an organization with a

8   "somewhat attenuated" connection to the injured class was reasonable in light of the general focus

9   of the organization and the fact that the *cy pres* distribution would likely be minimal).

10   In sum, the Court finds that the pro rata distribution to Authorized Claimants is "cost-

11   effective, simple, and fundamentally fair."  *High-Tech*, 2015 WL 5159441, at *8 (internal

12   quotation marks omitted).  Additionally, given the geographic diversity and varying substantive

13   focus of the *cy pres* recipients, the Court finds the *cy pres* distribution is sufficiently connected to

14   the Class and this lawsuit.  Examining the distribution plan in its entirety, the Court concludes that

15   the distribution plan is reasonable.

### IV.   The Request for Attorney's Fees Is Reasonable

17   "Under Ninth Circuit law, the district court has discretion in common fund cases to choose

18   either the percentage-of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d

19   1043, 1047 (9th Cir. 2002).  "[T]he choice between lodestar and percentage calculation depends

20   on the circumstances, but [] 'either method may . . .have its place in determining what would be

21   reasonable compensation for creating a common fund.'"  *Six Mexican Workers v. Ariz. Citrus*

22   *Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (ellipsis in original).  To guard against an

23   unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any

24   calculations done in one method against those of another method.  *Vizcaino*, 290 F.3d at 1050-51.

25   Where the percentage-of-recovery method is employed, it is well established that 25% of a

26   common fund is the benchmark award of attorney's fees.  *See, e.g., In re Bluetooth Headset Prods.*

27

28

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1    *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as

2    the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

3    'special circumstances' justifying a departure."); *Six Mexican Workers*, 904 F.2d at 1311 ("[W]e

4    established 25 percent of the fund as the 'benchmark' award that should be given in common fund

5    cases.").  "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in

6    some cases." *Vizcaino*, 290 F.3d at 1048.  Upward departures may be warranted in particular

7    circumstances, while downward departures may be warranted where there is no "realistic risk of

8    nonrecovery." *In re Quantum Health Res.*, 962 F. Supp. 1254, 1257-58 (C.D. Cal. 1997).

9        Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

10   hours the prevailing party reasonably expended on the litigation (as supported by adequate

11   documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

12   *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

13   The district court may adjust this lodestar figure "upward or downward by an appropriate positive

14   or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941-42.

15       Whether the Court awards the benchmark amount or some other rate, the award must be

16   supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290

17   F.3d at 1048.  The Ninth Circuit has approved a number of factors which may be relevant to the

18   district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill

19   required and the quality of work; (4) the contingent nature of the fee and the financial burden

20   carried by the plaintiffs; and (5) awards made in similar cases. *See id.* at 1048-1050.

21       Here, Class Counsel request 25% of the $13,000,000 Settlement, or $3,250,000.  Mot. for

22   Atty's Fees.  This request is the benchmark for attorney's fees under the percentage-of-recovery

23   method. *See In re Bluetooth*, 654 F.3d at 942.  Additionally, the Court finds that the favors in

24   *Vizcaino* support the requested award.

25       First, Class Counsel has achieved monetary and non-monetary results in this case.  Class

26   Counsel achieved a settlement in the amount of $13,000,000.  That fund was made available to a

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1    class of approximately 20.8 million people.  The fund is non-reversionary, thus the entire Net

2    Settlement Fund (after deductions for attorney's fees, costs, incentive awards, and administrative

3    costs) will be fully paid to 441,161 Class Members with an average recovery for each participating

4    Class Members of approximately $20.  Class Counsel also negotiated for the Email Notice to be

5    disseminated, and for claims to be validated, by LinkedIn at no additional cost to the Class, rather

6    than by the Settlement Administrator, which reduced administrative costs by approximately

7    $93,000.

8          Further, Ninth Circuit courts consistently have held that, where class counsel achieves

9    significant benefits that are not accounted for in the dollar value of the common settlement fund,

10   the court "should consider the value of [such] relief obtained as a 'relevant circumstance' in

11   determining what percentage of the common fund class counsel should receive as attorneys' fees."

12   *Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where

13   "the court found that counsel's performance generated benefits beyond the case settlement fund");

14   *Linney*, 1997 WL 450064, at *7 (granting fee award of one-third common fund where settlement

15   provided additional non-monetary relief).  As discussed above, as a result of the Settlement,

16   LinkedIn has revised its disclosures relating to its Add Connections service.  In particular, the

17   disclosures now clarify that up to two Reminder Emails will be sent for each Add Connections

18   invitation.  On its website, LinkedIn has added language to its Import Permission Screens,

19   including new "Learn More" and "Help Center" buttons, which alert LinkedIn users that importing

20   contact information in the Add Connections process entails a "one-time upload of [the user's]

21   address book contacts as well as their detailed contact information."  Finally, LinkedIn has

22   implemented functionality allowing members who invite contacts to connect through Add

23   Connections to withdraw those invitations.  This withdrawal functionality stops Reminder Emails

24   from being sent.  Accordingly, the results achieved on behalf of the Class weigh in favor of

25   granting Class Counsel's request for a fee award of 25%.

26          Second, there were significant risks of litigation here.  As discussed above, LinkedIn

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

26

1    contested its liability, and intended to contest class certification as well.  This factor favors

2    granting Class Counsel's request.

3          Third, with respect to the quality of litigation, Class Counsel is experienced in litigating

4    digital privacy class actions.  Class Counsel assembled a team of three law firms with resources

5    and ability necessary to litigate these claims.  They performed significant factual investigation

6    prior to bringing these actions, engaged in motion practice including opposing two motions to

7    dismiss, engaged in written discovery, and participated in protracted negotiations with LinkedIn,

8    including two full-day mediations, with the assistance of two different capable and experienced

9    mediators.

10         Fourth, Class Counsel undertook this matter solely on a contingent basis with no guarantee

11   of recovery.  All of the financial risk of litigation was assumed by Class Counsel, whose fee

12   arrangement with Plaintiffs requires Class Counsel to bear all of the costs of litigation and the

13   costs of attorney and paralegal time, which were substantial.  Additionally, Class Counsel was, to

14   an extent, precluded from taking and devoting resources to other cases or potential cases, with no

15   guarantee that the time expended would result in any recovery or recoupment of costs.

16         Fifth, this award is consistent with attorney's fees awards made in similar cases.  *See In re*

17   *Google*, 87 F. Supp. 3d at 1135-36 (granting 25% benchmark attorney's fees); *Fraley v. Facebook,*

18   *Inc.*, No. C 11-1726 RS, 2013 WL 4516806, at *3 (N.D. Cal. Aug. 26, 2013) (same); *In re Netflix*

19   *Privacy Litig.*, 2013 WL 1120801, at *9-10 (same).

20         Moreover, cross-checking Class Counsel's requested fee with Class Counsel's lodestar

21   supports the reasonableness of Class Counsel's request.  Here, Class Counsel's total lodestar was

22   $2,242,956, which results in a lodestar multiplier of 1.45.  *See* Diamand Supp. Decl. ¶ 4.  Class

23   Counsel asserts that the lodestar was calculated using the hourly rates Class Counsel normally

24   charges for class action litigation and is consistent with prevailing rates in this region.  *See* Mot.

25   for Atty's Fees at 15.  This Court, within the last year, and other courts, have approved Class

26   Counsel's customary rates used in calculating the lodestar here.  *See In re High-Tech Employee*

27

28   Case No. 13-CV-04303-LHK
     ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
     ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

1  *Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at \*9 (N.D. Cal. Sept. 2, 2015); *see*

2  *also Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at \*9 (N.D. Cal. Apr. 15,

3  2015); *In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440 EMC, 2015 WL 4051882, at

4  \*12 (N.D. Cal. July 2, 2015).  Additionally, Class Counsel's reported time appears to adequately

5  reflect the amount of time reasonably spent on this litigation.  *See* Diamand Decl. Ex. A (Lieff,

6  Cabraser, Heimann & Bernstein, LLP's hours); Diamand Supp. Decl. ¶¶ 2-6; ECF No. 116-2,

7  Decl. of Larry C. Russ (Russ August & Kabat, PC's hours); ECF No. 127-1, Supplemental Decl.

8  of Larry C. Russ; ECF No. 116-3, Decl. of Daniel P. Hipskind (Olavi Dunne's hours); ECF No.

9  127-3, Supplemental Decl. of Daniel P. Hipskind; *see also* ECF No. 129 (substituting Berger &

10  Hipskind LLP for Olavi Dunne LLP as Co-Lead Class Counsel).

11    The reported lodestar multiplier—1.45—is within the range of reasonableness.  In

12  *Vizcaino*, the Ninth Circuit conducted a survey of attorney's fees awards in common fund cases

13  between 1996 and 2001.  290 F.3d at 1052-54.  In the vast majority of cases (20 of 24, or 83%),

14  the multiplier ranged from 1.0-4.0.  *Id.* at 1051 n.6.  In a majority of cases, (13 of 24, or 54%), the

15  multiplier ranged from 1.5-3.0.  *See id.*  A multiplier of 1.45 falls within the lower end of this

16  range.

17    One additional consideration counsels in favor of Class Counsel's request.  Class

18  Counsel's request is inclusive of costs, even though reasonable expenses may be reimbursed

19  separately in common fund cases.  *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir.

20  1977); *accord Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).  Thus, Class

21  Counsel effectively requests slightly less than the 25% benchmark.

22    Twenty-four objections were filed concerning the fees sought by class counsel.[10]  At least

23  eleven of these objectors appear to believe that the suit is frivolous, that no relief for the Class was

24

25  [10] Boyan Boyanov, Daniel Brown and Jenny Hill, William Calderwood, Mary Don, Melanie Ford, Gary Gill, Julie Gordon, Susan House, Mark Howard, Michael Hughes, Dylan Jacobs, August

26  Lasseter, Tom Lucas, Mary Means, Donald Muldoon, Robert Petersen, Karrie Reuter, Carol Tomczyk, Steven White, Daniel Whitinger, Philip Wrona, Olen York, Farage Yusupov.  Jue Decl.

27  Exs. 8-9, 11, 17, 21, 23, 25, 29, 31-33, 42, 44, 47, 50, 54, 59, 74, 79-80, 83-85.

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

necessary, and that any award of attorney's fees would be unwarranted.[11]  The remaining objectors believe that the requested fee is unreasonably high and that Class Counsel did not perform sufficient work to justify the award.

The Court overrules these objections.  First, the Court has already found that this litigation is not frivolous, by permitting some claims to survive two motions to dismiss.  *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2014 WL 10520478, at *2 (N.D. Cal. May 16, 2014) (finding objection that "case should not have been brought at all. . . is not a valid objection, particularly in light of the fact that the Court has found this litigation to be meritorious").  Second, as discussed above, the Court finds the fee to be reasonable, and finds that the hours expended by Class Counsel are reasonable in light of the work undertaken in this case.  Class Counsel fully briefed and successfully argued two motions to dismiss, researched and prepared amended complaints, engaged in formal and informal discovery, researched complex class certification issues, engaged in further mediation-related discovery, twice mediated, and ultimately, settled this case.  Additionally, Class Counsel achieved substantial monetary and non-monetary relief for the Class.

Two objectors, Daniel Brown and Jenny Hill, additionally contend that Class Counsel's fee request is improper because it seeks 25% of the total settlement fund, before deducting administrative costs, citing *In re Bluetooth*, 654 F.3d 935.  Jue Decl. Ex. 9, at 3.  However, *In re Bluetooth* does not require the benchmark to be determined according to the net Settlement fund.  The rule proposed by Daniel Brown and Jenny Hill is not the law in the Ninth Circuit, and, indeed, would contradict the precedent of this district.  *See, e.g., Chavez*, 2015 WL 9258144, at *8 (awarding 25% of common fund calculated before deductions for costs or administrative expenses); *In re Google*, 87 F. Supp. 3d at 1135-36 (same); *Fraley*, 2013 WL 4516806, at *3 (same).

---

[11] William Calderwood, Mary Don, Melanie Ford, Gary Gill, Julie Gordon, Tom Lucas, Donald Muldoon, Robert Petersen, Karrie Reuter, Carol Tomczyk, Philip Wrona.  Jue Decl. Exs. 11, 17, 21, 23, 25, 44, 50, 54, 59, 74, 83.

1    Lastly, Susan House and Mary Means object on the basis that Class Counsel did not

2 provide sufficient information for the Court to determine the reasonableness of the fee.  "[I]t is

3 well established that '[t]he lodestar cross-check calculation need entail neither mathematical

4 precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and

5 need not review actual billing records.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245,

6 264 (N.D. Cal. 2015) (citations omitted) (second and third alterations in original); *Covillo v.*

7 *Specialtys Cafe*, No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (same).

8 In sworn declarations, Class Counsel has provided detailed summaries of their time,

9 demonstrating both the number of hours spent by specific individuals on the necessary work, and

10 the nature of the work performed.  Class Counsel's submission, under the circumstances of this

11 case, is sufficient for the Court to cross-check Class Counsel's lodestar.

12    In sum, Class Counsel's request represents an appropriate multiplier under the lodestar

13 method when compared to other common fund cases, and represents the benchmark award under

14 the percentage-of-recovery method.  Under these circumstances, the Court finds that Class

15 Counsel's request for $3,250,000 in attorney's fees is reasonable.

16 **V.    The Request for Class Representative Awards is Reasonable**

17    In evaluating whether representative plaintiffs are entitled to reasonable incentive

18 payments, district courts "must evaluate their awards individually, using 'relevant factors

19 includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to

20 which the class has benefitted from those actions, . . .the amount of time and effort the plaintiff

21 expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*,

22 327 F.3d at 977 (alterations and ellipses in original) (quoting *Cook v. Niedert*, 142 F.3d 1004,

23 1016 (7th Cir. 1998)).

24    The Ninth Circuit has established $5,000 as a reasonable benchmark award for

25 representative plaintiffs.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-48; *In re*

26 *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).  Here, there are 9 Class

27

28

1  Representatives: Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton,

2  Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall.  Class Counsel seeks $1,500 per

3  named plaintiff.  *See* Mot. for Atty's Fees, at 16.  The Court finds this request reasonable in light

4  of the *Staton* factors discussed above.

5       First, with respect to the actions taken by the plaintiff to protect the interests of the class,

6  the Class Representatives have assisted Class Counsel with the prosecution of the Class's claims,

7  including relating the details of their embarrassment as a result of LinkedIn's alleged conduct,

8  preserving relevant documentation and evidence for discovery, staying abreast of events in the

9  litigation and providing their opinions on the proposed settlement.  Diamand Decl. ¶ 27.  Two

10  Class Representatives, Pennie Sempell and Erin Eggers, also attended and participated in the

11  parties' mediations.  *Id.*

12       Second, as to the benefit to the Class, Class Members who submitted a valid Claim Form

13  will receive approximately $20 each, and all Class Members will benefit from the prospective

14  relief.  Objector Susan House—the only objector to the incentive awards—claims that the

15  incentive awards are excessive compared to the pro rata recovery for each Class Member.

16  However, the requested incentive payments ($13,500 in total) would represent only 0.1% of the

17  Settlement.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-48 (holding that awards

18  cumulatively representing "mere .17%" of settlement fund were reasonable); *Chavez*, 2015 WL

19  9258144, at *9 (approving incentive awards of $5,000 and $2,500 to the two named Plaintiffs,

20  compared to a pro rata recovery of $130 for the unnamed Class Members, when the incentive

21  awards represented only 0.005% of the total settlement).  Thus, Class Members have received a

22  significant benefit, and the requested awards to Class Representatives represent only a small part

23  of this benefit.  Susan House's objection is overruled.

24       Third, with respect to the amount of time and effort expended, Class Counsel declares that

25  each Class Representative has devoted "substantial time and effort" assisting Class Counsel on

26  this case.  Diamand Decl. ¶ 27.  Given that this case has been litigated for two and a half years,

27

28  Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California

and the stage of the proceedings, it is credible that named Plaintiffs spent time and effort helping counsel to litigate this case.  This factor favors incentive awards.

Fourth, as to the reasonable fears of workplace retaliation, none of the named Plaintiffs worked for LinkedIn, and there is no allegation that any named Plaintiff will face workplace retaliation.  However, the named Plaintiffs may still suffer negative consequences in the workplace for filing a lawsuit, especially as the instant case received significant media attention and involves a high profile company.

Weighing all of the *Staton* factors, the Court concludes that Class Counsel's request for incentive awards of $1,500 for each Class Representative is reasonable.

## VI.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for final approval of the proposed class action Settlement, and GRANTS Class Counsel's motion for approval of attorney's fees, costs, and incentive awards.  Accordingly, the Court awards $3,250,000 in attorney's fees to Class Counsel and $1,500 incentive awards each to Paul Perkins, Pennie Sempell, Ann Brandwein, Erin Eggers, Clare Connaughton, Jake Kushner, Natalie Richstone, Nicole Crosby, and Leslie Wall.

**IT IS SO ORDERED.**

Dated:  February 16, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 13-CV-04303-LHK
ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR
ATTORNEY'S FEES, COSTS, AND REPRESENTATIVE PLAINTIFF AWARDS

United States District Court
Northern District of California